IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

THE AMERICAN LEGACY FOUNDATION
2030 M Street, NW
Washington, DC 20036

Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA
175 Water Street
18th Floor
New York, NY 10038

and

THE TRAVELERS INDEMNITY COMPANY OF AMERICA
One Tower Square
Hartford, CT 06183

Defendants.

CASE NO:

JUDGE:

JURY DEMAND:

**COMPLAINT FOR DAMAGES**

Plaintiff American Legacy Foundation (the "Foundation") brings this complaint for damages against Defendants National Union Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Travelers Indemnity Company of America ("Travelers").

**SUMMARY OF THIS ACTION**

1. This is an insurance coverage action brought by the Foundation for damages. Defendants National Union and Travelers each sold the Foundation comprehensive general liability ("CGL") policies. National Union additionally sold the Foundation a directors and officers ("D&O") liability policy. Each of these policies requires National Union or Travelers to defend the Foundation and/or to pay costs incurred by the Foundation in the defense of claims to which this insurance applies or potentially applies. The Foundation incurred approximately $17 million in reasonable and necessary defense costs successfully defending itself against a claim or claims by Lorillard Tobacco Company ("Lorillard") within the scope of the coverage provided by National Union and Travelers. National Union and Travelers nevertheless wrongfully failed to defend the Foundation or to pay any defense costs incurred by it and have therefore breached their obligations under the policies described above.

**PARTIES**

2. The Foundation is a national non-profit corporation organized under the laws of the State of Delaware that has its principal place of business in the District of Columbia.

3. National Union is a corporation organized under the laws of the State of Pennsylvania that has its principal place of business in the State of New York.

4. Travelers is a corporation organized under the laws of the State of Pennsylvania that has its principal place of business in the State of Connecticut.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 based on the parties' diversity of citizenship. The amount in controversy, exclusive of interest and costs, exceeds the sum specified by 28 U.S.C. § 1332.

6. Defendant National Union is a licensed insurer in the State of Delaware, conducts and solicits business in Delaware, maintains more than minimum contacts in this jurisdiction, and by virtue of its activities in this State is subject to the jurisdiction of this Court.

7. Defendant Travelers is a licensed insurer in the State of Delaware, conducts and solicits business in Delaware, maintains more than minimum contacts in this jurisdiction, and by virtue of its activities in this State is subject to the jurisdiction of this Court.

## BACKGROUND

### A. The Formation of the Foundation and Its Mission to Reduce Youth Smoking

8. In the 1990s, forty-six states and other governmental instrumentalities brought suits against certain tobacco companies seeking to hold them liable for costs tobacco-containing products had imposed on those entities and their citizens (the "Tobacco Litigation").

9. On November 23, 1998, the parties to the Tobacco Litigation reached an agreement to resolve the pending lawsuits known as the Master Settlement Agreement ("MSA").

10. The MSA provides for, among other things, the creation of the Foundation. Under the MSA, the Foundation is "dedicated to significantly reducing the use of Tobacco Products by Youth" and its charge includes, among other things, to "carry[] out a nationwide and sustained advertising and education program to (A) counter the use by Youth of Tobacco Products, and (B) educate consumers about the cause and prevention of diseases associated with the use of Tobacco Products." The states allocated over $1 billion of their monetary recovery from the settling tobacco companies under the MSA to fund the new Foundation.

11. The MSA and the Foundation's bylaws require that certain of the Foundation's funds "shall be used only for public

education and advertising regarding the addictiveness, health effects, and social costs related to the use of Tobacco Products. . . and shall not be used for any personal attack on, or vilification of, any person (whether by name or business affiliation), company, or governmental agency, whether individually or collectively."

12. In February 2000, in furtherance of its mission to counter the use of tobacco products by youth, the Foundation launched a youth tobacco prevention public education program known as truth®. Truth® has consisted of numerous television and radio broadcast campaigns, each consisting of various television and/or radio spots. It has also included print advertisements, internet advertisements, websites and a grass roots component. More than fifty individual broadcast spots and more than a dozen campaigns were introduced by the Foundation from February 2000 through at least September 2002.

13. The campaigns included broadcast spots designed to discourage youth smoking by providing straightforward information about the health effects, addictiveness and social costs related to tobacco products and the marketing practices associated with those products. The spots are blunt, hard-edged, fast-paced and sometimes humorous, designed to capture and hold the attention of teens.

**B. Lorillard's Objections to Certain Broadcast Spots and Claim Against the Foundation**

14. Lorillard is the fourth largest tobacco company in the United States, the maker of the third most popular brand of cigarettes, Newport, and a signatory of the MSA.

15. One radio spot created by the Foundation, known as "Dog Walker," was part of the "Infect Truth" campaign launched in June 2001. In Dog Walker, a telephone caller identifies himself as a professional dog walker to a tobacco company receptionist and offers to collect urine produced by the dogs he walks and sell it to the tobacco company because "dog pee is full of urea, one of the chemicals that [tobacco companies] put in cigarettes." The receptionist at the tobacco company identifies the company as Lorillard.

16. Lorillard objected to Dog Walker and threatened to sue the Foundation in connection with that spot in November 2001. In January 2002, Lorillard expanded its allegations to include other broadcast spots created by the Foundation, and provided notice of its intent to file suit in 30 days.

17. In response to the notice by Lorillard, on February 13, 2002, the Foundation filed a declaratory judgment action in Delaware Chancery Court captioned *American Legacy Foundation v. Lorillard Tobacco Company*, C.A. No. 19406-NC, Del. Ch. Ct. (Feb. 13, 2002) (the "Delaware Action") seeking a

declaration that Lorillard had no basis to sue the Foundation under the MSA or, in the alternative, Lorillard's claims against the Foundation were without merit.

18. Days later, on February 19, 2002, Lorillard filed its threatened lawsuit in the Wake County Superior Court of North Carolina, *Lorillard Tobacco Company v. American Legacy Foundation*, 02 CvS 02170 (Feb. 19, 2002) (the "North Carolina Action"). The North Carolina Action was stayed during the pendency of the Delaware Action.

19. On or about September 13, 2002, Lorillard filed various counterclaims in the Delaware Action alleging that, among other things, in breach of the MSA and the Foundation's bylaws, various truth® spots attacked and vilified Lorillard, other tobacco companies and their employees by, among other things, making disparaging statements about their products (the "Counterclaims"). For example, Lorillard alleged that the Dog Walker spot aired by the Foundation "strongly impl[ied] that Lorillard adds dog urine to its cigarettes."

20. The Counterclaims further alleged that the Foundation maintained a truth® website through which multiple e-mails, allegedly unsolicited and of a harassing nature, were sent to Lorillard and other tobacco companies. Such e-mails were alleged to have interfered with Lorillard's e-mail system

and computer network, and to have disrupted Lorillard's employees' use of their computers.

21. Among other relief, Lorillard sought damages for the Foundation's alleged conduct set forth in its complaint in the North Carolina Action and in the Counterclaims.

### C. The Foundation's Successful Defense of the Claims Against It

22. Granting summary judgment in favor of the Foundation on August 22, 2005, the Delaware Chancery Court determined that the Foundation's radio and television broadcasts did not violate any rights of Lorillard.

23. Lorillard appealed the Chancery Court's decision to the Supreme Court of the State of Delaware (the "Delaware Supreme Court").

24. On July 17, 2006, the Delaware Supreme Court concluded that Lorillard's appeal was "without merit" and affirmed the Chancery Court's decision.

25. Over the more than four years during which the North Carolina Action and the Delaware Action (collectively, the "Lorillard Litigation") were litigated, the Foundation spent approximately $17 million defending itself against Lorillard's allegations. Those fees were reasonable and necessary to the Foundation's successful defense of the claims.

**D. The Insurance Policies Purchased by the Foundation**

26. From its inception, the Foundation purchased various liability insurance policies to protect itself from the risk of many types of claims against it, including claims such as those at issue in the Lorillard Litigation.

*The Travelers CGL Policies*

27. The Foundation purchased several primary CGL policies from Travelers including, without limitation, the policies numbered W680479HH8253TIA00 and W680479H8253TIA01 for consecutive annual policy periods from July 22, 2000, through July 22, 2002, and, on information and belief, policy number W680479HH8253TIA99, with a policy period from July 22, 1999 through July 22, 2000 (the "Travelers Policies") (factual statements herein concerning the latter policy are made on information and belief). These policies provide broad coverage for the Foundation's liabilities to third parties and associated defense costs.

28. The Travelers Policies also provide that Travelers must defend (and pay the costs of defending) any claim or suit and/or pay the costs of defending any claim or suit against the Foundation to which the Travelers Policies apply or potentially apply. Costs paid for the defense of the Foundation do not count against, and are therefore paid in addition to, any applicable limits of liability under the Travelers Policies.

*The National Union CGL Policies*

29. National Union issued CGL policies numbered BE7402566 and BE8716521, for consecutive annual policy periods from April 24, 2001 through April 24, 2003 (the "National Union CGL Policies"), under which the Foundation is insured. These policies provide broad coverage for the Foundation's liabilities to third parties and associated defense costs, including coverage for claims not covered by underlying policies.

30. The National Union CGL Policies also provide that National Union must defend (and pay the costs of defending) any claim or suit against the Foundation to which the National Union CGL Policies apply or potentially apply, but that is not covered under the Travelers Policies. Costs paid for the defense of the Foundation do not count against, and are therefore paid in addition to, any applicable limits of liability under the National Union CGL Policies.

*The National Union D&O Policy*

31. The Foundation also purchased a directors' and officers' liability policy numbered 8739971 from National Union, which provides coverage for the policy period from August 26, 2001 through August 26, 2002 (the "National Union D&O Policy"). The National Union D&O Policy provides broad coverage for the Foundation's liabilities to third parties for wrongful acts and associated defense costs.

32. The National Union D&O Policy also requires that National Union "shall advance defense costs" to the Foundation for claims or suits to which the National Union D&O Policy applies or potentially applies. Costs paid for the defense of the Foundation are paid within, and therefore count against, the $15,000,000 aggregate limit of liability under the National Union D&O Policy.

**COUNT I**
(Breach of Contract by Travelers)

33. Plaintiff Foundation repeats and incorporates by reference the allegations set forth in Paragraphs 1 - 32 above.

34. Premiums for the Travelers Policies have been paid in full and all other applicable conditions and prerequisites to coverage under the Travelers Policies have been satisfied or waived.

35. One or more of the Travelers Policies apply or potentially apply to the Lorillard Litigation. Travelers is therefore required to pay the defense costs incurred by the Foundation in connection with the Lorillard Litigation.

36. The Foundation sought a defense from Travelers in connection with the Lorillard Litigation, but Travelers has taken the position that the Foundation's defense costs are not covered under the Travelers Policies, and has failed to provide

a defense or to pay any of the Foundation's defense costs arising from the Lorillard Litigation.

37. Travelers has, therefore, breached its obligations under the Travelers Policies by failing to pay, in accordance with its contractual obligations, any of the Foundation's defense costs, which total at least $16,828,946.41.

38. As a direct and proximate cause of Travelers' breach of its contractual obligations, the Foundation has suffered significant monetary damage.

**COUNT II**
(Breach of Contract by National Union)

39. Plaintiff Foundation repeats and incorporates by reference the allegations set forth in Paragraphs 1 - 38 above.

40. Premiums for the National Union CGL Policies have been paid in full and all other applicable conditions and prerequisites to coverage under the National Union CGL Policies have been satisfied or waived.

41. One or more of the National Union CGL Policies apply or potentially apply to the Lorillard Litigation. National Union is, therefore, required to pay the defense costs incurred by the Foundation in connection with the Lorillard Litigation, to the extent that those defense costs are not covered under the Travelers Policies.

42. The Foundation sought a defense from National Union in connection with the Lorillard Litigation, but National Union has failed to provide a defense or to pay any of the Foundation's defense costs arising from the Lorillard Litigation.

43. National Union has, therefore, breached its obligations under the National Union CGL Policies by failing to pay, in accordance with its contractual obligations, any of the Foundation's fees and costs, which total at least $16,828,946.41.

44. As a direct and proximate cause of National Union's breach of its contractual obligations, the Foundation has suffered significant monetary damage.

**COUNT III**
(Breach of Contract by National Union)

45. Plaintiff Foundation repeats and incorporates by reference the allegations set forth in Paragraphs 1 - 44 above.

46. Premiums for the National Union D&O Policy have been paid in full and all other applicable conditions and prerequisites to coverage under the National Union D&O Policy have been satisfied or waived.

47. The National Union D&O Policy applies or potentially applies to the Lorillard Litigation. National Union

is, therefore, required to pay the defense costs incurred by the Foundation in connection with the Lorillard Litigation.

48. The Foundation sought a defense from National Union in connection with the Lorillard Litigation, but National Union has failed to provide a defense or to pay any of the Foundation's defense costs arising from the Lorillard Litigation.

49. National Union has breached its obligations under the National Union D&O Policy by failing to pay, in accordance with its contractual obligations, any of the Foundation's fees and costs, which total at least $16,828,946.41.

50. As a direct and proximate cause of National Union's breach of its contractual obligations, the Foundation has suffered significant monetary damage.

**PRAYER FOR RELIEF**

WHEREFORE, the Foundation requests judgment as follows:

1. Money judgment in the amount of at least $16,828,946.41;

2. Prejudgment and any other interest as appropriate;

3. An award to Plaintiff Foundation of its costs and reasonable attorneys' fees associated with this litigation; and

4. Such other and further relief as this Court deems appropriate.

**JURY DEMAND**

The Foundation hereby respectfully requests a trial by jury as to all issues so triable herein.

Dated: May 4, 2007

GILBERT RANDOLPH LLP
Richard Shore
Kami E. Quinn
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
(202) 772-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszyjw.com
tcairns@pszyjw.com

Counsel for Plaintiff
American Legacy Foundation

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

The American Legacy Foundation

(b) County of Residence of First Listed Plaintiff: Washington, DC
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's: See Attachment

**DEFENDANTS**

National Union Fire Insurance
The Travelers Indemnity Company

County of Residence of First Listed Defendant: State of Pennsylvania
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause: Breach of Contract

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ At Least $16,828,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE DOCKET NUMBER

DATE 5/4/07

SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

Counsel for Plaintiff The American Legacy Foundation:

GILBERT RANDOLPH LLP
Richard Shore
Kami E. Quinn
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
(202) 772-2200

and

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)

2007 MAY -4 PM 3:51

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. 07-248

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF 3 COPIES OF AO FORM 85.

5.4.07
(Date forms issued)

Chad Toscano [signature]
(Signature of Party or their Representative)

Pachulski Stang Ziehl Young Jones Weintraub
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action