# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE AMERICAN LEGACY FOUNDATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) Case No. 07-248-SLR |
| COMPANY OF PITTSBURGH, | ) |
| PENNSYLVANIA | ) |
| | ) JURY TRIAL DEMANDED |
| and | ) |
| | ) |
| THE TRAVELERS INDEMNITY | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

## NATIONAL UNION'S OPENING BRIEF IN
## SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL

John A. Parkins, Jr. (#859)
Chad M. Shandler (#3796)
Todd A. Coomes (#4694)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware 19899
302-651-7700
Parkins@rlf.com
Shandler@rlf.com
Coomes@rlf.com
Attorneys for Defendant National Union Fire
Insurance Company of Pittsburgh,
Pennsylvania

Dated: November 30, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

    A.    The MSA And The Creation Of ALF. ....................................................... 3

    B.    ALF's Advertising Campaign And The Dispute With Lorillard. ............. 3

    C.    The Underlying Litigation In The Court Of Chancery. ............................ 4

    D.    The Underlying Appeal To The Delaware Supreme Court. ..................... 5

SUMMARY OF ARGUMENT ...................................................................................... 6

ARGUMENT ................................................................................................................. 7

    I.    INTRODUCTION .......................................................................................... 7

        A.    The Court May Consider Certain Documents Not Attached To The Instant Complaint In Deciding This Motion To Dismiss. ........................ 7

        B.    Under Delaware Law, This Court May Consider The Entire Record In The Underlying Case. .......................................................................... 8

    II.    THERE IS NO COVERAGE UNDER THE NATIONAL UNION D&O POLICY BECAUSE THAT POLICY EXCLUDES CONTRACT CLAIMS AND PROPERTY DAMAGE CLAIMS. ........................................................ 9

        A.    There Is No Coverage For Count's I through IV Under The D&O Policy Because That Policy Excludes Coverage For Contract Claims. ............. 9

            1.    The D&O Policy Excludes Coverage For Contract Claims. ....................... 9

            2.    The Pleadings, Briefs And Opinions In The Underlying Action Show That The Claims Arose From A Contract. ....................................... 13

                (a)    The Pleadings In The Delaware Action Show That It Was Contract Case. ........................................................................ 13

                (b)    The Briefs In The State Court Action Confirm That The Action Was A Contractual Dispute. ................................... 19

                (c)    The Delaware Courts Understood The Underlying Matter To Be A Contract Claim. ................................................... 20

B.    Lorillard's Trespass To Chattels Claim Is Excluded From Coverage By The Property Damage Exclusion In The D&O Policy....................................21

1.    The Nature And History Of Lorillard's Trespass To Chattels Claim............................................................................................................21

2.    The National Union D&O Policy Excludes Coverage For The Trespass To Chattels Claim. ..............................................................................22

CONCLUSION..............................................................................................................24

ii

# TABLE OF AUTHORITIES

## CASES

*Am. Chem. Soc'y v. Leadscope, Inc.,*
2005 WL 1220746 (Ohio App. May 24, 2005) ............................................................................13

*Am. Legacy Found. v. Lorillard Tobacco Co.,*
831 A.2d 335 (Del. Ch. 2003)...............................................................................................5, 17

*Am. Legacy Found. v. Lorillard Tobacco Co.,*
886 A.2d 1 (Del. Ch. 2005).........................................................................................20, 21, 22

*Am. Legacy Found. v. Lorillard Tobacco Co.,*
2004 Del. Ch. LEXIS 157 (Del. Ch. Nov. 3, 2004)....................................................................20

*America Online, Inc. v. St. Paul Mercury Ins. Co.,*
207 F. Supp. 2d 459 (E.D. Va. 2002), *aff'd*, 347 F.3d 89 (4th Cir. 2003) ...............................22, 23

*American Insurance Group v. Risk Enterprise Management, Ltd,*
761 A.2d 826 (Del. 2000) .........................................................................................................8, 9

*Associated Independent Dealers Inc. v. Mut. Serv. Ins. Co.,*
229 N.W.2d 516 (Minn. 1975)......................................................................................................13

*Buck v. Hampton Township School District,*
452 F.3d 256 (3d Cir. 2006)...........................................................................................................7

*In re Burlington Coat Factory Securities Litig.,*
114 F.3d 1410 (3d Cir. 1997)........................................................................................................7

*Callas Enters., Inc. v. Travelers Indemnity Co. of Am.,*
193 F.3d 952 (8th Cir. 1999) ......................................................................................................12

*Castetter v. Delaware Dept. of Labor,*
2002 WL 819244 (Del. Super. Apr. 30, 2002) ............................................................................15

*Centaur Partners IV v. Nat'l Intergroup, Inc.,*
582 A.2d 923 (Del. 1990) ............................................................................................................18

*Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys., Co.,*
708 A.2d 989 (Del. 1998) ............................................................................................................16

*Continental Casualty Co. v. Alexis I. DuPont School Dist.,*
317 A.2d 101 (Del. 1974) ..........................................................................................................8, 9

RLF1-3197837-3

*Dover Downs, Inc. v. TIG Insurance Co.,*
2005 U.S. Dist. LEXIS 16365 (D. Del. Aug. 11, 2004) ................................................................9

*Dunlap v. State Farm Fire & Cas. Co.,*
878 A.2d 434 (Del. 2005) ................................................................16

*Duquesne Light Co. v. Westinghouse Elec. Corp.,*
66 F.3d 604 (3d Cir. 1995)................................................................16

*Eon Labs Mfg. Inc. v. Reliance Ins. Co.,*
756 A.2d 889 (Del. 2000) ................................................................12, 13

*Kamminga v. News Journal Co.,*
1997 WL 364031 (Del. Super. June 9, 1997) ................................................................16

*Katz v. Oak Indus., Inc.,*
508 A.2d 873 (Del. Ch. 1986)................................................................16

*Lorillard Tobacco Co. v. Am. Legacy Found.,*
903 A.2d 728 (Del. 2006) ................................................................5, 18, 21, 22

*MAI Basic Four, Inc. v. Generic Business Solutions, Inc.,*
1990 Del. Ch. LEXIS 2 (Del. Ch. Jan. 16, 1990) ................................................................22

*McCabe v. Old Republic Ins. Co.,*
228 A.2d 901 (Pa. 1967)................................................................13

*Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,*
668 N.E.2d 404 (N.Y. 1996)................................................................13

*Perlegos v. Atmel Corp.,*
2007 Del. Ch. LEXIS 25 ................................................................18

*Salaman v. Nat'l Media Corp.,*
1992 Del. Super. LEXIS 564 (Del. Super. Oct. 8, 1992)................................................................18

*Temple University Health System, Inc. v. National Union Fire Insurance Co. of Pittsburgh,*
2005 WL 167583 (Pa. Com. Pl. Jan. 7, 2005) ................................................................17

RLF1-3197837-3

## NATURE AND STAGE OF THE PROCEEDINGS

In this insurance coverage case, the American Legacy Foundation ("ALF") seeks to recoup from its alleged insurers the legal fees and costs ALF incurred in a declaratory judgment action it filed against Lorillard Tobacco Company ("Lorillard") in the Delaware Court of Chancery.

ALF alleges it is entitled to coverage under certain policies issued by the Travelers Insurance Company, two umbrella policies issued by National Union and a D&O policy issued by National Union. This is National Union's motion to dismiss Count III of the Complaint in which ALF alleges it is covered by the National Union D&O policy.

The underlying Delaware action turned on the interpretation and application of an agreement known as the Master Settlement Agreement ("MSA") in which 46 states settled their claims against certain tobacco companies. That agreement provided for, among other things, the creation of an independent nonprofit entity, funded by the tobacco companies. The primary purpose of this new entity was deterrence of youth smoking. ALF is the entity eventually created as a result of this provision.

The MSA imposed limitations on the content of that entity's advertising and the identical limitations appear in ALF's bylaws. In or about 2002, Lorillard concluded that certain of ALF's television advertisements ran afoul of these limitations and demanded that ALF desist from running these ads. ALF filed a declaratory judgment action in the Delaware Court of Chancery seeking a declaration that Lorillard could not enforce the MSA against ALF because ALF was not a party to that agreement. ALF also sought a declaration that Lorillard had no standing to enforce ALF's bylaws. Lorillard filed a counterclaim (and amended counterclaim) in which it sought a declaration that it had standing to enforce the MSA against ALF and, alternatively, that it had standing to enforce ALF's bylaws. Lorillard also claimed that certain of ALF's

1

advertisements and campaigns violated the MSA. It sought injunctive relief and damages of one dollar from ALF.

ALF filed a motion for summary judgment in the state court on the standing issue. The Court of Chancery ruled in favor of Lorillard, holding that Lorillard could enforce the MSA against ALF because of a pre-incorporation adoption of that agreement on behalf of ALF. Because of its ruling, the Court of Chancery expressly found it unnecessary to reach the question whether Lorillard had standing to enforce ALF's bylaws.

Thereafter, the parties filed cross motions for summary judgment on the question of whether ALF violated the limitations contained in the MSA. The Court of Chancery held that the challenged television advertisements did not violate the content limitations contained in the MSA. It found that a campaign by ALF to encourage visitors to ALF's website to forward e-mails, which were frequently vulgar, to tobacco executives violated the MSA, but it declined to award Lorillard any relief because the violation was *de minimis*. The Court of Chancery also dismissed for failure to prosecute a counterclaim by Lorillard accusing ALF of trespass to chattels.

Lorillard appealed the lower court's decision that ALF's advertisements did not violate the MSA, and ALF cross-appealed from the decision that Lorillard could enforce the MSA against ALF. The Delaware Supreme Court, sitting *en banc*, affirmed both rulings.

2

## STATEMENT OF FACTS

### A.    The MSA And The Creation Of ALF.

In 1998, certain tobacco companies, including Lorillard Tobacco Company ("Lorillard"), entered into a Master Settlement Agreement ("MSA") with 46 states. The MSA provided for, among other things, the creation of a nonprofit foundation whose stated purpose was "significantly reducing the use of Tobacco Products by Youth." (D.I. 1, ¶ 10). To that end, the MSA required the signatory tobacco companies, including Lorillard, to make various payments that would fund the operations of the foundation. The MSA also described, in general, how the funds were to be used by the foundation. First, the MSA required that advertising by the foundation concern only "the addictiveness, health effects, and social costs related to the use of tobacco products." Second, the MSA prohibited advertising that would constitute a "personal attack" on or "vilification" of tobacco companies and their employees.

On March 4, 1999, the settling states incorporated the American Legacy Foundation ("ALF") in Delaware as the nonprofit foundation contemplated by the MSA. At the time of incorporation, ALF's bylaws contained a *verbatim* copy of the provisions of the MSA relating to advertising. Further, ALF's certificate of incorporation expressly prohibited ALF from deleting the advertising provisions from its bylaws.

### B.    ALF's Advertising Campaign And The Dispute With Lorillard.

In February 2000, ALF began a campaign called truth®, which consisted of radio and television advertising, print advertisements, internet advertisements and websites. (D.I. 1, ¶ 12). One of the early advertisements was a radio broadcast known as "Dog Walker," which began with a woman answering a telephone "Good Afternoon Lorillard." The caller (an actor employed by ALF) identified himself as a professional dog walker and offered to collect dog

urine and sell it to the tobacco companies because "dog pee is full of urea, one of the chemicals that [tobacco companies] put in cigarettes."

Lorillard objected to the advertisement, and, in November 2001, sent ALF a draft complaint containing allegations of defamation and unfair business practices, and threatened to file the suit.  In January 2002, however, Lorillard "changed the focus of its potential lawsuit" and threatened to assert a contract claim based on the MSA to attack the entire truth[®] campaign.  In response to the notice that it was about to be sued, ALF filed the underlying action in the Court of Chancery.[1]

## C.    The Underlying Litigation In The Court Of Chancery.

In its Chancery complaint, ALF sought "a declaration that Lorillard had no basis to sue the Foundation under the MSA or, in the alternative, Lorillard's claims against the Foundation were without merit."  (Chancery D.I. 1, ¶ 17).  In September 2002, Lorillard filed various counterclaims (the "Counterclaims"), contending that it had standing to enforce the MSA against ALF and that ALF had violated it.  Specifically, the Counterclaims alleged:

> o  several of ALF's advertisements -- not just Dog Walker -- violated the limitations on content found in the MSA.
>
> o  ALF improperly funded its advertisements in an effort to avoid the content limitations found in the MSA, and thereby violated the MSA.
>
> o  a campaign whereby ALF provided a template on its website for e-mails that visitors to the website could send to tobacco company executives violated the MSA because the resultant e-mails were vulgar and harassing.

---

[1]  After being sued by ALF in the Court of Chancery, Lorillard sued ALF in North Carolina and then sought to stay or dismiss the Delaware action in favor of its North Carolina suit.  The Court of Chancery denied Lorillard's application, and the North Carolina action was never litigated and was eventually dismissed.

4

- o  the e-mail campaign constituted a trespass to its chattels because it interfered with Lorillard's' computer system and its employees' use of their computers.

One month after suit was filed, ALF moved for summary judgment, arguing that Lorillard lacked standing to enforce either the MSA or ALF's bylaws. The Court of Chancery disagreed, finding that Lorillard could enforce the MSA against ALF because of a pre-incorporation adoption of that agreement on behalf of ALF. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 351 (Del. Ch. 2003). Because of that finding, the court did not reach the question whether Lorillard could enforce ALF's bylaws. *Id.* at 352. Following discovery, the parties cross-moved for summary judgment on whether the advertisements in question and the e-mail campaign violated the content limitations contained in the MSA. The Court of Chancery found that none of the challenged radio and television advertisements violated the MSA. The Court did find that the e-mail campaign known as "mad libs" violated the MSA but declined to award relief to Lorillard because it believed the violation was *de minimis*.

**D.    The Underlying Appeal To The Delaware Supreme Court.**

Lorillard appealed the entry of final judgment following the cross-motions for summary judgment and ALF cross-appealed from the Court of Chancery's earlier determination that Lorillard could enforce the MSA against it. Sitting *en banc*, the Delaware Supreme Court affirmed the judgment on the merits, albeit in certain instances for reasons different than those given by the Court of Chancery. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728 (Del. 2006). The Supreme Court also affirmed the judgment challenged by ALF in its cross-appeal and held that Lorillard could enforce the MSA against ALF. *Id.*

5

## SUMMARY OF ARGUMENT

No coverage is provided by the National Union D&O policy ("D&O policy") because of two exclusions. First, the D&O policy excludes coverage for contract claims and all but one of Lorillard's Counterclaims were based upon the Master Settlement Agreement. Indeed the state court in the underlying case repeatedly characterized the matter as a contract dispute. Second, there is no coverage under the D&O policy for the sole remaining claim -- trespass to chattels which was dismissed for failure to prosecute -- because of an exclusion for property damage claims in that policy.

6

**ARGUMENT**

## I.    INTRODUCTION

The D&O policy specifically excludes from its coverage claims arising from, based upon or attributable to a contract. However, all but one of the claims set forth in Lorillard's amended counterclaim are expressly based upon the Master Settlement Agreement. Thus, those claims squarely fall within this exclusion. The sole remaining claim, a trespass to chattels claim which was dismissed for failure to prosecute, falls within the exclusion of claims for property damage found within the D&O policy.

Before proceeding to the merits, two threshold matters warrant consideration. *First*, ALF has chosen not to affix to its Complaint the insurance policies or pleadings in the underlying action. Therefore, National Union will briefly address the scope of the materials this Court may consider in connection with this motion. *Second*, National Union will briefly address why this Court should review not only the complaint and counterclaim in the underlying case but also the other pleadings and briefs when determining whether National Union is obligated to reimburse ALF for its defense costs.

## A.    The Court May Consider Certain Documents Not Attached To The Instant Complaint In Deciding This Motion To Dismiss.

National Union recognizes, of course, that a court ordinarily may not consider matters outside the pleadings when ruling on a motion to dismiss. There is a well recognized exception, however, that a "document integral to or explicitly relied upon in the Complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks omitted); *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or

7

submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice [and] matters of public record.") (internal quotations, edit marks and citations omitted).

In the instant matter this Court can, and should, consider the insurance policies as well as the publicly filed documents in the underlying state court litigation. The instant Complaint references by policy numbers the National Union policies (D.I. 1, ¶¶ 29, 31). It goes without saying that ALF's claims are based upon those policies. Accordingly, this Court may, and should, consider them on a motion to dismiss. Similarly this Court can, and should, consider the pleadings and opinions in the underlying state court case. ALF's instant Complaint describes the allegations in the state court proceedings (*Id.*, ¶¶ 17, 19, 20) and expressly refers to the opinions by the Delaware Court of Chancery and Supreme Court. (*Id.*, ¶¶ 22, 24).

**B.    Under Delaware Law, This Court May Consider The Entire Record In The Underlying Case.**

As discussed in Part II, the allegations in Lorillard's Counterclaim conclusively show that there is no coverage here. But under the circumstances of this case, the Court is free to look beyond those allegations to confirm there is no coverage. In a typical duty to defend case[2], a court will ordinarily consider only the complaint in the underlying case. *Continental Casualty Co. v. Alexis I. DuPont School Dist.*, 317 A.2d 101, 105 (Del. 1974). A different rule applies in Delaware where, as here, the determination of a duty to defend is being made after the underlying case has been completed. In such an instance, the court should consider the entire record in that case. In *American Insurance Group v. Risk Enterprise Management, Ltd*, 761

---

[2] Cases often use the phrase "duty to defend," but in this instance that phrase is, in fact, a misnomer. Section 8 of the D&O policy provides that the "insurer does not assume any duty to defend. The Insureds shall defend and contest any claim against them." Thus, this policy is not properly characterized as a "duty to defend" policy.

8

A.2d 826 (Del. 2000), the insured sought reimbursement of defense costs after the underlying

case had been completed. It argued, and the lower court agreed, that only the complaint should

be used to determine whether the carrier had a duty to defend. On appeal the Delaware Supreme

Court reversed, holding that "where, as here, the demand for indemnification occurred after

development of a complete discovery record in the underlying lawsuit, the Superior Court should

not limit its analysis solely to the allegations of the complaint." *Am. Insurance Group,* 761 A.2d

at 827. The court reasoned that:

> In construing an insurer's duty to indemnify and/or defend a claim
> asserted against its insured, a court typically looks to the
> allegations of the complaint to decide whether the third party's
> action against the insured states a claim covered by the policy,
> thereby triggering the duty to defend. *See Continental,* 317 A.2d
> 101. The rationale underlying this principle is that the
> determination of whether a party has a duty to defend should be
> made at the outset of the case, both to provide the insured with a
> defense at the beginning of the litigation and to permit the insurer,
> as the defraying entity, to control the defense strategy. The present
> case, however, presents an unusual situation. Dover Mall did not
> make a demand for defense until after the completion of discovery,
> almost three years after the underlying tort action was filed.
> Moreover, the determination of whether a duty to defend existed is
> being made after the underlying litigation has already been settled.
> For these reasons, the urgency that often exists at the outset of
> litigation is not present.

*Id.* at 829. Since this Court is applying Delaware law, therefore, it should consider the entire

record in the underlying case in determining whether the D&O policy obligates it to reimburse

ALF's defense costs.[3] It is, of course, undisputed that the underlying case has been completed.

---

[3] There is language in a prior opinion of this Court which might, at first blush, suggest
that this Court is limited to considering the underlying complaint and counterclaim. On closer
examination, however, that is not the case. In *Dover Downs, Inc. v. TIG Insurance Co.,* 2005
U.S. Dist. LEXIS 16365 (D. Del. Aug. 11, 2004), this Court considered whether there was a duty
to defend under Delaware law. Even though the underlying case had been completed, the Court
noted that it "must assess whether the underlying complaint, read as a whole, alleges a risk
within the coverage of the policy." *Id.* at *16. An examination of the briefs filed in *Dover
Downs* shows that neither party argued that this Court was obligated to consider the entire

9

Indeed, this analysis is even more compelling in this case which does not involve a duty to defend, but a duty to reimburse and therefore no determination need be made at the outset of the case.

---

record, not just the complaint, in the underlying action. (A540-A745). To the contrary, Dover Downs argued that "a court typically looks to the allegations in the [underlying] complaint," and the title of its argument was "The Crissman Complaint claims Property Damage." (A664). Thus the *Dover Downs* court correctly concluded that the parties in that case based there contentions on the underlying complaint only. *Id.* at *14 ("Plaintiff asserts that the allegations in the Crissman complaint are covered ..."; "Defendant maintains that the allegations made in the Crissman Action are covered by neither ..."). Given that this Court never had occasion to consider the scope of its review of the underlying record, it cannot be said that the *Dover Downs* court concluded that the Delaware Supreme Court's aforementioned language in *Risk Management Enterprises* does not reflect the current state of the law in Delaware.

10

II.   **THERE IS NO COVERAGE UNDER THE NATIONAL UNION D&O POLICY BECAUSE THAT POLICY EXCLUDES CONTRACT CLAIMS AND PROPERTY DAMAGE CLAIMS.**

The underlying claims are excluded from coverage by two provisions of the National Union D&O policy. *First*, the D&O policy excludes from coverage claims arising from or based upon a contract. As the Delaware courts observed in the underlying case, Lorillard's claims arose from a contract--the Master Settlement Agreement. *Second*, there was only one non-contract claim in the underlying action -- a trespass to chattels claim -- which was dismissed for failure to prosecute. There is no coverage for that claim because claims for property damage are excluded by the D&O policy. These exclusions will be discussed separately below.

A.   **There Is No Coverage For Count's I through IV Under The D&O Policy Because That Policy Excludes Coverage For Contract Claims.**

> *There is no coverage for claims "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability."*
>
> National Union D&O Policy

* * *

> *"[The parties] both agree that the matter presented is a straightforward contractual issue which turns on the legal interpretation of the settlement agreement."*
>
> Delaware Court of Chancery

* * *

> *Lorillard Tobacco Company appeals the declaratory judgment ... arising from a contract dispute.*
>
> Delaware Supreme Court

The D&O policy excludes from coverage underlying claims which arise from, or are in any way related to, a contract. Here there is no doubt that all but one[4] of the claims in the underlying action was based upon a contract -- the MSA. The allegations in the state court proceedings and the manner in which the Delaware courts understood and treated the claims all show that the claims in the underlying suit were largely contractual.

### 1.    The D&O Policy Excludes Coverage For Contract Claims.

The D&O policy unequivocally excludes contract claims from coverage. It provides that:

> The insurer shall not be liable to make any payment for Loss in connection with a claim made against an insured:
>
> *    *    *
>
> *alleging, arising out of, based upon or attributable to any actual or alleged contractual liability* of an Insured under any express contract or agreement; provided, however, that this exclusion shall not apply to *liability* which would have attached in the absence of such express contract or agreement.

(A10, § 4(k)).

Courts, including the Delaware Supreme Court, have routinely held that the key language in this exclusion is unambiguous. In holding that the phrase "arising out of" is unambiguous, the Delaware Supreme Court observed that the "term 'arising out of' is one that lends itself to uncomplicated, common understanding." *Eon Labs Mfg. Inc. v. Reliance Ins. Co.*, 756 A.2d 889, 893 (Del. 2000). Many other courts have likewise concluded that "arising out of" is unambiguous. *E.g.*, *Callas Enters., Inc. v. Travelers Indemnity Co. of Am.*, 193 F.3d 952, 955 (8th Cir. 1999) (coverage exclusion for injuries "arising out of breach of contract" is

---

[4] Lorillard raised a single claim that does not fall within the contract exclusion. That claim, which was for trespass to chattels, was never actively litigated and was dismissed for failure to prosecute. As discussed in part B of this argument, there was no coverage for that claim by reason of the property damage exclusion in the D&O policy.

unambiguous); *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 668 N.E.2d 404 (N.Y. 1996) ("arising out of" language in exclusion is unambiguous); *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967) ("arising out of" in policy exclusion unambiguous).

The language of this exclusion has also been broadly interpreted in linking claims with their contractual origin. An Ohio court of appeals defined: "arising out of" to mean "originating from," "growing out of," flowing from," or having its origin in"; "base upon" as "to find a base or basis for" and "attribute" as "to reckon as made or originated in an indicated fashion." *Am. Chem. Soc'y v. Leadscope, Inc.*, 2005 WL 1220746, at *10 (Ohio App. May 24, 2005) (citations omitted). Other courts have given similar broad interpretation to similar language. For example, in *Associated Independent Dealers Inc. v. Mut. Serv. Ins. Co.*, 229 N.W.2d 516, 518 (Minn. 1975) the Minnesota Supreme Court defined "arising from" as meaning "originating from," "having its origins in," "growing out of," of "flowing from." The Delaware Supreme Court likewise defined the phrase broadly, requiring only that there be "meaningful linkage" between claims and a contract. *Eon Labs Mfg., Inc.*, 756 A.2d at 893. An analysis of the underlying claims in the instant matter shows that they easily satisfy any definition of "arising out of" an alleged contractual liability.

       **2.**       **The Pleadings, Briefs And Opinions In The Underlying Action Show That The Claims Arose From A Contract.**

The pleadings, briefs, and opinions in the underlying Delaware case establish beyond doubt that the claims arose out of, were based upon or were attributable to the MSA.

       **(a)**       **The Pleadings In The Delaware Action Show That It Was Contract Case.**

The allegations in the Chancery pleadings, both in ALF's complaint and in Lorillard's amended counterclaim, show that this matter was a contract dispute. National Union will not

burden this Court with a detailed analysis of the allegations in ALF's Chancery complaint. Suffice it to say that in its complaint in this Court ALF described its Chancery complaint as a "declaratory judgment action in Delaware Chancery Court ... seeking a declaration that Lorillard had no basis to sue the Foundation under the MSA or, in the alternative, Lorillard's claims against the Foundation were without merit." (D.I. 1, ¶ 17).

A section-by-section examination of Lorillard's amended counterclaim shows that it is rife with allegations that ALF violated the MSA. In its "Summary of Claims", Lorillard repeatedly emphasized that it was seeking redress for ALF's alleged violation of the MSA. (A44-A48, ¶¶ 1-7); indeed, every single paragraph of Lorillard's Summary expressly referred to the MSA. (*Id.*). For example, Lorillard alleged:

- o "Such advertisements and attacks constitute breach of the MSA by ALF." (*Id.*, ¶ 4).

- o "These e-mails constitute breaches of the MSA by ALF." (*Id.*, ¶ 5).

- o "ALF and its attorneys pursued a scheme designed to evade the restrictions placed on ALF's conduct and activities by Section VI of the MSA." (*Id.*, ¶ 6).

- o "ALF by engaging in this conduct alleged herein, has repeatedly and materially breached the MSA and an order requiring ALF to comply with its obligations under the MSA." (*Id.*, ¶ 7).

The next portion of Lorillard's amended counterclaim is titled "Execution of the Master Settlement Agreement and the creation of ALF." (A48-A53, ¶¶ 10-30). As might be expected, every paragraph in this segment of the amended counterclaim refers implicitly[5] or explicitly to the MSA. (*Id.*). Following is a section labeled by Lorillard "ALF's Violations of the MSA."

---

[5] Only paragraph 10 does not refer explicitly to the MSA. That paragraph alleges that the eventual parties to the MSA "participated in negotiations designed to reach a resolution of the parties' disputes."

(A53-A57, ¶¶ 31-47).  The title, of course, speaks for itself.  The final section of the amended counterclaim is styled "Attempts by Lorillard to Resolve Dispute."  (A58, ¶¶ 48-49).  In sum, virtually all of the factual allegations in the amended counterclaim relate to ALF's alleged violation of the MSA.

The "Claims for Relief," with the one exception discussed in Part II B of this argument, all allege contract claims.  Those claims can be summarized as follows:

First Claim:    **"Breach of Master Settlement Agreement."**

Here Lorillard alleges that "ALF has committed multiple material breaches of the MSA."  (A80-A81 at 58).  Not surprisingly, this Claim for Relief contains numerous recitations of ALF's obligations under the MSA and its alleged breaches thereof.  It is undisputable that this claim arises from a contract.

Second Claim:    **"Breach of the Duty and Covenant of Good Faith and Fair Dealing."**

Both the amended counterclaim and the law show that Lorillard's claim of the breach of an implied covenant of good faith and fair dealing arise from a contract.  A review of the allegations shows that the breach of the implied covenant of good faith claim was grounded on the MSA.  Lorillard's claim is centered on its allegation that "ALF knew ... it is bound by and must comply with the terms of the MSA yet sought to avoid these limitations by manipulating its finances."  (A83, ¶ 66).  According to the amended counterclaim, these efforts constitutes "a breach of ALF's duty and covenant of good faith and fair dealing under the MSA."  (*Id.*, ¶ 67).

As a matter of law, the implied covenant of good faith and fair dealing arises from a contract because there can be no such claim absent a contract.  *Castetter v. Delaware Dept. of Labor*, 2002 WL 819244, at *3 (Del. Super. Apr. 30, 2002) ("Only a party to a contract can

breach the implied covenant of good faith and fair dealing"); *Kamminga v. News Journal Co.*, 1997 WL 364031, at *7 n.4 (Del. Super. June 9, 1997) ("Because I find that the parties never created an enforceable contract, I need not address the implied covenant of good faith"). This, by itself, requires the conclusion that the claim for breach of an implied covenant is "arises out of" or is "attributable to" an underlying contract.

Analysis of the role of the implied covenant confirms its nexus to an underlying contract. In Delaware, the obligations imposed by the implied covenant become terms of the underlying agreement. "The covenant is best understood as a way of implying terms in that agreement, whether employed to analyze unanticipated developments or fill gaps in the [agreement]." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (internal quotation marks omitted); *see also Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys., Co.*, 708 A.2d 989, 992 (Del. 1998) ("implying such terms in an agreement."). Moreover, the specific requirements of the implied covenant are derived from the terms of the underlying contract:

> Existing contract terms control ... such that implied good faith cannot be used to ... create a free-floating duty unattached to the underlying legal document.

*Dunlap*, 878 A.2d at 441 (internal quotation marks omitted), *Cincinnati SMSA*, 708 A.2d at 992 (Courts only apply doctrine "[i]n cases where obligations can be understood from the text of a [literal] agreement but have nevertheless been omitted ..."), *Katz v. Oak Indus., Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986) (doctrine applied when it is "clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to prosecute the act later complained of ... had they thought to negotiate with respect to that matter."), *accord, Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617 (3d Cir. 1995) (In applying implied covenant courts "do not enforce an independent duty divorced from the specific clauses of the contract."). In sum, specific obligations derived from the implied

16

covenant are derived from the clauses of the underlying contract and themselves become terms of that contract. Necessarily, therefore, these obligations are "based upon" and "attributable to" an express contract.

Finally, nearly identical language in another National Union Policy was held to exclude coverage of an implied covenant claim. In *Temple University Health System, Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 2005 WL 167583 (Pa. Com. Pl. Jan. 7, 2005) the exclusion provided in pertinent part that there was coverage for any claim:

> alleging, arising out of, based upon or attributable to any actual or alleged contractual liability ... under any express written or oral contract or agreement.

*Id.* at *3. The court found that this exclusion barred coverage for an implied covenant claim, noting that "[b]reach of the covenant of good faith and fair dealing is nothing more than a breach of contract claim." *Id.*

Third Claim:    "**Violation of Bylaws and Certificate of Incorporation.**"

In this claim, Lorillard contended it was entitled to enforce ALF's bylaws, which contained limitations identically worded to the limitations found in the MSA. The bylaws claim received little attention from either the parties or the state courts. In its opening brief on its motion for summary judgment on the standing issue, ALF devoted only two pages (citing three cases) out of a 36 page brief to the bylaw issue. (A93-A135). The Court of Chancery found it unnecessary to reach the bylaw claim in light of its finding that Lorillard had standing to enforce the MSA. *Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 337 (Del. Ch. 2003). Thereafter, the bylaw issue was not mentioned again in the trial court proceedings. After Lorillard appealed from the final judgment on the merits of its claim that ALF violated the MSA, ALF cross-appealed the Court of Chancery's finding that Lorillard had standing to enforce the

17

MSA. Once again, ALF devoted scant attention to the bylaw claim in its brief before the Supreme Court -- it devoted less than two pages of a 79 page brief to that issue. (A442-A539) The Supreme Court only briefly mentioned the argument, stating that it existed and, in two sentences, summarizing ALF's argument. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 744 (Del. 2006). Like the Court of Chancery, it never reached the issue.

The invocation of ALF's bylaws does not alter the contractual nature of Lorillard's claim. In fact, Lorillard alleged that ALF's bylaws "were intended to confer direct contractual rights upon Lorillard and/or because ... Lorillard is an intended third-party beneficiary of such provisions." (A85, ¶ 74). ALF underscored the contractual nature of this claim in its reply brief on the standing issue in the Court of Chancery where it characterized this claim as an "argument that the Foundation's bylaws are somehow a contract between Lorillard and the Foundation." (A177).

Not only do the allegations and the briefs confirm that the bylaw claim was contractual, so does the law in Delaware. In this state, like most others, "[c]orporate charters and by-laws are contracts among the shareholders of a corporation." *Centaur Partners IV v. Nat'l Intergroup, Inc.*, 582 A.2d 923, 928 (Del. 1990); *see also Salaman v. Nat'l Media Corp.*, 1992 Del. Super. LEXIS 564, at *17 (Del. Super. Oct. 8, 1992) ("Generally corporate documents such as bylaws have the force of a contract between the corporation and the directors."); *Perlegos v. Atmel Corp.*, 2007 Del. Ch. LEXIS 25, at *105 ((Del. Ch. Feb. 8, 2007) (because bylaws are a contract they are interpreted in accordance with the rules governing interpretation of contracts). ALF does not dispute this proposition, for in its brief before the Delaware Supreme Court it told that court that "[i]n the case of private, for-profit entities bylaws are sometimes understood as contracts between a corporation and its members ...." (A536).

There is thus no question that bylaws are a contract. Therefore, the dispute in the underlying case whether Lorillard had standing to enforce those bylaws necessarily arose from and was based upon a contract.

Fourth Claim: **"Claim for Declaratory Judgment Regarding MSA."**

The title to this claim speaks for itself. Suffice it to say that the core of this claim is Lorillard's allegation that ALF is ineligible "to administer and operate the NPEF under . . . the MSA" and is "not eligible to receive disbursements under . . . the MSA." (A87, ¶ 80).

### (b) The Briefs In The State Court Action Confirm That The Action Was A Contractual Dispute.

The briefs of the parties in the underlying action also make it abundantly clear that the dispute was contractual. For example:

o   Lorillard's Preliminary Statement in its answering brief on the standing issue characterized the action this way:

> The issue before this Court is whether Plaintiff American Legacy Foundation ('ALF') may be held accountable for conduct that violates the Master Settlement Agreement ('MSA').

(A208).

o   In its opening brief in support of its motion for summary judgment on the merits, ALF's only two arguments were titled as follows:

- "The Advertisements At Issue Do Not Violate § VI(h) Of The MSA".

- "Advertisements Funded From The Base Fund Cannot Violate Either The Three-Criteria Clause Or The Vilification/Personal Attack Clause Of The MSA § VI(h)".

(A275-A276).

o   In the Supreme Court, Lorillard characterized the appeal as a "controversy [which] arises as a consequence of a series of television and radio broadcasts ... that Lorillard contends violates the restrictions found in an agreement known as the Master Settlement Agreement." (A388).

o   The very first words in ALF's first Supreme Court brief are "This case concerns a provision of the landmark Master Settlement Agreement ..." (A459).

### (c)    The Delaware Courts Understood The Underlying Matter To Be A Contract Claim.

The Delaware courts understood ALF's and Lorillard's claims to be contractual in nature. For example:

- In connection with a discovery dispute, the Court of Chancery characterized the claims in the suit this way:

    > Lorillard contends that ***ALF has violated the terms of the MSA*** by producing ads that vilify and personally attack tobacco companies and their employees. ALF argues that ***it has not violated the terms of the MSA*** and seeks declaratory relief to that effect.

    *Am. Legacy Found. v. Lorillard Tobacco Co.*, 2004 Del. Ch. LEXIS 157 (Del. Ch. Nov. 3, 2004) (emphasis added).

- In its opinion on the merits, the Court of Chancery opined that ALF and Lorillard "both agree that the matter presented ***is a straight-forward contractual issue*** that turns on the legal interpretation of the words of the settlement agreement." *Am. Legacy Found. v. Lorillard Tobacco Co.*, 886 A.2d 1, 4 (Del. Ch. 2005) (emphasis added).

- The Delaware Supreme Court described the litigation this way:

    > Defendant-Appellant Lorillard Tobacco Company appeals the declaratory judgment of the Court of Chancery in favor of the

American Legacy Foundation ("ALF") *arising from a contract dispute* under a Master Settlement Agreement ("MSA") between the nation's largest tobacco companies and forty-six states' attorneys general.

*Lorillard Tobacco Co.*, 903 A.2d at 731 (emphasis added).

**B.    Lorillard's Trespass To Chattels Claim Is Excluded From Coverage By The Property Damage Exclusion In The D&O Policy.**

The only underlying claim not encompassed by the contract exclusion is Lorillard's trespass to chattels claim, which was dismissed by the Court of Chancery for failure to prosecute. Lorillard asserted that its employees lost the use of their computers and e-mail system because of an outside e-mail campaign orchestrated by ALF. There is no coverage for this claim under the D&O policy because that policy excludes coverage for claims for property damage and the loss of use of tangible property.

### 1.    The Nature And History Of Lorillard's Trespass To Chattels Claim.

ALF ran a campaign variously known as "mad libs," "pissed off libs," "talk to them," and "talk to big tobacco." The campaign involved the use of ALF's website, which contained a template for e-mail messages to be sent to tobacco executives. There were blanks in the template which were to be filled in by visitors to ALF's website and then forwarded to tobacco executives. The Court of Chancery found that these e-mails were often filled "in the foulest language possible." *Am. Legacy Found.*, 886 A.2d at 44. Lorillard argued, and the Court of Chancery found, that the so-called mad lib campaign violated the MSA. *Id.* Nonetheless, the Delaware court declined to award any relief to Lorillard for this violation of the MSA "because the violation was *de minimis*." *Id.*

In addition to its claim that the mad lib campaign violated the MSA, Lorillard also alleged a trespass to chattels claim relating to this campaign. It claimed that the e-mails

"interfered with Lorillard's email system and computer network, and they disrupted Lorillard's employees and such employees' use of their computers." (A88-A89, ¶ 84). As a result, Lorillard alleged, it was forced to install a filter to block the e-mails. (*Id.*) The Court of Chancery found that "Lorillard expended less than $1,000 to block the emails." *Am. Legacy Found.*, 886 A.2d at 44. Perhaps not surprisingly therefore, the trespass to chattels claim was never actively litigated. Even though there were several motions filed in the Court of Chancery, there was never any briefing on this claim. The Court of Chancery dismissed Lorillard's trespass to chattels claim for failure to prosecute, and no appeal was taken from that dismissal. *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 743 (Del. 2006).

### 2. The National Union D&O Policy Excludes Coverage For The Trespass To Chattels Claim.

The D&O policy excludes coverage for any claim for "damage to or destruction of any tangible property, including the loss thereof." (A10, ¶ 4(h)). There can be no dispute that Lorillard alleged that it lost the use of its computers, which falls within the phrase "including loss thereof." Therefore the only remaining question, which needs only brief discussion, is whether this is tangible property.

It goes without saying that a computer is tangible property. *MAI Basic Four, Inc. v. Generic Business Solutions, Inc.*, 1990 Del. Ch. LEXIS 2 (Del. Ch. Jan. 16, 1990) (computer and disks containing programs are tangible property). Not surprisingly, the loss of the use of a computer has been found to fall within the definition of damage to tangible property. For example, in *America Online, Inc. v. St. Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 469 (E.D. Va. 2002), *aff'd*, 347 F.3d 89 (4th Cir. 2003) the court held that the CGL policy at issue did not cover damage to computer data, software and systems because such items are not tangible property, but that allegations that an insured's software caused consumers' computers to "freeze"

or "crash," thereby preventing consumers from accessing and using their computers, alleged a "loss of use" of the computer itself. "Because a computer clearly is tangible property," the court wrote "an alleged loss of use of computers constitutes property damage within the meaning of [the Policy]." *Id.* at 470. Here, there were no claims that Lorillard lost data or software; rather the claim expressly alleges that ALF's actions in sending or facilitating the sending of harassing e-mails "disrupted Lorillard's employees and such employees' *use of their computers*." (A88-A89, ¶ 84) (emphasis added). Consequently, this claim falls within the property exclusion found in the D&O policy.

23

## **CONCLUSION**

For the foregoing reasons, Count III of the Complaint must be dismissed.


John A. Parkins, Jr. (#859)
Chad M. Shandler (#3796)
Todd A. Coomes (#4694)
Richards, Layton & Finger
One Rodney Square
P. O. Box 551
Wilmington, Delaware  19899
302-651-7700
Parkins@rlf.com
Chandler@rlf.com
Coomes@rlf.com
Attorneys for Defendant National Union Fire
Insurance Company of Pittsburgh,
Pennsylvania

Dated: November 30, 2007

24

RLF1-3197837-3

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2007, I hand delivered the foregoing document to the following persons and electronically filed the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

Laura Davis Jones
Timothy P. Cairns
Pachulski, Stang, Ziehl, & Jones, LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

Neal J. Levitsky
Fox Rothschild, LLP
919 North Market Street, Suite 1300
P.O. Box 2323
Wilmington, DE  19899-2323

I hereby certify that on November 30, 2007, I have sent by electronic mail and on December 3, 2007 by Federal Express the foregoing document to the following non-registered participants:

Richard Shore
Kami E. Quinn
Gilbert Randolph, LLP
1100 New York Avenue, NW
Suite 700
Washington, DC  20005

Lee H. Ogburn
Kramon & Graham, P.A.
One South Street
Suite 2600
Baltimore, MD  21202-3201

Todd A. Coomes (#4694)
coomes@rlf.com