IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| The American Legacy Foundation,<br><br>      Plaintiff,<br><br>  v.<br><br>National Union Fire Insurance Company of<br>Pittsburgh, Pennsylvania,<br><br><br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-248 (SLR) .<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

GILBERT RANDOLPH LLP
Richard Shore
Kami E. Quinn
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone: (202) 772-2200

and

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for Plaintiff
American Legacy Foundation

Date: March 12, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 3

    A.    The Underlying Litigation With Lorillard And The Foundation's
           Requests For Coverage ................................................................... 3

    B.    Lorillard's Allegations .................................................................... 4

    C.    The Insurance Policies Purchased By The Foundation............................ 5

          1.    The National Union CGL Policies ............................................. 5

          2.    The National Union D&O Policy ............................................... 7

ARGUMENT ................................................................................................... 7

    A.    Summary Of Argument.................................................................... 7

    B.    Choice Of Law ............................................................................. 8

    C.    Applicable Legal Standards .............................................................. 9

          1.    Summary Judgment Standard .................................................... 9

          2.    Standards Applicable To National Union's Duty To Defend
              Or Pay Defense Costs. ............................................................ 10

                a.    Basic Principles Of Insurance Policy Construction ....... 10

                b.    An Insurer Must Defend Or Pay Defense Costs If
                    The Allegations In The Underlying Complaint Are
                    Potentially Within The Coverage At Issue ................... 10

    D.    National Union Is Obligated Under The National Union CGL
           Policies To Pay The Defense Costs Incurred By The Foundation In
           The Lorillard Litigation ................................................................. 12

          1.    Lorillard Alleged An "Occurrence" During The Policy
              Period............ .................................................................... 12

2.    Lorillard Alleged "Personal Injury" Arising From The truth® Broadcast Spots ..............................................................13

3.    The Injuries Alleged By Lorillard Are Not "Advertising Injury"..................................................................................15

4.    Lorillard's Allegations Do Not Fall Within The Coverage Of The Underlying Travelers Policies ......................................17

E.    National Union Is Obligated Under The National Union D&O Policy To Pay The Defense Costs Incurred By The Foundation In The Lorillard Litigation ..............................................................17

1.    Lorillard First Made A "Claim" Against The Foundation "During The Policy Period"...................................................17

2.    The "Claim" Alleged A "Wrongful Act" By The Foundation ..............................................................................18

3.    National Union's Duty To Advance Defense Costs Under Its D&O Policy Is As Broad As Its Duty to Defend (And Pay) Under Its CGL Policies..................................................18

CONCLUSION.............................................................................................20

## TABLE OF AUTHORITIES

### CASES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................ 9

*Brown v. Am. Int'l Group, Inc.*,
   339 F. Supp. 2d 336 (D. Mass. 2004) ............................................................................ 19

*Dover Downs, Inc. v. TIG Ins. Co.*,
   2004 WL 1812703 (D. Del. Aug. 11, 2004) ............................................................ 11, 12

*Hurley v. Columbia Cas. Co.*,
   976 F. Supp. 268 (D. Del. 1997)............................................................................... 10, 19

*In re Am. Metrocomm Corp.*,
   274 B.R. 641 (Bankr. D. Del. 2002) ............................................................................... 8

*In re WorldCom*,
   354 F. Supp. 2d 455 (S.D.N.Y. 2005)........................................................................... 19

*Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc.*,
   136 F.3d 830 (D.C. Cir. 1998) ...................................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).......................................................................................................... 9

*Nebraska v. Wyoming*,
   507 U.S. 584 (1993).......................................................................................................... 9

*New Castle County, Delaware v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   243 F.3d 744 (3d Cir. 2001)................................................................................... passim

*Sherman v. Ambassador Ins. Co.*,
   670 F.2d 251 (D.C. Cir. 1981) ................................................................................. 10, 11

*Williams v. Stone*,
   109 F.3d 890 (3d Cir. 1997)............................................................................................. 9

**State Cases**

*Am. Chem. Soc'y v. Leadscope, Inc.*,
   2005 WL 1220746 (Ohio Ct. App. May 24, 2005) .................................................................. 19

*Am. Continental v. Pooya*,
   666 A.2d 1193 (D.C. 1995) ............................................................................................ passim

*Am. Ins. Group v. Risk Enter. Mgmt., Ltd.*,
   761 A.2d 826 (Del. 2000) ...................................................................................................... 10

*Am. Legacy Found. v. Lorillard Tobacco Co.*,
   886 A.2d 1 (Del. Ch. 2005) .................................................................................................... 4

*Continental Cas. Co. v. Alexis I. duPont School Dist.*,
   317 A.2d 101 (Del. 1974) ...................................................................................................... 11

*Davis v. West Center City Neighborhood Planning Advisory Comm., Inc.*,
   2003 WL 908885 (Del. Super. Ct. Mar. 7, 2003),
   *aff'd*, 836 A.2d 513 (Del. Super. Ct. 2003) ............................................................................ 14

*Doe v. Cahill*,
   884 A.2d 451 (Del. 2005) ...................................................................................................... 14

*Emmons v. Hartford Underwriters Ins. Co.*,
   697 A.2d 742 (Del. 1997) ...................................................................................................... 10

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   1994 WL 721651 (Del. Super. Ct. Mar. 28, 1994) .................................................................. 9

*Johnston v. Tally Ho, Inc.*,
   303 A.2d 677 (Del. Super. Ct. 1973) ............................................................................... 13, 14

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
   903 A.2d 728 (Del. 2006) ................................................................................................. 4, 15

*Meade v. Prudential Ins. Co. of Am.*,
   477 A.2d 726 (D.C. 1984) ..................................................................................................... 10

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc*,
   1992 WL 22690 (Del. Super. Ct. Jan. 16, 1992), *aff'd sub nom. Rhone-Poulenc Basic Chems.*
   *Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192 (Del. 1992) ...................................................... 12

*Steigler v. Ins. Co. of N. Am.*,
   384 A.2d 398 (Del. 1978) ................................................................................................ 10, 13

*Stevens v. United Gen. Title Ins. Co.*,
  801 A.2d 61 (D.C. 2002) ............................................................................................ 11, 13, 16

*Travelers Indem. Co. of Illinois v. United Food Commercial Works Int'l Union*,
  770 A.2d 978 (D.C. 2001) ................................................................................................ passim

*Twin City Fire Ins. Co. v. Del. Racing Ass'n*,
  840 A.2d 624 (Del. 2003) ................................................................................................ 10, 12

## **Statutes**

Fed. R. Civ. P. 56(e) ............................................................................................................ 9

## NATURE AND STAGE OF PROCEEDINGS

In this action, the American Legacy Foundation (the "Foundation"), a charitable organization whose mission is "building a world where young people reject tobacco and anyone can quit," seeks to recover the nearly $17 million in legal fees and costs the Foundation incurred defending itself in litigation with Lorillard Tobacco Company ("Lorillard"). Lorillard's attacks focused on broadcast spots that were a part of the Foundation's award-winning anti-youth-smoking education campaign known as truth®. Using various television and radio broadcasts, among other things, truth® discourages youth from smoking by providing straightforward information about the health effects, addictiveness, and social costs related to tobacco products and the marketing practices associated with those products. The broadcast spots are blunt, hard-edged, fast-paced, and sometimes humorous, designed to capture and hold the attention of the target teen audience.

The Foundation purchased two types of insurance policies from National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") to protect itself from potential liability to third parties and related litigation expenses.[1] One type, comprehensive general liability ("CGL") insurance, covers the Foundation for alleged offenses by it during the policy period that result in "Personal Injury" as defined in the National Union policies. The other type, directors' and officers' ("D&O") insurance, covers the Foundation for "Claims" made against it during the policy period as a result of alleged "Wrongful Acts" by the Foundation. Here, both the CGL and the D&O policies issued by National Union provide coverage to the Foundation for the defense costs incurred in the Lorillard litigation. The alleged offenses – the

---

[1] The Foundation also purchased insurance coverage from the Travelers Indemnity Company of America ("Travelers"). While Travelers was originally named as a defendant in this action, the Foundation has since dismissed Travelers with prejudice from the litigation.

DOCPROPERTY "DocID" \* MERGEFORMAT |003691-001\DOCS_DE:135960.1

broadcast spots – occurred during the CGL policy periods, the resulting claims were made during the D&O policy period, and all of the other requirements for coverage under the policies were satisfied. Nonetheless, when the Foundation notified National Union of Lorillard's claims – claims that cut at the very heart of the Foundation's educational mission – National Union denied coverage under both the CGL and the D&O policies, leaving the Foundation to fend for itself. The Foundation went on to defend itself successfully against Lorillard's claims in the Delaware Chancery and Supreme Courts. National Union, however, persists in its refusal to pay the nearly $17 million in legal fees and costs the Foundation incurred to defend itself against Lorillard's massive litigation effort.

As discussed below, under the "eight corners" rule applicable here, an insurer is obligated to defend its policyholder (and pay the legal fees and costs of defense) in any action in which the allegations in the underlying complaint are arguably or potentially within the coverage of the insurer's policies. Set forth in the next section of this Memorandum are the undisputed material facts relevant to National Union's duty to defend and pay defense costs under this framework. Based on those facts and for the foregoing reasons, as set forth more fully below, the Foundation respectfully requests that this Court grant summary judgment that it is entitled to recover from National Union the full amount of the legal fees and costs it incurred in the Lorillard litigation.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

A.     **The Underlying Litigation With Lorillard And The Foundation's Requests For Coverage**

In November 2001, Lorillard threatened to sue the Foundation for defamation based on a truth® radio broadcast spot known as "Dog Walker." National Union Brief, D.I. 17 at 4; Affidavit of Ellen Vargyas, A1 ¶ 3 (letter threatening legal action attached as Exhibit A to Vargyas Aff., A5-A7). In Dog Walker, a telephone caller identifies himself to a tobacco company receptionist as a professional dog walker and offers to collect urine produced by the dogs he walks and sell it to the tobacco company because "dog pee is full of urea, one of the chemicals that [tobacco companies] put in cigarettes." National Union Brief, D.I. 17 at 3-4 (quotation and alteration as set forth in National Union Brief). In January 2002, Lorillard sent a further letter (attached as Exhibit B to Vargyas Aff., A8-A9) providing notice of its intent to file suit against the Foundation in 30 days to enforce alleged prohibitions against vilification and personal attack allegedly violated by truth® broadcast spots. A1 ¶ 5.

On February 13, 2002, seeking to avoid the possibility of a nationwide litigation blitz and to avail itself of a Delaware forum, the Foundation filed a declaratory judgment action (attached as Exhibit C to Vargyas Aff., A10-A32) in the Delaware Chancery Court, captioned *American Legacy Foundation v. Lorillard Tobacco Co.*, C.A. No. 19406-NC, Del. Ch. (Feb. 13, 2002) (the "Delaware Action"). A2 ¶ 6. The Foundation sought a declaration that Lorillard had no standing or basis to assert the claims against the Foundation threatened in the January 2002 letter and that, in the alternative, Lorillard's claims that the Foundation had vilified or attacked it were without merit. National Union Brief, D.I. 17 at 4; A28 ¶ 58 and A29 ¶ 65. Several days later, Lorillard filed its threatened suit against the Foundation in North Carolina, in the Wake County Superior Court, captioned *Lorillard Tobacco Company v. American Legacy Foundation*, No. 02 CvS

3

02170 (Feb. 19, 2002) (the "North Carolina Action," attached as Exhibit D to Vargyas Aff., A33-A46). National Union Brief, D.I. 17 at 4. The North Carolina Action was later stayed to allow the Delaware Action to proceed. *Id.* Lorillard also asserted various counterclaims in the Delaware Action, seeking damages and other relief (the "Counterclaims," attached as Exhibit E to Vargyas Aff., A47-A89). A2 ¶ 8.

The Foundation provided prompt notice to National Union of the November 13, 2001 letter from Lorillard, the January 18, 2002 letter from Lorillard, the Delaware Action, the North Carolina Action, and the Counterclaims asserted by Lorillard. *Id.*, A2-A3 ¶ 10. National Union flatly denied its obligation to defend the Foundation under the National Union CGL Policies or to advance defense costs under the National Union D&O Policy, leaving the Foundation to fend for itself. *Id.*, A3 ¶ 11. The Foundation successfully defended itself against Lorillard's claims in both the Delaware Chancery Court and the Delaware Supreme Court, *id.*, A3 ¶ 12, and in doing so incurred approximately $17 million dollars in legal fees and costs. *Id.*, A4 ¶ 17; *see Am. Legacy Found. v. Lorillard Tobacco Co.*, 886 A.2d 1, 45-46 (Del. Ch. 2005) (attached as Exhibit H to Vargyas Aff., A115-A161); *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 745 (Del. 2006) (attached as Exhibit I to Vargyas Aff., A162-A180).

## B.    Lorillard's Allegations

In its claims against the Foundation, Lorillard alleged, among other things, that, in "broadcasts reaching millions of members of the public," the Foundation had accused tobacco companies of "lying to the public," engaging in the "destruction of evidence" and "add[ing] dog

4

urine to [their] cigarettes." A70-A71 ¶ 31.[2]  Lorillard accused the Foundation's President and

CEO of "making malicious statements about Lorillard to the public." *Id.*, A73 ¶ 40.  Lorillard

also asserted that the Foundation had created and facilitated through its website "vitriolic,

hateful, and vulgar personal attacks upon Lorillard's employees," *id.*, A64 ¶ 8, and had

"personally attacked and vilified Lorillard, its employees, and tobacco companies. . . ." *Id.*,

A70 ¶ 31.  Additionally, Lorillard asserted that the Foundation's personal attacks on Lorillard's

employees "evidence the malice that [the Foundation] bears toward Lorillard." *Id.,* A63-A64

¶ 5.  Lorillard also alleged that the Foundation "has publish[ed] or broadcast a number of

advertisements that . . . included personal attacks on . . . , and the vilification of Lorillard, its

employees, and tobacco companies collectively," *id.,* A63 ¶ 4, and that one of the Foundation's

representatives issued false statements at a press conference about Lorillard's efforts "to crush

the truth campaign." *Id.,* A64 ¶ 7 (internal quotations omitted).  Lorillard went on to allege that

these acts violated the Master Settlement Agreement, a 1998 agreement among 46 U.S. States

and territories and certain tobacco companies, including Lorillard, pursuant to which the

Foundation was later established, as well as the Foundation's bylaws and articles of

incorporation. *Id.,* A73 ¶ 41.[3]

### C.    The Insurance Policies Purchased By The Foundation

#### 1.    The National Union CGL Policies.

The Foundation purchased umbrella CGL policies from National Union for consecutive

---

[2] Lorillard's allegations in both the North Carolina Action, which was stayed to allow the Delaware Action to proceed, and its Amended Counterclaims filed in the Delaware Action on January 1, 2005 (attached as Exhibit J to Vargyas Aff., A181-A229), are in material respects essentially the same as the Counterclaims in the Delaware Action. *E.g.,* A37-A38 ¶ 23 ("in broadcasts and other advertisements reaching millions of members of the public, [the Foundation] has personally attacked and vilified Lorillard, its employees, and tobacco companies collectively"); A209 ¶ 35 (same).

[3] The North Carolina Complaint does not allege a breach of the Foundation's Certificate of Incorporation or Bylaws. *See* A33-A46.

annual policy periods from April 24, 2001 through April 24, 2003 (the "National Union CGL

Policies," attached as Exhibit K to Vargyas Affidavit). *See* A230-A283 and A284-A397. The

National Union CGL Policies require National Union "to defend any Suit against [the

Foundation] that seeks damages covered by" the policies, A255, Section III ¶ A, and to pay all

"[e]xpenses incurred to defend any Suit or to investigate any claim . . . in addition to the

applicable Limits of Insurance of this policy." *Id.*, A256, Section IV ¶ G. The National Union

CGL Policies cover:

> Personal Injury . . . not covered by Scheduled Underlying Insurance,
> provided that: . . . the Personal Injury . . . is caused by an Occurrence
> happening anywhere, and the Occurrence takes place during the Policy
> Period.

*Id.,* A254, Section II ¶ A.[4]

The National Union CGL Policies define an "Occurrence" as "an offense arising out of

[the insured's] business that causes Personal Injury or Advertising Injury." *Id.,* A259, Section V

¶ O(2). The policies define "Personal Injury" as injury, other than Advertising Injury, which is

caused by, among other things, "oral, written or electronic publication of material that slanders

or libels a person or organization, or disparages a person's or organization's goods, products or

services." *Id.,* A260 ¶ Q(4). The policies define "Advertising Injury" as "injury . . . arising

solely out of [the Foundation's] Advertisement . . . ." *Id.,* A257 ¶ B. "Advertisement" is defined

as "a paid broadcast, publication or telecast to the general public or specific market segments

about [the insured's] goods, products or services for the purpose of attracting customers or

---

[4] As an umbrella policy, the National Union CGL Policies cover "Personal Injury [that] would not be covered by
Scheduled Underlying Insurance," A255, Section III ¶ A(2) – that is, they are broader than the underlying insurance.
Here, the Scheduled Underlying Insurance consists of primary CGL policies issued by Travelers (attached as Exhibit
M to Vargyas Aff., A445-A746) (the "Travelers Policies"). The Travelers Policies, however, explicitly exclude
personal injury arising out of "advertising, publishing, broadcasting or telecasting done by or for [the insured]."
A496, Section I, Coverage B ¶ 1(b)(1).

supporters." *Id.* ¶ A.

> ### 2.    The National Union D&O Policy.

In addition to the CGL policies, the Foundation also purchased a D&O liability policy

from National Union, which covers the period from August 26, 2001 through August 26, 2002

(the "National Union D&O Policy," attached as Exhibit L to Vargyas Aff. A398-A444). A398,

Item 3. The National Union D&O Policy provides that National Union "shall pay on behalf of

the [Foundation] Loss arising from a Claim first made against [the Foundation] during the Policy

Period . . . for any actual or alleged Wrongful Act of the [Foundation]." *Id.,* A678 ¶ 1,

Coverage C. The National Union D&O policy also provides that National Union "shall advance

Defense Costs . . . of such Claim prior to its final disposition," subject to the $15 million limit of

the policy. *Id.,* A401 ¶ 1, Defense Provisions. The National Union D&O Policy defines "Claim"

as "(1) a written demand for monetary relief; or (2) a civil . . . proceeding for monetary or non-

monetary relief . . . ." *Id.,* A402 ¶ 2(b). "Wrongful Act" is defined to include "any breach of

duty . . . error . . . omission or act by or on behalf of the [Foundation]; . . . [and] shall specifically

include: . . . libel, slander, [or] defamation . . . ." *Id.,* A405-A406 ¶ 2(u)(2) and (u)(4)(d).

## ARGUMENT

### A.    Summary Of Argument

Under the "eight corners" rule applicable here, an insurer must defend its policyholder

(and pay the legal fees and costs of defense) in any action in which the allegations in the

underlying complaint are arguably or potentially within the coverage of the insurer's policies.

The policies must be read to accord with the policyholder's reasonable expectations of coverage,

and any ambiguities or doubts must be resolved against the insurer. An insurer is excused from

its duty to defend (and pay defense costs) only if it can be determined as a matter of law that

7

there is no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured.

The National Union CGL Policies provide coverage where the underlying litigation includes allegations of Personal Injury, not covered by the underlying policies, caused by an Occurrence. Here, Lorillard alleged Personal Injury caused by an Occurrence during the policy period because Lorillard alleged that, in public broadcasts during the policy periods, the Foundation attacked and vilified Lorillard and otherwise defamed its reputation and disparaged its products. Moreover, Lorillard's claims are not covered by the underlying policies issued by Travelers.

The National Union D&O Policy provides coverage where there is a Claim first made during the policy period arising from an alleged Wrongful Act. Here, the Claim at issue was first made during the relevant policy period, and it arose from alleged Wrongful Acts by the Foundation, namely, the truth broadcast spots at issue.

Accordingly, National Union is obligated as a matter of law to pay the defense costs incurred by the Foundation because Lorillard's allegations are within the coverage of the National Union CGL Policies and the National Union D&O Policies (collectively, the "National Union Policies"). Therefore, the Court should grant summary judgment to the Foundation.

### B.    Choice Of Law

The legal principles governing the interpretation of insurance policies and the duty of insurers to defend their policyholders, including the standards set forth below, do not conflict in Delaware and the District of Columbia ("D.C."). Consequently, the Court need not determine whether Delaware or D.C. law applies to decide this Motion. *See In re Am. Metrocomm Corp.*, 274 B.R. 641, 659 (Bankr. D. Del. 2002) ("[t]he first step in a choice-of-law analysis is to

8

determine whether a true conflict exists between applicable state laws"); *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997) (where there is no conflict, this Court should not engage in "an extensive and complex analysis of the thorny choice-of-law questions"). Accordingly, in the interests of judicial economy, the Foundation will not brief the choice of law issue here. We note, however, that, the Foundation's principal place of business is in Washington, D.C., and the insured's principal place of business has been held to be a significant contact by Delaware courts in determining the applicable law in an insurance dispute where the activities complained of in the underlying lawsuit do not center in a particular jurisdiction. *See Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 89C-SE-35, 1994 WL 721651, at *5 (Del. Super. Ct. Mar. 28, 1994). If this Court finds that Delaware and D.C. law do conflict in any relevant respect, the Foundation respectfully requests the opportunity to address the issue at that time.

### C.    Applicable Legal Standards

#### 1.    Summary Judgment Standard.

On a motion for summary judgment, the movant bears the initial burden of proving that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Once the movant has done so, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). Where there are no such facts in dispute, and the issue is purely legal, the movant is entitled to summary judgment. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Resolution of the duty to defend or

9

pay defense costs on summary judgment is appropriate because this duty rests on the

interpretation of a contract. *See Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624,

626-27 (Del. 2003); *Travelers Indem. Co. of Illinois v. United Food Commercial Works Int'l

Union*, 770 A.2d 978, 985 (D.C. 2001).

> **2.    Standards Applicable To National Union's Duty To Defend Or Pay
>           Defense Costs.**

> **a.    Basic Principles Of Insurance Policy Construction.**

It is well settled that insurance policies should be construed in favor of coverage for the

insured. *Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 400 (Del. 1978); *Meade v. Prudential Ins.

Co. of Am.*, 477 A.2d 726, 728 (D.C. 1984). If there is ambiguity in an insurance contract, the

contract language is construed strongly against the insurer that drafted it. *E.g., Emmons v.

Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del. 1997); *United Food*, 770 A.2d at 986.

It also is well settled that "an insurance contract should be read to accord with the reasonable

expectations of the [insured]" and that the plain language of the policy controls. *Steigler*, 384

A.2d at 401; *see also United Food*, 770 A.2d at 986. The policy must be interpreted in a

commonsense manner, so that a reasonable policyholder can understand the scope and

limitations of coverage. *Emmons*, 697 A.2d at 745.

> **b.    An Insurer Must Defend Or Pay Defense Costs
>           If The Allegations In The Underlying Complaint Are
>           Potentially Within The Coverage At Issue.**

An insurer's duty to defend or advance defense costs is conceptually distinct from, and

broader than, its duty to indemnify. *Am. Ins. Group v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826,

830 (Del. 2000) ("*Risk Enterprise*"); *Sherman v. Ambassador Ins. Co.*, 670 F.2d 251, 258-59

(D.C. Cir. 1981). Courts have consistently held that the duty to advance defense costs is judged

by the same standards as the duty to defend. *See, e.g., Hurley v. Columbia Cas. Co.*, 976 F.

Supp. 268, 275 (D. Del. 1997) (applying Michigan law) ("there does not exist a significant difference between the duty to defend and the promise to advance defense costs, other than the difference between who will direct the defense").

Under Delaware and D.C. law, as under the law of most jurisdictions, insurers must defend any action in which the complaint arguably or potentially states a claim that is covered by the policy. *New Castle County, Delaware v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 243 F.3d 744, 749 (3d Cir. 2001); *Sherman*, 670 F.2d at 259 (holding that where the "allegations of a plaintiff's complaint *may* bring the claim within the coverage of defendant's policy, the insurance company must honor its duty to defend, even if ultimately relieved of any duty to indemnify") (emphasis added).

In determining whether an action arguably or potentially states a claim that is covered by the policy, Delaware and D.C. courts apply the "eight corners" rule – that is, they focus solely on the complaint and the insurance policy. *United Food*, 770 A.2d at 987; *Dover Downs, Inc. v. TIG Ins. Co.*, No. 04-199-SLR, 2004 WL 1812703, at *5 (D. Del. Aug. 11, 2004). If the allegations of the complaint (the first four corners) are arguably or potentially within the coverage of the policy (the second four corners), the insurer must pay the policyholder's defense costs. *United Food*, 770 A.2d at 986; *Continental Cas. Co. v. Alexis I. duPont School Dist.*, 317 A.2d 101, 103 (Del. 1974). The insurer's obligation to defend is not "affected by facts ascertained before suit or developed in the process of litigation or by the ultimate outcome of the suit." *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 67 (D.C. 2002); *see also United Food*, 770 A.2d at 987; *Continental Cas.*, 317 A.2d at 103 (Del. 1974); *Interstate Fire & Cas. Co. v. 1218 Wisconsin, Inc.*, 136 F.3d 830, 833 (D.C. Cir. 1998).

Courts apply the following interpretive principles to determine whether the underlying

11

allegations may state a claim that is covered under the policy:

> (a) where there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured;
>
> (b) any ambiguity in the pleadings should be resolved against the carrier;
>
> (c) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.

*Dover Downs*, 2004 WL 1812703, at *5; *see also Am. Continental v. Pooya*, 666 A.2d 1193, 1198 (D.C. 1995); *New Castle County*, 243 F.3d at 749; *Twin City*, 840 A.2d at 630; *Sherman*, 670 F.2d at 259 n.14. In sum, "[a]n insurer is excused from its duty to defend only if it can be determined as a matter of law that there is no possible factual or legal basis upon which the insurer might eventually be obligated to indemnify the insured." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chems. Co.*, No. 87C-SE-11, 1992 WL 22690, at *8 (Del. Super. Ct. Jan. 16, 1992), *aff'd sub nom. Rhone-Poulenc Basic Chems. Co. v. Am. Motorist Ins. Co.*, 616 A.2d 1192 (Del. 1992); *Sherman*, 670 F.2d at 259; *Pooya*, 666 A.2d at 1198.

### D.   National Union Is Obligated Under The National Union CGL Policies To Pay The Defense Costs Incurred By The Foundation In The Lorillard Litigation

Under the National Union CGL Policies, National Union must pay the Foundation's fees and costs in defending against Lorillard's allegations because Lorillard alleged one or more "Occurrences" during the policy periods of the National Union CGL Policies that gave rise to "Personal Injury" not covered by the underlying insurance issued by Travelers.

### 1.   Lorillard Alleged An "Occurrence" During The Policy Period.

The offenses alleged by Lorillard constitute one or more "Occurrences" that took place during the policy periods of the National Union CGL Policies. The National Union CGL Policies define an "Occurrence" as "an offense arising out of [the insured's] business . . . ."

12

A259, Section V ¶ O(2). Here, the "offenses" alleged by Lorillard are various truth® broadcasts

which Lorillard alleged attacked and vilified it by, among other things, making disparaging

statements about its products. A70-A71 ¶ 31. These offenses arose out of the Foundation's

business: encouraging young people to reject tobacco through, among other things, public

education. A1 ¶ 2. Moreover, the "Occurrence" or "Occurrences" took place "during the Policy

Period" of the National Union CGL Policies. *See* A254, Section II ¶ A(2). Lorillard specifically

challenged several television and radio broadcasts that initially were aired between April 24,

2001 and April 24, 2003, the periods of the National Union CGL Policies. A3 ¶ 17.

> **2.      Lorillard Alleged "Personal Injury" Arising From The truth®
> Broadcast Spots.**

The National Union CGL Policies define "Personal Injury" as, among other things, "oral,

written or electronic publication of material that slanders or libels a person or organization or

disparages a person's or organization's good, products or services." A260, Section V ¶ Q(4).

The definition of "Personal Injury" (like all of the policy language) must be read as a

reasonable businessperson or ordinary purchaser would understand it. *Johnston v. Tally Ho, Inc.*,

303 A.2d 677, 679 (Del. Super. Ct. 1973); *see also Stevens*, 801 A.2d at 67; *see Steigler*,

384 A.2d at 401; *United Food*, 770 A.2d at 986. Accordingly, Lorillard need not specifically

have alleged each of the legal elements of any particular tort to give rise to coverage under the

13

National Union Policies. *Johnston*, 303 A.2d at 679; *see also Stevens*, 801 A.2d at 67.[5]  Indeed,

Lorillard need not have alleged by name, or in a specific count  "libel," "slander," or

"disparagement;" for National Union to have a duty to defend, it is sufficient that Lorillard made

factual allegations that are within the categories of conduct covered by the policies.  *United*

*Food*, 770 A.2d at 987; *Pooya*, 666 A.2d at 1197.

When comparing the allegations to the coverage provided under the policy, a court

"examine[s] the complaint for *all plausible claims* encompassed within the complaint." *Id.*

(emphasis added); *see also New Castle County*, 243 F.3d at 749 ("an insurer is required to defend

any action which *potentially* states a claim which is covered under the policy") (emphasis added;

internal quotations omitted).  For example, in *United Food*, the D.C. Court of Appeals held that a

complaint filed against an insured that contained a claim for "abuse of process" adequately

alleged an action for libel that was covered under the policy.  770 A.2d at 990 ("[b]ecause

[plaintiff's] complaint alleges that [the insured] intended to damage [plaintiff's] reputation

through the knowing and unprivileged written publication of defamatory material that on its face

suggests that [plaintiff] physically and emotionally injured its employees and, in effect, stole

from them as well, it has adequately alleged a libel . . .").

---

[5] Even if proof of each element of a libel, slander, or defamation claim were required, the elements of such causes of action are contained within the allegations of Lorillard's Counterclaims.  The elements of a claim for defamation under Delaware law include: (1) a defamatory statement; (2) made concerning the plaintiff; (3) that was published; (4) that a third party would understand as defamatory.  *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005).  Defamation claims include both libel and slander.  *Davis v. West Center City Neighborhood Planning Advisory Comm., Inc.*, No. 02C-03-249JEB, 2003 WL 908885, at *2 (Del. Super. Ct. Mar. 7, 2003), *aff'd*, 836 A.2d 513 (Del. Super. Ct. 2003).  Lorillard alleges that the Foundation improperly publicly damaged the reputation of Lorillard, its executives and employees, and its product. In particular, Lorillard alleges that the Foundation made "vitriolic, hateful, and vulgar" personal attacks on Lorillard's employees.  A64 ¶ 8.  It further alleged that "in broadcasts reaching millions of members of the public," the Foundation's broadcasts, for example, "accuse tobacco companies of shredding documents, thereby implying the intentional and improper destruction of evidence" and "strongly imply that Lorillard adds dog urine to its cigarettes."  A70-A71 ¶ 31.  These allegations provide more than sufficient notice of a plausible claim under the complaint for libel, slander, or defamation.

14

Here, Lorillard's allegations plainly satisfy the definition of "Personal Injury." *The Random House Unabridged Dictionary* defines "libel" as "anything that is defamatory or that maliciously or damagingly misrepresents." *Random House Webster's Unabridged Dictionary* 1107 (Random House, Inc. ed., 2d ed. 2001). "Disparagement" is defined as "something that derogates or casts in a bad light." *Id.* at 567. Lorillard alleged, among other things, that the Foundation had improperly accused tobacco companies of "lying to the public," engaging in the "destruction of evidence" and "add[ing] dog urine to [their] cigarettes," A70-A71 ¶ 31, and that such actions "evidence the malice that [the Foundation] bears toward Lorillard." A63-A64 ¶ 5. Additionally, Lorillard accused the Foundation's President and CEO of "making malicious statements about Lorillard to the public." A73 ¶ 40.

The Delaware Supreme Court has recognized the close relationship between slander or libel, on the one hand, and "vilification" and "personal attack" on the other. *Lorillard Tobacco*, 903 A.2d at 742. In particular, that Court stated that: ". . . the meaning of 'vilification,' includes a statement that is *slanderous*, *defamatory*, or abusive that unjustly denounces its target. The core ordinary meaning of vilification is a denouncement that is both unfounded and abusive or *slanderous*." *Id.* (emphasis added). Thus, Lorillard's allegations of vilification and personal attack are tantamount to allegations of libel and slander.

Accordingly, Lorillard's allegations assert "Personal Injury" as defined in the National Union CGL Policies, and a reasonable businessperson or ordinary purchaser of insurance would understand that National Union had promised to defend against claims involving such allegations.

### 3.    The Injuries Alleged By Lorillard Are Not "Advertising Injury."

"Personal Injury," as defined in the National Union CGL Policies, excludes any injury that falls within the definition of "Advertising Injury." A260, Section V ¶ Q. Although

15

Lorillard's Counterclaims assert injury resulting from what it refers to as "advertisements" by the Foundation, *see e.g.*, A70 ¶ 31, the injuries alleged by Lorillard are not "Advertising Injury" as the term is defined in the National Union CGL Policies because the truth® spots (a) do not relate to any "goods, products or services" sold or offered by the Foundation and (b) were not aired "for the purpose of attracting customers or supporters." A257, Section V ¶ A.

The National Union CGL Policies define "Advertising Injury" as "injury . . . arising solely out of [the insured's] Advertisement." *Id.*, A257, Section V ¶ B. "Advertisement" is defined as "a paid broadcast, publication or telecast to the general public or specific market segments about [the insured's] goods, products or services for the purpose of attracting customers or supporters." *Id.*, A257, Section V ¶ A.

Lorillard does not allege that any of the challenged truth® broadcasts are about any goods, products, or services of the Foundation. The attachments to Lorillard's Counterclaims demonstrate that the truth® spots are educational and are not about any goods, products, or services sold or offered by the Foundation. *See* A3 ¶ 18 (containing transcripts for the truth® spots attached as Exhibit N to Vargyas Aff., A747-A759). The broadcasts provide information about the health and social effects of smoking and are intended to influence young people to reject smoking. In fact, the truth® campaign consists of broadcasts to the general public about *Lorillard's* products, not any products of the Foundation.

Lorillard also does not allege that the Foundation seeks to attract customers or supporters in the various truth® broadcasts. In fact, as is clear from their content, the purpose of the broadcasts was to educate and inform consumers about tobacco products, their social costs, and the associated marketing practices. *See id.* The Foundation sought to influence the behavior of teens to increase their likelihood of rejecting Lorillard's tobacco products for the teens' own

16

benefit – not to attract them to become customers or supporters of the Foundation.

### 4.    Lorillard's Allegations Do Not Fall Within The Coverage Of The Underlying Travelers Policies.

The National Union CGL Policies are required to pay defense costs when the underlying

Travelers Policies do not provide coverage for the claim.  The Travelers Policies, like the

National Union CGL Policies, provide coverage for allegations alleging "Personal Injury."  The

Travelers Policies, however, explicitly exclude personal injury arising out of "broadcasting or

telecasting done by or for [the insured]."  A496, Section I, Coverage B ¶ 1(b)(1).  The truth®

spots undeniably are "broadcasting," and therefore are excluded from the scope of the Personal

Injury coverage of the Travelers Policies.

### E.    National Union Is Obligated Under The National Union D&O Policy To Pay The Defense Costs Incurred By The Foundation In The Lorillard Litigation

The National Union D&O Policy provides that National Union shall advance Defense

Costs to the Foundation for any "Claim first made against the [Foundation] during the Policy

Period . . . for any actual or alleged Wrongful Act of the [Foundation]."  A401 ¶ 1, Coverage C.

Because Lorillard first asserted a Claim during the policy period of the National Union D&O

Policy alleging a "Wrongful Act," National Union is independently liable under that policy for

the defense costs incurred by the Foundation in the Lorillard litigation.

### 1.    Lorillard First Made A "Claim" Against The Foundation "During The Policy Period."

The National Union D&O Policy defines a "Claim" to include "(1) a written demand for

monetary relief; or (2) a civil . . . proceeding for monetary or non-monetary relief . . . .

A402 ¶ 2(b).  There is no dispute in this case that a "Claim" was made by Lorillard during the

policy period of the D&O Policy.  In a December 6, 2002 letter to the Foundation, National

Union acknowledged that Lorillard's allegations against the Foundation, first made during the

17

National Union D&O Policy period, constituted a Claim under the National Union D&O Policy. *See* A2 ¶ 15 (letter attached as Exhibit L to Vargyas Aff., A398-A444). In any event, both the Delaware Action and the North Carolina Action are civil proceedings for monetary and non-monetary relief, and therefore, constitute a Claim first made during the National Union D&O Policy period.

### 2. The "Claim" Alleged A "Wrongful Act" By The Foundation.

Lorillard alleged one or more Wrongful Acts as defined under the National Union D&O Policy. The National Union D&O Policy defines "Wrongful Act" as including "*any* breach of duty . . . error . . . omission or act by or on behalf of the [Foundation]; . . . [and] shall specifically include: . . . libel, slander, [or] defamation." A405-A406 ¶ 2(u)(2) and (u)(4)(d) (emphasis added). Lorillard clearly alleged "act[s] by or on behalf of the Foundation," including the airing of the various challenged truth® spots. Lorillard also alleged that the Foundation breached the MSA, its bylaws, and the Certificate of Incorporation. Moreover, Lorillard alleged that, by airing the truth® spots, the Foundation engaged in improper "personal attacks" on, and "vilification" of, Lorillard. As discussed in greater detail above, these allegations include plausible claims of defamation, slander, and libel.[6]

### 3. National Union's Duty To Advance Defense Costs Under Its D&O Policy Is As Broad As Its Duty To Defend (And Pay) Under Its CGL Policies.

National Union's obligation to advance defense costs to the Foundation under the National Union D&O Policy is as broad as its duty to defend (and pay the costs of defending) the Foundation under its CGL Policies. The National Union D&O Policy provides that "[National Union] shall advance Defense Costs of [a potentially covered claim] prior to its final

---

[6] *See* Argument, *supra*, D.2.

disposition," subject to the $15 million limit of the policy.  A401 ¶ 1, Defense Provisions.

Courts consistently have found that an insurer's duty to advance defense costs holds the insurer to the same standard as the duty to defend.  *See, e.g., Hurley*, 976 F. Supp. at 275 ("there does not exist a significant difference between the duty to defend and the promise to advance defense costs, other than the difference between who will direct the defense"); *Am. Chem. Soc'y v. Leadscope, Inc.*, 2005 WL 1220746, at *4 (Ohio Ct. App. May 24, 2005) (holding that there is no distinction between "advance defense costs" policies and "duty to defend" policies with respect to the application of the basic principles of the duty to defend); *In re WorldCom*, 354 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (applying the same general principles where insurer's duty was to advance legal costs as the court would apply to a duty to defend provision); *Brown v. Am. Int'l Group, Inc.*, 339 F. Supp. 2d 336, 346 (D. Mass. 2004) (interpreting policy with duty to advance defense costs and applying the same principles as applied to duty to defend cases).

## CONCLUSION

For the foregoing reasons, the Foundation respectfully requests that the Court grant the

Foundation's motion and enter summary judgment in favor of the Foundation on its claims

against National Union and order National Union to pay in full the fees and expenses incurred by

the Foundation in defending against Lorillard's allegations.


Date:  March 12, 2008                          PACHULSKI, STANG, ZIEHL & JONES LLP


                                               Laura Davis Jones (Bar No. 2436)
                                               Timothy P. Cairns (Bar No. 4228)
                                               919 North Market Street, 17th Floor
                                               Wilmington, DE 19899-8705
                                               Telephone:  (302) 652-4100
                                               Facsimile:  (302) 652-4400

                                               and

                                               GILBERT RANDOLPH LLP
                                               Richard D. Shore
                                               Kami E. Quinn
                                               1100 New York Avenue, NW
                                               Washington, DC 20005
                                               Telephone:  (202) 772-2200

                                               Attorneys for Plaintiff
                                               American Legacy Foundation


20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE AMERICAN LEGACY FOUNDATION | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO: 07-248 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY | ) | |
| OF PITTSBURGH, PENNSYLVANIA, et. al. | ) | |
| | ) | |
| Defendants | ) | |

## AFFIDAVIT OF SERVICE

Louise L. Tuschak, being duly sworn according to law, deposes and says that she

is employed by the law firm of Pachulski Stang Ziehl & Jones LLP, and that on the _12ᵗ_ day of

March, 2008 she caused a copy of the following document to be served upon the attached service

list in the manner indicated:

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

_Louise L. Tuschak_
Louise L. Tuschak

Sworn to and subscribed before
me this _12ᵗʰ_ day March, 2008

_Mary E. Corcoran_
Notary Public
My Commission Expires: _11/4/09_

MARY E. CORCORAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 4, 2009

American Legacy Foundation
Service List
Document No. 130442
02 – Hand Delivery
01 –First Class

**Hand Delivery**
Richards Layton & Finger, P.A.
John A. Parkins, Jr.
Chad M. Shandler
Todd A. Coomes
One Rodney Square, P.O. Box 551
Wilmington, DE  19899

**Hand Delivery**
Fox Rothschild, LLP
Neal J. Levitsky, Esquire
919 N. Market Street, Suite 1300
Wilmington, DE  198014

**First Class Mail**
Kramon & Graham, P.A.
Lee H. Ogburn, Esquire
One South Street, Suite 2600
Baltimore, MD  21202-3201