IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| The American Legacy Foundation, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| National Union Fire Insurance Company of | ) |
| Pittsburgh, Pennsylvania, | ) Civil Action No. 07-248 (SLR) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**APPENDIX TO THE FOUNDATION'S BRIEF
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**VOLUME II OF III**

GILBERT RANDOLPH LLP
Richard Shore
Kami E. Quinn
1100 New York Avenue, NW
Suite 700
Washington, DC 20005
Telephone: (202) 772-2200

and

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel for Plaintiff
American Legacy Foundation

Date: March 12, 2008

# **EXHIBIT K**

**AIG** AMERICAN INTERNATIONAL COMPANIES
UMBRELLA ELITE[SM]
COMMERCIAL UMBRELLA LIABILITY POLICY

# DECLARATIONS

☐ American International South Insurance Company
☐ Illinois National Insurance Company

☐ American Home Assurance Company
☒ National Union Fire Insurance Company of Pittsburgh, PA
☐ National Union Fire Insurance Company of Louisiana

(each of the above being a capital stock company)
Executive Offices: 70 Pine Street, New York, NY 10270

POLICY NUMBER: BE  7402566

RENEWAL OF:

**ITEM 1. NAMED INSURED:** HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

MAILING ADDRESS: 175 METRO CENTER BOULEVARD
WARWICK, RI 02886-1755

**ITEM 2. POLICY PERIOD:**  FROM:   TO:
(at 12:01 A.M. standard time at the address of the Named Insured stated above)

**ITEM 3. LIMITS OF INSURANCE - COVERAGE A AND COVERAGE B**

The Limits of Insurance, subject to the terms of this policy, are:

A. $20,000,000    **Each Occurrence**

B. $20,000,000    General Aggregate (in accordance with Section IV. Limits of Insurance)

C. $20,000,000    Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance)

**ITEM 4. SELF-INSURED RETENTION - COVERAGE B:** $10,000    **Each Occurrence**

**ITEM 5. PREMIUM AND PREMIUM COMPUTATION**

**ITEM 6. THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:**
SEE ATTACHED SCHEDULE

PRODUCER NAME: PROGRAM BROKERAGE CORP
ADDRESS:   122 EAST 42ND STREET
NEW YORK, NY 10168

_George A. Pohl_
Authorized Representative
Or Countersignature (In States
Where Applicable)

_____
Date

A230

73757 (2/99)
AH0031

INSURED'S COPY

## FORMS SCHEDULE

Named Insured:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.
Policy Number:  BE   7402566

| ...nd't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AMERICAN INTERNATIONAL CO'S | | |
| 1 | UMB ELITE COMM UMB LIAB POL FORM | 73757 | (02/99) |
| 2 | INSTALLMENT ENDORSEMENT | 73756 | (05/99) |
| 3 | AIRCRAFT EXCL APPLICABLE TO COV A AND B | MNSCPT | (08/00) |
| 4 | HEALTHCARE SERVICES EXCL APP COV A & B | 72713 | (03/99) |
| 5 | HOSPITAL PROFESSIONAL SERVICES EXCL | 72757 | (03/99) |
| 6 | AUTOMOBILE LIAB EXCL APP COV B | 72795 | (03/99) |
| 7 | EMPLOYERS LIAB EXCL APP TO COV B | 72722 | (03/99) |
| 8 | EMPLOYERS LIAB OCCUPATIONAL DISEASE EXCL | 72741 | (03/99) |
| 9 | NO FAULT, UNINSURED OR UNDERINSURED MOTORIS | 72742 | (03/99) |
| 10 | PROFESSIONAL SERVICES EXCL APP COV B | 72768 | (03/99) |
| 11 | EMPLOYMENT PRACTICES EXCLUSION | 72782 | (03/99) |
| 12 | RETROACTIVE DATE/COV A & B | MNSCPT | (08/00) |
| 13 | CRISIS RESPONSE AND EXCESS CASUALTY FUND | 74720 | (12/99) |
| | RI AMEND | 72728 | (11/99) |
| | | 72854 | (06/99) |

A231

CIFMSC
CI0226

## SCHEDULE OF UNDERLYING INSURANCE

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

Policy Number: BE   7402566

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

TYPE OF POLICY
OR COVERAGE

LIMITS

COMMERCIAL
GENERAL LIABILITY

$1,000,000
EACH OCCURRENCE
$1,000,000
PRODUCTS & COMPLETED OPERATIONS
$1,000,000
PERSONAL & ADVERTISING INJURY
$1,000,000
GENERAL AGGREGATE

AUTOMOBILE LIABILITY

$1,000,000
COMBINED SINGLE LIMIT

EMPLOYER'S LIABILITY

COVERAGE B – EMPLOYER'S LIABILITY
$500,000
EACH ACCIDENT
$500,000
POLICY LIMIT
$500,000
EACH EMPLOYEE

DIRECTORS & OFFICERS AND
PROFESSIONAL LIABILITY

$1,000,000
EACH CLAIM
$1,000,000
AGGREGATE

JNDSCH (5/99)
AHO651

A232

INSURED'S COPY

## SCHEDULE OF UNDERLYING INSURANCE

ссued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

Policy Number: BE   7402566

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

TYPE OF POLICY
OR COVERAGE

### LIMITS

Section V. DEFINITIONS, Paragraph V, Subparagraph 1 is amended to include the following:

Schedule Underlying Insurance means the policy or policies in force as of the effective date of this policy that provide the Named Insured the coverage described in the Schedule of Underlying Insurance forming a part of this policy.

By acceptance of this policy the Named Insured warrants that the amounts set forth in this schedule accurately and completely reflect the limits of Scheduled Underlying Insurance.  We have issued this policy in reliance upon the truth of these representations.  In the event of any inaccuracy or misrepresentation of the limits of Scheduled Underlying Insurance, this policy will apply as provided in Section IV. Limits of Insurance, Paragraph E.

AUTHORIZED REPRESENTATIVE

INSURED'S COPY

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

**Aircraft Exclusion**
**Applicable to Coverage A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability arising out of the ownership, maintenance, operation, use, loading or unloading, or entrustment to others, of any aircraft.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

*Gregory A. Pittel*

Authorized Representative or
Countersignature (in States Where
Applicable)

A234

72713 (3/99)
AH0424

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:

Forms a part of policy no.:  BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

Healthcare Services Exclusion
Applicable to Coverages A and B

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability arising out of any actual or alleged act, error or omission committed by or on behalf of the **Insured** in performing or failing to perform healthcare services including, but not limited to:

1.  medical, surgical, dental or nursing treatment;

2.  furnishing or dispensing of food, beverages, medications, or medical, dental or surgical supplies or appliances in connection with such services;

3.  handling or treatment of dead bodies, including autopsies, organ donation or other procedures; or

4.  service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured**, or as a person charged with the duty of executing directives of any such board or committee.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_Gregg A. Pitsel_

Authorized Representative or
Countersignature (in States Where
Applicable)

A235

72757 (3/99)
AH0466

## ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE   7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE**SM
**Commercial Umbrella Liability Policy**

**Hospital Professional Services Exclusion**
**Applicable to Coverages A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability arising out of any actual or alleged act, error or omission committed  by or on behalf of the **Insured** in rendering or failing to render professional healthcare services including,  but not limited to:

1.  medical, surgical, dental or nursing treatment;

2.  furnishing or dispensing of food, beverages, medications, or medical, dental or surgical supplies or appliances in connection with such services;

3.  handling or treatment of dead bodies, including autopsies, organ donation or other procedures; or

4.  service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured**, or as a person charged  with the duty of executing directives of any  such board or committee.

However, this exclusion shall not apply to **Bodily Injury** that is directly caused by one or more of the following named perils, and takes place on the **Insured's** premises:

a.  fire or lightning;

b.  windstorm or hail;

c.  explosion;

d.  riot, strike or civil commotion;

e.  hazards involving any aircraft or vehicle;

f.  sonic shock waves;

g.  smoke;

h.  vandalism or malicious mischief;

i.  sprinkler leakage;

j.  elevator malfunction;

k.  earthquake or flood;

l.  structural collapse of building; or

m.  ownership, maintenance or use of premises and all operations necessary or incidental thereto.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_George a. Pistol_

Authorized Representative or
Countersignature (in States Where
Applicable)

A236

72795 (3/99)
AH0504

INSURED'S COPY

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE     7402566

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:   NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE℠**
**Commercial Umbrella Liability Policy**

**Automobile Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the ownership, maintenance, operation, use, loading   or unloading, or entrustment to others of any Auto.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_George A. Pithel_
Authorized Representative or
Countersignature (In States Where
Applicable)

A237

72722 (3/99)
AH0433

INSURED'S COPY

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**<small>SM</small>
**Commercial Umbrella Liability Policy**

**Employers Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of his or her employment by the **Insured**, or performing duties related to the conduct of the **Insured's** business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

*Gregg A. Pistol*

Authorized Representative or
Countersignature (in States Where
Applicable)

A238

2741 (3/99)
.H0451

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE℠**
**Commercial Umbrella Liability Policy**

**Employers Liability Occupational Disease Exclusion**
**Applicable to Coverages A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability  arising out of Bodily Injury by disease to any employee of the Insured arising out of and in the course of his or her employment by the Insured, or performing duties related to the conduct of the Insured's business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

A239

*[signature]*

Authorized Representative or
Countersignature (In States Where
Applicable)

72742 (3/99)
AH0452

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

UMBRELLA ELITE[SM]
Commercial Umbrella Liability Policy

No Fault, Uninsured or Underinsured
Motorist Exclusion
Applicable to Coverage A

With respect to Coverage A, this policy is amended as follows:

Under Coverage A, this insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

All other terms, definitions, conditions and exclusions remain unchanged.

_Georg A. Pittel_

Authorized Representative or
Countersignature (in States Where
Applicable)

A240

'2768 (3/99)
\H0477

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

**Professional Services Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to any liability for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error or omission committed by or on behalf of the **Insured** in performing or failing to perform professional services.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_Geesg a. Pitdel_
Authorized Representative or
Countersignature (in States Where
Applicable)

A241

72782 (3/99)
AH0491

INSURED'S COPY

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UMBRELLA ELITE ℠
Commercial Umbrella Liability Policy

Employment Practices Exclusion
Applicable to Coverage B

This policy amended as follows:

Section VI. Exclusions, Exclusion D. Employment Practices, is deleted in its entirety and replaced by the following:

Employment Practices

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of:

1.      failure to hire any prospective employee or any applicant for employment,

2.      termination of any employee,

3.      failure to promote or advance any employee, or

4.      employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignments, discipline, defamation, harassment, humiliation or discrimination directed at a present, past, future or prospective employee.

This exclusion applies:

1.      whether the Insured may be liable as an employer or in any other capacity, and

2.      to any obligation to share damages with or repay someone else who must pay damages because of the injury.

All other terms and conditions of this policy remain unchanged.

*George A. Piehl*

Authorized Representative
or countersignature (where required by law)

A242

INSURED'S COPY

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE 7402566

Issued to: HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

**Retroactive Date**
**Applicable to Coverage A and B**

This policy is amended as follows:

The Declarations is amended to include the following:

RETROACTIVE DATE: *SEE BELOW          APPLICABLE TO: D & O AND PROFESSIONAL LIABILITY
                  (Date)                             (Name of Coverage)

Section I. Insuring Agreement – Coverage A is amended by adding the following:

   The Retroactive Date shown on the Declarations shall apply to all claims arising out of the coverage named below.

Section VI. Exclusions is amended by adding the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the coverage named below.

Name of Coverage(s):

Directors & Officers and Professional Liability

*AS PER INDIVIDUAL CERTIFICATES

All other terms and conditions of this policy remain unchanged.

_Geeryo a. Pötül_

Authorized Representative
or Countersignature (in States Where Applicable

A243

## ENDORSEMENT No. 12

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

### UMBRELLA ELITE℠
### Commercial Umbrella Liability Policy

### CrisisResponse℠ and Excess Casualty CrisisFund℠

**(Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance)**

### Additional Declarations

| | | | |
|---|---|---|---|
| Item 1. | CrisisResponse Sublimit of Insurance: | $250,000 | Each Crisis Management Event And Aggregate |
| Item 2. | Crisis Management Limit of Insurance: | $50,000 | Each Crisis Management Event And Aggregate |
| Item 3. | Premium: | INCLUDED | |

This policy is amended to provide for Advancement of CrisisResponse Costs during a Crisis Management Event and Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

### I.    INSURING AGREEMENTS - CrisisResponse and Excess Casualty CrisisFund

The following insuring agreements section is added to this policy for the purpose of the coverage provided by this endorsement:

A.    **Advancement of CrisisResponse Costs during a CrisisManagement Event**

We will advance on behalf of the Named Insured CrisisResponse Costs that may be associated with damages covered by this policy arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the CrisisResponse Sublimit of Insurance.

We will advance CrisisResponse Costs that may be associated with damages covered by this policy directly to third parties.

B.    **Crisis Communications Management Insurance**

We will pay on behalf of the Named Insured Crisis Management Loss arising from a Crisis Management Event first commencing during the Policy Period, up to the amount of the Crisis Management Limit of Insurance.

C.    A Crisis Management Event shall first commence at the time during the Policy Period when a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event and shall end at the earliest of the time when we determine

A244

that a crisis no longer exists or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

D.  There shall be no Scheduled Underlying Insurance or Self-Insured Retention amount applicable to CrisisResponse Costs or Crisis Management Loss. We shall pay such CrisisResponse Costs or Crisis Management Loss from first dollar, subject to the other terms and conditions of this endorsement.

## II.  LIMITS OF INSURANCE

The following provisions are added to Section IV. Limits of Insurance for the purpose of the coverage provided by this endorsement:

A.  The CrisisResponse Sublimit of Insurance is the most we will pay for all CrisisResponse Costs under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This CrisisResponse Sublimit of Insurance shall be part of, not in addition to, the Limits of Insurance shown in Item 3 of the Declarations of this policy.

B.  The Crisis Management Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This Crisis Management Limit of Insurance shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations of this policy.

C.  We will have no obligation to advance CrisisResponse Costs or to pay Crisis Management Loss from the earliest of the time when we determine that a Crisis Management Event has ended or when the CrisisResponse Sublimit of Insurance and/or the Crisis Management Limit of Insurance, whichever applies, has been exhausted.

## III.  DEFINITIONS

The following definitions are added to Section V. Definitions for the purpose of the coverage provided by this endorsement:

A.  Crisis Management Event means an Occurrence that in the good faith opinion of a Key Executive of the Named Insured, in the absence of Crisis Management Services, has reasonably been associated with or may be associated with:

1.  damages covered by this policy under Coverage A that are in excess of the applicable limits of Scheduled Underlying Insurance shown in the Schedule of Underlying Insurance forming a part of this policy or under Coverage B that are in excess of the Self-Insured Retention; and

2.  significant adverse regional or national media coverage.

Crisis Management Event shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, permanent paralysis, or contamination of food, drink or pharmaceuticals.

B.  Crisis Management Firm means any public relations firm or crisis management firm approved by us that is hired by the Named Insured to perform Crisis Management Services in connection with a Crisis Management Event. Attached to and forming a part of this endorsement is a Schedule of firms that have been pre-approved by us and may be hired by the Named Insured without further approval by us.

A245

© 1999 American International Group, Inc.
INSURED'S COPY

circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

B.    arising out of, based upon or attributable to any pending or prior crisis, claim, or Suit as of the inception date of this policy;

C.    arising directly or indirectly out of:

  1.    _ any actual or alleged failure, malfunction or inadequacy of:

    a.    any of the following, whether belonging to any Named Insured or to others:

      (1)    computer hardware, including microprocessors;

      (2)    computer application software;

      (3)    computer operating systems and related software;

      (4)    computer networks;

      (5)    microprocessors (computer chips) not part of any computer system; or

      (6)    any other computerized or electronic equipment or components; or

    b.    any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph C1a of this exclusion

    due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

  2.    any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the Insured to determine, rectify or test for any potential or actual problems described in Paragraph C1 of this exclusion.

## V.    CONDITIONS

The following conditions are added to Section VII. Conditions-Applicable to Coverages A and B for the purpose of the coverage provided by this endorsement:

A.    You must report any Crisis Management Event to us within twenty-four (24) hours of the time that a Key Executive first becomes aware of an Occurrence that gives rise to a Crisis Management Event to be eligible for the advancement of CrisisResponse Costs and the payment of Crisis Management Loss.

Notice of a Crisis Management Event may be given by calling 1-877-AIG-3100. If notice is given by telephone, written notice shall be given as soon as practicable thereafter. Written notice should include:

1.    how, when and where the Crisis Management Event is taking or took place;

2.    the names and addresses of any injured persons and any witnesses; and

3.    the nature and location of any injury or damage arising out of the Crisis Management Event.

Written notice should be mailed or delivered to:

A246

© 1999 American International Group, Inc.
INSURED'S COPY

AIG Excess Casualty Claim Department
175 Water Street
New York, NY 10038

B.   There shall be no requirement that you obtain prior written approval from us before incurring any **Crisis Management Loss**, provided that the **Crisis Management Firm** selected by you to perform the **Crisis Management Services** has been approved by us. If you choose to retain a firm that does not appear in the Schedule attached to and forming a part of this endorsement, you must obtain our consent, which shall remain in our sole discretion, prior to retaining the services of such firm.

C.   Any payments for **Crisis Management Loss** or advancement of **Crisis Response Costs** that we make under this endorsement:

1.   shall not be deemed to be a determination of the **Insured's** liability with respect to any claim or **Suit** that results from a **Crisis Management Event**; and

2.   shall not create any duty to defend any **Suit** or to investigate any claim arising from a **Crisis Management Event**, nor any coverage obligations under this policy.

D.   If the Crisis Communications Management Insurance provided by this endorsement and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

E.   In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may, at its own cost, retain the services of an approved **Crisis Management Firm** and/or advance **Crisis Response Costs**. Provided, however, if the **Named Insured** elects to retain an approved **Crisis Management Firm** or to advance **Crisis Response Costs**, we shall have no obligation to reimburse under this endorsement the **Named Insured** for such costs or expenses. The right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_Geory A. Pöhl_
Authorized Representative
or countersignature (in states where applicable)   A247

© 1999 American International Group, Inc.
INSURED'S COPY

ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:

Forms a part of policy no.: BE    7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

## UMBRELLA ELITE℠
### Commercial Umbrella Liability Policy

### Rhode Island Amendatory Endorsement
### Applicable to Coverages A and B

This policy is amended as follows:

I.    In Section VII. Conditions-Applicable to Coverages A and B, Condition D. Cancellation is deleted in its entirety and replaced by the following:

D.    **Cancellation**

1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.    New Policies in Effect for Less Than Sixty (60) Days

We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you and your agent, if any, not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you and your agent, if any, not less than (90) days advance written notice stating when the cancellation is to take effect. Proof of mailing or delivering notice of cancellation will be sufficient proof of notice.

3.    New Policies in Effect for Sixty (60)  Days or More and Any Renewal Policy

We may not cancel this policy unless the cancellation is based on at least one of the following reasons:

a.    Nonpayment of premium;

b.    Fraud or material misrepresentation made by, or with the knowledge of you or another **Insured** in obtaining this policy, continuing this policy, or in presenting a claim under this policy;

c.    Activities or omissions on the part of you or another  **Insured** which increase any hazard insured against, including a failure to comply with loss control recommendations;

d.    Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

If we cancel because of nonpayment of premium, we must mail or deliver to you and your agent, if any, not less than  ten (10) days advance written notice stating when the cancellation is take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and your agent, if any, not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Proof of mailing or delivering notice of cancellation will be sufficient proof of notice.

A248

72854 (6/99)
AH0565

4.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 5 of the Declarations.

6.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 5 of the Declarations.

7.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

II.  Section VII. Conditions-Applicable to Coverages A and B is amended by adding the following provision:

**Nonrenewal**

1.  If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first .Named **Insured** and agent, if any, at least thirty (30) days before the expiration date of this policy. Proof of mailing or delivering notice of nonrenewal will be sufficient proof of notice.

2.  We need not mail or deliver a notice of nonrenewal if:

    a.  We or another company within the same insurance group have offered to issue a renewal policy; or

    b.  You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

III.  Section VII. Conditions-Applicable to Coverages A and B is amended by adding the following provision:

**Notice of Premium or Coverage Changes**

We shall mail or deliver to the first **Named Insured**, at the mailing address shown on the policy, or to the agent of record, written notice of premium increase, change in deductible, reduction in limits or coverage at least thirty (30) days prior to the expiration date of the policy, in the case of notice to the first **Named Insured** or forty-five (45) days in the case of notice to the agent of record. If we fail to provide such notice, the coverage provided to you shall remain in effect until such notice is provided or until the effective date of replacement coverage obtained by you, whichever first occurs.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_George A. Pohl_

Authorized Representative or
Countersignature (in States Where
Applicable)

A249

ENDORSEMENT No. 16

is endorsement, effective 12:01 AM:  August 21, 2000

Forms a part of policy no.:  BE  7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## NAMED INSURED ENDORSEMENT

It is hereby understood and agreed that ITEM 1. NAMED INSURED of the Declarations page is amended to include the following:

ITEM 1.        NAMED INSURED:        HEALTH AND EDUCATION LIABILITY PROGRAM, INC. INCLUDING.
                                     INDIVIDUAL MEMBER THEREOF.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

A250

ENDORSEMENT No. 19

.his endorsement, effective 12:01 AM:  August 21, 2000

Forms a part of policy no.:  BE   7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UMBRELLA ELITE[SM]
Commercial Umbrella Liability Policy

Employee Benefits Liability Exclusion
Applicable to Coverage B

This policy is amended as follows:

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** arising out of:

1. any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2. any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

   a.   giving counsel to employees with respect to a **plan**;

   b.   interpreting a **plan**;

   c.   handling of records in connection with a **plan**;

   d.   effecting enrollment, termination or cancellation of employees under a **plan**; or

   e.   any matter claimed against an **Insured** solely by reason of his, her or its status as an administrator, the **plan** or **you** as sponsor of the **plan**.

ERISA as used in this endorsement means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a **plan** is subject.

Plan as used in this endorsement means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of ERISA or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

A251

72850 (1/00)

1.  a welfare plan, as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.  a pension plan as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

3.  a combination of 1. and 2. above.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative
or Countersignature (in States Where Applicable)

72850 (1/00)

A252

ENDORSEMENT No. 23

his endorsement, effective 12:01 AM:  August 21, 2000

Forms a part of policy no.:  BE  7402566

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM, INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

UMBRELLA ELITE℠
Commercial Umbrella Liability Policy

Limits of Insurance
Applicable to Coverage A and B

This policy is amended as follows:

The Declarations, Item 3. Limits of Insurance – Coverages A and B is amended to include the following:

$10,000,000 Each Claim/$10,000,000 Aggregate  limit of Insurance

on IV. Limits of Insurance is amended to include the following:

The Directors & Officers (INCL EPLI) limit of Insurance stated in Item 3. of the Declarations is the most we will pay for all damages included in the Directors & Officers:

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury included in the Directors & Officers Coverage.

All other terms, definitions, conditions and exclusions fo this policy remain unchanged.

_George A. Pihl_
Authorized Representative or
Countersignature (in States Where Applicable)

A253

## UMBRELLA ELITE<sup>SM</sup>
## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section V. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section V. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

### I. INSURING AGREEMENT - COVERAGE A: EXCESS FOLLOW FORM INSURANCE

A.  We will pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** by the payment of **Loss**.

B.  Coverage A shall follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.

C.  Coverage A of this policy will not, in any event, provide broader coverage than that provided by **Scheduled Underlying Insurance**.

D.  If we are prevented by law or statute from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the total applicable limits of **Scheduled Underlying Insurance**.

E.  The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

### II. INSURING AGREEMENT - COVERAGE B: UMBRELLA LIABILITY INSURANCE

A.  We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** not covered by **Scheduled Underlying Insurance**, provided that:

1.  the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** happening anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**.

2.  the **Personal Injury** or **Advertising Injury** is caused by an **Occurrence** happening anywhere, and the **Occurrence** takes place during the **Policy Period**.

B.  Coverage B will not apply to damages that would have been covered by **Scheduled Underlying Insurance** even if the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss**.

A254

C.  If we are prevented by law or statute from paying damages on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the Self-Insured Retention.

D.  The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

## III. DEFENSE PROVISIONS

A.  We shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy:

1.  under Coverage A, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of Loss.

2.  under Coverage B, when the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury would not be covered by Scheduled Underlying Insurance.

We shall have the right and duty to defend any Suit against the Insured that seeks damages covered by this policy, even if the Suit is groundless, false or fraudulent.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.  When we assume the defense of any Suit against the Insured that seeks damages covered by this policy, we will:

1.  investigate, negotiate and settle the Suit as we deem expedient; and

2.  pay the following supplementary payments to the extent that such payments are not covered by Scheduled Underlying Insurance:

a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

b.  premiums on appeal bonds required by law to appeal the Suit, but we are not obligated to apply for or furnish any such bond;

c.  all costs taxed against the Insured in the Suit;

d.  pre-judgment interest awarded against the Insured on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

e.  post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

f.  the Insured's expenses incurred at our request or with our consent.

C.  Except as provided in Paragraph A. above, we shall have no duty to defend any Suit against the Insured. We will, however, have the right, but not the duty, to participate in the defense of any Suit and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D.  We will not defend any Suit or investigate any claim after the exhaustion of the applicable Limits of Insurance of this policy by the payment of Loss.

A255

## IV. LIMITS OF INSURANCE

A.  With respect to Coverages A and B, the Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1.  Insureds;

2.  claims made or Suits brought against any or all Insureds;

3.  persons or organizations making claims or bringing Suits; or

4.  coverages provided under this policy.

B.  The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under Coverage A and separately under Coverage B, except for:

1.  damages covered by the **Products-Completed Operations Hazard**; and

2.  damages covered by **Scheduled Underlying Insurance** to which no aggregate limit applies.

In addition, with respect to Coverage A only, if **Scheduled Underlying Insurance** contains an aggregate limit, other than an aggregate applying to the **Products-Completed Operations Hazard**, the General Aggregate Limit stated in Item 3 of the Declarations will apply in the same manner as the aggregate limit of any such **Scheduled Underlying Insurance**.

C.  The Products-Completed Operations Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard** for Coverage A and Coverage B combined.

D.  Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3 of the Declarations is the most we will pay for the sum of all damages under Coverage A and Coverage B combined arising out of any one **Occurrence**.

E.  Coverage A applies only in excess of the total applicable limits of **Scheduled Underlying Insurance**. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

1.  greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

2.  less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

F.  Under Coverage A, if the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss**, we will:

1.  in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance**; and

2.  in the event of exhaustion, continue in force as underlying insurance.

G.  Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy, unless otherwise provided by **Scheduled Underlying Insurance**.

H.  The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

A256

## V. DEFINITIONS

A.  **Advertisement** under Coverage B means a paid broadcast, publication or telecast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

B.  **Advertising Injury** under Coverage B means injury, other than **Bodily Injury** or **Personal Injury**, arising solely out of your **Advertisement** as a result of one or more of the following offenses:

    slander or libel of a person or organization, or disparagement of a person's or organization's goods, products or services in your **Advertisement**;

2.  violation of a person's right of privacy in your **Advertisement**;

3.  misappropriation of another's advertising idea in your **Advertisement**; or

4.  infringement upon another's copyright, trademark or slogan in your **Advertisement**.

C.  **Auto** under Coverage B and under any exclusion in this policy applicable to Coverage A means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment**.

D.  **Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means bodily injury, sickness, disability or disease, including death resulting from any of these at any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

E.  **Hostile Fire** under Coverage B and under any exclusion in this policy applicable to Coverage A means a fire that becomes uncontrollable or breaks out from where it was intended to be.

F.  **Impaired Property** under Coverage B means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.  you have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by:

1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

2.  your fulfilling the terms of the contract or agreement.

G.  **Insured** under Coverage A means:

1.  the **Named Insured**; and

2.  any person or organization that is an insured under **Scheduled Underlying Insurance**.

H.  **Insured** under Coverage B means:

1.  the **Named Insured**;

2.  if you are an individual, your spouse, but only with respect to the conduct of a business of which you are the sole owner;

3.  your partners, joint venture members, executive officers, employees, directors, stock-holders or volunteers while acting within the scope of their duties as such;

4.  any person or organization while acting as your real estate manager;

5.  your legal representative if you die, but only with respect to duties as such; and

A257

6.  any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a Named **Insured**.

I.  **Insured Contract** under Coverage B means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. However, the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** must arise out of an **Occurrence** that takes place subsequent to the execution of the **Insured Contract.** Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Solely for the purposes of liability assumed under an **Insured Contract**, reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury,** provided:

1.  liability to such party for that party's reasonable attorney's fees and necessary litigation expenses has also been assumed in the same **Insured Contract;** and

2.  such reasonable attorney's fees and necessary litigation expenses are for defense of that party against a **Suit** seeking damages covered by this policy.

J.  **Loss** under Coverages A and B means those sums actually paid as judgments and settlements and, under Coverage A if provided by **Scheduled Underlying Insurance,** expenses incurred to defend any **Suit** or to investigate any claim.

K.  **Mobile Equipment** under Coverage B and under any exclusion in this policy applicable to Coverage A means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises you own or rent;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

A258

However, self-propelled vehicles with the following types of permanently attached equipment are not Mobile Equipment, but will be considered Autos:

    a.    equipment designed primarily for:

        i)    snow removal;

        ii)    road maintenance, but not construction or resurfacing; or

        iii)    street cleaning;

    b.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

L.    **Named Insured** under **Coverage A** means any person or organization designated in Item 1 of the Declarations, and any person or organization that is a named insured or the equivalent thereof in **Scheduled Underlying Insurance**.

M.    **Named Insured** under **Coverage B** means:

    1.    any person or organization designated in Item 1 of the Declarations;

    2.    any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

    3.    any organization, except for a partnership or a joint venture, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

        a.    this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

        b.    you give us prompt notice after you acquire or form such organization.

    A partnership or a joint venture that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

    We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

N.    **Occurrence** under **Coverage A** means the definition given to that term or the equivalent thereof in **Scheduled Underlying Insurance**.

O.    **Occurrence** under **Coverage B** means:

    1.    as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be deemed to arise out of one **Occurrence**.

    2.    as respects **Personal Injury** or **Advertising Injury**, an offense arising out of your business that causes **Personal Injury** or **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

P.    **Other Insurance** under **Coverages A** and **B** means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

A259

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

Q. **Personal Injury** under Coverage B means injury arising out of your business, other than **Bodily Injury** or **Advertising Injury**, caused by one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5. oral, written or electronic publication of material that violates a person's right of privacy; or

6. discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

   a. not done intentionally by or at the direction of any **Insured**; and

   b. not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any **Insured**.

R. **Policy Period** under Coverages A and B means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

S. **Pollutants** under Coverage B and under any exclusion in this policy applicable to Coverage A means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

T. **Products-Completed Operations Hazard** under Coverage B and under any exclusion in this policy applicable to Coverage A means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1. products that are still in your physical possession; or

2. work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a. when all of the work called for in your contract has been completed;

   b. when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c. when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

A260

    1.    the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any **Insured**; or

    2.    the existence of tools, uninstalled equipment or abandoned or unused materials.

**U.**    **Property Damage** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

    1.    physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or —

    2.    loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

**V.**    **Scheduled Underlying Insurance** under Coverages A and B means:

    1.    the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

    2.    automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

**W.**    **Self-Insured Retention** under Coverage B means the amount applicable to each occurrence for which the **Insured** is responsible that is shown in Item 4 of the Declarations.

**X.**    **Suit** under Coverages A and B means a civil proceeding seeking damages covered by this policy. **Suit** includes:

    1.    an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

    2.    any other alternative dispute resolution proceeding in which such damages are claimed and to which the **Insured** submits with our consent.

**Y.**    **Your Product** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

    1.    any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a.    you;

        b.    others trading under your name; or

        c.    a person or organization whose business or assets you have acquired; and

    2.    containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

    1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

    2.    the providing of or failure to provide warnings or instructions.

A261

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

Z.    **Your Work** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.    work or operations performed by you or on your behalf; and

2.    materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.    the providing of or failure to provide warnings or instructions.

## VI. EXCLUSIONS

A.    **Asbestos**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.    any obligation of the **Insured** to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.    any obligation to defend any **Suit** or claim against the **Insured** that seeks damages if such **Suit** or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.    **Various Laws**

Under Coverages A and B, this insurance does not apply to any obligation of the **Insured** under any of the following:

1.    the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

2.    any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

C.    **Securities**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2.    any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3.    any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

A262

D.    **Employment Practices**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    failure to hire any prospective employee or any applicant for employment;

2.    termination of any employee;

3.    failure to promote or advance any employee; or

4.    employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a present, past, future or prospective employee.

This exclusion applies:

1.    whether the **Insured** may be liable as an employer or in any other capacity; and

2.    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

E.    **Care, Custody and Control**

Under Coverages A and B, this insurance does not apply to **Property Damage** to:

1.    property you own, rent or occupy;

2.    premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3.    property loaned to you;

4.    personal property in the care, custody or control of the **Insured**;

5.    that particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations if the **Property Damage** arises out of those operations; or

6.    that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard.**

F.    **Nuclear Liability**

Under Coverages A and B, this insurance does not apply to:

1.    any liability:

a.    with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2)

A263

the Insured is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.   resulting from the hazardous properties of nuclear material if:

i)   the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (2) has been discharged or dispensed therefrom;

ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

iii) the injury or damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii. applies only to Property Damage to such nuclear facility and any property thereat.

2.   As used in this exclusion:

a.   "hazardous properties" includes radioactive, toxic or explosive properties;

b.   "nuclear material" means source material, special nuclear material or by-product material;

c.   "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

d.   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.   "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.   "nuclear facility" means:

i)   any nuclear reactor;

ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

iii) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

g.   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

73756 (5/99)
AH0048

Page 11 of 20
© 1999 American International Group, Inc.
INSURED'S COPY

A264

h. Property Damage includes all forms of radioactive contamination of property.

G. **Pollution - Coverage A**

Under Coverage A, this insurance does not apply to:

1. any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants:**

   a. at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any **Insured;**

   b. at or from any premises, site or location that is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

   c. that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom you may be legally responsible;

   d. at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the **Pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor;

   e. at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured's** behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of **Pollutants;**

   f. that are contained in any property that is:

      i) being transported or towed by, handled or handled for movement into, onto or from an **Auto** covered by **Scheduled Underlying Insurance;**

      ii) otherwise in the course of transit by or on behalf of the **Insured;** or

      iii) being stored, disposed of, treated or processed in or upon an **Auto** covered by **Scheduled Underlying Insurance;**

   g. i) before the **Pollutants** or any property in which the **Pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto an **Auto** covered by **Scheduled Underlying Insurance;** or

      ii) after the **Pollutants** or any property in which the **Pollutants** are contained are moved from the **Auto** covered by **Scheduled Underlying Insurance** to the place where they are finally delivered, disposed of or abandoned by the **Insured.**

2. any loss, cost or expense arising out of any:

   a. request, demand order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants;** or

   b. claim or **Suit** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **Pollutants.**

73756 (5/99)
AH0048
Page 12 of 20
© 1999 American International Group, Inc.
INSURED'S COPY

A265

However, the following exceptions to Paragraph 1. of this Pollution exclusion for Coverage A shall apply:

1) **Products-Completed Operations Hazard:** Paragraphs 1a through 1d of this exclusion do not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

   a) discarded, dumped, abandoned, thrown away; or

   b) treated or handled as waste;

   by anyone.

2) **Hostile Fire:** Paragraphs 1a and 1d do not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire.**

3) **Equipment to Heat the Building and Contractor/Lessee Operations:** Paragraph 1a of this exclusion does not apply to:

   a) **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

   b) **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4) **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment:** Paragraph 1d of this exclusion does not apply to:

   a) **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

   b) **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5) **Fuels, Lubricants, Fluids, etc. - Auto:** Paragraph 1f of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts if:

   a) the **Pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants;** and

A266

b) the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment listed in Paragraphs 6b and 6c of the definition of **Mobile Equipment.**

6) **Upset, Overturn or Damage of an Auto:** Paragraph 1g of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

a) the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance;** and

b) the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

H.  **Pollution - Coverage B**

Under Coverage B, this insurance does not apply to:

1.  **Bodily Injury, Property Damage, Personal Injury** or **Advertising Liability** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world;

2.  any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or assess the effects of **Pollutants;** or

3.  any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants.**

I.  **Damage to Impaired Property**

Under Coverage B, this insurance does not apply to **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.  a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work;** or

2.  a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

J.  **Damage to Your Product**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

K.  **Damage to Your Work**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

L.  **Product Recall**

Under Coverage B, this insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

A267

© 1999 American International Group, Inc.

INSURED'S COPY

1.    Your Product
2.    Your Work; or
3.    Impaired Property;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

M.    Employee to Employee

Under Coverage B, this insurance does not apply to liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

N.    Willful Violation, Falsity, Prior Publication, Criminal, Assumed Liability

Under Coverage B, this insurance does not apply to **Personal Injury** or **Advertising Injury**:

1.    caused by or at the direction of any **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury**;

2.    arising out of oral, written or electronic publication of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3.    arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the **Policy Period**;

4.    arising out of a criminal act committed by or at the direction of any **Insured**; or

5.    for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

O.    Various Advertising

Under Coverage B, this insurance does not apply to **Advertising Injury**:

1.    arising out of a breach of contract, except an implied contract to use another's advertising idea;

2.    arising out of the failure of goods, products or services to conform with any statement of quality or performance made;

3.    arising out of the wrong description of the price of goods, products or services; or

4.    committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

P.    Watercraft, Aircraft

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

Q.    War

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

A268

R. **Expected or Intended**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to:

1. **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property; or

2. liability of the **Named Insured** for damages as the result of an act committed by the **Named Insured's** employee(s) which results in **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Named Insured's** employee(s), provided such act was not committed at the direction of the **Named Insured**.

S. **Liquor Liability**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1. causing or contributing to the intoxication of any person;

2. the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

T. **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

Under Coverage B, this insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

---

## VII. CONDITIONS - APPLICABLE TO COVERAGES A AND B

A. **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we shall be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

B. **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C. **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D. **Cancellation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

A269

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The Policy Period will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 5 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 5 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.  The first Named Insured in Item 1 of the Declarations shall act on behalf of all other Insureds with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  **Changes**

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

F.  **Duties in the Event of an Occurrence, Claim or Suit**

1.  You must see to it that we are notified as soon as practicable of an Occurrence that may result in a claim or Suit under this policy. To the extent possible, notice should include:

    a.  how, when and where the Occurrence took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the Occurrence.

2.  If a claim is made or Suit is brought against any Insured which is reasonably likely to involve this policy, you must notify us in writing:

    a.  under Coverage A, as soon as practicable and in accordance with the reporting provisions of Scheduled Underlying Insurance.

    b.  under Coverage B, as soon as practicable.

    Written notice should be mailed or delivered to: AIG Excess Casualty Claim Department, 70 Pine Street, New York, NY 10270.

3.  You and any other involved Insured must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or Suit;

3756 (5/99)
H0048

A270

© 1999 American International Group, Inc.

INSURED'S COPY

b.   authorize us to obtain records and other information;

c.   cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

d.   assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.   No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

G.   Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

H.   Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

I.   Knowledge of Occurrence or Claim

Knowledge of an **Occurrence**, claim or **Suit** by your agent, servant or employee shall not in itself constitute knowledge by you, unless a principal of yours shall have received notice of such **Occurrence**, claim or **Suit** from said agent, servant or employee.

J.   Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.   you have complied with all the terms of this policy; and

2.   the amount you owe has been determined with our consent or by actual trial and final judgment.

K.   Maintenance of Scheduled Underlying Insurance

During the **Policy Period**, you agree:

1.   to keep **Scheduled Underlying Insurance** in full force and effect;

2.   that the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.   that the total applicable limits of **Scheduled Underlying Insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss**; and

4.   that any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have had you fully complied with these requirements.

A271

© 1999 American International Group, Inc.
INSURED'S COPY

L.   **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the **Other Insurance**. However, this provision will not apply if the **Other Insurance** is specifically written to be excess of this policy.

M.   **Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 5 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 5 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we shall retain the Minimum Premium as shown in Item 5 of the Declarations for each twelve months of the **Policy Period**.

N.   **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.   as if each **Named Insured** were the only **Named Insured**; and

2.   separately to each **Insured** against whom claim is made or **Suit** is brought.

O.   **Transfer of Rights of Recovery**

1.   If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2.   Any recoveries shall be applied as follows:

   a.   any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

   b.   we then will be reimbursed up to the amount we have paid; and

   c.   lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

   Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3.   If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, as that term is defined under Coverage B, we will also waive any rights we may have against such person or organization.

P.   **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.   **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.   **When Damages are Payable**

We will not make any payment under this policy unless and until:

1.   under Coverage A, the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss**.

2.   under Coverage B, the **Self-Insured Retention** has been exhausted by the payment of **Loss**.

When the amount of **Loss** has finally been determined, we will promptly pay on behalf of the **Insured** the amount of such **Loss** within the applicable Limits of Insurance of this policy.

You shall promptly reimburse us for any amount within the **Self-Insured Retention** paid by us on behalf of the **Insured**.

**IN WITNESS WHEREOF**, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

President
American Home Assurance Company

President
American International South
Insurance Company

President
National Union Fire Insurance
Company of Pittsburgh, PA

President
Illinois National Insurance Company

President
National Union Fire Insurance
Company of Louisiana

Secretary

American Home Assurance Company
American International South
Insurance Company
National Union Fire Insurance
Company of Pittsburgh, PA
Illinois National Insurance Company
National Union Fire Insurance
Company of Louisiana

A273



**RLI Insurance Company**
Peoria, Illinois 61615
(herein called the "Company")

## COMMERCIAL UMBRELLA LIABILITY POLICY
(Occurrence Form)

### DECLARATIONS

**NO. OUL 021936**

RENEWAL OF

**PRODUCER**

PROGRAM BROKERAGE COPR.
122 EAST 42ND STREET
NEW YORK, NY 10168

**ITEM 1. NAMED INSURED AND ADDRESS** (No., Street, Town or City, State)

HEALTH & EDUCATION LIABILITY PROGRAM, INC.
C/O PROGRAM BROKERAGE CORPORATION
175 METRO CENTER BOULEVARD
WARWICK, RI 02886

NAMED INSURED IS

☐ Individual
☐ Corporation
☐ Partnership
☐ Joint Venture
☒ Other:  PURCHASING GROUP

**ITEM 2. POLICY PERIOD** (Mo./Day/Yr.)

FROM                TO

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**ITEM 3. LIMITS OF LIABILITY**

$ 10,000            Each Occurrence

$ DOES NOT APPLY    Products/Completed Operations Aggregate

$ DOES NOT APPLY    General Aggregate (Other Than Products/Completed Operations)

**ITEM 4. RETAINED LIMIT  $**        NIL

**ITEM 5. SCHEDULE OF UNDERLYING INSURANCE** See Schedule attached hereto and made a part hereof.

**ITEM 6. PREMIUM**

Advance Premium  $          Rate  $                    Premium Basis

Minimum Premium  $          Estimated Exposure

Audit Period (annual unless noted)

**ITEM 7. FORMS AND ENDORSEMENTS ATTACHED AND MADE A PART OF THIS POLICY AT ISSUE**
AMR112−1,2,3 CEE−321

Countersigned by _____

Authorized Representative

A274

:UP 100 (11/91)

☒   **RLI INSURANCE COMPANY**

☐   **MT. HAWLEY INSURANCE COMPANY**

| NL. | POLICY NUMBER | INSURED | END. EFF. |
|---|---|---|---|
| 1 | OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

## FOLLOWING FORM ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY THAT THIS POLICY IS FOLLOWING FORM OF ALL TERMS AND CONDITIONS OF NATIONAL UNION FIRE INSURANCE COMPANY POLICY # BE7402566 AND ALL SUBSEQUENT RENEWALS AND/OR REPLACEMENTS THEREOF.

LIMIT:    $10,000 INCLUDING FEES, COSTS AND EXPENSES

SEE ENDORSEMENT #2 FOR SPECIAL COVERAGE WORDING

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form rt of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____

(Authorized Agent)

112(11-86)                                                                                      A275

☒   **RLI INSURANCE COMPANY**

☐   **MT. HAWLEY INSURANCE COMPANY**

| POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---|---|---|
| OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

**SPECIAL COVERAGE ENDORSEMENT**

SEE ATTACHED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form t of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____
(Authorized Agent)

12(11-86)

A276

In consideration of the premium paid, it is hereby understood and agreed:

1.  This policy shall reduce the insured's Self-Insured Retention (SIR) as provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) from $10,000 each occurrence to nil, following form of that policy in all other respects.

2.  This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured excess of the underlying insurance scheduled in the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), following form of the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), including bail bond coverage excess of that provided under the primary scheduled underlying insurance and the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

3.  This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured subject to a $1,000 self-insured retention for the following coverage, as long as such insurance is not contrary to any New York State law or regulation or the law or regulation of any other applicable jurisdiction:

    "Bodily injury" or "property damage" arising out of:

    i)    heat, smoke, or soot; and
    ii)   fumes from any fire

    from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.

Unless otherwise stated, all definitions follow form of those included under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

This policy shall remain in full force and effect until such time as the excess limits provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) are exhausted.

help

A277

☒ RLI INSURANCE COMPANY

☐ MT. HAWLEY INSURANCE COMPANY

| POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---|---|---|
| OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

## NAMED INSURED AND INSURED LOCATIONS ENDORSEMENT

SCHEDULE ON FILE WITH CARRIER.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations the policy to which this endorsement is attached other than as above stated.

his endorsement when countersigned by a duly authorized representative of the company shall be valid and form of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____

(Authorized Agent)

2(11-86)

A278

# RLI

**RLI Insurance Company**
Peoria, Illinois 61615
(herein called the "Company")

## COMMERCIAL UMBRELLA LIABILITY POLICY
(Occurrence Form)

## DECLARATIONS

**NO. OUL 021936**

**RENEWAL OF**

**PRODUCER**

PROGRAM BROKERAGE COPR.
122 EAST 42ND STREET
NEW YORK, NY 10168

**ITEM 1. NAMED INSURED AND ADDRESS** (No., Street, Town or City, State)

HEALTH & EDUCATION LIABILITY PROGRAM, INC.
C/O PROGRAM BROKERAGE CORPORATION
175 METRO CENTER BOULEVARD
WARWICK, RI 02886

NAMED INSURED IS
☐ Individual
☐ Corporation
☐ Partnership
☐ Joint Venture
☒ Other:  PURCHASING GROUP

**ITEM 2. POLICY PERIOD** (Mo./Day/Yr.)

FROM                 TO                12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**ITEM 3. LIMITS OF LIABILITY**

$ 10,000          Each Occurrence

$ DOES NOT APPLY     Products/Completed Operations Aggregate

$ DOES NOT APPLY     General Aggregate (Other Than Products/Completed Operations)

**TEM 4. RETAINED LIMIT**  $          NIL

**TEM 5. SCHEDULE OF UNDERLYING INSURANCE** See Schedule attached hereto and made a part hereof.

**TEM 6. PREMIUM**

Advance Premium  $              Rate  $              Premium Basis

Minimum Premium  $              Estimated Exposure

Audit Period (annual unless noted)

**TEM 7. FORMS AND ENDORSEMENTS ATTACHED AND MADE A PART OF THIS POLICY AT ISSUE**
AMR112-1,2,3 CEE-321

Countersigned by _____

*Authorized Representative*

A279

UP 100 (11/91)

☒   **RLI INSURANCE COMPANY**

☐   **MT. HAWLEY INSURANCE COMPANY**

| POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---|---|---|
| OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

## FOLLOWING FORM ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY THAT THIS POLICY IS FOLLOWING FORM OF ALL TERMS AND CONDITIONS OF NATIONAL UNION FIRE INSURANCE COMPANY POLICY # BE7402566 AND ALL SUBSEQUENT RENEWALS AND/OR REPLACEMENTS THEREOF.

LIMIT:    $10,000 INCLUDING FEES, COSTS AND EXPENSES

SEE ENDORSEMENT #2 FOR SPECIAL COVERAGE WORDING

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations the policy to which this endorsement is attached other than as above stated.

his endorsement when countersigned by a duly authorized representative of the company shall be valid and form of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____
                              (Authorized Agent)

2(11-86)

A280

☒   RLI INSURANCE COMPANY

☐   MT. HAWLEY INSURANCE COMPANY

| EN   J. | POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---------|---------------|---------|---------------------|
| 2 | OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

## SPECIAL COVERAGE ENDORSEMENT

SEE ATTACHED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form rt of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____
(Authorized Agent)

112(11-86)

A281

In consideration of the premium paid, it is hereby understood and agreed:

1.  This policy shall reduce the insured's Self-Insured Retention (SIR) as provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) from $10,000 each occurrence to nil, following form of that policy in all other respects.

2.  This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured excess of the underlying insurance scheduled in the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), following form of the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), including bail bond coverage excess of that provided under the primary scheduled underlying insurance and the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

3.  This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured subject to a $1,000 self-insured retention for the following coverage, as long as such insurance is not contrary to any New York State law or regulation or the law or regulation of any other applicable jurisdiction:

    "Bodily injury" or "property damage" arising out of:

    i)   heat, smoke, or soot; and
    ii)  fumes from any fire

    from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.

Unless otherwise stated, all definitions follow form of those included under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

This policy shall remain in full force and effect until such time as the excess limits provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) are exhausted.

help

A282

☒　**RLI INSURANCE COMPANY**

☐　**MT. HAWLEY INSURANCE COMPANY**

| POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---|---|---|
| OUL021936 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | (12:01 A.M.) |

## NAMED INSURED AND INSURED LOCATIONS ENDORSEMENT

SCHEDULE ON FILE WITH CARRIER.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations f the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form art of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____

(Authorized Agent)

.2(11-86)

A283

**AIG**  **AMERICAN INTERNATIONAL COMPANIES**
**UMBRELLA ELITE**[SM]
**COMMERCIAL UMBRELLA LIABILITY POLICY**

### DECLARATIONS

☐ American Home Assurance Company

☐ American International South Insurance Company    ☒ National Union Fire Insurance Company of Pittsburgh, PA
☐ Illinois National Insurance Company    ☐ National Union Fire Insurance Company of Louisiana

(each of the above being a capital stock company)
Executive Offices: 70 Pine Street, New York, NY 10270

POLICY NUMBER: BE    8716521    RENEWAL OF: 7402566

ITEM 1.  NAMED INSURED:    HEALTH AND EDUCATION LIABILITY PROGRAM INC.

MAILING ADDRESS:  175 METRO CENTER BLVD.
WARWICK, RI 02886

ITEM 2.  POLICY PERIOD:    FROM: PER CERTIFICATE    TO: PER CERTIFICATE
(at 12:01 A.M. standard time at the address of the Named Insured stated above)

ITEM 3.  LIMITS OF INSURANCE - COVERAGE A AND COVERAGE B

The Limits of Insurance, subject to the terms of this policy, are:

A. $20,000,000    Each Occurrence

B. $20,000,000    General Aggregate (in accordance with Section IV. Limits of Insurance)

C. $20,000,000    Products-Completed Operations Aggregate (in accordance with Section IV. Limits of Insurance)

ITEM 4.  SELF-INSURED RETENTION - COVERAGE B: $10,000    Each Occurrence

ITEM 5.  PREMIUM AND PREMIUM COMPUTATION

ITEM 6.  THIS POLICY INCLUDES THESE ENDORSEMENTS AT INCEPTION DATE:
SEE ATTACHED SCHEDULE

PRODUCER NAME:  PROGRAM BROKERAGE CORP.
ADDRESS:    122 EAST 42ND STREET
NEW YORK, NY 10168

Authorized Representative    Date
Or Countersignature (In States
Where Applicable)

A284

73757 (2/99)
AH0031

Issue Date: 09/11/01

## FORMS SCHEDULE

Named Insured:    HEALTH AND EDUCATION LIABILITY PROGRAM INC.

Policy Number:    BE    8716521
Effective 12:01 AM:  August 21, 2001

| End't. No. | Form Name | Form Number/ Edition Date | |
|---|---|---|---|
| | AMERICAN INTERNATIONAL CO'S | 73757 | (02/99) |
| | UMB ELITE COMM UMB LIAB POL FORM | 73756 | (05/99) |
| 1 | INSTALLMENT ENDORSEMENT | MNSCPT | (09/01) |
| 2 | AIRCRAFT EXCL APPLICABLE TO COV A AND B | 72713 | (03/99) |
| 3 | HEALTHCARE SERVICES EXCL APP COV A & B | 72757 | (03/99) |
| 4 | HOSPITAL PROFESSIONAL SERVICES EXCL | 72795 | (03/99) |
| 5 | AUTOMOBILE LIAB EXCL APP COV B | 72722 | (03/99) |
| 6 | EMPLOYERS LIAB EXCL APP TO COV B | 72741 | (03/99) |
| 7 | CLAIMS-MADE FOLLOW FORM SEXUAL ABUSE | MNSCPT | (08/01) |
| 8 | NO FAULT, UNINSURED OR UNDERINSURED MOTORIS | 72768 | (03/99) |
| 9 | PROFESSIONAL SERVICES EXCL APP COV B | 72782 | (03/99) |
| 10 | RETROACTIVE DATE/COV A & B | 74720 | (12/99) |
| 11 | EMPLOYEE BENEFITS LIABILITY EXCLUSION / COV B | 72850 | (01/00) |
| 12 | EXCESS CASUALTY CRISISFUND | 72869 | (08/99) |
| 13 | LIMITS OF INSURANCE | MNSCPT | (08/01) |
| 14 | LIMITS OF INSURANCE--SUBLIMIT / COV A & B | MNSCPT | (08/01) |
| 15 | LIMITS OF INSURANCE--SUBLIMIT / COV A & B | MNSCPT | (08/01) |
| 16 | RI AMEND | 72854 | (06/99) |

A285

CIFMSC
CI0226

## SCHEDULE OF UNDERLYING INSURANCE

Issued to: HEALTH AND EDUCATION LIABILITY PROGRAM INC.             Policy Number: BE    8716521

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

| TYPE OF POLICY OR COVERAGE | LIMITS |
|---|---|
| GENERAL LIABILITY | $1,000,000 EACH OCCURRENCE $2,000,000 GENERAL AGGREGATE $1,000,000 PRODUCTS/C. OPS. AGGREGATE |
| AUTO LIABILITY | $1,000,000 COMBINED SINGLE LIMIT |
| EMPLOYERS LIABILITY | $500,000 EACH ACCIDENT $500,000 POLICY LIMIT $500,000 EACH EMPLOYEE |

Section V. DEFINITIONS. Paragraph V, Subparagraph 1 is amended to include the following:

Scheduled Underlying Insurance means the policy or policies in force as of the effective date of this policy that provide the Named Insured the coverage described in the Schedule of Underlying Insurance forming a part of this policy.

By acceptance of this policy the Named Insured warrants that the amounts set forth in this schedule accurately and completely reflect the limits of Scheduled Underlying Insurance. We have issued this policy in reliance upon the truth of these representations. In the event of any inaccuracy or misrepresentation of the limits of Scheduled Underlying Insurance, this policy will apply as provided in Section IV. Limits of Insurance, Paragraph E.

AUTHORIZED REPRESENTATIVE

A286

UNDSCH (5/99)

## UMBRELLA ELITE℠
## COMMERCIAL UMBRELLA LIABILITY POLICY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the **Named Insured** shown in the Declarations and any other person or organization qualifying as a **Named Insured** under this policy. The words "we," "us" and "our" refer to the company providing this insurance.

The word **Insured** means any person or organization qualifying as such under Section V. Definitions.

Other words and phrases that appear in bold print have special meaning. See Section V. Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations, we agree to provide coverage as follows:

---

| I. INSURING AGREEMENT - COVERAGE A:  EXCESS FOLLOW FORM INSURANCE |
|---|

A.    We will pay on behalf of the **Insured** those sums in excess of the total applicable limits of **Scheduled Underlying Insurance** that the **Insured** becomes legally obligated to pay as damages provided the damages would be covered by **Scheduled Underlying Insurance**, except for exhaustion of the total applicable limits of **Scheduled Underlying Insurance** by the payment of **Loss**.

B.    Coverage A shall follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of **Scheduled Underlying Insurance** conflict with any provisions of this policy, the provisions of this policy will apply.

C.    Coverage A of this policy will not, in any event, provide broader coverage than that provided by **Scheduled Underlying Insurance**.

D.    If we are prevented by law or statute from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the total applicable limits of **Scheduled Underlying Insurance**.

E.    The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

| II. INSURING AGREEMENT - COVERAGE B:  UMBRELLA LIABILITY INSURANCE |
|---|

A.    We will pay on behalf of the **Insured** those sums in excess of the **Self-Insured Retention** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the **Insured** under an **Insured Contract** because of **Bodily Injury**, **Property Damage**, **Personal Injury** or **Advertising Injury** not covered by **Scheduled Underlying Insurance**, provided that:

1.    the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** happening anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**.

2.    the **Personal Injury** or **Advertising Injury** is caused by an **Occurrence** happening anywhere, and the **Occurrence** takes place during the **Policy Period**.

B.    Coverage B will not apply to damages that would have been covered by **Scheduled Underlying Insurance** even if the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss**.

A287

© 1999 American International Group, Inc.

C.  If we are prevented by law or statute  from paying damages on behalf of the **Insured**, then we will indemnify the **Insured** for those sums in excess of the Self-Insured Retention.

D.  The amount we will pay for damages is limited as described in Section IV. Limits of Insurance.

---

### III. DEFENSE PROVISIONS

A.  We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy:

  1.  under Coverage A, when the total applicable limits of Scheduled Underlying Insurance have been exhausted by payment of **Loss**.

  2.  under Coverage B, when the damages sought because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury would not be covered by Scheduled Underlying Insurance.

  We shall have the right and duty to defend any **Suit** against the **Insured** that seeks damages covered by this policy, even if the **Suit** is groundless, false or fraudulent.

  If we are prevented by law or statute from assurning the obligations specified under this provision, we will pay any expenses incurred with our consent.

B.  When we assume the defense of any **Suit** against the **Insured** that seeks damages covered by this policy, we will:

  1.  investigate, negotiate and settle the **Suit** as we deem expedient; and

  2.  pay the following supplementary payments to the extent that such payments are not covered by Scheduled Underlying Insurance:

    a.  premiums on bonds to release attachments for amounts not exceeding the applicable Limits of Insurance of this policy, but we are not obligated to apply for or furnish any such bond;

    b.  premiums on appeal bonds required by law to appeal the **Suit**, but we are not obligated to apply for or furnish any such bond;

    c.  all costs taxed against the **Insured** in the **Suit**;

    d.  pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make a settlement offer within the applicable Limits of Insurance of this policy that is acceptable to the claimant, we will not pay any pre-judgment interest accruing after we make such offer;

    e.  post-judgment interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court that part of the judgment that is within the applicable Limits of Insurance of this policy; and

    f.  the **Insured's** expenses incurred at our request or with our consent.

C.  Except as provided in Paragraph A. above, we shall have no duty to defend any **Suit** against the **Insured**. We will, however,  have the right, but not the duty, to participate  in the defense of any **Suit** and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

D.  We will not defend any **Suit** or investigate any claim after the exhaustion of the applicable Limits of Insurance of this policy by the payment of **Loss**.

A288

## IV. LIMITS OF INSURANCE

A. With respect to Coverages A and B, the Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.    Insureds;

    2.    claims made or Suits brought against any or all Insureds;

    3.    persons or organizations making claims or bringing Suits; or

    4.    coverages provided under this policy.

B. The General Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages under Coverage A and separately under Coverage B, except for:

    1.    damages covered by the **Products-Completed Operations Hazard**; and

    2.    damages covered by **Scheduled Underlying Insurance** to which no aggregate limit applies.

In addition, with respect to Coverage A only, if **Scheduled Underlying Insurance** contains an aggregate limit, other than an aggregate applying to the **Products-Completed Operations Hazard**, the General Aggregate Limit stated in Item 3 of the Declarations will apply in the same manner as the aggregate limit of any such **Scheduled Underlying Insurance**.

C. The Products-Completed Operations Aggregate Limit stated in Item 3 of the Declarations is the most we will pay for all damages included in the **Products-Completed Operations Hazard** for Coverage A and Coverage B combined.

D. Subject to Paragraphs B. and C. above, the Each Occurrence Limit stated in Item 3 of the Declarations is the most we will pay for the sum of all damages under Coverage A and Coverage B combined arising out of any one **Occurrence**.

E. Coverage A applies only in excess of the total applicable limits of **Scheduled Underlying Insurance**. If, however, a policy shown in the Schedule of Underlying Insurance forming a part of this policy has a limit of insurance:

    1.    greater than the amount shown in such schedule, this policy will apply in excess of the greater amount; or

    2.    less than the amount shown in such schedule, this policy will apply in excess of the amount shown in the Schedule of Underlying Insurance forming a part of this policy.

F. Under Coverage A, if the total applicable limits of **Scheduled Underlying Insurance** are reduced or exhausted by the payment of **Loss**, we will:

    1.    in the event of reduction, pay excess of the remaining total applicable limits of **Scheduled Underlying Insurance**; and

    2.    in the event of exhaustion, continue in force as underlying insurance.

G. Expenses incurred to defend any **Suit** or to investigate any claim will be in addition to the applicable Limits of Insurance of this policy, unless otherwise provided by **Scheduled Underlying Insurance**.

H. The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, beginning with the inception date of the **Policy Period** shown in the Declarations, unless the **Policy Period** is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance of this policy.

A289

## V. DEFINITIONS

A.  **Advertisement** under Coverage B means a paid broadcast, publication or telecast to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

B.  **Advertising Injury** under Coverage B means injury, other than **Bodily Injury** or **Personal Injury**, arising solely out of your **Advertisement** as a result of one or more of the following offenses:

   1.  slander or libel of a person or organization, or disparagement of a person's or organization's goods, products or services in your **Advertisement**;

   2.  violation of a person's right of privacy in your **Advertisement**;

   3.  misappropriation of another's advertising idea in your **Advertisement**; or

   4.  infringement upon another's copyright, trademark or slogan in your **Advertisement**.

C.  **Auto** under Coverage B and under any exclusion in this policy applicable to Coverage A means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **Mobile Equipment**.

D.  **Bodily Injury** under Coverage B and under any exclusion in this policy applicable to Coverage A means bodily injury, sickness, disability or disease, including death resulting from any of these at any time. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

E.  **Hostile Fire** under Coverage B and under any exclusion in this policy applicable to Coverage A means a fire that becomes uncontrollable or breaks out from where it was intended to be.

F.  **Impaired Property** under Coverage B means tangible property, other than **Your Product** or **Your Work**, that cannot be used or is less useful because:

   1.  it incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   2.  you have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   1.  the repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

   2.  your fulfilling the terms of the contract or agreement.

G.  **Insured** under Coverage A means:

   1.  the **Named Insured**; and

   2.  any person or organization that is an insured under **Scheduled Underlying Insurance**.

H.  **Insured** under Coverage B means:

   1.  the **Named Insured**;

   2.  if you are an individual, your spouse, but only with respect to the conduct of a business of which you are the sole owner;

   3.  your partners, joint venture members, executive officers, employees, directors, stock-holders or volunteers while acting within the scope of their duties as such;

   4.  any person or organization while acting as your real estate manager;

   5.  your legal representative if you die, but only with respect to duties as such; and

A290

6.   any person or organization to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of operations conducted by you or on your behalf.

Notwithstanding any of the above, no person or organization is an **Insured** with respect to the conduct of any current, past or newly formed partnership or joint venture that is not designated in Item 1 of the Declarations as a Named **Insured.**

I.   **Insured Contract** under Coverage B means that part of any contract or agreement pertaining to your business under which any **Insured** assumes the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** to a third person or organization. However, the **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** must arise out of an **Occurrence** that takes place subsequent to the execution of the **Insured Contract.** Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Solely for the purposes of liability assumed under an **Insured Contract,** reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an **Insured** are deemed to be damages because of **Bodily Injury, Property Damage, Personal Injury or Advertising Injury,** provided:

1.   liability to such party for that party's reasonable attorney's fees and necessary litigation expenses has also been assumed in the same **Insured Contract;** and

2.   such reasonable attorney's fees and necessary litigation expenses are for defense of that party against a **Suit** seeking damages covered by this policy.

J.   **Loss** under Coverages A and B means those sums actually paid as judgments and settlements and, under Coverage A if provided by **Scheduled Underlying Insurance,** expenses incurred to defend any **Suit** or to investigate any claim.

K.   **Mobile Equipment** under Coverage B and under any exclusion in this policy applicable to Coverage A means any of the following types of land vehicles, including any attached machinery or equipment:

1.   bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.   vehicles maintained for use solely on or next to premises you own or rent;

3.   vehicles that travel on crawler treads;

4.   vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.   power cranes, shovels, loaders, diggers or drills; or

    b.   road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   vehicles not described in Paragraph 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.   air compressors, pumps and generators including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.   cherry pickers and similar devices used to raise or lower workers;

6.   vehicles not described in Paragraph 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo.

A291

However, self-propelled vehicles with the following types of permanently attached equipment are not **Mobile Equipment**, but will be considered **Autos**:

    a.    equipment designed primarily for:

        i)    snow removal;

        ii)    road maintenance, but not construction or resurfacing; or

        iii)    street cleaning;

    b.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

L.    **Named Insured** under Coverage A means any person or organization designated in Item 1 of the Declarations, and any person or organization that is a named insured or the equivalent thereof in **Scheduled Underlying Insurance**.

M.    **Named Insured** under Coverage B means:

    1.    any person or organization designated in Item 1 of the Declarations;

    2.    any organization in which you maintain an interest of more than fifty percent (50%) as of the effective date of this policy and to which more specific insurance does not apply; and

    3.    any organization, except for a partnership or a joint venture, that you acquire or form during the **Policy Period** in which you maintain an interest of more than fifty percent (50%) and to which more specific insurance does not apply, provided that:

        a.    this policy does not apply to any **Bodily Injury** or **Property Damage** that occurred or any **Personal Injury** or **Advertising Injury** that was caused by an **Occurrence** that was committed before you acquired or formed such organization; and

        b.    you give us prompt notice after you acquire or form such organization.

        A partnership or a joint venture that you acquire or form during the **Policy Period** may be added as an **Insured** only by a written endorsement that we make a part of this policy.

        We may, at our option, make an additional premium charge for any organization that you acquire or form during the **Policy Period**.

N.    **Occurrence** under Coverage A means the definition given to that term or the equivalent thereof in **Scheduled Underlying Insurance**.

O.    **Occurrence** under Coverage B means:

    1.    as respects **Bodily Injury** or **Property Damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions shall be deemed to arise out of one **Occurrence**.

    2.    as respects **Personal Injury** or **Advertising Injury**, an offense arising out of your business that causes **Personal Injury** or **Advertising Injury**. All damages that arise from the same or related injurious material or act shall be deemed to arise out of one **Occurrence**, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

P.    **Other Insurance** under Coverages A and B means a policy of insurance providing coverage for damages covered in whole or in part by this policy.

A292

© 1999 American International Group, Inc.

However, **Other Insurance** does not include **Scheduled Underlying Insurance**, the **Self-Insured Retention** or any policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

Q.   **Personal Injury** under Coverage B means injury arising out of your business, other than **Bodily Injury** or **Advertising Injury**, caused by one or more of the following offenses:

1.   false arrest, detention or imprisonment;

2.   malicious prosecution;

3.   the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4.   oral, written or electronic publication of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services;

5.   oral, written or electronic publication of material that violates a person's right of privacy; or

6.   discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

   a.   not done intentionally by or at the direction of any **Insured**; and

   b.   not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any **Insured**.

R.   **Policy Period** under Coverages A and B means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of termination of this policy.

S.   **Pollutants** under Coverage B and under any exclusion in this policy applicable to Coverage A means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

T.   **Products-Completed Operations Hazard** under Coverage B and under any exclusion in this policy applicable to Coverage A means all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

1.   products that are still in your physical possession; or

2.   work that has not yet been completed or abandoned. However, **Your Work** will be deemed completed at the earliest of the following times:

   a.   when all of the work called for in your contract has been completed;

   b.   when all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

   c.   when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**Products-Completed Operations Hazard** does not include **Bodily Injury** or **Property Damage** arising out of:

A293

1. the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the loading or unloading of that vehicle by any Insured; or

2. the existence of tools, uninstalled equipment or abandoned or unused materials.

U. **Property Damage** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **Occurrence** that caused it.

V. **Scheduled Underlying Insurance** under Coverages A and B means:

1. the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy; and

2. automatically any renewal or replacement of any policy in Paragraph 1. above, provided that such renewal or replacement provides equivalent coverage to and affords limits of insurance equal to or greater than the policy being renewed or replaced.

**Scheduled Underlying Insurance** does not include a policy of insurance specifically purchased to be excess of this policy affording coverage that this policy also affords.

W. **Self-Insured Retention** under Coverage B means the amount applicable to each occurrence for which the Insured is responsible that is shown in Item 4 of the Declarations.

X. **Suit** under Coverages A and B means a civil proceeding seeking damages covered by this policy. Suit includes:

1. an arbitration proceeding in which such damages are claimed and to which the **Insured** must submit or does submit with our consent; or

2. any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

Y. **Your Product** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1. any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    a.  you;

    b.  others trading under your name; or

    c.  a person or organization whose business or assets you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1. warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2. the providing of or failure to provide warnings or instructions.

Your Product does not include vending machines or other property rented to or located for the use of others but not sold.

Z.    **Your Work** under Coverage B and under any exclusion in this policy applicable to Coverage A means:

1.    work or operations performed by you or on your behalf; and

2.    materials, parts or equipment furnished in connection with such work or operations.

**Your Work** includes:

1.    warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.    the providing of or failure to provide warnings or instructions.

---

## VI. EXCLUSIONS

A.    **Asbestos**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.    any obligation of the Insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.    any obligation to defend any Suit or claim against the Insured that seeks damages if such Suit or claim arises as the result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

B.    **Various Laws**

Under Coverages A and B, this insurance does not apply to any obligation of the Insured under any of the following:

1.    the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revision thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world; or

2.    any Workers' Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

C.    **Securities**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    the purchase, sale, offer of sale or solicitation of any security, debt, insurance policy, bank deposit or financial interest or instrument;

2.    any representations made at any time in relation to the price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument; or

3.    any depreciation or decline in price or value of any security, debt, insurance policy, bank deposit or financial interest or instrument.

A295

D.    **Employment Practices**

Under Coverages A and B, this insurance does not apply to any liability arising out of:

1.    failure to hire any prospective employee or any applicant for employment;

2.    termination of any employee;

3.    failure to promote or advance any employee; or

4.    employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a present, past, future or prospective employee.

This exclusion applies:

1.    whether the **Insured** may be liable as an employer or in any other capacity; and

2.    to any obligation to share damages with or repay someone else who must pay damages because of the injury.

E.    **Care, Custody and Control**

Under Coverages A and B, this insurance does not apply to Property Damage to:

1.    property you own, rent or occupy;

2.    premises you sell, give away or abandon if the **Property Damage** arises out of any part of those premises;

3.    property loaned to you;

4.    personal property in the care, custody or control of the **Insured**;

5.    that particular part of real property on which you or any contractors working directly or indirectly on your behalf are performing operations if the **Property Damage** arises out of those operations; or

6.    that particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

Paragraph 2. of this exclusion does not apply if the premises are **Your Work** and were never occupied, rented or held for rental by you.

Paragraphs 3, 4, 5 and 6 of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph 6 of this exclusion does not apply to **Property Damage** included in the **Products-Completed Operations Hazard.**

F.    **Nuclear Liability**

Under Coverages A and B, this insurance does not apply to:

1.    any liability:

a.    with respect to which the **Insured** is also an **Insured** under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Association, Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability;

b.    resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2)

the Insured is, or had this policy not been available would be. entitled to indemnity from the United States of America or any agency thereof under any agreement entered into by the United States of America or an agency thereof with any person or organization;

c.  resulting from the hazardous properties of nuclear material if:

i)  the nuclear material (1) is at any nuclear facility owned by the Insured or operated by the Insured or on the Insured's behalf or (2) has been discharged or dispensed therefrom;

ii)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the Insured or on the Insured's behalf; or

iii)  the injury or damage arises out of the furnishing by the Insured of services, materials, parts or equipment in connection with the planning. construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion iii. applies only to Property Damage to such nuclear facility and any property thereat.

2.  As used in this exclusion:

a.  "hazardous properties" includes radioactive. toxic or explosive properties:

b.  "nuclear material" means source material, special nuclear material or by-product material:

c.  "source material," "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

d.  "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

e.  "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

f.  "nuclear facility" means:

i)  any nuclear reactor;

ii)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel or (3) handling, processing or packaging wastes;

iii)  any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the Insured's custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235: or

iv)  any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

g.  "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

h.    Property Damage includes all forms of radioactive contamination of property.

G.    **Pollution - Coverage A**

Under Coverage A, this insurance does not apply to:

1.    any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants:

   a.    at or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any Insured;

   b.    at or from any premises, site or location that is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste;

   c.    that are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any Insured or any person or organization for whom you may be legally responsible;

   d.    at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the Pollutants are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor;

   e.    at or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of Pollutants;

   f.    that are contained in any property that is:

      i)    being transported or towed by, handled or handled for movement into, onto or from an Auto covered by Scheduled Underlying Insurance;

      ii)    otherwise in the course of transit by or on behalf of the Insured; or

      iii)    being stored, disposed of, treated or processed in or upon an Auto covered by Scheduled Underlying Insurance;

   g.    i)    before the Pollutants or any property in which the Pollutants are contained are moved from the place where they are accepted by the Insured for movement into or onto an Auto covered by Scheduled Underlying Insurance; or

      ii)    after the Pollutants or any property in which the Pollutants are contained are moved from the Auto covered by Scheduled Underlying Insurance to the place where they are finally delivered, disposed of or abandoned by the Insured.

2.    any loss, cost or expense arising out of any:

   a.    request, demand order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of Pollutants; or

   b.    claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of Pollutants.

However, the following exceptions to Paragraph 1. of this Pollution exclusion for Coverage A shall apply:

1)  **Products-Completed Operations Hazard:** Paragraphs 1a through 1d of this exclusion do not apply with respect to **Bodily Injury** or **Property Damage** included within the **Products-Completed Operations Hazard** provided that **Your Product** or **Your Work** has not at any time been:

   a)  discarded, dumped, abandoned, thrown away; or

   b)  treated or handled as waste;

   by anyone.

2)  **Hostile Fire:** Paragraphs 1a and 1d do not apply with respect to **Bodily Injury** or **Property Damage** arising out of heat, smoke or fumes from a **Hostile Fire**.

3)  **Equipment to Heat the Building and Contractor/Lessee Operations:** Paragraph 1a of this exclusion does not apply to:

   a)  **Bodily Injury** sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat the building; or

   b)  **Bodily Injury** or **Property Damage** for which you may be held liable if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional **Insured** with respect to your ongoing operations performed for that additional **Insured** at such premises, site or location, and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any **Insured**, other than the additional **Insured**.

4)  **Fuels, Lubricants and Other Operating Fluids - Mobile Equipment:** Paragraph 1d of this exclusion does not apply to:

   a)  **Bodily Injury** or **Property Damage** arising out of the escape of fuels, lubricants or other operating fluids that are needed to perform normal electrical, hydraulic or mechanical functions necessary for the operation of **Mobile Equipment** or its parts if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the **Bodily Injury** or **Property Damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor; or

   b)  **Bodily Injury** or **Property Damage** sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor.

5)  **Fuels, Lubricants, Fluids, etc. - Auto:** Paragraph 1f of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an **Auto** covered by **Scheduled Underlying Insurance** or its parts if:

   a)  the **Pollutants** escape, seep, migrate or are discharged, dispersed or released directly from an **Auto** part designed by its manufacturer to hold, store, receive or dispose of such **Pollutants**; and

      b)    the **Bodily Injury** or **Property Damage** does not arise out of the operation of any equipment listed in Paragraphs 6b and 6c of the definition of **Mobile Equipment.**

    6)    Upset, Overturn or Damage of an Auto: Paragraph 1g of this exclusion does not apply to **Occurrences** that take place away from premises owned by or rented to an **Insured** with respect to **Pollutants** not in or upon an **Auto** covered by **Scheduled Underlying Insurance** if:

      a)    the **Pollutants** or any property in which the **Pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **Auto** covered by **Scheduled Underlying Insurance;** and

      b)    the discharge, dispersal, seepage, migration, release or escape of the **Pollutants** is caused directly by such upset, overturn or damage.

**H.**    **Pollution - Coverage B**

Under Coverage B, this insurance does not apply to:

    1.    **Bodily Injury, Property Damage, Personal Injury** or **Advertising Liability** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants** anywhere in the world;

    2.    any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or assess the effects of **Pollutants;** or

    3.    any loss, cost or expense, including but not limited to costs of investigation or attorney's fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants.**

**I.**    **Damage to Impaired Property**

Under Coverage B, this insurance does not apply to **Property Damage** to Impaired Property or property that has not been physically injured, arising out of:

    1.    a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work;** or

    2.    a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

**J.**    **Damage to Your Product**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Product** arising out of it or any part of it.

**K.**    **Damage to Your Work**

Under Coverage B, this insurance does not apply to **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard.**

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**L.**    **Product Recall**

Under Coverage B, this insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

A300

1.    **Your Product**

2.    **Your Work;** or

3.    **Impaired Property;**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

M.    **Employee to Employee**

Under Coverage B, this insurance does not apply to liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

N.    **Willful Violation, Falsity, Prior Publication, Criminal, Assumed Liability**

Under Coverage B, this insurance does not apply to **Personal Injury** or **Advertising Injury**:

1.    caused by or at the direction of any **Insured** with the knowledge that the act would violate the rights of another and would inflict **Personal Injury** or **Advertising Injury**;

2.    arising out of oral, written or electronic publication of material if done by or at the direction of any **Insured** with knowledge of its falsity;

3.    arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the **Policy Period**;

4.    arising out of a criminal act committed by or at the direction of any **Insured**; or

5.    for which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

O.    **Various Advertising**

Under Coverage B, this insurance does not apply to **Advertising Injury**:

1.    arising out of a breach of contract, except an implied contract to use another's advertising idea;

2.    arising out of the failure of goods, products or services to conform with any statement of quality or performance made;

3.    arising out of the wrong description of the price of goods, products or services; or

4.    committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

P.    **Watercraft, Aircraft**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

Q.    **War**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

A301

R.  **Expected or Intended**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured**. However, this exclusion does not apply to:

1.  **Bodily Injury** or **Property Damage** resulting from the use of reasonable force to protect persons or property; or

2.  liability of the **Named Insured** for damages as the result of an act committed by the **Named Insured's** employee(s) which results in **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Named Insured's** employee(s), provided such act was not committed at the direction of the **Named Insured**.

S.  **Liquor Liability**

Under Coverage B, this insurance does not apply to **Bodily Injury** or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  causing or contributing to the intoxication of any person;

2.  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

T.  **"No-Fault," "Uninsured Motorist" or "Underinsured Motorist" Laws**

Under Coverage B, this insurance does not apply to any obligation of the **Insured** under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

---

## VII.  CONDITIONS - APPLICABLE TO COVERAGES A AND B

A.  **Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the total applicable limits of **Scheduled Underlying Insurance**, we may elect to do so. If we appeal, we shall be liable for, in addition to the applicable Limits of Insurance of this policy, all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

B.  **Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three (3) years after the expiration or termination of this policy.

C.  **Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of **Loss** covered by this policy. But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down, replace or assume any obligation under **Scheduled Underlying Insurance**.

D.  **Cancellation**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

A302

2.  We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.  The **Policy Period** will end on the day and hour stated in the cancellation notice.

4.  If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final Premium will not be less than the pro rata share of the Minimum Premium shown in Item 5 of the Declarations.

5.  If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium shown in Item 5 of the Declarations.

6.  Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter, but the cancellation will be effective even if we have not made or offered any refund of unearned premium. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.  The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.  Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

E.  Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or change in any part of this policy. This policy can be changed only by a written endorsement that we make to this policy.

F.  Duties in the Event of an Occurrence, Claim or Suit

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** that may result in a claim or **Suit** under this policy. To the extent possible, notice should include:

    a.  how, when and where the **Occurrence** took place;

    b.  the names and addresses of any injured persons and any witnesses; and

    c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **Suit** is brought against any **Insured** which is reasonably likely to involve this policy, you must notify us in writing:

    a.  under Coverage A, as soon as practicable and in accordance with the reporting provisions of **Scheduled Underlying Insurance**.

    b.  under Coverage B, as soon as practicable.

    Written notice should be mailed or delivered to: AIG Excess Casualty Claim Department, 70 Pine Street, New York, NY 10270.

3.  You and any other involved **Insured** must:

    a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **Suit**;

A303

     b.    authorize us to obtain records and other information;

     c.    cooperate with us in the investigation, settlement or defense of the claim or **Suit**; and

     d.    assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.    No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

## G.    Headings

The descriptions in the headings of this policy are solely for convenience and form no part of the terms and conditions of coverage.

## H.    Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions that we find. We may also recommend changes. We do not, however, undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant the health and safety conditions of your premises or operations or represent that your premises or operations comply with laws, regulations, codes or standards.

## I.    Knowledge of Occurrence or Claim

Knowledge of an **Occurrence**, claim or **Suit** by your agent, servant or employee shall not in itself constitute knowledge by you, unless a principal of yours shall have received notice of such **Occurrence**, claim or **Suit** from said agent, servant or employee.

## J.    Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.    you have complied with all the terms of this policy; and

2.    the amount you owe has been determined with our consent or by actual trial and final judgment.

## K.    Maintenance of Scheduled Underlying Insurance

During the **Policy Period**, you agree:

1.    to keep **Scheduled Underlying Insurance** in full force and effect;

2.    that the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance** will not materially change;

3.    that the total applicable limits of **Scheduled Underlying Insurance** shall not decrease, except for any reduction or exhaustion of aggregate limits by payment of **Loss**; and

4.    that any renewals or replacements of **Scheduled Underlying Insurance** will provide equivalent coverage to and afford limits of insurance equal to or greater than the policy being renewed or replaced.

If you fail to comply with these requirements, we will be liable only to the same extent that we would have had you fully complied with these requirements.

A304

L.    **Other Insurance**

If other valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply excess of the Other Insurance. However, this provision will not apply if the Other Insurance is specifically written to be excess of this policy.

M.    **Premium**

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 5 of the Declarations. At the beginning of the **Policy Period**, you must pay us the Advance Premium shown in Item 5 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure base will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event, we shall retain the Minimum Premium as shown in Item 5 of the Declarations for each twelve months of the **Policy Period**.

N.    **Separation of Insureds**

Except with respect to the Limits of Insurance of this policy and rights or duties specifically assigned to the first **Named Insured** designated in Item 1 of the Declarations, this insurance applies:

1.    as if each Named Insured were the only Named Insured; and

2.    separately to each **Insured** against whom claim is made or **Suit** is brought.

O.    **Transfer of Rights of Recovery**

1.    If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

2.    Any recoveries shall be applied as follows:

a.    any person or organization, including the **Insured**, that has paid an amount in excess of the applicable Limits of Insurance of this policy will be reimbursed first;

b.    we then will be reimbursed up to the amount we have paid; and

c.    lastly, any person or organization, including the **Insured** that has paid an amount over which this policy is excess is entitled to claim the remainder.

Expenses incurred in the exercise of rights of recovery shall be apportioned among the persons or organizations, including the **Insured**, in the ratio of their respective recoveries as finally settled.

3.    If, prior to the time of an **Occurrence**, you and the insurer of **Scheduled Underlying Insurance** waive any right of recovery against a specific person or organization for injury or damage as required under an **Insured Contract**, as that term is defined under Coverage B, we will also waive any rights we may have against such person or organization.

P.    **Transfer of Your Rights and Duties**

Your rights and duties under this policy may not be transferred without our written consent.

A305

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first Named Insured designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.    **Unintentional Failure to Disclose**

Your failure to disclose all hazards existing as of the inception date of the policy shall not prejudice you with respect to the coverage afforded by this policy, provided that any such failure or omission is not intentional.

R.    **When Damages are Payable**

We will not make any payment under this policy unless and until:

1.     under Coverage A, the total applicable limits of **Scheduled Underlying Insurance** have been exhausted by the payment of **Loss.**

2.     under Coverage B, the **Self-Insured Retention** has been exhausted by the payment of **Loss.**

When the amount of **Loss** has finally been determined, we will promptly pay on behalf of the **Insured** the amount of such **Loss** within the applicable Limits of Insurance of this policy.

You shall promptly reimburse us for any amount within the **Self-Insured Retention** paid by us on behalf of the **Insured.**

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by one of our duly authorized representatives, where required by law.

*Susan Rivera*
President
American Home Assurance Company

*W. N. Knight*
President
American International South
Insurance Company

*John Doog C*
President
National Union Fire Insurance
Company of Pittsburgh, PA

*K*
President
Illinois National Insurance Company

*Daniel W Aeg*
President
National Union Fire Insurance
Company of Louisiana

*Elizabeth M. Tuck*
Secretary
American Home Assurance Company
American International South
Insurance Company
National Union Fire Insurance
Company of Pittsburgh, PA
Illinois National Insurance Company
National Union Fire Insurance
Company of Louisiana

A306

© 1999 American International Group, Inc.

ENDORSEMENT No. 2

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE<sup>SM</sup>**
**Commercial Umbrella Liability Policy**

**Aircraft Exclusion**
**Applicable to Coverage A and B**

This policy is amended as follows:

> Under Coverages A and B, this insurance does not apply to any liability arising out of the ownership, maintenance, operation, use, loading or unloading, or entrustment to others, of any aircraft.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in States Where    A307
Applicable)

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE     8716521

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

**Healthcare Services Exclusion**
**Applicable to Coverages A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability arising out of any actual or alleged act, error or omission committed by or on behalf of the **Insured** in performing or failing to perform healthcare services including, but not limited to:

1.    medical, surgical, dental or nursing treatment;

2.    furnishing or dispensing of food, beverages,  medications, or medical, dental or surgical supplies or appliances in connection with such services;

3.    handling or treatment of dead bodies, including  autopsies, organ donation or other procedures; or

4.    service by any person as a member of a formal accreditation  or similar professional board or committee of the **Named Insured**, or as a person charged with  the duty of executing directives of any such board or committee.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

**Authorized Representative or
Countersignature (in States Where
Applicable)**

A308

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE     8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

**UMBRELLA ELITE<sup>SM</sup>**
**Commercial Umbrella Liability Policy**

**Hospital Professional Services Exclusion**
**Applicable to Coverages A and B**

This policy is amended as follows:

Under Coverages A and B, this insurance does not apply to any liability arising out of any actual or alleged act, error or omission committed  by or on behalf of the **Insured** in rendering or failing to render professional healthcare services including,  but not limited to:

1.  medical, surgical, dental or nursing treatment;

2.  furnishing or dispensing of food, beverages, medications, or medical, dental or surgical supplies or appliances in connection with such services;

3.  handling or treatment of dead bodies, including autopsies, organ donation or other procedures; or

4.  service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured**, or as a person charged  with the duty of executing directives of any  such board or committee.

However, this exclusion shall not apply to **Bodily Injury** that is directly caused by one or more of the following named perils, and takes place on the **Insured's** premises:

a.  fire or lightning;

b.  windstorm or hail;

c.  explosion;

d.  riot, strike or civil commotion;

e.  hazards involving any aircraft or vehicle;

f.  sonic shock waves;

g.  smoke;

h.  vandalism or malicious mischief;

i.  sprinkler leakage;

j.  elevator malfunction;

k.  earthquake or flood;

l.  structural collapse of building; or

m.  ownership, maintenance or use of premises and all operations necessary or incidental thereto.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

**Authorized Representative or**
**Countersignature (in States Where**
**Applicable)**

A309

72795 (3/99)

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:    PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

**Automobile Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, operation, use, loading  or unloading, or entrustment to others of any **Auto.**

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in States Where
Applicable)

A310

72722 (3/99)

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:  PER CERTIFICATE

Forms a part of policy no.:  BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
**Commercial Umbrella Liability Policy**

**Employers Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Under Coverage B, this insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of his or her employment by the **Insured**, or performing duties related to the conduct of the **Insured's** business.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in States Where
Applicable)

A311

72741 (3/99)

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE 8716521

Issued to: HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## CLAIMS-MADE FOLLOW FORM SEXUAL ABUSE

Various provisions in this endorsement restrict coverage. Read this endorsement carefully to determine the rights and duties and what is and is not covered.

Notice: Please read this endorsement carefully. This endorsement provides coverage on a claims-made basis. Except to the extent as may otherwise be provided herein, the coverage of this insurance is limited to liability for only those claims that are first made against the Insured during the policy period and reported in writing to the insurer pursuant to the terms herein.

This insurance does not apply to liability arising out of sexual abuse, sexual molestation, sexual exploitation or sexual injury arising out of the insured's operations.

However, if insurance is provided by a policy listed in the schedule of underlying insurance, this exclusion shall not apply and;

A.    We will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of an occurrence that takes place during the Policy Period if such coverage is provided by a policy listed in Schedule of Underlying Insurance.

B.    Coverage shall follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance (provided by <u>as per certificate</u> under form number <u>as per certificate</u>), subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of Scheduled Underlying Insurance conflict with any provisions of this policy, the provisions of this policy will apply.

C.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

D.    This insurance applies on if a Claim for Damages is first made in writing against the Insured during the Policy Period and written notice is received by us.

E.    Such Occurrence must occur on or after the Retroactive Date and prior to the end of the Policy Period.

A312

**EXCLUSIONS**

This insurance shall not apply to **Claims:**

1.  alleging or arising out of an **Occurrence** committed prior to the Retroactive Date if on or before the Retroactive Date, you knew or could have reasonably foreseen that such Occurrence would result in a **Claim** against **you:**

2.  arising out of the same **Occurrence** or series of continuous, repeated or related **Occurrence**, alleging the same or similar facts, alleged contained in any **Claim** which has been reported, or any **Occurrence** of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time.

3.  Arising out of any claim, demand or litigation prior to or pending as of the Retroactive Date; or arising out of or relating to any fact, circumstance situation or Occurrence alleged in such claim, demand or litigation.

**DEFINITIONS**

The following definitions shall apply:

Retroactive Date means the date indicated below as the Retroactive Date.

Retroactive Date:  <u>INCEPTION</u>

**EXTENDED REPORTING PERIOD**

a.  We will provide an Extended Reporting Period if the policy is either cancelled or not renewed by the first Named Insured or by us for any reason except non-payment of premium.  Non-renewal by us shall mean the refusal by us to renew the policy on any terms.  Non-renewal by us shall not mean change in premium, deductible, or underlying required limits, or any other terms and conditions.

b.  A **claim** first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of **personal injury or property damage or advertising injury** that occurred before the end of the policy period but not before any applicable retroactive date.

c.  The Extended Reporting Period will not reinstate the aggregate limit nor otherwise increase the limits of liability or extend the policy period.

d.  The Extended Reporting Period will be as set forth below:

1)  If no other insurance purchased by the first Named Insured to replace this policy applies to the **claim** or would apply but for the exhaustion of its applicable limits of liability, and Extended Reporting Period within sixty (60) days from the end of the policy period will apply.  This Extended Reporting Period may not be cancelled and requires no additional premium.

A313

2)     If the first Named Insured makes a written request for and pays the additional premium for an Extended Reporting Period within thirty (30) days after the expiration of the policy period, we will issue an Extended Reporting Period Endorsement for a period of twelve (12) months from the end of the policy period.

The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be cancelled.

The Extended Reporting Period Endorsement will also amend the other insurance conditions so that the insurance provided will be excess over any other valid and collectible insurance available to an insured whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the endorsement takes effect.

e.     The premium for the Extended Reporting Period Endorsement will not exceed the percentage of the total annual premium for this policy as stated in item 5 of the Declarations. The premium for the Extended Reporting Period will be fully earned when the endorsement takes effect.

All other terms, conditions and exclusions remain the same.

Authorized Representative or
(Countersignature (in States Where
Applicable)

A314

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH.PA.

**UMBRELLA ELITE[SM]**
**Commercial Umbrella Liability Policy**

**No Fault, Uninsured or Underinsured**
**Motorist Exclusion**
**Applicable to Coverage A**

With respect to Coverage A, this policy is amended as follows:

> Under Coverage A, this insurance does not apply to any obligation of the Insured under any "No-Fault," "Uninsured Motorist" or "Underinsured Motorist" law.

All other terms, definitions, conditions and exclusions remain unchanged.

Authorized Representative or
Countersignature (in States Where    A315
Applicable)

72768 (3/99)

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:  PER CERTIFICATE

Forms a part of policy no.:  BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE<sup>SM</sup>**
**Commercial Umbrella Liability Policy**

**Professional Services Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

> Under Coverage B, this insurance does not  apply to  any liability  for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising  out  of  any  act,  error  or  omission committed by or on  behalf  of  the  **Insured**  in  performing  or  failing  to  perform  professional services.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in States Where
Applicable)

A316

72782 (3/99)

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:    PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**<sup>SM</sup>
**Commercial Umbrella Liability Policy**

**Retroactive Date**
**Applicable to Coverages A and B**

This policy is amended as follows:

The Declarations is amended to include the following:

RETROACTIVE DATE: <u>SEE BELOW</u>         APPLICABLE TO: <u>D&O AND PROFESSIONAL LIABILITY</u>
            (Date)                                    (Name of Coverage)

Section I. Insuring Agreement - Coverage A is amended by adding the following:

> The Retroactive Date shown on the Declarations shall apply to all claims arising out of the coverage named below.

Section VI. Exclusions is amended by adding the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of the coverage named below.

<u>Name of Coverage(s):</u>

DIRECTORS & OFFICERS AND PROFESSIONAL LIABILITY
 AS PER INDIVIDUAL CERTIFICATES

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

_____
**Authorized Representative**
**or countersignature (in states where applicable)** A317

74720  (12/99)
AH0663

INSURED'S COPY

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:   PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE$^{SM}$**
**Commercial Umbrella Liability Policy**

**Employee Benefits Liability Exclusion**
**Applicable to Coverage B**

This policy is amended as follows:

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of:

1.  any violation of any of the responsibilities, obligations or duties imposed upon fiduciaries by ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.  any act, error or omission committed by or on behalf of the **Insured** solely in the performance of one or more of the following administrative duties or activities:

    a.   giving counsel to employees with respect to a plan;

    b.   interpreting a plan;

    c.   handling of records in connection with a plan;

    d.   effecting enrollment, termination or cancellation of employees under a plan; or

    e.   any matter claimed against an **Insured** solely by reason of his, her or its status as an administrator, the plan or you as sponsor of the plan.

ERISA as used in this endorsement means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985), and including any amendment or revisions thereto, or any similar common or statutory law of the United States, Canada or any state or jurisdiction anywhere in the world to which a plan is subject.

Plan as used in this endorsement means any plan, fund or program established anywhere in the world, regardless of whether it is subject to regulation under Title 1 of ERISA or meets the requirements for qualification under Section 401 of the Internal Revenue Code of 1986, as amended and which is:

1.  a welfare plan, as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

2.  a pension plan as defined in ERISA or any similar law regarding workers' compensation, unemployment insurance, Social Security or any government-mandated disability benefits;

3.  a combination of 1. and 2. above.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

A318

Authorized Representative
or Countersignature (in States Where Applicable)

72850 (1/00)

ENDORSEMENT No. 12

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE**[SM]
Commercial Umbrella Liability Policy

**Excess Casualty CrisisFund**[SM]
(Crisis Communications Management Insurance)

This policy is amended to provide Crisis Communications Management Insurance pursuant to the terms, definitions, conditions and exclusions set forth below:

1.    The following new insuring agreement is added to this policy:

CRISIS COMMUNICATIONS MANAGEMENT INSURANCE

We will reimburse the **Named Insured** for **Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the **Policy Period**, up to the amount of the **Crisis Management Limit of Insurance**.

2.    There shall be no **Scheduled Underlying Insurance** or **Self-Insured Retention** amount applicable to **Crisis Management Loss**. We shall pay such **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

3.    A **Crisis Management Event** shall be reported to us as soon as practicable but in no event later than thirty (30) days after the **Named Insured** first incurs a **Crisis Management Loss** for which coverage will be requested under this endorsement.

4.    There shall be no requirement for the **Named Insured** to obtain prior written approval from us before incurring any **Crisis Management Loss**. provided that the **Crisis Management Firm** selected by the **Named Insured** to perform the **Crisis Management Services** has been approved by us.

5.    In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Management Event** has occurred, the **Named Insured** may retain the services of an approved **Crisis Management Firm**, and the right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

6.    The following definitions shall apply for the purpose of the coverage provided by this endorsement only:

a.    **Crisis Management Event** means an **Occurrence** that in the good faith opinion of a **Key Executive** of the **Named Insured**, in the absence of **Crisis Management Services**, has reasonably been associated with or may be associated with:

(1)    damages covered by this policy under Coverage A that  are in excess of the applicable limits of **Scheduled Underlying Insurance**  shown in the Schedule of Underlying Insurance forming a part of this policy or under Coverage B  that  are in excess of the **Self-Insured Retention**; and

(2)    significant adverse regional or national media coverage.

A319

Crisis Management Event shall include, without limitation, man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, paraplegia, or contamination of food, drink or pharmaceuticals.

For the purposes of this endorsement, a Crisis Management Event shall first commence when the Named Insured or any of its principals shall first become aware of the Occurrence and shall conclude at the earliest of the time when the Crisis Management Firm advises the Named Insured that the crisis no longer exists or when the Crisis Management Limit of Insurance has been exhausted.

b.  Crisis Management Firm means any public relations firm or crisis management firm approved by us that is hired by the Named Insured to perform Crisis Management Services in connection with a Crisis Management Event. Attached to and forming a part of this endorsement is a list of firms that have been pre-approved by us and may be hired by the Named Insured without further approval by us. In the event the Named Insured chooses to retain the services of an entity not listed on the attached list, the Named Insured must obtain our consent, which remains in our sole discretion.

c.  Crisis Management Limit of Insurance shall mean Twenty-five Thousand Dollars ($25,000). The Crisis Management Limit of Insurance is the most we will pay for all Crisis Management Loss under this policy, regardless of the number of Crisis Management Events first commencing during the Policy Period. This Crisis Management Limit of Insurance shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations.

d.  Crisis Management Loss means the following amounts incurred during the pendency of a Crisis Management Event:

(1)  Amounts for the reasonable and necessary fees and expenses incurred by a Crisis Management Firm in the performance of Crisis Management Services for the Named Insured solely arising from a covered Crisis Management Event; and

(2)  Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the Named Insured or the Crisis Management Firm, solely arising from a covered Crisis Management Event.

e.  Crisis Management Services means those services performed by a Crisis Management Firm in advising the Named Insured on minimizing potential harm to the Named Insured from a covered Crisis Management Event by maintaining and restoring public confidence in the Named Insured.

f.  Key Executive means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the Named Insured is a partnership) of the Named Insured or sole proprietor (if the Named Insured is a sole proprietorship). A Key Executive also means any other person designated as such and scheduled by written endorsement.

7.  The following additional exclusions shall be applicable to the coverage provided by this endorsement:

This insurance shall not apply to any Crisis Management Loss in connection with a Crisis Management Event:

a.  arising out of, based upon or attributable to the facts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a

A320

renewal or replacement or which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

b.    arising out of, based upon or attributable to any pending or prior crisis, claim, or **Suit** as of the inception date of this policy:

c.    arising directly or indirectly out of:

    (1)    any actual or alleged failure, malfunction or inadequacy of:

        (a)    any of the following, whether belonging to any **Insured** or to others:

            i.    computer hardware, including microprocessors:

            ii.    computer application software;

            iii.    computer operating systems and related software;

            iv.    computer networks;

            v.    microprocessors (computer chips) not part of any computer system; or

            vi.    any other computerized or electronic equipment or components; or

        (b)    any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph (1)(a) of this exclusion

        due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

    (2)    any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or on behalf of the **Insured** to determine, rectify or test for any potential or actual problems described in Paragraph (1) of this exclusion.

8.    Any payments for **Crisis Management Loss** that we make under this endorsement shall not create any duty to defend any **Suit** arising from a covered **Crisis Management Event**, nor any coverage obligations under this policy.

9.    If this Crisis Communications Management Insurance and any other insurance issued to the Named Insured by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess insurance over this endorsement.

All other terms, definitions, conditions and exclusions remain unchanged.

**Authorized Representative**
**or countersignature (in states where applicable)**

A321

**Excess Casualty Crisis Fund**[SM]
(Crisis Communications Management Insurance)

*Pre-Approved Crisis Management Firms*
*as of January 10, 2000*

---

### Abernathy MacGregor Frank

<u>New York Office</u>
501 Madison Avenue
New York, NY 10022

Contact: James T. MacGregor
(212) 371-5999
(212) 593-1845 fax
jtm@abmac.com

*Emergency*
(212) 688-0926
(917) 593-1845    cell phone

Contact: Andrew H. Brimmer
(212) 371-5999
(212) 593-1845 fax
ahb@abmac.com

*Emergency*
(212) 727-9599
(917) 860-2656    cell phone

<u>Los Angeles Office</u>
611 West Sixth Street
Suite 1880
Los Angeles, CA 90017

Contact: Ian D. Campbell
(213) 630-6550
(213) 489-3443 fax
idc@abmac.com

*Emergency*
(818) 957-5650
(917) 940-3476    cell phone

---

### Edelman Public Relations Worldwide

<u>New York Office</u>
1500 Broadway
New York, NY 10036

Contact: Jon Goldberg
(212) 704-8115
(212) 704-0129 fax
jon__goldberg@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

Contact: Mitch Baranowski
(212) 704-4441
(212) 704-0129 fax
mitch__baranowski@edelman.com

*Emergency*
(212) 768-0550
*Operator will page contact*

*Additional United States/Canada Offices:*
*Atlanta; Austin; Chicago; Dallas; Houston; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.*

*International Offices:*
*Latin America: Buenos Aires; Mexico City; Sao Paulo*
*Europe: Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris*
*Asia Pacific: Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei*

---

### Hill & Knowlton

<u>New York Office</u>
466 Lexington Avenue
3rd Floor
New York, NY 10017

Contact: Richard C. Hyde
(212) 885-0372
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Arthur Foster
(212) 885-0442
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

A322

## Hill & Knowlton (continued)

Contact: Denise DeShane
(212) 885-0390
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

Contact: Alex Goldsmith
(212) 885-0467
(212) 885-0570 fax

*Emergency*
Contact switchboard @
(212) 885-0300

*Additional United States/Canada Offices:*
   Atlanta; Chicago; Detroit; Ft. Lauderdale; Houston; Irvine; Los Angeles; Pittsburgh; Montreal;
   Ottawa; Sacramento; San Francisco; San Juan; Tampa; Toronto; Washington, D.C.

*International Offices:*
   Latin America: Buenos Aires; Mexico City; Sao Paulo
   Europe, Middle East, Africa: Amsterdam; Athens; Barcelona; Brussels; Budapest; Dubai;
   Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga;
   Stockholm; Tallinn
   Asia Pacific: Auckland; Beijing; Canberra; Guangzhou; Hong Kong; Kuala Lumpur; Melbourne;
   Shanghai; Singapore; Sydney; Taipei; Tokyo; Wellington

## Kekst and Company

New York Office
437 Madison Avenue
19th Floor
New York, NY 10022

Contact: Ruth E. Pachman
(212) 521-4819
(212) 521-4900 fax

*Emergency*
Leave voice mail or
contact operator @
(212) 521-4800

## Kroll Associates

New York Office
900 Third Avenue
New York, NY 10022

Contact: Mary Jo Phillips
(212) 833-3246
(212) 644-5794 fax

*Emergency*
1-800-GET-KROL
World Wide Crisis Division
*24 hours/7 days*

## Lexicon Communications Corp.

Los Angeles Office
333 South Grand Avenue
Suite 3560
Los Angeles, CA 90071

Contact: Steven B. Fink
(213) 346-1212
(213) 346-1210 fax
sfink@lexiconcorp.com

*Emergency*
Contact switchboard @
(213) 346-1200

## Robinson Lerer & Montgomery

New York Office
75 Rockefeller Plaza
6th Floor
New York, NY 10019

Contact: Michael J. Gross
(212) 484-6100
(212) 484-7411 fax

*Emergency*
Contact switchboard @
(212) 484-6100

A323

Sard Verbinnen & Co.

| New York Office<br>630 Third Avenue<br>New York, NY 10017 | Contact: George Sard<br>(212) 687-8080<br>(212) 687-8344 fax | *Emergency*<br>Contact switchboard @<br>(212) 687-8080 |

Sitrick and Company Inc.

| Los Angeles Office<br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Contact: Michael S. Sitrick<br>(310) 788-2850<br>(310) 788-2855 fax | *Emergency*<br>(310) 319-2786<br>*24 hours/7 days* |

*Additional United States Offices: New York and Washington, D.C.*

A324

AH0559

ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:  PER CERTIFICATE

Forms a part of policy no.: BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

UMBRELLA ELITE $^{SM}$
Commercial Umbrella Liability Policy

Limits of Insurance
Applicable to  Coverage A and B

This policy is amended as follows:

The Declarations, Item 3. Limits of Insurance - Coverage A and B is  amended to include the following:

$10,000,000 Each Claim/$10,000,000 Aggregate  limit of Insurance

Section IV. Limits of Insurance is amended to include the following:

The Directors & Officers (EXCL EPLI) limit of Insurance stated in Item 3. Of the Declarations is the most we will pay for all damages included in the Directors & Officers:

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury included in the Directors & Officers Coverage.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative
or countersignature (where required by law)

A325

ENDORSEMENT No. 14

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.:  BE    8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

UMBRELLA ELITE [SM]
Commercial Umbrella Liability Policy

LIMITS OF INSURANCE SUBLIMIT
Applicable to Coverages A and B

This policy is amended as follows:

The Declarations, Item 3. Limits of Insurance - Coverages A and B is amended  to include the following:

$5,000,000 Claim Made Follow Form Sexual Abuse Sublimit of Insurance

Section IV. Limits of Insurance is amended to include the following:

The Claim Made Follow Form Sexual Abuse Sublimit of Insurance stated in Item 3. Of the Declarations is the most we will pay for all damages included in the Claim Made Follow Sexual Abuse Coverage.

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury included in the  Claim Made Follow Form Sexual Abuse Coverage.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

74698 (12/99)

A326

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT No. 15

This endorsement, effective 12:01 AM:　PER CERTIFICATE

Forms a part of policy no.:　BE　　8716521

Issued to:　HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:　NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE$^{SM}$**
**Commercial Umbrella Liability Policy**

LIMITS OF INSURANCE SUBLIMIT
**Applicable to Coverages A and B**

This policy is amended as follows:

The Declarations, Item 3. Limits of Insurance - Coverages A and B is amended  to include the following:

$10,000,000 Professional Liability / E & O Sublimit of Insurance

Section IV. Limits of Insurance is amended to include the following:

The Professional Liability / E & O Sublimit of Insurance stated in Item 3. Of the Declarations is the most we will pay for all damages included in the Professional Liability / E & O Coverage.

Section VI. Exclusions is amended to include the following additional exclusion:

Under Coverage B, this insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury included in the  Professional Liability / E & O Coverage.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

74698 (12/99)

Authorized Representative
or countersignature (where required by law)

A327

**ENDORSEMENT No. 16**

This endorsement, effective 12:01 AM: PER CERTIFICATE

Forms a part of policy no.: BE  8716521

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By: NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,PA.

**UMBRELLA ELITE[SM]**
**Commercial Umbrella Liability Policy**

**Rhode Island Amendatory Endorsement**
**Applicable to Coverages A and B**

This policy is amended as follows:

I.    In Section VII. Conditions-Applicable to Coverages A and B. Condition D. Cancellation is deleted in its entirety and replaced by the following:

   D.    Cancellation

      1.    You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

      2.    New Policies in Effect for Less Than Sixty (60) Days

         We may cancel this policy. If we cancel because of nonpayment of premium, we must mail or deliver to you and your agent, if any, not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason, we must mail or deliver to you and your agent, if any, not less than (90) days advance written notice stating when the cancellation is to take effect. Proof of mailing or delivering notice of cancellation will be sufficient proof of notice.

      3.    New Policies in Effect for Sixty (60) Days or More and Any Renewal Policy

         We may not cancel this policy unless the cancellation is based on at least one of the following reasons:

         a.    Nonpayment of premium;

         b.    Fraud or material misrepresentation made by, or with the knowledge of you or another Insured in obtaining this policy, continuing this policy, or in presenting a claim under this policy;

         c.    Activities or omissions on the part of you or another Insured which increase any hazard insured against, including a failure to comply with loss control recommendations;

         d.    Change in the risk which increases the risk of loss after insurance coverage has been issued or renewed including, but not limited to, an increase in exposure due to regulation, legislation or court decision;

         If we cancel because of nonpayment of premium, we must mail or deliver to you and your agent, if any, not less than  ten (10) days advance written notice stating when the cancellation is take effect. If we cancel for any of the other reasons listed above, we must mail or deliver to you and your agent, if any, not less than thirty (30) days advance written notice stating when the cancellation is to take effect. Proof of mailing or delivering notice of cancellation will be sufficient proof of notice.

A328

4.    The **Policy Period** will end on the day and hour stated in the cancellation notice.

5.    If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 5 of the Declarations.

6.    If you cancel, final premium will be more than pro rata: it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 5 of the Declarations.

7.    Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

8.    The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

9.    Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

II.    Section VII. Conditions-Applicable to Coverages A and B is amended by adding the following provision:

**Nonrenewal**

1.    If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first **Named Insured** and agent, if any, at least thirty (30) days before the expiration date of this policy. Proof of mailing or delivering notice of nonrenewal will be sufficient proof of notice.

2.    We need not mail or deliver a notice of nonrenewal if:

a.    We or another company within the same insurance group have offered to issue a renewal policy; or

b.    You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

III.    Section VII. Conditions-Applicable to Coverages A and B is amended by adding the following provision:

**Notice of Premium or Coverage Changes**

We shall mail or deliver to the first **Named Insured**, at the mailing address shown on the policy, or to the agent of record, written notice of premium increase, change in deductible, reduction in limits or coverage at least thirty (30) days prior to the expiration date of the policy, in the case of notice to the first **Named Insured** or forty-five (45) days in the case of notice to the agent of record. If we fail to provide such notice, the coverage provided to you shall remain in effect until such notice is provided or until the effective date of replacement coverage obtained by you, whichever first occurs.

All other terms, definitions, conditions and exclusions of this policy remain unchanged.

Authorized Representative or
Countersignature (in States Where    A329
Applicable)

# RLI

**RLI Insurance Company**
Peoria, Illinois 61615
(herein called the "Company")

## COMMERCIAL UMBRELLA LIABILITY POLICY
(Occurrence Form)

## DECLARATIONS

NO. OUL  021946

RENEWAL OF

**PRODUCER**

PROGRAM BROKERAGE COPR.
122 EAST 42ND STREET
NEW YORK, NY 10168

**ITEM 1. NAMED INSURED AND ADDRESS** (No., Street, Town or City, State)

HEALTH & EDUCATION LIABILITY PROGRAM, INC.
C/O PROGRAM BROKERAGE CORPORATION
175 METRO CENTER BOULEVARD
WARWICK, RI 02886

NAMED INSURED IS

☐ Individual
☐ Corporation
☐ Partnership
☐ Joint Venture
☒ Other: PURCHASING GR(

**ITEM 2. POLICY PERIOD** (Mo./Day/Yr.)

FROM   **PER CERT**   TO   **PER CERT**        12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**ITEM 3. LIMITS OF LIABILITY**

$ 10,000            Each Occurrence

$ DOES NOT APPLY    Products/Completed Operations Aggregate

$ DOES NOT APPLY    General Aggregate (Other Than Products/Completed Operations)

**ITEM 4. RETAINED LIMIT  $**            NIL

**ITEM 5. SCHEDULE OF UNDERLYING INSURANCE** See Schedule attached hereto and made a part hereof.

**ITEM 6. PREMIUM**

Advance Premium $ **PER CERT**       Rate $            Premium Basis

Minimum Premium $                   Estimated Exposure

Audit Period (annual unless noted)

**ITEM 7. FORMS AND ENDORSEMENTS ATTACHED AND MADE A PART OF THIS POLICY AT ISSUE**
AMR112-1,2,3 CEE-321

Countersigned by _____                A330

_Authorized Representative_

Complete the following only if endorsement is issued after policy effective date

| POLICY NO.<br>OUL021946 | INSURED<br>HEALTH & EDUCATION LIABILITY PROGRAM INC. | EFFECTIVE DATE<br>Per Certificate | COMPANY NAME<br>RLI |
|---|---|---|---|

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF UNDERLYING INSURANCE
## UMBRELLA LIABILITY

| TYPE OF COVERAGE | | INSURER AND<br>POLICY NUMBER | POLICY<br>PERIOD | LIMITS OF<br>LIABILITY |
|---|---|---|---|---|
| 1. | Comprehensive/Commercial<br>General Liability | VARIOUS | VARIOUS | |
| A. | General Aggregate Limit<br>(other than Products- Completed Operations) | | | $ 1,000,000 |
| B. | Products - Completed<br>Operations Aggregate Limit | | | $ 1,000,000 |
| C. | Personal and Advertising<br>Injury Limit | | | $ 1,000,000 |
| D. | Each Occurrence Limit | | | $ 1,000,000 |
| 2. | Commercial<br>Automobile Liability | VARIOUS | VARIOUS | $ 1,000,000 |
| 3. | Standard Worker's Compensation<br>& Employer's Liability Policy | VARIOUS | VARIOUS | $ 500,000<br>$ 500,000<br>$ 500,000 |
| 4. | Other PROFESSIONAL LIAB. | VARIOUS | VARIOUS | $ 1,000,000<br>$<br>$ |
| 5. | D&O LIABILITY | VARIOUS | VARIOUS | 1,000,000<br>EACH<br>CLAIM/AG<br>GREGATE |
| 6. | Sexual Abuse Liability | VARIOUS | VARIOUS | $1,000,000<br>EACH<br>CLAIM<br>AGGREGATE |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

CEE-321 (11/91)

A331

☒    **RLI INSURANCE COMPANY**

☐    **MT. HAWLEY INSURANCE COMPANY**

| END. NO. | POLICY NUMBER | INSURED | END. EFFECTIVE DATE<br>Per Certificate<br>(12:01 A.M.) |
|---|---|---|---|
| 1 | OUL 021946 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | |

### FOLLOWING FORM ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED NOTWITHSTANDING ANYTHING CONTAINED IN THIS POLICY TO THE CONTRARY THAT THIS POLICY IS FOLLOWING FORM OF ALL TERMS AND CONDITIONS OF NATIONAL UNION FIRE INSURANCE COMPANY POLICY # BE7402566 AND ALL SUBSEQUENT RENEWALS AND/OR REPLACEMENTS THEREOF.

LIMIT:    $10,000 INCLUDING FEES, COSTS AND EXPENSES

SEE ENDORSEMENT #2 FOR SPECIAL COVERAGE WORDING

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form part of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____

(Authorized Agent)

AMR112(11-86)

A332

☒   RLI INSURANCE COMPANY

☐   MT. HAWLEY INSURANCE COMPANY

| END. NO. | POLICY NUMBER | INSURED | END. EFFECTIVE DATE Per Certificate (12:01 A.M.) |
|---|---|---|---|
| 2 | OUL 021946 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | |

### SPECIAL COVERAGE ENDORSEMENT

SEE ATTACHED.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form part of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____
(Authorized Agent)

AMR112(11-86)

A333

Endorsement No. 2 – Attachment

In consideration of the premium paid, it is hereby understood and agreed:

1.    This policy shall reduce the insured's Self-Insured Retention (SIR) as provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) from $10,000 each occurrence to nil, following form of that policy in all other respects.

2.    This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured excess of the underlying insurance scheduled in the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), following form of the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy), including bail bond coverage excess of that provided under the primary scheduled underlying insurance and the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

3.    This policy shall provide a $10,000 aggregate limit of liability, including defense, per lead named insured subject to a $1,000 self-insured retention for the following coverage, as long as such insurance is not contrary to any New York State law or regulation or the law or regulation of any other applicable jurisdiction:

        "Bodily injury" or "property damage" arising out of:

        i)      heat, smoke, or soot; and
        ii)     fumes from any fire

        from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured.

Unless otherwise stated, all definitions follow form of those included under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy).

This policy shall remain in full force and effect until such time as the excess limits provided under the primary Commercial Catastrophe Liability policy (A/K/A Commercial Umbrella Liability policy) are exhausted.

belp

A334

☒  **RLI INSURANCE COMPANY**

☐  **MT. HAWLEY INSURANCE COMPANY**

| END. NO. | POLICY NUMBER | INSURED | END. EFFECTIVE DATE |
|---|---|---|---|
| 3 | OUL 021946 | HEALTH & EDUCATION LIABILITY PROGRAM INC. | Per Certificate (12:01 A.M.) |

## NAMED INSURED AND INSURED LOCATIONS ENDORSEMENT

SCHEDULE ON FILE WITH CARRIER.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.

This endorsement when countersigned by a duly authorized representative of the company shall be valid and form part of the above mentioned policy.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

By: _____

(Authorized Agent)

AMR112(11-86)

A335

# American International Specialty Lines Insurance Company

## Commercial Umbrella Policy Form

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions. The words "we", "us" and "our" refer to the Company providing this insurance. The word "**Insured**" means any person or organization qualifying as such in Insuring Agreement IV, Definitions.

In consideration of the payment of the premium and in reliance upon the statements in the Declarations we agree with you to provide coverage as follows:

### Insuring Agreements

I.   **Coverage**

We will pay on behalf of the **Insured** those sums in excess of the Retained Limit that the **Insured** becomes legally obligated to pay by reason of liability imposed by law or assumed by the **Insured** under an Contract because of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** that takes place during the Policy Period and is caused by an **Occurrence** happening anywhere in the world. The amount we will pay for damages is limited as described in Insuring Agreement III, Limits of Insurance.

If we are prevented by law or statute from paying on behalf of the **Insured**, then we will, where permitted by law or statute, indemnify the **Insured** for those sums in excess of the Retained Limit.

II.   Defense

A.   We shall have the right and duty to defend any claim or **suit** seeking damages covered by the terms and conditions of this policy when:

1.   The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

2.   Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**.

B.   When we assume the defense of any claim or suit:

1.   We will defend any suit against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such suit is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

2.   We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured**:

a.   premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

b.   premiums on appeal bonds required by law to appeal any claim or **suit** we defend, but we are not obligated to apply for or furnish any such bond;

c.   all costs taxed against the **Insured** in any claim or **suit** we defend;

A336

     d.    pre-judgment interest awarded against the **Insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

     e.    all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

     f.    the **Insured's** expenses incurred at our request.

We will not defend any **suit** or claim after our applicable Limits of Insurance have been exhausted by payment of judgments or settlements.

All expenses we incur in the defense of any **suit** or claim are in addition to our Limits of Insurance.

**C.**    In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

## III.  Limits of Insurance

**A.**    The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

    1.    **Insureds;**

    2.    Claims made or **suits** brought; or

    3.    Persons or organizations making claims or bringing **suits.**

**B.**    The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except:

    1.    Damages included in the **Products-Completed Operations Hazard;** and

    2.    Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

**C.**    The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the **Products-Completed Operations Hazard.**

**D.**    Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all **Bodily Injury, Property Damage, Personal Injury** and **Advertising Injury** arising out of any one **Occurrence.**

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

    1.    In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

    2.    In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

A337

E.    Retained Limit

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.    The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured;** or

2.    The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

IV.    Definitions

A.    **Advertising Injury** means injury arising solely out of your advertising activities as a result of one or more of the following offenses:

1.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2.    Oral or written publication of material that violates a person's right of privacy;

3.    Misappropriation of advertising ideas or style of doing business; or

4.    Infringement of copyright, title or slogan.

B.    **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment.**

C.    **Bodily Injury** means bodily injury, sickness, disability or disease. **Bodily Injury** shall also mean mental injury, mental anguish, humiliation, shock or death if directly resulting from bodily injury, sickness, disability or disease.

D.    **Impaired Property** means tangible property, other than **Your Product** or **Your Work,** that cannot be used or is less useful because:

1.    It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

2.    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

1.    The repair, replacement, adjustment or removal of **Your Product** or **Your Work;** or

2.    Your fulfilling the terms of the contract or agreement.

E.    **Insured** means each of the following, to the extent set forth:

1.    The **Named Insured,** meaning:

a.    any person or organization listed in Item 1 of the Declarations, and any company that is your subsidiary as of the effective date of this policy and any company you own or control as of the effective date of this policy; and

b.    any organization newly acquired, controlled or formed by you during the policy period but only:

A338

1)   as respects **Occurrences** taking place after you acquire, take control or form such organization;

2)   if such organization is included under the coverage provided by the policies listed in the Schedule of Underlying Insurance; and

3)   if you give us prompt notice after you acquire, take control or form such organization.

We may make an additional premium charge for any additional organizations you acquire, form or take control of during the period of this policy.

2.   If you are an individual, you and your spouse, but only with respect to the conduct of a business of which you are the sole owner.

3.   If you are a partnership or joint venture, the partners or members and their spouses but only as respects the conduct of your business.

No person or organization is an **Insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

4.   Any person or organization, other than the **Named Insured**, included as an additional insured in the policies listed in the Schedule of Underlying Insurance but not for broader coverage than is available to such person or organization under such underlying policies.

5.   Any of your partners, executive officers, directors, stockholders or employees but only while acting within their duties.

However, the coverage granted by this provision 5. does not apply to the ownership, maintenance, use, loading or unloading of any **autos**, aircraft or watercraft unless such coverage is included under the policies listed in the Schedule of Underlying Insurance and then for no broader coverage than is provided under such underlying policies.

6.   Any person, other than one of your employees, or organization while acting as your real estate manager.

7.   Any person, organization, trustee or estate to whom you are obligated by a written **Insured Contract** to provide insurance such as is afforded by this policy but only with respect to:

a.   liability arising out of operations conducted by you or on your behalf; or

b.   facilities owned or used by you.

8.   Any person (other than your partners, executive officers, directors, stockholders or employees) or organization with respect to any **auto** owned by you, loaned to you or hired by you or on your behalf and used with your permission.

However, the coverage granted by this provision 8. does not apply to any person using an **auto** while working in a business that sells, services, repairs or parks **autos** unless you are in that business.

F.   **Insured Contract** means any oral or written contract or agreement entered into by you and pertaining to your business under which you assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

G.   **Mobile Equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1.   Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2.   Vehicles maintained for use solely on or next to premises you own or rent;

A339

60818 (8/94)
AH0044

(4)

3.   Vehicles that travel on crawler treads;

4.   Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.   power cranes, shovels, loaders, diggers or drills; or

    b.   road construction or resurfacing equipment such as graders, scrapers or rollers;

5.   Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    b.   cherry pickers and similar devices used to raise or lower workers;

6.   Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not mobile equipment but will be considered **autos**:

    a.   equipment designed primarily for:

        1)   snow removal;

        2)   road maintenance, but not construction or resurfacing; or

        3)   street cleaning;

    b.   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    c.   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

H.   **Occurrence** means:

1.   As respects **Bodily Injury** or **Property Damage,** an accident, including continuous or repeated exposure to conditions, which results in **Bodily Injury** or **Property Damage** neither expected nor intended from the standpoint of the **Insured.** All such exposure to substantially the same general conditions shall be considered as arising out of one **Occurrence;**

2.   As respects **Personal Injury,** an offense arising out of your business that results in **Personal Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants; and

3.   As respects **Advertising Injury,** an offense committed in the course of advertising your goods, products and services that results in **Advertising Injury.** All damages that arise from the same or related injurious material or act shall be considered as arising out of one Occurrence, regardless of the frequency or repetition thereof, the number and kind of media used and the number of claimants.

I.   **Personal Injury** means injury other than **Bodily Injury** or **Advertising Injury** arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;

2.   Malicious prosecution;

3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;    A340

    4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    5. Oral or written publication of material that violates a person's right of privacy.

**J. 1.** **Products-Completed Operations Hazard** includes all **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Product** or **Your Work** except:

    **a.** products that are still in your physical possession; or

    **b.** work that has not yet been completed or abandoned.

  **2.** **Your Work** will be deemed completed at the earliest of the following times:

    **a.** When all of the work called for in your contract has been completed.

    **b.** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

    **c.** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **3.** This hazard does not include **Bodily Injury** or **Property Damage** arising out of:

    **a.** the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it;

    **b.** the existence of tools, uninstalled equipment or abandoned or unused materials.

**K.** **Property Damage** means:

  **1.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **2.** Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the **Occurrence** that caused it.

**L.** **Suit** means a civil proceeding in which **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to which this insurance applies is alleged. **Suit** includes:

  **1.** An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

  **2.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**M.** **Your Product** means:

  **1.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    **a.** you;

    **b.** others trading under your name; or

    **c.** a person or organization whose business or assets you have acquired; and

A341

2.   Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

**Your Product** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Product**; and

2.   The providing of or failure to provide warnings or instructions.

**Your Product** does not include vending machines or other property rented to or located for the use of others but not sold.

N.   **Your Work** means:

1.   Work or operations performed by you or on your behalf; and

2.   Materials, parts or equipment furnished in connection with such work or operations.

O.   **Your Work** includes:

1.   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **Your Work**; and

2.   The providing of or failure to provide warnings or instructions.

V.   **Exclusions**

This insurance does not apply to:

A.   Any obligation of the **Insured** under a Workers Compensation, Unemployment Compensation or Disability Benefits Law, or under any similar law.

B.   Any obligation of the **Insured** under the Employees' Retirement Income Security Act of 1974 or any amendments to that act.

C.   Any obligation of the **Insured** under a "No Fault", "Uninsured Motorist" or "Underinsured Motorist" law.

D.   **Property Damage** to :

1.   Property you own, rent, occupy or use;

2.   Personal property in the care, custody or control of the **Insured**.

E.   **Property Damage** to **Impaired Property** or property that has not been physically injured, arising out of:

1.   A defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**; or

2.   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

F.   **Property Damage** to **Your Product** arising out of it or any part of it.

G.   **Property Damage** to **Your Work** arising out of it or any part of it and included in the **Products-Completed Operations Hazard**.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

A342

H.  Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.  **Your Product;**

2.  **Your Work;** or

3.  **Impaired Property**

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

I.  Liability of any employee with respect to **Bodily Injury** or **Personal Injury** to another employee of the same employer injured in the course of such employment.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided to the employee by the policy listed in the Schedule of Underlying Insurance.

J.  **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft or any aircraft owned by the **Insured** or rented to the **Insured** without a crew.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

K.  **Personal Injury** or **Advertising Injury:**

1.  Arising out of oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity;

2.  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

3.  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **Insured;** or

4.  For which the **Insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **Insured** would have in the absence of the contract or agreement.

L.  **Advertising Injury** arising out of:

1.  Breach of contract, other than misappropriation of advertising ideas under an implied contract;

2.  The failure of goods, products or services to conform with advertised quality or performance;

3.  The wrong description of the price of goods, products or services; or

4.  An offense committed by an **Insured** whose business is advertising, broadcasting, publishing or telecasting.

A343

M.  1.   **Bodily Injury, Property Damage or Personal Injury** arising out of the actual or threatened discharge, dispersal, seepage, migration, release or escape of pollutants anywhere in the world;

2.   Any loss, cost or expense arising out of any governmental direction or request that we, the **Insured** or any other person or organization test for, monitor, clean-up, remove, contain, treat, detoxify, neutralize or assess the effects of pollutants; or

3.   Any loss, cost, or expense, including but not limited to costs of investigation or attorneys' fees, incurred by a governmental unit or any other person or organization to test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants.

This exclusion M. shall not apply to **Bodily Injury, Property Damage or Personal Injury** arising out of:

a.   Heat, smoke or fumes from a hostile fire;

b.   The upset, overturn or collision of a motor vehicle; or

c.   The **Products-Completed Operations Hazard;**

if insurance for such **Bodily Injury, Property Damage or Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance. However, the insurance provided by our policy for such **Bodily Injury, Property Damage or Personal Injury** will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

As used in this exclusion:

a.   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled, reconditioned or reclaimed;

b.   A hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

N.   Bodily Injury or **Property Damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

O.   Bodily Injury or **Property Damage** expected or intended from the standpoint of the **Insured.**

However, this exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

P.  1.   **Bodily Injury, Property Damage or Personal Injury** arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust;

2.   Any obligation of the **Insured** to indemnify any party because of damages arising out of such **Bodily Injury, Property Damage or Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust; or

3.   Any obligation to defend any **suit** or claim against the **Insured** alleging **Bodily Injury, Property Damage or Personal Injury** and seeking damages, if such **suit** or claim arises from **Bodily Injury, Property Damage or Personal Injury** as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of or exposure to asbestos, asbestos products, asbestos fibers or asbestos dust.

A344

Q.  Bodily Injury or Personal Injury to:

1.  A person arising out of any:

   a.  Refusal to employ that person;

   b.  Termination of that person's employment; or

   c.  Employment-related practices, policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

2.  The spouse, child, parent, brother or sister of that person as a consequence of **Bodily Injury** or **Personal Injury** to that person at whom any of the employment-related practices described in paragraph a., b. or c. above is directed.

This exclusion applies:

1.  Whether the **Insured** may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

R.  Bodily Injury, Property Damage, Personal Injury or **Advertising Injury** arising out of or by reason of:

1.  The purchase, sale, offer of sale, or solicitation of any security, debt, bank deposit or financial interest or instrument;

2.  Any representations made at any time in relation to the price or value of any security, debt, bank deposit or financial interest or instrument; or

3.  Any depreciation or decline in price or value of any security, debt, bank deposit or financial interest or instrument.

S.  Bodily Injury or **Property Damage** for which any **Insured** may be held liable by reason of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

3.  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

T.  Bodily Injury or Property Damage:

1. a.  with respect to which the **Insured** is also an Insured under a nuclear energy liability policy issued by the Nuclear Energy Liability-Property Insurance Assoc., Mutual Atomic Energy Liability Underwriters or the Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

A345

1. b.     resulting from the hazardous properties of nuclear material and with respect to which (1) any person or any organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the **Insured** is, or had this policy not been available would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2.     **Bodily Injury** or **Property Damage** resulting from the hazardous properties of nuclear material, if:

     a.     the nuclear material (1) is at any nuclear facility owned by the **Insured** or operated by the **Insured** or on the **Insured's** behalf, or (2) has been discharged or dispensed therefrom;

     b.     the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by the **Insured** or on the **Insured's** behalf; or

     c.     the **Bodily Injury** or **Property Damage** arises out of the furnishing by the **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion c. applies only to **Property Damage** to such nuclear facility and any property thereat.

3.     As used in this exclusion:

     a.     "hazardous properties" includes radioactive, toxic or explosive properties;

     b.     "nuclear material" means source material, special nuclear material or by-product material;

     c.     "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or any law amendatory thereof;

     d.     "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

     e.     "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of a nuclear facility included within the definition of nuclear facility below;

     f.     "nuclear facility" means:

         1)     any nuclear reactor;

         2)     any equipment or device designed or used for (i) separating the isotopes of uranium or plutonium, (ii) processing or utilizing spent fuel, or (iii) handling, processing or packaging wastes;

         3)     any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the **Insured's** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

         4)     any structure, basin, excavation, premises or place prepared or used for storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

     g)     "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.     A346

h)    Property Damage includes all forms of radioactive contamination of property.

**VI.   Conditions**

**A.   Appeals**

If the **Insured** or the **Insured's** underlying insurers do not appeal a judgment in excess of the Retained Limit, we have the right to make such an appeal. If we elect to appeal, our liability on such an award or judgment shall not exceed our Limits of Insurance as stated in Item 3 of the Declarations plus the cost and expense of such appeal.

**B.   Audit**

We may audit and examine your books and records as they relate to this policy at any time during the period of this policy and for up to three years after the expiration or termination of this policy.

**C.   Bankruptcy or Insolvency**

Your bankruptcy, insolvency or inability to pay or the bankruptcy, insolvency or inability to pay of any of your underlying insurers will not relieve us from the payment of any claim covered by this policy.

But under no circumstances will such bankruptcy, insolvency or inability to pay require us to drop down and replace the Retained Limit or assume any obligation within the Retained Limit area.

**D.   Cancellation**

1.   You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancellation is to take effect.

2.   We may cancel this policy. If we cancel because of non-payment of premium, we must mail or deliver to you not less than ten (10) days advance written notice stating when the cancellation is to take effect. If we cancel for any other reason , we must mail or deliver to you not less than ninety (90) days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Declarations will be sufficient to prove notice.

3.   The policy period will end on the day and hour stated in the cancellation notice.

4.   If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the Minimum Premium as shown in Item 4 of the Declarations.

5.   If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force and increased by our short rate cancellation table and procedure. Final premium will not be less than the short rate share of the Minimum Premium as shown in Item 4 of the Declarations.

6.   Premium adjustment may be made at the time of cancellation or as soon as practicable thereafter but the cancellation will be effective even if we have not made or offered any refund due you. Our check or our representative's check, mailed or delivered, shall be sufficient tender of any refund due you.

7.   The first **Named Insured** in Item 1 of the Declarations shall act on behalf of all other **Insureds** with respect to the giving and receiving of notice of cancellation and the receipt of any refund that may become payable under this policy.

8.   Any of these provisions that conflict with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with that law.

A347

E.  Changes

Notice to any agent or knowledge possessed by any agent or any other person will not effect a waiver or a change in any part of this policy. This policy can only be changed by a written endorsement that becomes a part of this policy and that is signed by one of our authorized representatives.

F.  Duties In The Event Of An Occurrence, Claim Or Suit

1.  You must see to it that we are notified as soon as practicable of an **Occurrence** which may result in a claim under this policy. To the extent possible, notice should include:

a.  how, when and where the **Occurrence** took place;

b.  the names and addresses of any injured persons and witnesses; and

c.  the nature and location of any injury or damage arising out of the **Occurrence**.

2.  If a claim is made or **suit** is brought against any **Insured** that is reasonably likely to involve this policy you must notify us in writing as soon as practicable.

3.  You and any other involved **Insured** must:

a.  immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

b.  authorize us to obtain records and other information;

c.  cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

d.  assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply.

4.  No **Insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

G.  Notice hereunder shall be given in writing to Michael Mitrovic, Esq., Attorney At Law, P.O. Box 2603, Jersey City, NJ 07303.

H.  Inspection

We have the right, but are not obligated, to inspect your premises and operations at any time. Our inspections are not safety inspections. They relate only to the insurability of your premises and operations and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person or organization to provide for the health or safety of your employees or the public. We do not warrant that your premises or operations are safe or healthful or that they comply with laws, regulations, codes or standards.

I.  Legal Actions Against Us

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

A348

**J.**    Maintenance of Underlying Insurance

During the period of this policy, you agree:

1.    To keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

2.    That any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

3.    That the limits of insurance of the policies listed in the Schedule of Underlying Insurance shall not change except for any reduction or exhaustion of aggregate limits by payment of claims for **Occurrences** covered by this policy; and

4.    That the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not materially change during the period of this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would had you fully complied with these requirements.

**K.**    Other Insurance

If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

**L.**    Premium

The first **Named Insured** designated in Item 1 of the Declarations shall be responsible for payment of all premiums when due.

The premium for this policy shall be computed on the basis set forth in Item 4 of the Declarations. beginning of the policy period, you must pay us the Advance Premium shown in Item 4 of the Declarations.

When this policy expires or if it is cancelled, we will compute the earned premium for the time this policy was in force. If this policy is subject to audit adjustment, the actual exposure basis will be used to compute the earned premium. If the earned premium is greater than the Advance Premium, you will promptly pay us the difference. If the earned premium is less than the Advance Premium, we will return the difference to you. But in any event we shall retain the Minimum Premium as shown in Item 4 of the Declarations for each twelve months of our policy period.

**M.**    Prior Insurance

If a loss covered by this policy is also covered in whole or in part under any other excess policy issued to the **Insured** prior to the effective date of this policy, our Limits of Insurance as stated in Item 3 of the Declarations will be reduced by any amounts due the **Insured** under such prior insurance.

**N.**    Separation of **Insureds**

Except with respect to our Limits of Insurance and any rights or duties specifically assigned to the first Named Insured designated in Item 1 of the Declarations, this insurance applies:

1.    As if each **Named Insured** were the only **Named Insured**; and

2.    Separately to each **Insured** against whom claim is made or **Suit** brought.

**O.**    Subrogation

If any **Insured** has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The **Insured** must do nothing after loss to impair these rights and must help us enforce them.

A349

Any recoveries shall be applied as follows:

1.   Any interests, including the **Insured**, that have paid an amount in excess of our payment under this policy will be reimbursed first;

2.   We then will be reimbursed up to the amount we have paid; and

3.   Lastly, any interests, including the **Insured**, over which our insurance is excess, are entitled to claim the residue.

Expenses incurred in the exercise of rights of recovery shall be apportioned between the interests, including the **Insured**, in the ratio of their respective recoveries as finally settled.

P.   Transfer Of Your Rights And Duties

Your rights and duties under this policy may not be transferred without our written consent.

If you die or are legally declared bankrupt, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. However, notice of cancellation sent to the first **Named Insured** designated in Item 1 of the Declarations and mailed to the address shown in this policy will be sufficient notice to effect cancellation of this policy.

Q.   When Loss Is Payable

Coverage under this policy will not apply unless and until the **Insured** or the **Insured's** underlying insurer is obligated to pay the Retained Limit.

When the amount of loss has finally been determined, we will promptly pay on behalf of the **Insured** amount of loss falling within the terms of this policy.

You shall promptly reimburse us for any amount within the Self Insured Retention paid by us on behalf of an **Insured**.

R.   Service of Suit.

It is agreed that in the event of our failure to pay any amount claim to be due hereunder, we, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of our rights to commence an action in any court of competent jurisdiction in the United States or to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of pro cess in such suit may be made upon Counsel, Legal Department, American International Specialty Lines Insurance Company, c/o American International Surplus Lines Agency, Inc., 175 Water Street, New York, NY 10038, or his or her representative, and that in any suit instituted against us upon this contract, we will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, we hereby designate the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as our true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of you or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Whereof**, we have caused this policy to be executed and attested, but this policy shall not be valid unless signed on the Declarations page by one of our duly authorized representatives.

*Elizabeth M. Tuck*
SECRETARY

*L. H. Lilly*
PRESIDENT

A350

ENDORSEMENT NO. 1

**This endorsement, effective 12:01 AM:  As Per Certificates**

**Forms a part of policy no:  As Per Certificates**

**Issued to:**  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## AIRCRAFT LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of the ownership, maintenance, operation, use, loading or unloading of any aircraft.

All other terms, conditions and exclusions remain the same.

_____
AUTHORIZED REPRESENTATIVE

A351

62084 (2/95)
AH0268

### ENDORSEMENT No. 2

This endorsement, effective 12:01 AM:  **As Per Certificates**

Forms a part of policy no:  **As Per Certificates**

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

#### Commercial Umbrella Policy Form

#### Act of Terrorism Retained Limit Endorsement

This policy is amended as follows:

**ITEM 3. OF THE DECLARATIONS, LIMITS OF INSURANCE** is amended to include the following additional Self Insured Retention:

> E.  As set forth below in the Schedule of Retained Limits: **Act of Terrorism** Self Insured Retention/Each **Occurrence**

**ITEM 4. OF THE DECLARATIONS, PREMIUM COMPUTATION** is amended to include the following:

**Act of Terrorism PREMIUM**

INCLUDED

Section III. Limits of Insurance, Paragraph E. is deleted in its entirety and replaced by the following:

We will be liable only for that portion of damages in excess of the **Insured's** Retained Limit which is defined as the greater of either:

1.  The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the **Insured;** or

2.  The amount stated in the Declarations as Self Insured Retention or **Act of Terrorism** Self Insured Retention/Each **Occurrence** as a result of any one **Occurrence** not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the **Insured;**

and then up to an amount not exceeding the Each **Occurrence** Limit as stated in the Declarations.

All claims and **Suits** seeking damages for any liability arising out of an **Act of Terrorism** are subject to this **Act of Terrorism** Self Insured Retention/Each **Occurrence**.  **Defense Expenses** shall not erode this **Act of Terrorism** Self Insured Retention/Each **Occurrence**.

The **Act of Terrorism** Self Insured Retention/Each **Occurrence** applies whether or not there is any applicable underlying policies listed in the Schedule of Underlying Insurance or applicable limits of any other underlying insurance providing coverage to the **Insured**.  If there is applicable underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured**, amounts received through such underlying insurance may be applied to reduce or exhaust the **Act of Terrorism** Self Insured Retention/Each **Occurence**.  However, in no event will amounts received through such underlying insurance for the payment of **Defense Expenses** reduce the **Act of Terrorism** Self Insured Retention/Each **Occurrence**.

A352

For the purposes of this endorsement, **Section IV. Definitions** is amended to include the following additional definitions:

**Defense Expenses** means any payment allocated to a specific loss, claim or **Suit** for its investigation, settlement or defense, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or **Suit**;

4. Costs taxed against the **Insured** in any claim or **Suit**;

5. Pre-judgement interest awarded against the **Insured**;

6. Interest that accrues after entry of judgement.

**Act of Terrorism** is defined as either:

1. A certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

    The following Section 102 definition of "act of terrorism" from the Terrorism Risk Insurance Act of 2002 applies:

    (1) Act of Terrorism -
        (A) Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States -
            (i) to be an act of terrorism;
            (ii) to be a violent act or an act that is dangerous to -
                (I) human life;
                (II) property; or
                (III) infrastructure;
            (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
                (I) an air carrier or vessel described in paragraph (5)(B); [for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission];
                (II) the premises of a United States mission; and
            (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
        (B) Limitation. - No act shall be certified by the Secretary as an act of terrorism if -
            (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
            (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

A353

(C) Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

(D) Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred; or

2. the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Act of Terrorism** will also include any act which is verified or recognized by the United States Government as an act of terrorism.

Solely as respects any liability arising out of any **Act of Terrorism, Section II. Defense Paragraphs A.1., A.2.** and C. are deleted in their entirety, and Paragraph C. is replaced by the following:

We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **Suit** brought or proceeding instituted against the **Insured.** We will however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **Suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, we will do so at our own expense.

A354

Schedule of Retained Limits:

Coverage:                                    Retained Limit:

Act of Terrorism as defined above            $1,000,000

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

ENDORSEMENT No. 3

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### Commercial Umbrella Policy Form

### ISO 2001 Changes Endorsement

This policy is amended as follows:

I.  Section I. Coverage is amended by adding the following:

This policy applies to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** only if prior to the Policy Period, no **Insured** shown in Paragraph E.2., E.3., E.4., and E.5. of Section IV. Definitions, no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**, knew that the **Bodily Injury** or **Property Damage** had occurred, in whole or in part, or that an **Occurrence** had been committed that caused **Personal Injury** or **Advertising Injury**. If such an **Insured**, manager or authorized employee knew, prior to the Policy Period, that the **Bodily Injury** or **Property Damage** had occurred or that an **Occurrence** had been committed that caused **Personal Injury** or **Advertising Injury**, then any continuation, change or resumption of such **Bodily Injury, Property Damage** or **Personal Injury** or **Advertising Injury** during or after the Policy Period will be deemed to have been known prior to the Policy Period.

**Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** will be deemed to have been known to have occurred at the earliest time when any **Insured** shown under Paragraphs E.2., E.3., E.4., and E.5. of Section IV. Definitions, any officer, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an **Occurrence**, claim or **Suit**:

1.  Reports all, or any part, of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** to us or any other insurer;

2.  Receives a written or verbal demand or claim for damages because of the **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury**; or

3.  Becomes aware by any other means that **Bodily Injury** or **Property Damage** has occurred or has begun to occur or an **Occurrence** has been committed that has caused or may cause **Personal Injury** or **Advertising Injury**.

II.  Section IV. Definitions is amended as follows:

Section IV. Definitions is amended to include the following additional definitions:

**Advertisement** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

©2002 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A356

81513 (03/03)
AH1011

1. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

2. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**Volunteer Worker(s)** means a person who is not your employee and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**Section IV. Definitions** is amended by deleting subparagraphs 4 and 5 of Paragraph I. **Personal Injury** and replacing them with the following:

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization, or disparages a person's or organization's goods, products or services; or

5. Oral or written publication, in any manner, of material that violates a person's right of privacy.

**Section IV. Definitions** is amended by deleting subparagraphs 3. and 4. of Paragraph A. **Advertising Injury** and replacing them with the following:

3. The use of another's advertising idea in your **Advertisement**; or

4. Infringement upon another's copyright, trade dress or slogan in your **Advertisement**.

**Section IV. Definitions** is amended by adding the following to Paragraph K. **Property Damage:**

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Section IV. Definitions** is amended by adding the following subparagraphs 9.,10. and 11. to Paragraph E. **Insured:**

9. If you are designated in the Declarations as a trust, you are an **Insured**. Your trustees are also **Insureds**, but only with respect to their duties as trustees.

10. Your **Volunteer Workers** only while performing duties related to the conduct of your business.

11. If you are a limited liability company, you are an **Insured**. Your members are also **Insureds**, but only with respect to the conduct of your business. Your managers are **Insureds**, but only with respect to their duties as your managers.

**III. Section V. Exclusions is amended as follows:**

Section V. Exclusions, Paragraph D., subparagraph 1. is deleted and replaced by the following:

1. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

Section V. Exclusions, Paragraph J. is amended by adding the following:

This exclusion applies even if the claims against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**, if the **Occurrence** which caused the **Bodily Injury** or **Property Damage** involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any **Insured**.

Section V. Exclusions, Paragraph K. is amended by adding the following:

5. Committed by an Insured whose business is:
   a. designing or determining content of web-sites for others; or
   b. An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs I.1., I.2. and I.3. of Section IV. Definitions.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

Section V. Exclusions is amended to include the following additional exclusions:

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of an electronic chatroom or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your **Advertisement**, of copy right, trade dress or slogan.

This insurance does not apply to:

**Personal Injury** or **Advertising Injury** arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

All other terms and conditions of this policy remain unchanged.

_____
**Authorized Representative**

© 2002 American International Group, Inc.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 3 of 3

A358

81513 (03/03)
AH1011

ENDORSEMENT No. 4

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## PRODUCTS-COMPLETED OPERATIONS HAZARD FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the **Products-Completed Operations Hazard.**

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE

A359

57714 (6/93)
AH0113

ENDORSEMENT No. 5

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## AUTOMOBILE LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury** or **Property Damage** arising out of the ownership, maintenance, operation, use, loading or unloading of any **auto.**

However, if insurance for such **Bodily Injury** or **Property Damage** is provided by a policy listed in the Schedule of Underlying Insurance:

1.  This exclusion shall not apply; and

2.  The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**    A360

60446 (5/94)
AH0102

ENDORSEMENT No. 6

This endorsement, effective 12:01 AM:   As Per Certificates

Forms a part of policy no.:   As Per Certificates

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## EMPLOYERS LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury** to any employee of the **Insured** arising out of and in the course of the employee's employment by the **Insured**.

However, if insurance for such **Bodily Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply;  and

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

A361

69429 (1/98)
AH0403

ENDORSEMENT No. 7

This endorsement, effective 12:01 AM:  **As Per Certificates**

Forms a part of policy no.:  **As Per Certificates**

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## EMPLOYEE BENEFITS LIABILITY FOLLOW-FORM ENDORSEMENT
### (CLAIMS MADE VERSION)

### PROVIDES CLAIMS MADE COVERAGE - PLEASE READ CAREFULLY

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any negligent act, error or omission of the **Insured** or of any other person for whom the **Insured** is legally liable in the administration of the **Insured's** Employee Benefit Programs as defined herein.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.   This exclusion shall not apply;

2.   The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance; and

3.   Solely as respects this endorsement, we will only provide coverage for a claim made against the **Insured** during our policy period.

     If the insurance provided by the policy listed in the Schedule of Underlying Insurance provides coverage for **Occurrences** occurring on or after a specified Retroactive Date or for claims made during an Extended Reporting Period, the insurance provided by our policy will also provide such coverage.

For the purposes of this endorsement, the following definitions apply:

1.   Employee Benefit Programs shall mean Group Life Insurance, Group Accident or Health Insurance, Pension Plans, Employee Stock Subscription Plans, Worker's Compensation, Unemployment Insurance, Social Security and Disability Benefits.

2.   Administration shall mean:

     a.   Giving counsel to employees with respect to Employee Benefit Programs;

     b.   Interpreting Employee Benefit Programs;

     c.   Handling of records in connection with Employee Benefit Programs; or

     d.   Effecting enrollment of employees under Employee Benefit Programs;

     provided all such acts are authorized by you.

All other terms and conditions of this policy remain unchanged.

AUTHORIZED REPRESENTATIVE     A362

57826 (6/93)
AH0127

ENDORSEMENT No. 8

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## PROFESSIONAL LIABILITY FOLLOW-FORM ENDORSEMENT

This insurance does not apply to **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** arising out of any act, error, omission, malpractice or mistake of a professional nature committed by the **Insured** or any person for whom the **Insured** is legally responsible.

However, if insurance for such **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** is provided by a policy listed in the Schedule of Underlying Insurance:

1.    This exclusion shall not apply; and

2.    The insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**    A363

60433 (5/94)
ALI0170

ENDORSEMENT No. 9

This endorsement, effective 12:01 AM:    As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## AMENDMENT OF PERSONAL INJURY DEFINITION

In Section IV, Definitions, Definition I., **Personal Injury,** is amended to include the following:

6.    Discrimination unless coverage is prohibited by law or excluded by Exclusion Q of this policy.

It is further agreed that this insurance does not apply to **Personal Injury.** However, if insurance for **Personal Injury** is provided by a policy listed in the Schedule of Underlying Insurance, this exclusion shall not apply and the insurance provided by our policy will not be broader than the insurance coverage provided by the policy listed in the Schedule of Underlying Insurance.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**    A364

64669 (3/96)
AH0222

ENDORSEMENT No. 10

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## MEDICAL PROFESSIONAL LIABILITY EXCLUSION

This insurance does not apply to **Bodily Injury, Property Damage** or **Personal Injury** arising out of the rendering of or failure to render, during the policy period, the following professional services:

A.    Medical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith;

B.    Furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances;

C.    Handling of or performing postmortem examinations on human bodies; or

D.    Service by any person as a member of a formal accreditation or similar professional board or committee of the **Named Insured**, or as a person charged with the duty of executing directives of any such board or committee.

It is also agreed that any **Bodily Injury** sustained by any patient or other person while seeking or being administered professional services shall not be covered under this policy except when such **Bodily Injury** occurs as a direct result of one or more of the following perils and then only if said perils occur on the **Insured's** premises:

1.    Fire or lightning;
2.    Windstorm or hail;
3.    Explosion;
4.    Riot, strike or civil commotion;
5.    Hazards involving any aircraft or vehicle;
6.    Sonic shock waves;
7.    Smoke;
8.    Vandalism or malicious mischief;
9.    Sprinkler leakage;
10.   Elevator malfunction;
11.   Earthquake or flood;
12.   Structural collapse of building; or
13.   Ownership, maintenance or use of premises and all operations necessary or incidental thereto.

All other terms and conditions of this policy remain unchanged.

**AUTHORIZED REPRESENTATIVE**

A365

60863 (08/94)
AH0234

ENDORSEMENT No. 11

This endorsement, effective 12:01 AM:   As Per Certificates

Forms a part of policy no:   As Per Certificates

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## COMMERCIAL UMBRELLA POLICY
## FUNGUS EXCLUSION

Section V. Exclusions is amended by adding the following exclusion to the policy:

This insurance does not apply to **bodily injury, property damage, personal injury, advertising injury** or any other loss, injury, damage, cost or expense, including but not limited to, losses, costs or expenses related to, arising from or associated with clean-up, remediation, containment, removal or abatement, caused directly or indirectly, in whole or in part, by:

  a.  Any "fungus(i)", "molds(s)", mildew or yeast, or

  b.  Any "spore(s)" or toxins created or produced by or emanating from such fungus(i), mold(s), mildew or yeast, or

  c.  Any substance, vapor, gas, or other emission or organic or inorganic body or substance produced by or arising out of any "fungus(i)", "mold(s)", mildew or yeast, or

  d.  Any material, product, building component, building or structure, or any concentration of moisture, water or other liquid within such material, product, building component, building or structure, that contains, harbors, nurtures or acts as a medium for any "fungus(i)", "mold(s)", mildew, yeast, or "spore(s)" or toxins emanating therefrom,

regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that loss, injury ,damage, cost or expense.

For the purposes of this exclusion, the following definitions are added to the Policy:

  "Fungus(i)" includes, but is not limited to, Any of the plants or organisms belonging to the major group Fungi, lacking chlorophyll, and including molds, rusts, mildews, smuts and mushrooms.

  "Mold(s)" includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce molds.

  "Spore(s)" means any dormant or reproductive body produced by or arising or emanating out of any "fungus(i)", "mold(s)', mildew, plants, organisms or microorganisms.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Authorized Representative

A366

78691 (08/01)
AH0829

ENDORSEMENT No. 12

This endorsement, effective 12:01 AM:    As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella  Policy

**Excess Casualty  CrisisFund**<sup>SM</sup>

(Crisis Communications Management Insurance)

This policy is amended to provide Crisis Communications Management Insurance pursuant to the terms and conditions set forth below:

1.    The following new insuring agreement is added to this policy:

CRISIS COMMUNICATIONS MANAGEMENT INSURANCE

We will reimburse the **Named Insured** for **Crisis Management Loss** arising from a **Crisis Management Event** first commencing during the Policy Period, up to the amount of the **Crisis Management Limit of Insurance.**

2.    There shall be no Retained Limit amount applicable to **Crisis Management Loss.** We shall pay such **Crisis Management Loss** from first dollar, subject to the other terms and conditions of this endorsement.

3.    A **Crisis Management Event** shall be reported to us as soon as practicable but in no event later than thirty (30) days after the **Named Insured** first incurs a **Crisis Management Loss** for which coverage will be requested under this endorsement.

4.    There shall be no requirement for the **Named Insured** to obtain prior written approval from us before incurring any **Crisis Management Loss,** provided that the **Crisis Management Firm** selected by the **Named Insured** to perform the **Crisis Management Services** has been approved by us.

5.    In the event of a dispute between the **Named Insured** and us as to whether a **Crisis Manage-ment Event** has occurred, the **Named Insured** may retain the services of an approved **Crisis Management Firm,** and the right to reimbursement shall be arbitrated pursuant to the rules of the American Arbitration Association in New York, New York or in the state indicated in Item 1 of the Declarations of this policy as the **Named Insured's** principal place of business.

6.    The following definitions shall apply for the purpose of the coverage provided by this endorsement only:

a.    **Crisis Management Event** means an Occurrence that in the good faith opinion of a **Key Executive** of the **Named Insured,** in the absence of **Crisis Management Services,** has reasonably been associated with or may be associated with:

(1)    damages covered by this policy that  are in excess of the  Retained  Limit  applic-able to such damages; and

(2)    significant adverse regional or national media coverage.

**Crisis Management Event**  shall include, without limitation , man-made disasters such as explosions, major crashes, multiple deaths, burns, dismemberment, traumatic brain injury, paraplegia, or contamination of food, drink or pharmaceuticals.

A367

1999  American International Group, Inc.

For the purposes of this endorsement, a **Crisis Management Event** shall first commence when the **Named Insured** or any of its principals shall first become aware of the **Occurrence** and shall conclude at the earliest of the time when the **Crisis Management Firm** advises the **Named Insured** that the crisis no longer exists or when the **Crisis Management Limit of Insurance** has been exhausted.

b.  **Crisis Management Firm** means any public relations firm or crisis management firm approved by us that is hired by the **Named Insured** to perform **Crisis Management Services** in connection with a **Crisis Management Event**. Attached to and forming a part of this endorsement is a list of firms that have been pre-approved by us and may be hired by the **Named Insured** without further approval by us. In the event the **Named Insured** chooses to retain the services of an entity not listed on the attached list, the **Named Insured** must obtain our consent, which remains in our sole discretion.

c.  **Crisis Management Limit of Insurance** shall mean Twenty-five Thousand Dollars ($25,000). The **Crisis Management Limit of Insurance** is the most we will pay for all **Crisis Management Loss** under this policy, regardless of the number of **Crisis Management Events** first commencing during the Policy Period. This **Crisis Management Limit of Insurance** shall be in addition to the Limits of Insurance shown in Item 3 of the Declarations.

d.  **Crisis Management Loss** means the following amounts incurred during the pendency of a **Crisis Management Event**:

(1)  Amounts for the reasonable and necessary fees and expenses incurred by a **Crisis Management Firm** in the performance of **Crisis Management Services** for the **Named Insured** solely arising from a covered **Crisis Management Event**; and

(2)  Amounts for reasonable and necessary printing, advertising, mailing of materials, or travel by directors, officers, employees or agents of the **Named Insured** or the **Crisis Management Firm**, solely arising from a covered **Crisis Management Event**.

e.  **Crisis Management Services** means those services performed by a **Crisis Management Firm** in advising the **Named Insured** on minimizing potential harm to the **Named Insured** from a covered **Crisis Management Event** by maintaining and restoring public confidence in the **Named Insured**.

f.  **Key Executive** means the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, President, General Counsel or general partner (if the **Named Insured** is a partnership) of the **Named Insured** or sole proprietor (if the **Named Insured** is a sole proprietorship). A **Key Executive** also means any other person designated as such and scheduled by written endorsement.

7.  The following additional exclusions shall be applicable to the coverage provided by this endorsement:

This insurance shall not apply to any **Crisis Management Loss** in connection with a **Crisis Management Event**:

a.  arising out of, based upon or attributable to the facts alleged, or to the same or related acts alleged or contained, in any crisis or claim that has been reported, or in any circumstances where notice has been given, under any policy of which (i) this policy is a renewal or replacement  or  which it may succeed in time, or (ii) any underlying policy, which is listed in the Schedule of Underlying Insurance, is a renewal or replacement or which it may succeed in time;

A368

b.  arising out of, based upon or attributable to any pending or prior crisis, claim, or **suit** as of the inception date of this policy;

c.  arising out of, based upon or attributable to circumstances connected to:

 (1)  any "Year 2000 Problem." "Year 2000 Problem" means: any computer, computer system or code (including but not limited to firmware, hardware, microprocessors, software, operating systems, networks, peripherals attached to or used in conjunction with any of the foregoing, or any other computerized or electronic equipment or components) ("Computer System"), of any organization whether or not an **Insured**:

   (a)  failing to accurately and properly read, process, perform mathematical calculations, store, sort, distinguish, recognize, accept or interpret prior to, during or after the year 2000 any data containing date information;

   (b)  failing to accurately and properly read and process the fact that the year 2000 is a leap year;

   (c)  reading and processing so-called magic dates such as the date "9/9/99" or any other date field data used by an organization to signify information other than the date;

   (d)  failing to be compatible with any other organization's Computer System with respect to any of items (a), (b) and (c).

 (2)  evaluating, inspecting, installing, maintaining, repairing or replacing any Computer System with respect to a potential Year 2000 Problem, or any failure to do any of the foregoing activities, or any disclosure, advice, consultation or supervision of any of the foregoing activities or any failure relating thereto.

8.  Any payments for **Crisis Management Loss** that we make under this endorsement shall not create any duty to defend any claim or **suit** arising from a covered **Crisis Management Event**, nor any coverage obligations under this policy.

9.  If this Crisis Communications Management Insurance and any other insurance issued to the **Named Insured** by us or any of our affiliated companies shall apply to the same crisis or claim, the maximum limit of insurance under all insurance available shall not exceed the highest applicable limit of insurance available under any one policy or endorsement. This condition does not apply to any other insurance issued by us or any of our affiliated companies specifically to apply as excess over the insurance provided by this endorsement.

All other terms, definitions, conditions and exclusions remain unchanged.

**Authorized Representative**
**or countersignature (in states where applicable)**

A369

1999 American International Group, Inc.

# AIG  AIG Excess Casualty·

### Excess Casualty CrisisFund·
### (Crisis Communications Management Insurance)

*Approved Crisis Management Firms*
*as of May 1, 2002*

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| **Abernathy MacGregor Group** | | |
| New York Office<br>501 Madison Avenue<br>New York, NY 10022 | James T. MacGregor<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Tel. (212) 343-0818<br>Cell (917) 449-9964 |
| | Rhonda Barnat, Managing Director<br>Tel. (212) 371-5999<br>Cell (212) 593-1845 | *Emergency Only*<br>Cell (917) 912-6378 |
| Los Angeles Office<br>611 West Sixth Street<br>Suite 1880<br>Los Angeles, CA 90017 | Ian D. Campbell<br>Tel. (213) 630-6550<br>Cell (213) 489-3443 | *Emergency Only*<br>Tel. (818) 957-5650<br>Cell (917) 940-3476 |
| **Citigate Sard Verbinnen** | | |
| New York Office<br>630 Third Avenue<br>New York, NY 1 0017 | George Sard<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br>Citigate Sard Verbinnen web address:<br>www.sardverb.com<br><br>Paul Verbinnen<br>Tel. (212) 687-8080<br>Fax (212) 687-8344<br><br>Citigate Sard Verbinnen web ad dress:<br>www.sardverb.com | *Emergency Only*<br>Contact switchboard @<br>(212) 687-8080 |
| **Hill & Knowlton** | | |
| New York Office<br>466 Lexington Avenue<br>3rd Floor<br>New York, NY 10017 | Richard C. Hyde<br>Tel. (212) 885-0372<br>Cell (917) 816-2208<br>Fax: (212) 885-0570<br><br>Arthur Forster<br>Tel. (212) 885-0442<br>Cell: (908) 337-6853<br>Fax: (212) 885-0570<br>aforster@hillandknowlton.com | *Emergency Only*<br>H&K Crisis Pager<br>(888) 264-5193<br>24 Hours/7 Days |

A370

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|

---

**Hill & Knowlton Continued**

*Additional United States/Canada Offices:*
> Atlanta; Austin; Calgary; Chicago; Detroit; Ft. Lauderdale; Houston; Irvin e; Los Angeles; Montreal; Ottawa; Portland; Quebec City; Sacramento; San Francisco; San Juan; Seattle; Tampa; Toronto; Vancouver; Washington, D.C.

*International Offices:*
> *Latin America:* Bogota; Buenos Aires; Caracas; Mexico City; Sao Paulo; Santiago; Guatemala
> *Europe, Middle East, Africa:* Amsterdam; Aschaffenburg; Athens; Barcelona; Berlin; Brussels; Budapest; Dubai; Frankfurt; Helsinki; Jeddah; London; Madrid; Manama; Milan; Moscow; Paris; Prague; Riga; Rome; Stockholm; Tallinn; Warsaw
> *Asia Pacific:* Auckland; Bangkok; Beijing; Canberra; Hong Kong; Kuala Lumpur; Melbourne; Seoul; Shanghai; Singapore; Sydney; Tokyo; Wellington

---

**Lexicon Communications Corp.**

| | | |
|---|---|---|
| Los Angeles Office<br>9200 Sunset Blvd.<br>Suite 1203<br>Los Angeles, CA 90069 | Steven B. Fink<br>Tel. (213) 346-1212<br>Cell (626) 253-1519<br>sfink<br>Lexicon Comm web address:<br>www.crisismanagement.com | *Emergency Only*<br>Contact switchboard @<br>(213) 346-1200, ext. 225 |

---

**PR21 (A Division of Edelman Worldwide)**

| | | |
|---|---|---|
| New York Office<br>79 Fifth Avenue, 17th Fl.<br>New York, NY 10003 | Jon Goldberg<br>Tel. (212) 299-8952<br>Fax (212) 462-1026/7 | *Emergency Only*<br>Cell (973) 699-7148<br>Pager (877) 386-8115 |

*Additional United States/Canada Offices:*
> Atlanta; Austin; Chicago; Dallas; Los Angeles; Miami; Milwaukee; Montreal; Sacramento; San Francisco; Seattle; Silicon Valley; Toronto; Washington, D.C.

*International Offices:*
> *Latin America:* Buenos Aires; Mexico City; Sao Paulo
> *Europe:* Barcelona; Brussels; Dublin; Frankfurt; Hamburg; London; Madrid; Milan; Paris
> *Asia Pacific:* Beijing; Guangzhou; Hong Kong; Kuala Lumpur; Seoul; Shanghai; Singapore; Sydney; Taipei

---

**Robinson Lerer & Montgomery**

| | | |
|---|---|---|
| New York Office<br>75 Rockefeller Plaza<br>6th Floor<br>New York, NY 10019 | Michael J. Gross<br>Tel. (212) 484-7721<br>Cell (917) 853-0620<br>Fax (212) 484-7411<br>mgross52@aol.com | *Emergency Only*<br>Contact switchboard @<br>(212) 484-6100 |

A371

| FIRM/ADDRESS | CONTACT/TELEPHONE | EMERGENCY TELEPHONE |
|---|---|---|
| Sitrick and Company Inc. | | |
| Los Angeles Office<br>2029 Century Park East<br>Suite 1750<br>Los Angeles, CA 90067 | Michael S. Sitrick<br>Tel. (310) 788-2850<br>Cell (310) 788-2855 | *Emergency Only*<br>(310) 358-1011<br>24 hours/7 days |

Additional United States Offices:  New York and Washington, D.C.

### ENDORSEMENT No. 13

This endorsement, effective 12:01 AM:  **As Per Certificates**

Forms a part of policy no:  **As Per Certificates**

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### Commercial Umbrella Policy Form

### Defense Expenses Within Limits Endorsement

In the event that coverage for damages provided by a policy(ies) listed in the Schedule of Underlying Insurance is written with Defense Expenses within the limits, coverage afforded by this policy will be amended to provide coverage on a **Defense Expenses** within the limits basis subject to the following:

Section II. Defense is deleted and replaced by the following:

II.  **Defense**

A.  We shall have the right and duty to defend any claim or **Suit** seeking damages covered by the terms and conditions of this policy when:

    1.  The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the **Insured** have been exhausted by payment of claims to which this policy applies; or

    2.  Damages are sought for **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** covered by this policy but not covered by any underlying insurance listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the **Insured.**

B.  When we assume the defense of any claim or **Suit:**

    1.  We will defend any **Suit** against the **Insured** seeking damages on account of **Bodily Injury, Property Damage, Personal Injury** or **Advertising Injury** even if such **Suit** is groundless, false or fraudulent, but we have the right to investigate, defend and settle the claim as we deem expedient.

    2.  We will pay the following, to the extent that they are not included in the underlying policies listed in the Schedule of Underlying Insurance or in any other insurance providing coverage to the **Insured:**

        a.  premiums on bonds to release attachments for amounts not exceeding our Limits of Insurance, but we are not obligated to apply for or furnish any such bond;

        b.  premiums on appeal bonds required by law to appeal any claim or **Suit** we defend, but we are not obligated to apply for or furnish any such bond;

        c.  all costs taxed against the **Insured** in any claim or **Suit** we defend;

        d.  pre-judgment interest awarded against the **Insured** on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Insurance, we will not pay any pre-judgment interest based on that period of time after the offer;

A373

e.  all interest that accrues after entry of judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within our applicable Limit of Insurance;

f.  the **Insured's** expenses incurred at our request.

Our right and duty to defend such claims or **Suits** end when we have exhausted the limits available, as provided under Section III. Limits of Insurance for either payments of judgments, settlements or **Defense Expenses**.

C.  In all other instances except A. above, we will not be obligated to assume charge of the investigation, settlement or defense of any claim made, **Suit** brought or proceeding instituted against the **Insured**. We will, however, have the right and shall be given the opportunity to participate in the defense and trial of any claims, **Suits** or proceedings relative to any **Occurrence** which, in our opinion, may create liability on our part under the terms of this policy. If we exercise such right, such **Defense Expenses** will be included within the limits available, as provided under Section III. Limits of Insurance.

Section III. Limits of Insurance is deleted and replaced by the following:

III.  Limits of Insurance

A.  The Limits of Insurance shown in Item 3 of the Declarations and the rules below state the most we will pay regardless of the number of:

1.  **Insureds**;

2.  Claims made or **Suits** brought; or

3.  Persons or organizations making claims or bringing **Suits**.

B.  The General Aggregate Limit is the most we will pay for all damages and **Defense Expenses** covered under Insuring Agreement I except:

1.  Damages included in the **Products-Completed Operations Hazard**; and

2.  Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

C.  The Products-Completed Operations Aggregate Limit is the most we will pay for all damages and **Defense Expenses** included in the **Products-Completed Operations Hazard**.

D.  Subject to B. and C. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of damages and **Defense Expenses** covered under Insuring Agreement I because of all **Bodily Injury**, **Property Damage**, **Personal Injury** and **Advertising Injury** arising out of any one **Occurrence**.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the **Insured** are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

1.  In the event of reduction, pay in excess of the reduced underlying limits of insurance; or

2.  In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

A374

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. Retained Limit

We will be liable only for that portion of damages in excess of the Insured's Retained Limit which is defined as the greater of either:

1. The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured; or

2. The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other underlying insurance providing coverage to the Insured;

   and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Section IV. Definitions is amended to include the following additional definition:

Defense Expenses mean payment(s) allocated to the investigation, settlement or defense of a specific loss, claim or Suit, including but not limited to:

1. Attorney's fees and all other investigation, loss adjustment and litigation expenses;

2. Premiums on bonds to release attachments;

3. Premiums on appeal bonds required by law to appeal any claim or Suit;

4. Costs taxed against the Insured in any claim or Suit;

5. Pre-judgement interest awarded against the Insured; and

6. Interest that accrues after entry of judgement.

All other terms and conditions of this policy remain unchanged.

_____

**Authorized Representative**

81507 (02/03)
AH1008

Page 3 of 3

A375

ENDORSEMENT No. 14

**This endorsement, effective 12:01 AM:**  As Per Certificates

**Forms a part of policy no.:**  As Per Certificates

**Issued to:**  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

## ATHLETIC ACTIVITIES EXCLUSION

This insurance does not apply to **Bodily Injury** to any employee of the **Insured**, any person playing for or on behalf of the **Insured** or to any person while practicing for or participating in any athletic or sports contest or exhibition sponsored, conducted, directed or participated in by the **Insured**.

All other terms and conditions of this policy remain unchanged.

_____

**AUTHORIZED REPRESENTATIVE**

A376

**ENDORSEMENT NO. 15**

**This endorsement, effective 12:01 AM:** .As Per Certificates

**Forms a part of policy no.:**    As Per Certificates

**Issued to:**  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

**By:**  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**Commercial Umbrella Policy Form**

**Specified Operations/Specified Risks Exclusion Endorsement**

This policy is amended as follows:

Section V. Exclusions is amended to add the following additional exclusions:

This Insurance does not apply to:

Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of or relating to:

1.     Camps for emotionally disturbed children or teenagers, or juvenile delinquents,

2.     Camps for individuals previously convicted of a crime or with a history of violent behavior,

3.     Hotels, motels, or resorts,

4.     Tour Operators,

All other terms, conditions and exclusions of the policy remain unchanged.

A377

**Authorized Representative**

ENDORSEMENT NO. 16

This endorsement, effective 12:01 AM:    As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

### Commercial Umbrella Policy Form

#### Specified Operations/Athletic Exclusion Endorsement

This policy is amended as follows:

Section V. Exclusions is amended to add the following additional exclusions:

This Insurance does not apply to:

Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of or relating to:

1.    Use of trampoline or rebounding equipment

2.    Bungee Jumping

3.    Hang Gliding

4.    Parachuting

5.    Archery

6.    Firearms

All other terms, conditions and exclusions of the policy remain unchanged

A378

**Authorized Representative**
**or countersignature (where required by law)**

ENDORSEMENT NO. 17

This endorsement, effective 12:01 AM:   As' Per Certificates

Forms a part of policy no.:   As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Liability Policy

Claims Made Sexual Abuse Retained Amount Endorsement

**NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE.  COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO  US WHILE THE COVERAGE IS IN FORCE.  PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS  THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

The Declarations is amended to include the following additional items:

ITEM 2A.        RETROACTIVE DATE: AS PER CERTIFICATES

ITEM 6.         SEXUAL ABUSE RETAINED AMOUNT - $ 1,000,000 PER CLAIMANT

Section I. Coverage is amended to include the following:

Sexual Abuse Retained Amount

With respect to coverage  for liability arising out of sexual abuse,  we will pay  on behalf of the Insured those sums in excess  of the Sexual Abuse  Retained Amount that the Insured  becomes legally obligated  to pay as  damages because of an  Occurrence  arising out  of  sexual abuse, sexual molestation, sexual  exploitation, or sexual  injury resulting from  the Insureds operations and taking  place on  or after  the  Retroactive Date  but prior  to the  end  of the  Policy Period, provided that the  damages would  be covered  by Scheduled  Underlying Insurance,  except for exhaustion of the  total applicable limits  of Scheduled Underlying  Insurance by the  payment of claims.

The insurance  provided by our  policy will  not be  any broader than  the insurance  coverage provided by the policy listed in the Schedule of Underlying Insurance.

This insurance applies  only if a  claim for damages  is first made  in writing  against the Insured during the Policy Period and written notice is received by us.

A379

**ENDORSEMENT NO.** 17 (Continued)

Section IV. Definitions is amended to include the following:

Sexual Abuse Retained Amount is defined as either:

1. The total of the applicable limits of the underlying policies scheduled in the Declarations providing coverage for sexual abuse, sexual molestation, sexual exploitation, or sexual injury, or

2. The Self-Insured Retention as a result of any one Occurrence or series of continuous, repeated, or related Occurrences with respect to sexual abuse, sexual molestation, sexual exploitation, or sexual injury.

Section V. Exclusions is amended to include the following:

This insurance does not apply to:

1. Claims arising out of any Occurrences committed prior to the Retroactive Date if on or before the Retroactive Date, you had knowledge of or which you could reasonably foresee would result in a claim or Suit,

2. Claims arising out of the same Occurrence or series of continuous, repeated or related Occurrences, alleging the same or similar facts, alleged or contained in any claim which has been reported, or any Occurrence of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time, or

3. Claim, demand or litigation that is prior or pending as of the Retroactive Date or any claim arising out of or relating to any fact, circumstance, situation or Occurrence alleged in such claim, Suit or litigation.

With respect to only the coverage provided by this Endorsement, Section VI. Conditions is amended to include the following:

Extended Reporting Period

1. If we or the Named Insured shall cancel or non-renew this policy for any reason other than nonpayment of premium, the Named Insured shall have the right to extend the time under this Endorsement to report claims made against an Insured for an additional twelve (12) months past the end of the Policy Period.

2. Non-renewal by us shall mean the refusal by us to renew the policy on any terms. Non-renewal by us shall not mean change in premium, deductible, underlying required limits, or any other terms or conditions.

A380

**ENDORSEMENT NO.** 17 (Continued)

3. A claim first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of Bodily Injury, Property Damage, Personal Injury, or Advertising Injury that occurred before the end of the Policy Period but not before the applicable Retroactive Date.

4. This right to purchase the Extended Reporting Period is subject to the following conditions:

    a. The Extended Reporting Period will not extend the Policy period, reinstate the aggregate limit nor otherwise increase the limits of insurance.

    b. Any deductible or Self Insured Retention amounts due us must first be paid by the Insured.

    c. The Named Insured must send written notice to us of the intention to purchase the Extended Reporting Period accompanied by the additional premium. Written notice and premium payment must be received by us within sixty (60) days after the cancellation or nonrenewal date of the Policy Period.

    d. The premium for the Extended Reporting Period endorsement will be equal to 100% of the sexual abuse liability portion of the total member's annual premium. Forty percent of the total member premium is for the sexual abuse liability. The premium for the Extended Reporting Period will be fully earned when the endorsement takes effect.

All other terms, conditions and exclusions of the policy remain unchanged.

A381

**Authorized Representative**
or countersignature (where required by law)

ENDORSEMENT NO. 18

This endorsement, effective 12:01 AM:    As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy Form

Directors and Officers Limitation Endorsement

This policy is amended as follows:

Section V. Exclusions is amended to include the following additional exclusion:

This insurance does not apply to Bodily Injury, Property Damage, Personal Injury or Advertising Injury arising out of any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by or on behalf of the Insured or any person for whom the Insured is legally responsible while acting as a director or officer.

However, if insurance for such Bodily Injury, Property Damage, Personal Injury or Advertising Injury is provided by a policy listed in the Schedule of Underlying Insurance:

1. This exclusion shall not apply,

2. Coverage under this endorsement for such Bodily Injury, Property Damage, Personal Injury or Advertising Injury will follow the terms, definitions, conditions and exclusions of the policy listed in the Schedule of Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this endorsement will not be broader than the coverage provided by the policy listed in the Schedule of Underlying Insurance,

3. Item 3. LIMITS OF INSURANCE of the Declarations is amended by adding an additional aggregate limit of insurance,

     E.      $10,000,000  Each Claim -Directors and Officers Liability
               $10,000,000  Aggregate-Directors and Officers Liability, and

A382

## ENDORSEMENT NO. 18 (Continued)

3.  Section III. Limits of Insurance, is amended as follows:

Paragraph B. and is deleted in its entirety and replaced   with the following:

B.    The General Aggregate Limit stated in Item 3 of the Declarations  is the most we will pay for all damages under Insuring Agreement 1, except for:

1.  Damages included in the Products-Completed Operations Hazard,

2.  Damages  included  in  the  policies listed  in  the Schedule of  Underlying Insurance to which no underlying aggregate limit applies, and

3.  Damages  included in  the  Directors  and Officers  Liability Aggregate  set forth above.

An additional paragraph is added as follows:

The Directors and Officers Liability Aggregate Limit is the most we will pay for all damages included in the Directors and Officers Liability Hazard.

Subject to the provisions set forth above, the Each Claim- Directors and Officers Liability Limit is the most we will pay  for the sum of damages  covered under Insuring Agreement 1  because of Bodily Injury, Property Damage, Personal Injury  or Advertising Injury arising out  of one Occurrence.

All other terms, conditions and exclusions of the policy remain unchanged.

A383

**Authorized Representative**
or countersignature (where required by law)

ENDORSEMENT NO. 19

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.


Commercial Umbrella Policy Form

Claims-Made Coverage Endorsement

NOTICE: THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.  COVERAGE IS LIMITED TO LIABILITY FOR CLAIMS FIRST MADE AGAINST THE INSURED AND REPORTED TO US WHILE THE COVERAGE IS IN FORCE.  PLEASE REVIEW THE ENDORSEMENT CAREFULLY AND DISCUSS  THIS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

IT IS UNDERSTOOD THAT TO THE EXTENT ANY  COVERAGE MAY  OTHERWISE BE  PROVIDED UNDER THIS POLICY OR ANY OF ITS ENDORSEMENTS, THE PROVISIONS OF THIS ENDORSEMENT WILL SUPERCEDE.

In the  event that any  of the underlying policies listed in the  Schedule of Underlying  Insurance provides for coverage on a claims-made  basis, then for the purposes of  this Endorsement only, the policy is amended as follows:

The DECLARATIONS, ITEM 2. is amended to include the following:

    Item 2a.        RETROACTIVE DATE: AS PER CERTIFICATE
    Item 2b.        CONTINUITY DATE:   AS PER CERTIFICATE

ITEM 3C. of the DECLARATIONS is deleted in its entirety.

Section I. Coverage is deleted in its entirety and replaced with the following:

I.      Coverage

A.      We will pay on behalf of the  Insured those sums in excess  of the  Retained Limit  that the Insured becomes legally  obligated to pay  as damages by  reason of liability  imposed by law because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury to which this insurance applies  or because  of Bodily  Injury or  Property Damage  to which  this insurance applies assumed by the Insured under an Insured Contract.

      The amount we will pay for damages is limited as described in Section III. Limits of Insurance.

A384

**ENDORSEMENT NO. 19 (Continued)**

B.  This policy applies, only if:

1.  the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere in the world, and the Bodily Injury or Property Damage occurs on or after the Retroactive Date and prior to the end of the Policy Period,

2.  the Personal Injury or Advertising Injury is caused by an Occurrence arising out of your business that takes place anywhere on or after the Retroactive Date shown in the Declarations and prior the end of the Policy Period, and

3.  a Claim for damages because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury is first made in writing against any Insured in accordance with Paragraph C. below during the Policy Period or any Extended Reporting Period we provide and written notice is received by us during the Policy Period or Extended Reporting Period (if applicable).

C.  A Claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

1.  When notice of such Claim is received and recorded by any Insured in writing and reported to us during the Policy Period or any applicable extended reporting period, or

2.  When we make settlement in accordance with Paragraph A. above.

All Claims for damages because of Bodily Injury to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time from the Bodily Injury, will be deemed to have been made at the time the first of those Claims is made against any Insured.

All Claims for damages because of Property Damage causing Loss to the same person or organization will be deemed to have been made at the time the first of those Claims is made against the Insured.

All Claims for damages because of Personal Injury or Advertising Injury to the same person or organization as a result of an Occurrence will be deemed to have been made at the time the first of those Claims is made against any Insured.

D.  Damages because of Bodily Injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the Bodily Injury.

E.  If we are prevented by law or statute from paying damages covered by this policy on behalf of the Insured, then we will indemnify the Insured for those sums in excess of the Retained Limit.

Coverage under this endorsement applies only to the extent that such coverage is provided by a claims-made policy listed in the Schedule of Underlying Insurance. In no event shall coverage afforded under this endorsement be broader than the Schedule of Underlying Insurance.

A385

**ENDORSEMENT NO. 19 (Continued)**

This claims-made coverage shall follow the terms, definitions, conditions and exclusions of such scheduled underlying policy, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. If any provisions of such scheduled underlying policy conflicts with any provisions of this policy, the provisions of this policy will prevail.

Section III. Limits of Insurance, Paragraph B. is deleted and replaced by the following:

B.     The General Aggregate Limit is the most we will pay for all damages covered under Insuring Agreement I except coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

Damages included in the Products-Completed Operations Hazard shall be subject to the General Aggregate Limit. The Products-Completed Operations Hazard Limit is deleted as set forth above.

Section III. Limits of Insurance, Paragraph C., D. and E. are deleted in their entireties and replaced by the following:

C.     Subject to B. above, the Each Occurrence Limit is the most we will pay for the sum of damages covered under Insuring Agreement I because of all Bodily Injury, Property Damage, Personal Injury and Advertising Injury arising out of any one Occurrence.

If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by our policy we will:

1.     In the event of reduction, pay in excess of the reduced underlying limits of insurance, or

2.     In the event of exhaustion of the underlying limits of insurance, continue in force as underlying insurance.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

D.     Retained Limit

We will be liable only for that portion of damages in excess of the Insider's Retained Limit which is defined as the greater of either:

1.     The total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured, or

2.     The amount stated in the Declarations as Self Insured Retention as a result of any one Occurrence not covered by the underlying policies listed in the Schedule of

## ENDORSEMENT NO. 19 (Continued)

Underlying Insurance nor by any other underlying insurance providing coverage to the Insured,

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Section IV. Definitions is amended to include the following additional definitions:

Claim means a demand for money or Suit.

Loss means those sums actually paid as judgments or settlements

Section V. Exclusions is amended to include the following additional exclusions:

This insurance does not apply to:

Any Claim alleging or arising out of an Occurrence committed on or after the Retroactive Date shown above, if the Insured, an officer, manager in your risk management, insurance or legal department or an employee who was authorized by you to give or receive notice of an Occurrence, knew as of the Continuity Date shown above that such Occurrence could result in a Claim.

Any Claim alleging or arising out the same Occurrence or series of continuous, repeated or related Occurrences or alleging the same or similar facts, alleged or contained in any Claim which has been reported, or any Occurrence of which notice has been given, under any policy of which this policy is a renewal, replacement or succeeds in time,

Any Claim alleging or arising out of any Claim or Suit pending as of the Continuity Date shown above, or alleging or arising out of or relating to any fact, circumstance, situation or Occurrence alleged in such Claim or Suit,

Any Claim arising out of the rendering of or failure to render professional services by the Insured or by any person or organization for whose acts or omissions the Insured is legally responsible.

Section VI. Conditions is amended to include the following additional conditions:

Automatic Extended Reporting Period

If we or the Named Insured cancel, refuse to renew or replace this policy (hereinafter "cancel or non-renew"), the Named Insured will have the right following the effective date of such cancellation or non-renewal to a period of one (1) year (herein referred to as the Automatic Extended Reporting Period) in which to give written notice to us of Claims first made against you during the Automatic Extended Reporting Period for any Bodily Injury or Personal Injury occurring prior to the end of the Policy Period and otherwise covered by this policy.

The Automatic Extended Reporting Period will not apply to Claims that are covered under any subsequent insurance you purchase or is purchased for your benefit, or that would be covered but for the exhaustion of the Limits of Insurance applicable to such Claims or is within any applicable Retained Amount.

**ENDORSEMENT NO. 19 (Continued)**

The Automatic Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

**Optional Extended Reporting Period**

If we or the Named Insured will cancel or non-renew this policy, the Named Insured will have the right, upon payment of an additional premium of up to two hundred percent (200%) of the full annual premium, to a period of one (1) year following the effective date of such cancellation or non-renewal (herein referred to as the Optional Extended Reporting Period) in which to give written notice to us of Claims first made against you during the Optional Extended Reporting Period for any Bodily Injury or Property Damage occurring prior to the end of the Policy Period and otherwise covered by this policy.

As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

The rights contained in this clause will terminate unless the Named Insured provides written notice of such election together with the additional premium due to us within thirty (30) days of the effective date of cancellation or non-renewal. The additional premium for the Optional Extended Reporting Period will be deemed fully earned at the inception of the Optional Extended Reporting Period. The Optional Extended Reporting Period is not cancelable This clause and the rights contained herein will not apply to any cancellation resulting from non-payment of premium. Our offer of renewal terms, conditions, limits of insurance or premiums different from those of the expiring policy will not constitute a non-renewal.

The aggregate limit of insurance for any Extended Reporting Period will be part of, and not in addition to, the Aggregate Limit of Insurance for the Policy Period.

An Optional Extended Reporting Period does not reinstate or increase the Limits of Insurance or extend the Policy Period.

If the Named Insured exercises its right purchase an Optional Extended Reporting Period, the Automatic Extended Reporting Period will not apply.

Section VI. Conditions, F. Duties in the Event of an Occurrence, Claim or Suit, is amended to include the following additional provisions:

1. You must see to it that we are notified as soon as practicable of an Occurrence that is reasonably likely to result in a Claim or Suit under this policy. To the extent possible, notice should include:

   a. how, when and where the Occurrence took place,

   b. the names and addresses of any injured persons and any witnesses, and

   c. the nature and location of any injury or damage arising out of the Occurrence.

   Any Claim which is made in writing against any Insured as respects such Occurrence shall be deemed to have been first made during this policy period if notice of the Occurrence is reported to us within fifteen (15) days of the end of this policy period and the Claim or notice of claim for

A388

## ENDORSEMENT NO. 19 (Continued)

such Occurrence is reported to us within three (3) years after the end of this policy period.

2. If a Claim is made or Suit is brought against any Insured during the Policy Period, you must notify us in writing prior to the end of the Policy Period.

Written notice should be mailed or delivered to:

AIG Technical Services, Inc.
Excess Casualty Claims Department
175 Water Street
New York, NY 10038

3. You and any other involved Insured must:

a. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the Claim or Suit,

b. authorize us to obtain records and other information,

c. cooperate with us in the investigation, settlement or defense of the Claim or Suit, and

d. assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the Insured because of injury or damage to which this insurance may also apply.

4. No Insured will, except at that Insureds own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

All other terms, conditions and exclusions of the policy remain unchanged.

A389

**Authorized Representative**
or countersignature (where required by law)

ENDORSEMENT NO. 20

This endorsement, effective 12:01 AM:     As Per Certificates

Forms a part of policy no.:     As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy

Occurrence Follow Form   Professional Liability for Bodily Injury and Property Damage Endorsement

Designated Professional Services

This policy is amended as follows:

This insurance does not apply to any liability arising out of any Insured's Wrongful Act in the performance of Designated Professional Services.

However, if insurance for such liability is provided by a policy listed in the Schedule of Underlying Insurance, this exclusion will not apply and for purpose of this endorsement only, the policy will be amended as follows:

I.  Section 1. Coverage is amended by adding the following:

A. If such coverage for such liability is provided by a policy listed in the Schedule of Underlying Insurance we will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury or Property Damage arising out of a Wrongful Act that occurs during the Policy Period. Such Wrongful Act must occur in your performance of Designated Professional Services.

B. Coverage under this endorsement will follow the terms, definitions, conditions and exclusions of such a policy listed in the Schedule of Underlying Insurance as of the effective date of this policy, subject to the Policy Period, Limits of Insurance and premium provisions of this policy. In no event will coverage afforded under this endorsement be broader than that afforded by the policy listed in the Schedule of Underlying Insurance.

C. This policy applies only if prior to the Policy Period, no Insured shown in Paragraph E2 -8 of Section IV, no officer, no manager in your risk management, insurance or legal department and no employee who was authorized by you to give or receive notice of an Wrongful Act, claim or Suit, knew that Bodily Injury or Property Damage had occurred, in whole or in part, or that an Wrongful Act had been committed that caused Bodily Injury or Property Damage. If such an Insured, manager or authorized employee knew, prior to the Policy Period, that the Bodily Injury or Property Damage had occurred or that an Wrongful Act had been committed that caused Bodily Injury or Property Damage, then any continuation, change or resumption of such Bodily

ENDORSEMENT NO. 20 (Continued)

Injury or Property Damage during or after the Policy Period will be deemed to have been known prior to the Policy Period.

D.    Bodily Injury or Property Damage will be deemed to have been known to have occurred at the earliest time when any Insured shown under Paragraph E2 -8 of Section IV, any manager in your risk management, insurance or legal department or any employee who was authorized by you to give or receive notice of an Wrongful Act, claim or Suit:

1. reports all, or any part, of the Bodily Injury or Property Damage to us or any other insurer,

2. receives a written or verbal demand or claim for damages because of the Bodily Injury or Property Damage, or

3. becomes aware by any other means that Bodily Injury or Property Damage has occurred or has begun to occur or an Wrongful Act has been committed that has caused or may cause Bodily Injury or Property Damage.

II.  Section IV. Definitions is amended to include the following additional definitions:

A. Designated Professional Services will mean the services marked with an x below, while performed by or on behalf of the Named Insured or any person for whom the Named Insured is legally responsible.

If A policy listed in the Schedule of Underlying Insurance does not define the terms set forth below, these terms will have the following meanings:

_____Pharmacy or Drug Store Liability which will mean:

the manufacture, preparation, selling, handling or distribution of drugs, medicine, other goods or products and their container by the Named Insured at or from any pharmacy or drug store.

_____In- House Architects Professional Liability which will mean:

the preparation or approval of maps, plans, opinions, reports, surveys, designs, specifications and supervisory, inspection or engineering services.

_____In-house Medical Professional Liability which will mean:

1) medical ,surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith,
2) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances,
3) handling of or performing postmortem examinations on human bodies, or
4) service by any person as a member of a formal accreditation or similar professional board or committee of the Insured, or as a person charged with the duty of executing directives of any such board.

_____Morticians' Professional Liability

A391

ENDORSEMENT NO. 20 (Continued)

_____Beauticians and Barbers Professional Liability

_____Opticians Professional Liability

_____Hearing Aid Fitters Professional Liability

_____School or Company Newspaper Publishers Professional Liability.

_____College Radio Broadcasters Professional Liability

_____Police Officer Professional Liability

_____Travel Agents Professional Liability

__X__Teachers Professional Liability shall mean a **Wrongful Act** performed by a teacher, instructor, tutor, educator, administrator, teaching assistant, lecturer, or professor.

**Wrongful Act** means any actual or alleged negligent act, error or omission, misstatement or misleading statement committed by or on behalf of the Named Insured or any person for whom the Named Insured is legally responsible in the performance of Designated Professional Services.

III. Section V. Exclusions is amended to include the following additional exclusions:

This insurance will not apply to claims:

1) alleging or arising out of the printing of financial statements, coupons, awards, or prizes from advertisements, promotions, games, sweepstakes, contests, and games of chance, or

2) alleging or arising out of financial loss, loss of profits, inadequate value, diminution in value or out-of-pocket expenses.

All other terms, conditions and exclusions of the policy remain unchanged.

A392

_____
**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO. 21

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:   As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy Form

Amendment of Definition of Insured -- Risk Purchasing Groups

This policy is amended as follows:

Section IV. Definition E. Insured is amended to include the following additional provision:

Insured means each of the following, to the extent set forth:

If you are a Risk Purchasing Group, your members, but only if:

(1)     you issue a Certificate of Participation in this policy to the member, and

(2)     a copy of the Certificate of Participation is promptly forwarded to us.

Section IV. Definitions is amended to include the following additional definition:

Risk Purchasing Group means  a purchasing group  as defined by  the Risk Retention  Act of 1986, 15 U.S.C. § 3901, *et seq.*, and any amendments thereto.

All other terms, conditions and exclusions of the policy remain unchanged.

A393

**Authorized Representative
or countersignature (where required by law)**

ENDORSEMENT NO. 22

This endorsement, effective 12:01 AM:    As Per Certificates

Forms a part of policy no.:    As Per Certificates

Issued to:   HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:   AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

**Commercial Umbrella Policy Form**

**Risk Purchasing Group Member Aggregate Limit Endorsement**

This policy is amended as follows:

Section III. Limits of Insurance is amended to include the following additional provision:

The General Aggregate Limit applies separately to each  member of a Risk Purchasing Group insured under this Policy.

All other terms, conditions and exclusions of the policy remain unchanged.

A394

Authorized Representative
or countersignature (where required by law)

ENDORSEMENT NO. 23

This endorsement, effective 12:01 AM:   As Per Certificates

Forms a part of policy no.:   As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy Form

Risk Purchasing Group Cross-Suits Exclusion Endorsement

This policy is amended as follows:

Section V. Exclusions is amended to include the following additional exclusion:

This insurance does not apply to:

Bodily Injury, Property Damage, Personal Injury, or Advertising Injury to a person or organization for which coverage is otherwise afforded under this Policy pursuant to a Certificate of Participation issued to a member of a Risk Purchasing Group, that is caused, in whole or in part, by any other person or organization for which coverage is afforded under this Policy pursuant to a Certificate of Participation issued to the same member of the Insured Risk Purchasing Group.

All other terms, conditions and exclusions of the policy remain unchanged.

A395

**Authorized Representative**
or countersignature (where required by law)

ENDORSEMENT NO. 24

This endorsement, effective 12:01 AM:  As Per Certificates

Forms a part of policy no.:  As Per Certificates

Issued to:  HEALTH AND EDUCATION LIABILITY PROGRAM INC.

By:  AMERICAN INTERNATIONAL SPECIALTY LINES INS. CO.

Commercial Umbrella Policy Form

Liquor Liability Exclusion (including host liability) Endorsement

This policy is amended as follows:

Section V. Exclusions , Paragraph S is deleted in its entirety and replaced by the following:

S.  This insurance does not  apply to Bodily Injury, Property Damage,  Personal Injury or Advertising Injury arising out of:

1) Causing or contributing to the intoxication of any person,

2) Furnishing alcoholic beverages to  anyone under legal drinking age  or under the influence  of alcohol,

3) Any statute,  ordinance or regulation  relating to  sales, gift,  distribution or use  of alcoholic beverages, or

4) Any act  or  omission  by any  Insured, any  employee of any  Insured, patrons, members, associates, volunteers or  any other  persons providing  or failing  to provide transportation, detaining or failing  to detain any  person,  or  any act of  assuming or not assuming responsibility for  the  well  being,  supervision  or care  of  any person  allegedly under  or suspected to be under the influence of alcohol.

All other terms, conditions and exclusions of the policy remain unchanged.

A396

Authorized Representative
or countersignature (where required by law)

# EXHIBIT L

 **American International Companies®**

POLICY NUMBER:
873-99-71

RENEWAL OF:
473-29-11

# NOT–FOR–PROFIT INDIVIDUAL AND ORGANIZATION INSURANCE POLICY INCLUDING EMPLOYMENT PRACTICES LIABILITY INSURANCE

## NOT-FOR-PROFIT PROTECTOR sm

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International Pacific Insurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Penns.

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Company of Pitts., Pa ®
☐ National Union Fire Insurance Company of Louisiana
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

---

**NOTICE:** EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

**NOTICE:** THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

**NOTICE:** THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER, THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

## DECLARATIONS

**ITEM 1.** NAMED ORGANIZATION: *AMERICAN LEGACY FOUNDATION*

MAILING ADDRESS: *1001 G STREET, NW*
*SUITE 800*
*WASHINGTON, DC 20001*

STATE OF INCORPORATION OF THE NAMED ORGANIZATION:
*Delaware*

**ITEM 2.** SUBSIDIARY COVERAGE: any past, present or future Subsidiary of the Named Organization

**ITEM 3.** POLICY PERIOD:   From: *August 26, 2001*   To: *August 26, 2002*
(12:01 A.M. standard time at the address stated in Item 1.)

**ITEM 4.** LIMIT OF LIABILITY:   *$15,000,000*
aggregate for each Policy Year Coverages A, B and C combined (including Defense Costs)

7065422

A398

ITEM 5.    RETENTION:

A.    Judgments, Settlements and Defense Costs        None
      (Non-Indemnifiable Loss or Indemnifiable Loss
      incurred solely by Organizations in Financial
      Insolvency)

B.    Judgments, Settlements and Defense Costs
      (Coverage C and all other Indemnifiable Loss)        *$50,000*

                                                           for Loss arising from
                                                           Claims alleging the same
                                                           Wrongful Act or related
                                                           Wrongful Acts (waivable
                                                           under Clause 6 in certain
                                                           circumstances)

ITEM 6.    CONTINUITY DATES:

A.    Coverages A and B:                                   *August 26, 1999*

B.    Coverage C:                                          *August 26, 1999*

ITEM 7.    A.    PREMIUM: 1 Year Premium                   *$54,450*

                 3 Year Premium Prepaid                    *$0*

                 3 Year Premium Installments payable each anniversary

                                    1st    *n/a.*              inception
                                    2nd    *n/a.*
                                    3rd    *n/a.*

B.    ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND MULTIPLIED DAMAGES
      (included in above) (No punitive damages coverage provided *X* )

ITEM 8.    NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
           (This policy is issued only by the insurance company indicated below.)

*National Union Fire Insurance Company of Pittsburgh, Pa.*

*175 Water Street*

*New York, NY 10038*

*7065422*

**Armfield, Harrison & Thomas, Inc.**
INSURANCE • BONDS
(703) 777-2341   METRO 478-1905
20 South King Street
LEESBURG, VA 22075
Independent
Insurance
Agent ®

A399

68466 (8/97)

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_

SECRETARY

_[signature]_

PRESIDENT

_[signature]_

AUTHORIZED REPRESENTATIVE

_____

COUNTERSIGNATURE DATE

_____

COUNTERSIGNED AT

ARMFIELD HARRISON & THOMAS INC
20 S KING ST
LEESBURG, VA 22075

7065422

68466 (8/97)

A400

 **AMERICAN INTERNATIONAL COMPANIES ®**

### NOT–FOR–PROFIT INDIVIDUAL AND ORGANIZATION INSURANCE POLICY INCLUDING EMPLOYMENT PRACTICES LIABILITY INSURANCE

#### NOT–FOR–PROFIT PROTECTOR℠

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the "Insurer", agrees as follows:

## 1. INSURING AGREEMENTS

### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay on behalf of each and every Individual Insured Loss arising from a Claim first made against such Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his/her respective capacities as an Individual Insured of the Organization, except when and to the extent that the Organization has indemnified the Individual Insured. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE B: ORGANIZATION INDEMNIFICATION REIMBURSEMENT INSURANCE

This policy shall pay on the behalf of the Organization Loss arising from a Claim first made against an Individual Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in his/her respective capacities as an Individual Insured of the Organization, but only when and to the extent that the Organization has indemnified such Individual Insured for such Loss pursuant to law, common or statutory, or contract, or the Charter or By–laws of the Organization duly effective under such law which determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE C: ORGANIZATION ENTITY COVERAGE

This policy shall pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### DEFENSE PROVISIONS

The Insurer does not assume any duty to defend; provided, however, the Named Organization may at its sole option, and in accordance with Clause 8, tender to the Insurer the defense of a Claim for which coverage is provided by this policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the Retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Class Action Claim", as defined in Clause 9, shall be made in accordance with Clause 9 of the policy.

A401

## 2. DEFINITIONS

(a) "Affiliate" shall mean any not for profit organization other than a Subsidiary which:

    (1)    the Named Organization or any Subsidiary controls or otherwise has the ability to direct the financial or managerial decisions of such entity, whether through the operation of law, contract or agreement, stock ownership or membership, charter, articles of incorporation, or by-law provisions; or

    (2)    is granted by contract the right to control the financial or managerial decisions of the Organization or any Subsidiary.

Provided, however that such coverage as is provided by sections (1) and (2) above shall be limited solely to Wrongful Acts occurring in the course of the exercise of such control of financial or managerial decisions.

(b) "Claim" means:

    (1)    a written demand for monetary relief; or

    (2)    a civil, criminal, regulatory or administrative proceeding for monetary or non-monetary relief which is commenced by:

        (i)    service of a complaint or similar pleading; or

        (ii)    return of an indictment (in the case of a criminal proceeding); or

        (iii)    receipt or filing of a notice of charges; or

    (3)    any request to toll or waive any statute of limitations.

The term "Claim" shall include an Employment Practices Claim, provided however, that in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

(c) "Continuity Date" means the date set forth in:

    (1)    Item 6A of the Declarations with respect to all coverages other than Coverage C; or

    (2)    Item 6B of the Declarations with respect to Coverage C only.

(d) "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of Individual Insureds.

(e) "Employee(s)" means any past, present or future employee of the Organization, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any full-time, part-time, seasonal and temporary Employee of the Organization in his or her capacity as such.

(f) "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

(g) "Employment Practices Violation(s)" means any actual or alleged:

    (1)    wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

    (2)    harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

A402

(3) discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4) Retaliation (including lockouts);

(5) employment-related misrepresentation(s) to an Employee or applicant for employment with the Organization;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent Employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9) wrongful discipline;

(10) failure to grant tenure or practice privileges;

(11) failure to provide or enforce adequate or consistent organization policies or procedures relating to any other Employment Practices Violation;

(12) violation of any individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Individual Insured, or applicant for employment, with the Organization or an Outside Entity, whether direct, indirect, intentional or unintentional.

(h) "Financial Insolvency" means: (1) entering into proceedings in bankruptcy or (2) becoming a debtor in possession; or (3) the taking of control, the supervision of, or the managing or liquidating the financial affairs of such entities by a receiver, conservator, liquidator, trustee, rehabilitator, or similar official.

(i) "Individual Insured(s)" means a past, present or future duly elected or appointed director, officer, trustee, trustee emeritus, executive director, department head, committee member (of a duly constituted committee of the Organization), staff or faculty member (salaried or non-salaried), Employee or volunteer of the Organization. Coverage will automatically apply to all new persons who become Individual Insureds after the inception date of this policy.

(j) "Insured(s)" means the Organization and all Individual Insureds.

(k) "Loss" means damages, (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act and Defense Costs; however, Loss shall not include: (1) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (2) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (3) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seinar relating to an Employment Practices Claim; or (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

A403

If an additional premium is stated in Item 7B of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions) punitive, exemplary and multiple damages. It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 7B of the Declarations, then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages. In all events, coverage shall not be provided to any particular Insured who has been adjudicated to have obtained a profit or advantage or committed a fraudulent or dishonest act or a willful violation of any statute, rule or law.

(l) "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(m) "Non-Employment Discrimination" means any actual or alleged sexual harassment or unlawful discrimination, as described in paragraphs (2) and (3) of the definition of Employment Practices Violation, or the violation of the civil rights of a person relating to such sexual harassment or discrimination, when such acts are alleged to be committed against anyone other than an Individual Insured, or applicant for employment with the Organization or an Outside Entity, including, but not limited to: students, patients, members, customers and suppliers.

(n) The "Organization" means: (1) the Named Organization designated in Item 1 of the Declarations; (2) any Subsidiary thereof; and (3) and Affiliate thereof listed by endorsement to this policy.

(o) "Outside Entity" means a not-for-profit organization, other than a Subsidiary or listed Affiliate, on which an Individual Insured serves, at the specific written request of the Organization, as a director, trustee, trustee emeritus or governor. Such coverage as is provided by this policy shall be specifically excess of any insurance in force as respects such Outside Entity and any indemnification provided by such Outside Entity.

(p) "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(q) "Policy Year" means a period of one year, within the Policy Period, commencing each year on the day and hour first named in Item 3. of the Declarations, or if the time between the effective date or anniversary and termination of the Policy is less than one year, then such lesser period.

(r) "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(s) "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

A404

68467 (8/97)                                    4

(t)    "Subsidiary" means:

a)    any organization which, on or before the inception of the Policy Period the Organization owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its Subsidiaries, or has, on or before the inception of the Policy Period, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its Subsidiaries;

b)    automatically any not for profit organization which becomes a Subsidiary during the Policy Period and where the book value of such entity's assets determined in accordance with Generally Accepted Accounting Principles ("GAAP") totals less than 30% of the similarly calculated assets of the Named Organization as of the inception date of the Policy Period; or

c)    any for profit organization which becomes a Subsidiary during the Policy Period and where the book value of such entity's assets determined in accordance with "GAAP" totals less than 20% of the similarly calculated assets of the Named Organization as of the inception date of the Policy Period.

With regard to paragraphs b) and c) above, the Named Organization shall provide the Insurer with full particulars of the Subsidiary before the end of the Policy Period.

Any organization which becomes a Subsidiary during the Policy Period but exceeds the asset limitations stated in b) or c) above, (hereinafter "New Subsidiary") shall be provided coverage under this policy, but only upon the condition that within 90 days after the date of its becoming a Subsidiary, the Named Organization shall have provided the Insurer with full particulars of the New Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such New Subsidiary. Further, such coverage as shall be afforded to the New Subsidiary is conditioned upon the Named Organization paying when due any additional premium required by the Insurer relating to such New Subsidiary.

An organization becomes a Subsidiary when the Named Organization owns more than fifty percent (50%) of the voting interest, either directly, or indirectly through one or more of its Subsidiaries, or has, on or before the inception of the Policy Period, the right to elect or appoint more than fifty percent (50%) of the voting directors, or trustees, either directly or indirectly through one or more of its Subsidiaries.

In all events, such coverage as is afforded under this policy with respect to a Claim made against any Subsidiary, or any Individual Insured of a Subsidiary, shall only apply for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

(u)    "Wrongful Act" means:

(1)    with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in his/her respective capacities as such, or any matter claimed against such Individual Insured solely by reason of his/her status as Individual Insureds of the Organization;

(2)    with respect to the Organization under Coverage C, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization;

(3)    with respect to service on an Outside Entity, any matter claimed against such Individual Insureds arising out of such Insured serving as a director, trustee, trustee emeritus or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Organization;    A405

(4) with respect to both the Individual Insureds and the Organization and subject to paragraphs 1, 2 and 3 above, "Wrongful Act" shall specifically include:

    (a)  Employment Practices Claims;

    (b)  Non–Employment Discrimination;

    (c)  violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules;

    (d)  libel, slander, defamation or publication or utterance in violation of an individual's right of privacy;

    (e)  wrongful entry or eviction or other invasion of the right of occupancy;

    (f)   false arrest or wrongful detention;

    (g)  plagiarism; and

    (h)  infringement of copyright or trademark or unauthorized use of title.

## 3. EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of an Individual Insured's incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Acts upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

  (a)  arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

  (b)  arising out of, based upon or attributable to the committing in fact of any criminal, or deliberate fraudulent act;

     The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of exclusions 4(a) through 4(b).

  (c)  alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained, in any Claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

  (d)  alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation; or the alleging of any Wrongful Act which is the same or a Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

A406

68467 (8/07)

(e)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Individual Insured serving in any capacitiy, other than with the Organization or as a director, trustee, trustee emeritus, or governor of an Outside Entity;

(f)    which is brought by or on behalf of the Organization against any Individual Insured; provided however, this exclusion shall not apply to any derivative Claim made on behalf of the Organization by a member, an attorney general or any other such representative party if such action is brought and maintained independently of and without the solicitation of or assistance of, or active participation of or intervention of any Individual Insured or the Organization or any Affiliate thereof;

(g)    for any Wrongful Act arising out of an Individual Insured serving as a director, trustee, trustee emeritus or governor of an Outside Entity if such Claim is brought by the Outside Entity or by any director, trustee, trustee emeritus or governor thereof;

(h)    for bodily injury, sickness, disease, death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i)    alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly:

    (1)    the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

    (2)    any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants,

including but not limited to a Claim alleging damage to the Organization or its members.

Pollutants include (but are not limited to) any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed;

(j)    for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state or local statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(k)    alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of an Insured under any express contract or agreement; provided, however, that this exclusion shall not apply to liability which would have attached in the absence of such express contract or agreement;

(l)    for any civil or criminal fines imposed by law and any taxes (whether imposed by federal, state, local or other governmental authority);

(m)    alleging, arising out of, or in any way relating to any purchase or sale of securities by the Named Organization, Subsidiary or Affiliate or Claims brought by securities holders of the Organization in their capacity as such; provided, however, this exclusion shall not apply to the issuance by the Organization of tax exempt bond debt or Claims brought by tax exempt bond debt holders.

A407

5. **LIMIT OF LIABILITY – (FOR ALL LOSS – INCLUDING DEFENSE COSTS)**

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A, Coverage B and Coverage C combined, arising out of all Claims first made against the Insureds during a Policy Year or the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Year in which the Discovery Period is elected. Further, any Claim which is made subsequent to the Policy Year or Discovery Period (if applicable) which, pursuant to Clause 7(b) or 7(c), is considered made during the Policy Year or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations.

**Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.**

**This policy provides one aggregate Limit of Liability for each Policy Year. In no event shall the Limit of Liability for any one Policy Year exceed the aggregate Limit of Liability as stated in Item 4 of the Declarations.**

6. **RETENTION CLAUSE**

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5(B) of the Declarations, such Retention amount to be borne by the Organization and shall remain uninsured, with regard to all Loss for which the Organization has indemnified or is permitted or required to indemnify the Individual Insureds ("Indemnifiable Loss") and Loss under Coverage C. A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Acts.

Except as hereinafter stated, no Retention shall apply to a Claim in the event of the Financial Insolvency of the Named Organization and all Subsidiaries or Affiliates which are permitted or required to indemnify the Individual Insured with regard to such Claim. Provided, however, the Organization hereby agrees to indemnify the Insureds to the fullest extent permitted by law, taking all steps necessary in furtherance thereto, including the making in good faith of any required application for court approval and the passing of any required corporate resolution or the execution of any contract. The Named Organization and all Subsidiaries and Affiliates will be conclusively deemed to have indemnified the Individual Insureds to the extent that the Organization is permitted or required to indemnify them pursuant to law, common or statutory, or contract, or the charter or by-laws of the Organization.

Further, no Retention shall apply to all coverages for any Claim which is in the form of a civil litigation for monetary relief, and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

    (1)   a determination of No Liability of all Insureds; or

    (2)   a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur one hundred twenty (120) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within ninety (90) days from the time of such dismissal or stipulation, and further subject to an undertaking by the Organization in a form acceptable to the Insurer that such reimbursement shall be paid back by the Organization to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90-day period and before the expiration of the statute of limitations for such Claim.

A408

7.  **NOTICE/CLAIM REPORTING PROVISIONS**

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Named Organization on the behalf of any Insured or by the Insurer, whichever comes first.

(a)  The Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

(1)  anytime during the Policy Year or during the Discovery Period (if applicable); or

(2)  within 30 days after the end of the Policy Year or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)  If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the Claim of which such notice has been given, shall be considered made at the time such notice was given.

(c)  If during the Policy Period or during the Discovery Period (if applicable) the Insureds shall become aware of any circumstances which may reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons, and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

8.  **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of any Claim to the Insurer, which right shall be exercised in writing by the Named Organization on behalf of all Insureds to the Insurer pursuant to Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation thereof sent by the Insurer to the Named Organization. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense of such Claim, including, but not limited to, negotiating a settlement, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such

A409

Claim after the Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as described in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds, severally according to their respective interests, in the event and to the extent that the Insureds shall not be entitled under the terms and conditions of this policy to payment of such Loss.

**The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.**

The Insurer shall have the right to effectively associate with the Insureds in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Organization's applicable Retention amount shall be retroactively reduced by ten percent (10%) for such Loss. It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the Claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the Retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount subject to the policy's Limit of Liability. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

## 9.  PRE-AUTHORIZED CLASS ACTION DEFENSE ATTORNEYS

This clause applies only to a Claim filed as a class action (hereinafter referred to as a "Class Action Claim").

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel may be made to conduct the defense of any Class Action Claim against an Insured pursuant to the terms set forth below.

A410

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall be obligated to select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Class Action Claim, then the Insureds may at their option select a Panel Counsel firm to defend the Insureds. If the Insured does not select a Panel Counsel firm, such non-Panel Counsel firm selection shall be subject to the Insurer's consent, which consent shall not be unreasonably withheld.

The selection of the Panel Counsel Firm, when done by the Insurer, shall be from the jurisdiction in which the Class Action Claim is brought.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Organization.

## 10. DISCOVERY CLAUSE

Except as indicated below, if the Named Organization shall cancel or the Insurer or the Named Organization shall refuse to renew this policy, the Named Organization, upon payment of the respective "Additional Premium Amount" described below, shall have the right to a period of one, two or three years after the effective date of such cancellation or nonrenewal (herein referred to as the "Discovery Period") in which to give to the Insurer written notice of Claims first made against the Insureds during the selected period for any Wrongful Act occurring prior to the end of the Policy Period and otherwise covered by this policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the Insurer within 30 days of the effective date of cancellation or nonrenewal. The Additional Premium Amount for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This clause and the rights contained herein shall not apply to any cancellation resulting from non-payment of premium.

The Additional Premium Amount for: (1) one year shall be 40% of the "full annual premium"; (2) two years shall be 75% of the "full annual premium"; (3) three years shall be 100% of the "full annual premium". As used herein, "full annual premium" means the premium level in effect immediately prior to the end of the Policy Period.

In the event of a Transaction, as defined in Clause 12, the Named Organization shall have the right, within 30 days before the end of the Policy Period, to request an offer from the Insurer of a Discovery Period (with respect to Wrongful Acts occurring prior to the effective time of the Transaction) for a period of no less than six years or for such longer or shorter period as the Named Organization may request. The Insurer shall offer such Discovery Period pursuant to such terms, conditions and premium as the Insurer may reasonably decide. In the event of a Transaction, the right to a Discovery Period shall not otherwise exist except as indicated in this paragraph.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the Named Organization only by mailing written prior notice to the Insurer or by surrender of this policy to the Insurer or its authorized agent. If this policy is canceled by the Named Organization, the Insurer shall retain the customary short rate proportion of the premium herein. However, if the Policy Period as designated in Item 3. of the Declarations is more than one year, this policy may not be cancelled by the Named Organization.

This policy may be canceled by or on the behalf of the Insurer only in the event of nonpayment of premium by the Named Organization. In the event of non-payment of premium by the Named Organization, the Insurer may cancel this policy by delivering to the Named Organization, or by mailing to the Named Organization, by registered, certified, or other first class mail, at the Named Organization's address as shown in Item 1 of the Declarations, written notice stating when, not less than 30 days thereafter, the cancellation

A411

shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The Policy Period terminates at the date and hour specified in such notice, or at the date and time of surrender. The Insurer shall have the right to the premium amount for the portion of the Policy Year during which the policy was in effect.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

## 12.   CHANGE IN CONTROL OF NAMED ORGANIZATION

If during the Policy Period:

a.   the Named Organization shall consolidate with or merge into, or sell all or substantially all of its assets to, any other person or entity, or group of persons or entities acting in concert;

b.   any person or entity or group of persons or entities, acting in concert shall acquire an amount of the voting interest representing more than fifty percent (50%) of the voting power for the election or appointment of directors or trustees of the Named Organization, or acquires the voting rights of such an amount of such interest; or

c.   the Named Organization shall change from not–for–profit to for–profit status;

(any of the above events herein referred to as the "Transaction")

then, this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the Transaction, but there shall be no coverage afforded by any provision of this policy for any actual or alleged Wrongful Act occurring after the effective time of the Transaction. This policy may not be canceled after the effective time of the Transaction and the entire premium for this policy shall be deemed earned as of such time. The Named Organization shall also have the right to an offer by the Insurer of a Discovery Period described in Clause 10 of the policy.

The Named Organization shall give the Insurer written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

## 13.   SUBROGATION

In the event of any payment under this policy, the Insurer shall be subrogated to the extent of such payment to all the Insureds' rights of recovery thereof, and the Insureds shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of such documents necessary to enable the Insurer effectively to bring suit in the name of any Insureds. In no event, however, shall the Insurer exercise its rights of subrogation against an Insured under this policy unless such Insured has been convicted of a criminal act, or been determined to have committed a dishonest or fraudulent act, or obtained any profit or advantage to which such Insured was not legally entitled.

## 14.   OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any valid and collectible insurance. This policy shall be specifically excess of any other policy pursuant to which any other insurer has a duty to defend a Claim for which this policy may be obligated to pay Loss.

In the event of a Claim against a director, trustee, trustees emeritus or governor arising out of his or her serving as a director, trustee, trustees emeritus or governor of an Outside Entity, coverage as is afforded by this policy shall be specifically excess of

A412

indemnification provided by such Outside Entity and any insurance provided to such Outside Entity with respect to its directors, trustees, trustees emeriti or governors.

Further, in the event such other insurance is provided to an Outside Entity by the Insurer or any member company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the Limit of Liability or failure to submit a notice of a Claim) then the Insurer's maximum aggregate Limit of Liability for all Losses combined in connection with a Claim covered, in part of in whole, by this policy and such other insurance policy issued by AIG shall not exceed the greater of the Limit of Liability of this policy or the limit of liability of such other AIG insurance policy.

## 15. NOTICE AND AUTHORITY

It is agreed that the Named Organization shall act on behalf of the Subsidiaries and all Insureds with respect to the giving of notice of Claim or giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy, the receipt and acceptance of any endorsements issued to form a part of this policy, the exercising or declining to tender the defense of a Class Action Claim to the Insurer and the exercising or declining of any right to a Discovery Period.

## 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the Insurer.

## 17. ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the Insureds' obligation to pay shall have been finally determined either by judgment against the Insureds after actual trial or by written agreement of the Insureds, the claimant and the Insurer.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Insurer as a party to any action against the Insureds to determine the Insureds' liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives. Bankruptcy or insolvency of the Insureds or of their estates shall not relieve the Insurer of any of its obligations hereunder.

## 18. REPRESENTATIONS AND SEVERABILITY

In granting coverage under this policy, it is agreed that the Insurer has relied upon the statements and representations contained in the application for this policy (including materials submitted thereto and, if this is a renewal application, all such previous policy applications for which this policy is a renewal) as being accurate and complete. All such statements and representations shall be deemed to be material to the risk assumed by the Insurer, are the basis of this policy and are to be considered as incorporated into this policy.

With respect to such statements and representations, no knowledge or information possessed by any Individual Insured shall be imputed to any other Individual Insured. If any person who executed the application knew that such statement or representation was inaccurate or incomplete, such statement shall not be imputed to any trustee, trustee emeritus or governor other than such signator and any other Individual Insureds who knew such statement or representation was inaccurate or incomplete.

A413

19. **HEADINGS**

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

20. **WORLDWIDE TERRITORY**

This policy shall apply to Claims made against an Insured anywhere in the world.

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

CLASS ACTIONS–NON EMPLOYMENT,
ANTI–TRUST AND UNFAIR
COMPETITION CLAIMS

**ALASKA**

LANE POWELL SPEARS LUBERSKY LLP
420 L Street
Suite 300
Anchorage, AK 99501–1937
Phone: (206) 223–7019
Contact: James B. Stoetzer, Esq.

**ARIZONA**

GOODWIN RAUP PC
One Columbus Plaza
Suite 1200
Phoenix, AZ 85012–1942
Phone: (602) 650–2009
Contact: Martin P. Clare, Esq.

**CALIFORNIA**

IRELL & MANELLA
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067–4275
Phone: (310) 277–1010
Contact: James F. Elliot, Esq.

LATHAM & WATKINS
505 Montgomery Street
Suite 1900
San Francisco, CA 94111
Phone: (415) 391–0600
Contact: Linda M. Inscoe, Esq.

633 West Fifth Street
Suite 4000
Los Angeles, CA 90071–2007
Phone: (213) 485–1234
Contact: Joel E. Krischer, Esq.

MORRISON & FOERSTER LLP
555 West Fifth St., Suite 3500
Los Angeles, CA 90013–1024
Phone: (213) 892–5200
Contact: B. Scott Silverman, Esq.

425 Market Street
San Francisco, CA 94105–2482
Phone: (415) 268–7000
Contact: Linda E. Shostak, Esq.

O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA 92660
Phone: (714) 760–9600
Contact: Stephen P. Pepe, Esq.

Embarcadero Center West
275 Battery Street
San Francisco, CA 94111–3305
Phone: (415) 984–8700
Contact: Douglas Dexter, Esq.

400 South Hope Street
15th Floor
Los Angeles, CA 90071–2899
Phone: (213) 430–6000
Contact: Gordon E. Krischer, Esq.

**COLORADO**

ARNOLD & PORTER
1700 Lincoln Street
Denver, Co 80203–4540
Phone: (303) 863–1000
Contact: James E. Scarboro, Esq.

**DELAWARE**

WOLF BLOCK SCHORR AND SOLIS–
COHEN LLP
One Rodney Square
10th & King Streets
Wilmington, DE 19801
Phone: (302) 777–5860
Contact: Barry M. Klayman, Esq.

A415

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

**DISTRICT OF COLUMBIA**

GREENBERG TRAURIG
1300 Connecticut Avenue, N.W.
Washington, DC 20036
Tel: (202) 331-3100
Contacts: C. Allen Foster, Esq., Joe R.
Reeder, Esq., or Eric C. Rowe, Esq.

PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, DC 20037
Tel: (202) 457-6000
Contacts: Douglas B. Mishkin, Esq. or
Sally D. Garr, Esq.

**FLORIDA**

GREENBERG TRAURIG
515 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Tel: (954) 765-0500
Contact: Frank Scruggs, Esq.

1221 Brickell Avenue
Miami, FL 33131
Tel: (305) 579-0500
Contact: Ron Rosengarten, Esq.

**GEORGIA**

SMITH, GAMBRELL & RUSSELL LLP
3343 Peachtree Road, N.E.
Suite 3200, Promenade II
Atlanta, GA 30326-1010

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Contact: Peter Q. Bassett, Esq. or
        Robert P. Riordan, Esq.

**HAWAII**

LOVE YAMAMOTO & MOTOOK
1000 Bishpop Street
Honolulu, HI 9681
Phone: (808) 532-7900
Contact: Chad Love, Esq.

**IDAHO**

QUANE SMITH LLP
US Bank Plaza, Suite 1600
101 South Capital Blvd
Boise, ID 83702
Tel: (208) 345-0960
Contact: Jeremiah A. Quane, Esq.

**ILLINOIS**

JENNER & BLOCK
One IBM Plaza
Chicago, IL 60611
Phone: (312) 222-9350
Contact: David K. Haase, Esq.

SIDLEY & AUSTIN
One First National Plaza
Chicago, IL 60603
Phone: (312) 853-7000
Contact: James S. Whitehead, Esq.,
        Julie O. Allen, Esq., Lawrence
        Lawrence I. Kipperman, Esq.,
        Thomas A. Roberts, Esq.

SONNENSCHEIN NATH & ROSENTHAL
800 Sears Towers
Chicago, IL 60601-1692
Phone: (312) 876-3112
Contact: Roger T. Brice, Esq.

A416

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### INDIANA

KIGHLINGER & GRAY
151 North Delaware
Tel: (317) 638-4521
Contact: Donald L. Dawson, Esq.

### IOWA

NYEMASTER GOODE VOIGTS WEST
HANSELL & O'BRIEN
700 Walnut Street
Des Moines, IA 50309
Tel: (515) 283-3100
Contact: Hayward Draper, Esq.

### KENTUCKY

BOEHL STOPHER & GRAVES
400 West Market Street
Suite 2300
Louisville, KY 40222
Tel: (502) 589-5980
Contact: Ed Stopher, Esq.

### LOUISIANA

ADAMS AND REESE
4500 One Shell Square
New Orleans, LA 70139
Tel: (504) 581-3234
Contact: Janis Van Meerveld, Esq.

### MASSACHUSETTS

NIXON PEABODY LLP
101 Federal Street
Boston, Ma. 02110
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.

ROPES & GRAY
One International Place
Boston, MA 02110-2624
Phone: (617) 951-7000
Contact: John D. Donovan, Jr., Esq.

### NEW YORK

GREENBERG TRAURIG
Met Life Building
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Contact: Joe R. Reeder, Esq.

KRAMER LEVIN NAFTALIS & FRANKEL
919 Third Avenue
New York, NY 10022
Tel: (212) 715-9100
Contact: Gary Naftalis, Esq.

SCHULTE ROTH & ZABEL LLP
900 Third Avenue
New York, NY 10022
Tel: (212) 756-2000
Contact: Irwin J. Sugarman, Esq. or
Daniel J. Kramer, Esq.

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, NY 10019-6099
Phone: (212) 728-8000
Contact: Stephen Greiner, Esq.

NIXON PEABODY LLP
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq

Omni Plaza
300 South Pearl St.
Albany NY 12207
Tel: (518) 427-2650
Contact: Joseph J. Ortego, Esq

437 Madison Avenue
New York NY 10022
Tel: (212) 940-3000
Contact: Joseph J. Ortego, Esq

Clinton Square, PO Box 31051
Rochester, NY 14603
Tel: (716) 263-1000
Contact: Joseph J. Ortego, Esq

A417

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

**PENNSYLVANIA**

BUCHANAN INGERSOLL, PC
One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219-8800
Tel: (412) 562-1880
Contact: John R. Leathers, Esq.

DECHERT PRICE & RHOADS
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103-2793
Tel: (215) 994-4000
Contact: Seymour Kurland, Esq., Jeffrey
G. Weil, Esq., or Frederick G. Herold, Esq.

PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Phone: (215) 981-4000
Contact: Anthony B. Haller, Esq.

WOLF BLOCK SCHORR & SOLIS –
COHEN LLP
1650 Arch Street
Philadelphia, PA 19103-2097
Phone: (215) 977-2588
Contact: Alan Kessler, Esq.

**RHODE ISLAND**

ROPES & GRAY
30 Kennedy Plaza
Providence, RI 02903-2328
Phone: (401) 455-4400
Contact: William S. Eggeling, Esq.

NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq

**TEXAS**

BAKER & BOTTS LLP
2001 Ross Avenue
Dallas, TX 75201-2980
Phone: (214) 953-6575
Contact: Dan Hartsfield, Esq.

One Shell Plaza
910 Louisiana
Houston, TX 77002-4995
Phone: (713) 229-1234
Contact: Richard R. Brann, Esq.

FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Phone: (214) 855-8188
Contact: Bob Herrell, Esq.
        A.J. Harper, Esq.

1301 McKinney
Suite 5100
Houston, TX 77101-3095
Phone: (713) 651-5442
Contact: Frank Jones, Esq.

PATTON BOGGS LLP
2626 Cole Avenue
Suite 700
Dallas, TX 75204
Phone: (214) 871-2141
Contact: D. Patrick Long, Esq.

A418

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

THOMPSON & K NIGHT LLP
1700 Pacific Avenue
Suite 3300
Dallas, TX 75201-4693
Phone: (214) 969-1700
Contact: Timothy R. McCormick, Esq.
Phone: (214) 969-1751
Contact: Stephen F. Fink, Esq.

### VIRGINIA

GREENBERG TRAURIG
1750 Tysons Boulevard, 12th Floor
Tysons Corners, VA 22102 Tel: (703)
749-1300 Contacts: C. Allen Foster,
Esq., Joe R. Reeder, Esq. or Harry M.
Glazer, Esq.

MCGUIRE WOODS BATTLE
& BOOTHE LLP
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Tel: (804) 775-4364
Contact: Warren E. Zirkle , Esq.

### WASHINGTON

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue Suite 4100 Seattle
WA 98101-2338 Tel: (206) 223-7019
Contact: James B. Stoetzer, Esq.

### WEST VIRGINIA

STEPTOE & JOHNSON LLP
Bank One Center
P.O. Box 2190
Clarksburg, WV 26302-2190
Phone: (304) 624-8000
Contact: C. David Morrison, Esq.

A419

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### EMPLOYMENT PRACTICES CLAIMS

#### ALABAMA

LLOYD GRAY & WHITEHEAD
Two Perimeter Park South
Suite 100
Birmingham, AL 35423
Phone: (205) 967-8822
Contact: Steven E. Whitehead, Esq.
*Class Action Approved*

LUTHER OLDENBURG & RAINEY
63 S. Royal Street
Mobile, AL
Phone: (334) 433-8088
Contact: Rudene C. Oldenburg, Esq.

#### ALASKA

LANE POWELL SPEARS LUBERSKY LLP
420 L Street
Suite 300
Anchorage, AK 99501-1937
Phone: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

#### ARIZONA

GOODWIN RAUP PC
One Columbus Plaza
Suite 1200
Phoenix, AZ 85012-1942
Phone: (602) 650-2009
Contact: Calvin Raup, Esq.
*Class Action Approved*

CAMPBELL YOST
234 North Central Avenue
Suite 600
Phoenix, AZ 85004
Phone: (602) 322-1600
Contact: Martin P. Clare, Esq.
*Class Action Approved*

LITTLER MENDELSON
Phoenix Corporate Center
3003 North Central Avenue, Suite 1200
Phoenix, AZ 85012-2907
Tel:  (602) 604-2143
Fax: (602) 241-3221
Contact: Mark Ogden, Esq
*Class Action Approved*

#### ARKANSAS

HUCKABAY MUNSON ROWLETT
& TILLEY
1900 West Capital Avenue
Suite 1900
Little Rock, AR 72201
Phone: (501) 374-6535
Contact: Bruce Munson, Esq.
*Class Action Approved*

#### CALIFORNIA

EPSTEIN BECKER & GREEN PC
Two Embarcadero Center
Suite 1650
San Francisco, CA 94111
Phone: (415) 398-3500
Contact: Ron Souza, Esq
*Class Action Approved*

IRELL & MANELLA
1800 Avenue of the Stars
Suite 900
Los Angeles, CA 90067-4275
Phone: (310) 277-1010
Contact: James F. Elliot, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1888 Century Park East
Suite 1600
Los Angeles, CA 90067
Local Phone: 310-203-0200
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved All Locations*

A420

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

1215 K Street, Suite 1800
Sacramento, CA 95814
Local Phone: 916–341–0404
Phone: (914) 328–0404
Contact: Steven D. Baderian, Esq.

199 Freemont Street, 10th Floor
San Francisco, CA 94105
Local Phone: 415–394–9400
Phone: (914) 328–0404
Contact: Steven D. Baderian, Esq.

KUTAK ROCK
117 E. Colorado Avenue
Suite 210
Pasadena, CA 91105
Phone: (626) 432–1630
Contact: Gregory Hurley, Esq.

LEWIS D'AMATO BRISBOIS & BISGAARD
LLP
221 N. Figueroa Street, Suite 1200
Los Angeles, CA 90012
Phone: (213) 500–1800
Contact: Robert F. Lewis, Esq. &
        Gary S. Rattet, Esq.

One Sansome Street, Suite 1900
San Francisco, CA 94104
Phone: (415) 362–2580
Contact: Duane C. Musfelt, Esq.

550 West C Street, Suite 800
San Diego, CA 92101
Phone: (619) 233–1006
Contact: R. Gaylord Smith, Esq.

650 Town Center Drive, Suite 1400
Costa Mesa, CA 9 2626
Phone: (714) 545–9200
Contact: Mercedes Cruz, Esq.

Suite 600, 650 East Hospitality Lane
San Bernardino, CA 92408
Phone: (909) 387–1130
Contact: Joseph Arias, Esq.

2500 Venture Oaks Way, Suite 200
Sacramento, CA 95833
Phone: (916) 564–5400
Contact: David L. Cohen, Esq.

LITTLER MENDELSON
2049 Century Park East
5th Floor
Los Angeles, CA 90067–3107
Phone: (310) 553–0308
Contact: Connie L. Michaels, Esq.
*Class Action Approved All Locations

50 West San Fernando Street
14th Floor
San Jose, CA 95113
Phone: (800) 638–6865
Contact: Dennis M. Brown, Esq. and
        Brian T. McMillan, Esq.

650 California Street, 20th Floor
San Francisco, CA 94108–2693
Tel:  (408) 998–4150
Fax:  (650) 322–4742
Contact: Brian T. McMillan, Esq.
        Dennis M. Brown, Esq.

1690 West Shaw, Suite 201
Fresno, CA 93711–3516
Tel:  (209) 431–8300
Fax:  (209) 431–8329
Contact: Gregory Smith, Esq.

1330 North Dutton Avenue, Suite 200
Santa Rosa CA 95401–4674
Tel:  (800) 638–6865
Fax:  (800) 640–3508
Contact: Brian T. McMillan, Esq.

1111 Broadway, Suite 1510
Oakland, CA 94607–4036
Tel:  (408) 998–4150
Fax:  (408) 288–5686
Contact: Brian T. McMillan, Esq.

2175 North California Blvd., Suite 835
Walnut Creek, CA 94596–3565
Tel:  (800) 638–6865
Fax:  (800) 640–3508
Contact: Brian T . McMillan, Esq.

A421

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

400 Capital Mall, 16th Floor
Sacramento, CA 95814
Tel: (916) 448-7100
Fax: (916) 448-7741
Contact: Bruce Sarchet, Esq.

701 B Street, 13th Floor
San Diego, CA 92101-8194
Tel: (619) 232-0441
Fax: (619) 232-4302
Contact: Jody Landry, Esq

O'MELVENY & MYERS LLP
610 Newport Center Drive
Newport Beach, CA 92660
Tel: (714) 760-9600
Contact: Stephen P. Pepe, Esq.
*Class Action Approved All Locations

Embarcadero Center West
275 Battery Street
San Francisco, CA 94111-3305
Tel: (415) 984-8700
Contact: Douglas Dexter, Esq.

400 South Hope Street
15th Floor
Los Angeles, CA 90071-2899
Tel: (213) 430-6000
Contact: Gordon E. Krischner, Esq.

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1055 West Seventh Street
Los Angeles, CA 90017
Phone: (213) 624-3044
Contact: James A. Stankowski, Esq.

650 California Street
San Francisco, CA 94108
Phone: (415) 433-0990
Contact: Louis H. Castoria, Esq.

### COLORADO

KUTAK ROCK
717 Seventeenth Street
Suite 2800
Denver, CO 80202
Local Phone: (303) 297-2400
Phone: (626) 432-1630
Contact: Gregory Hurley, Esq.

SHERMAN & HOWARD
633 17th Street
Suite 3000
Denver, CO 80202
Phone: (303) 297-2900
Contact: Andrew Bolin, Esq.

PATTON BOGGS
1660 Lincoln Street
Suite 1900
Denver, CO 80264
Phone: (303) 830-1776
Contact: Timothy D. Kraus, Esq.

LITTLER MENDELSON
One Tabor Center
1200 17th Street, Suite 2020
Denver, CO 80202-5835
Tel: (303) 629-6200
Fax: (303) 629-0200
Contact: Judith Holmes, Esq
*Class Action Approved

### CONNECTICUT

EPSTEIN BECKER & GREEN PC
One Landmark Plaza
Suite 1800
Stamford, CT 06901-2601
Phone: (212) 351-4500
Contact: Howard Pianko, Esq
*Class Action Approved

A422

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

JACKSON LEWIS SCHNITZLER &
KRUPMAN
55 Farmington Avenue
Suite 1200
Hartford, CT 06105
Local Phone: 860-522-0404
Phone: (914) 328-0404
Contact: Steven Badarian, Esq.
*Class Action Approved All Locations

177 Broad Street
Post Office Box 251
Stamford, CT 06904-0251
Local Phone: 203-961-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

### DELAWARE

WOLF BLOCK SCHOOR AND SOLIS –
COHEN LLP
One Rodney Square
10th & King Streets
Wilmington, DE 19801
Phone: (302) 777-5860
Contact: Barry M. Klayman, Esq.
*Class Action Approved

GREENBERG TRAURIG LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Phone: (302) 661-7000
*Class Action Approved

### DISTRICT OF COLUMBIA

DRINKER BIDDLE PITNEY HARDEN
1500 K Street, N.W.
Suite 110
Washington, DC 20005
Phone: (202) 842-8857
Contact: Jennifer Smith, Esq.

PATTON BOGGS LLP
2550 M Street, N.W.
Washington, DC 20037
Phone: (202) 457-6000
Contact: Douglas B. Mishkin, Esq. or
        Sally D. Garr, Esq.
*Class Action Approved

JACKSON LEWIS SCHNITZLER &
KRUPMAN
13501 I Street, NW
Suite 510
Washington, DC 20005
Local Phone: 202-347-5200
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER
1341 G. Street NW
Washington, DC 20005
Phone: (202) 626-7660
Contact: Paul D. Krausse, Esq.
        Robert B. Wallace, Esq.

JORDON COYNE & SAVITS, LLP
1100 Connecticut Avenue, NW
Washington, DC 20036
Phone: (202) 496-2810
Contact: Deborah Murrell Whelihan, Esq.
*Class Action Approved

FORD & HARRISON
1300 19th Street NW
Suite 700
Washington, DC 20036
Phone: (202) 719-2012
        (202) 719-2000
Contact: David Rosenberg, Esq.

### FLORIDA

AKERMAN SENTERFITT
Suntrust International Center
One Southeast 3rd Ave, 28th FL
Miami, FL 33131-1714
Phone: (305) 982-5543
Contact: Michael Marsh, Esq.
*Class Action Approved

A423

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

JACKSON LEWIS SCHNITZLER &
KRUPMAN
First Union Financial Center
200 South Biscayne Boulevard
Suite 2600
Miami, FL 33131   —
Local Phone: 305-577-7600
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved All Locations

390 North Orange Avenue
Suite 1285
Orlando, FL 32801-1641
Local Phone: 407-246-8440
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

VERNIS & BOWLING
517 Northlake Blvd
North Palm Beach, FL 33408
Phone: (561) 845-8781
Contact: G. Jeffrey Vernis, Esq.

CARLTON FIELDS WARD EMMANUAL
SMITH & CUTLER PA
100 S.E. 2nd Street
Suite 4000
Miami, FL 33131
Phone: (305) 539-7225
Contact: Nancy H. Henry, Esq.

KUBICKI DRAPER
25 West Flagler Street Penthouse
Miami, FL 33130
Phone: (305) 374-1212
Contact: Gene Kubicki, Esq.
*Class Action Approved

GREENBERG TRAURIG
515 East Las Olas Boulevard
Ft. Lauderdale, FL 33301
Phone: (954) 765-0500
Contact: Frank Scruggs, Esq.
*Class Action Approved-All Locations

1221 Brickell Avenue
Miami, Fl 33131
Tel: (305) 579-0500
Contact: Ron Rosengarten, Esq.

KATZ BARRON SQUITERO FAUST
2699 So. Bayshore Drive
7th Floor
Miami, Fl 33133-5408
Tel: (305) 856-2444
Contact: Todd Boyd, Esq.

### GEORGIA

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Phone: (404) 881-7000
Contact: Peter Q. Bassett, Esq. or
         Robert P. Riordan, Esq.
*Class Action Approved

FISHER & PHILLIPS LLP
1500 Resurgens Plaza
945 East Paces Ferry Road
Atlanta, GA 30326
Phone: (404) 240-4235
Contact: D. Albert Brannen, Esq. or
         Ilene W. Berman, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1900 Marquis One Tower
245 Peachtree Center Avenue, NE
Atlanta, GA 30303-1226
Local Phone 404-525-8200
Phone: (202) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LONG ALDRIDGE & NORMAN
One Peachtree Center
5300
Atlanta GA 30308
Phone: (404) 527-8312
Contact: Phillip A. Bradley, Esq.

A424

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

LITTLER MENDELSON
1100 Peachtree Street, NE, Suite 2000
Atlanta, GA 30309-4520
Tel:  (404) 817-0990
Fax:  (404) 817-9898
Contact: Teresa Butler, Esq
*Class Action Approved*

### HAWAII

LOVE YAMAMOTO & MOTOOKA
1000 Bishop Street
Honolulu, HI 96813
Phone: (808) 532-7900
Contact: Chad Love, Esq.
*Class Action Approved*

### IDAHO

QUANE SMITH LLP
US Bank Plaza, Suite 1600
101 South Capital Blvd
Boise, ID 83702
Phone: (208) 345-0960
Contact: Jeremiah A. Quane, Esq.
*Class Action Approved*

### ILLINOIS

CLAUSEN MILLER PC
10 South La Salle Street
Suite 1600
Chicago, IL 60603-1098
Phone: (312) 855-1010
Contact: James S. Barber, Esq. or
         James Nolan, Esq.

FREEBORN & PETERS
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Phone: (312) 360-6000
Contact: David H. Kistenbroker, Esq. or
         Steven M. Hartmann, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
320 West Ohio Street
Suite 500
Chicago, IL 60610
Local Phone: 312-787-4949
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LITTLER MENDELSON
200 North La Salle Street, Suite 2900
Chicago, IL 60601-1014
Tel:  (312) 372-5520
Fax:  (312) 372-7880
Contact: Fred Schwartz Esq.
*Class Action Approved*

VEDDER PRICE KAUFMAN &
KAMMHOLZ
222 N. La Salle Street
Chicago, IL 60601-1003
Phone: (312) 609-7745
Contact: Barry Hartstein, Esq.
*Class Action Approved*

### INDIANA

KIGHTLINGER & GRAY
Market Square Center, Suite 660
151 North Delaware
Phone: (317) 638-4521
Contact: Donald L. Dawson, Esq.
*Class Action Approved*

### IOWA

NYEMASTER GOODE VOIGTS WEST
HANSELL & O'BRIEN
700 Walnut Street
Des Moines, IA 50309
Phone: (515) 283-3100
Contact: Hayward Draper, Esq.
*Class Action Approved*

A425

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

**KENTUCKY**

BOEHL STOPHER & GRAVES
400 West Market Street
Suite 2300
Louisville, KY 40222
Phone: (502) 589-5980
Contact: Ed Stopher, Esq.
*Class Action Approved*

HARLIN, PACKER ALCOTT &
SHOULDOIN
519 East Tenth Street
PO Box 390
Bowling Green, KY 42102-0390
Phone: (270) 842-5611
Contact: William J. Parker, Esq.

**LOUISIANA**

ADAMS AND REESE
4500 One Shell Square
New Orleans, LA 70139
Phone: (504) 581-3234
Contact: Janis Van Meerveld, Esq.
*Class Action Approved*

DEUTSCH KERRIGAN & STILES LLP
755 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-5141
Contact: Ellis B. Muorv, Esq.

LOCKE LIDDLE & SAPP LLP
Pan American Life Center
601 Poydras Street, Suite 2400
New Orleans, LA 70130-6036
Phone: (504) 558-5106
Contact: Amelia W. Koch, Esq.

MCGLINCHEY STAFFORD
643 Magazine Street
New Orleans, LA 70130
Phone: (504) 586-1200
Contact: E. Frederick Preis, Jr., Esq.

THE JUNEAU FIRM
The Harding Center
1018 Harding Strret, Suite 202
Lafayette, LA 70503-2412
Tel: (337) 269-0052
Contact: Mike Juneau

**MAINE**

MOON MOSS MCGILL & BACHELDER PA
10 Free Street
PO Box 7250
Portland, ME 04112-7250
Tel: (207) 228-1526
Contact: Richard O. Moon, Esq.

**MARYLAND**

WHITEFORD TAYLOR & PRESTON LLP
Seven St. Paul Street
Baltimore, MD 21202
Phone:
Contact: William Ryan, Jr., Esq.

JORDAN COYNE & SAVITS LLP
33 Wood Lane
Rockville, MD 20850
Tel: (301) 424-4161
Contact: Deborah Murrell Whelihan, Esq.

LITTLER MENDELSON
The World Trade Center
401 East Pratt Street, Suite 1653
Baltimore, MD 21202-3005
Tel: (410) 528-9545
Fax: (410) 528-1908
Contact: Thomas Dowd, Esq.
*Class Action Approved*

**MASSACHUSETTS**

FOLEY HOAG & ELIOT LLP
One Post Office Square
Boston, MA 02109
Phone: (617) 832-1000
Contact: Peter M. Rosenblum

A426

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

HUTCHINS WHEELER & DITTMAR PC
101 Federal Street
Boston, MA 02110
Phone: (617) 951-6624
Contact: David S. Rosenthal, Esq.
*Class Action Approved*

JACKSON LEWIS SCHNITZLER &
KRUPMAN
One Beacon Street
33rd Floor
Boston, MA 02108
Local Phone: 617-367-0025
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO, PC
One Financial Center
Boston, MA 02110
Phone: (617) 542-6000
Contact: Patrick Sharkey, Esq. &
         Robert Gault, Esq.
*Class Action Approved*

GETMAN, STACEY, TAMPOSI,
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Phone: (603) 634-4300
Contact: Laurence W. Getman, Esq. or
         Dona Feeney, Esq.
*Western Mass. Only*

NIXON PEABODY LLP
101 Federal Street
Boston, Ma. 02110
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved*

MURPHY HESSE TOOMEY & LEHANE
300 Crown Colony, Suite 410
Quincy, MA 02269
Phone: (617) 479-6467
Contact: James Toomey, Esq.

PEABODY & ARNOLD
50 Rowes Wharf
Boston, MA 02110
Phone: (617) 951-2100
Contact: William A. Cotter, Esq.

### MICHIGAN

DYKEMA GOSSETT, LLP
1577 N. Woodward Avenue
Bloomfield Hills, MI 48304
Phone: (248) 203-0705
Contact: Robert L. Duty, Esq.

MADDIN HOUSER WARTELL ROTH
28400 Northwestern Highway
PO Box 215
Southfield, MI 48034
Phone: (248) 354-4080
Contact: Harvey Heller, Esq.

MILLER CANFIELD PADDOCK AND
STONE PLC
1200 Campau Square Plaza
99 Monroe Avenue, N W
Grand Rapids, MI 49503
Phone: (616) 454-8656
Contact: Charles S. Mishkind, Esq.
*Class Action Approved-All Locations*

150 West Jefferson, Suite 2500
Detroit, MI 48226
Phone: (313) 963-6420
Contact: Charles S. Mishkind, Esq. or
         Carl H. Von Ende, Esq.

PLUNKETT & COONEY
505 N. Woodward Avenue
Suite 3000
Bloomfield Hills, MI 48304
Phone: (248) 901-4005
Contact: Teresa Smith Lloyd, Esq.

BRADY HATHAWAY & BRETZ
1330 Buhl Building
Detroit, MI 48226-3602
Phone: (313) 965-3700
Contact: Dannel Bertz

A427

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### MINNESOTA

DORSEY & WHITNEY LLP
Philsbury Center South
220 South Sixth Street
Minneapolis, MN 55402
Phone: (612) 340-2600
Contact: Robert R. Reinhart, Esq., or
        Peter S. Hendrickson, Esq.
*Class Action Approved

JACKSON LEWIS SCHNITZLER &
KRUPMAN
150 Fifth Street Towers
150 South Fifth Street, Suite 2800
Minneapolis, MN 55402
Local Phone: 612-341-8131
Phone: (516) 364-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

MEAGHER & GEER LLP
4200 Multifoods Tower
Minneapolis, MN 55402
Phone: (612) 338-0661
Contact: James F. Roegge, Esq.

LITTLER MENDELSON
Multifoods Tower,
33 South 6th Street, Suite 3970
Minneapolis, MN 55402-3720
Tel: (612) 630-1000
Fax: (612) 630-9626
Contact: Kate Wilson, Esq
*Class Action Approved

### MISSOURI

ARMSTRONG & TEASDALE LLP
2345 Grand Blvd
Suite 2000
Kansas City, MO 64108
Phone: (816) 221-3420
Contact: Lynn W. Hursh, Esq.
*Class Action Approved

BROWN & JAMES, PC
705 Olive Street
Suite 1100
St. Louis, MO 63101-2270
Phone: (314) 421-3128
Contact: Charles E. Reis, IV, Esq.

GALLOP JOHNSON & NEUMAN LC
Interco Corporate Tower
101 South Hanley
St. Louis, MO 63105
Phone: (314) 862-1200
Contact: Ron Hack, Esq.

LEWIS RICE & FINGERSH, L.C.
500 N. Broadway, Suite 2000
St. Louis, MO 63102-2147
Tel: (314) 444-7600
Contacts: Robert J. Golterman, Esq. &
Neal F. Perryman, Esq.
*Class Action Approved

### MISSISSIPPI

BUTLER SNOW O'MARA STEVENS &
CANNADA PLLC
210 East Capitol Street
Jackson, MS 39201
Phone: (601) 948-5711
Contact: Jeffrey Walker, Esq.
*Class Action Approved

WATKINS & EAGER PLLC
400 East Capitol Street
Jackson, MS 39201
Phone: (601) 948-6470
Contact: Kenneth E. Milan, Esq.

### MONTANA

MATOVICH & KELLER PC
225 First Citizens Bank
2812 First Avenue N.
Billings, MT 59101
Phone: (406) 252-5500
Contact: E. Matovich, Esq.

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

**NEBRASKA**

KUTAK ROCK
1630 Farnam Street
Omaha, NE 68102
Phone: (402) 346-6000
Contact: Gregory Hurley, Esq.

**NEW HAMPSHIRE**

GETMAN STACEY TAMPOSI
SCHULTESS & STEERE, PA
163 South River Road
Bedford, NH 03110
Phone: (603) 634-4300
Contact: Laurence W. Getman, Esq. or
          Dona Feeney, Esq.

**NEW JERSEY**

EPSTEIN BECKER & GREEN PC
One Riverfront Plaza, 7th Floor
Newark, NJ 07102
Phone: (973) 639-8262
Contact: Howard Pianko, Esq.
*Class Action Approved*

HARWOOD LLOYD
130 Main Street
Hackensack, NJ 07601
Phone: (201) 487-1080
Contact: Frank Lloyd, Esq.
          Elizabeth Lorell, Esq.

JACKSON LEWIS SCHNITZLER
& KRUPMAN
60 Washington Street
Morristown, NJ 07960-6844
Local Phone: 973-538-6890
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LINDABURY MCCORMICK &
ESTABROOK
53 Cardinal Drive
PO Box 2369
Westfield, NJ 07091
Phone: (908) 233-6800
Contact: Richard Cino, Esq.

LITTLER MENDELSON
89 Headquarters Plaza, North Tower
12th Floor
Morristown, NJ 07960-6834
Tel: (212) 583-9600
Fax: (212) 832-2719
Contact: David Rosen, Esq
*Class Action Approved*

SAIBER, SCHLESINGER, SATZ
& GOLDSTEIN
One Gateway Center, 13th Floor
Newark, NJ 07102-5311
Phone: (973) 622-3333
Contact: Jeffrey Lorell, Esq.

THOMPKINS MCGUIRE WACHENFELD
& BARRY
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4070
Phone: (973) 622-3000
Contact: William B. McGuire, Esq.

**NEVADA**

BARKER BROWN BUSBY CHRISMAN
& THOMAS
300 South Fourth Street
Suite 800
Las Vegas, NV 89101
Phone: (702) 386-1086
Contact: James P. Chrisman, Esq.

LITTLER MENDELSON
350 South Center Street, Suite 530
Reno, NV 89501-2114
Tel:  (702) 348-4888
Fax:  (702) 786-0127
Contact:  Patrick H. Hicks, Esq
*Class Action Approved-All Locations*
3930 Howard Hughes Parkway
Suite 150
Las Vegas, NV 89109-0944
Tel: (702) 862-8800
Fax: (702) 862-8811
Contact:  Patrick H. Hicks, Esq

A429

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### NEW MEXICO

BUTT THORNTON & BAEHR PC
4101 Indian School Road NE
Suite 3005
Albuquerque, NM 87110
Phone: (505) 884-0777
Contact: Agnes Fuentevilla Padilla, Esq.

### NEW YORK

D'AMATO & LYNCH
70 Pine Street
New York, NY 10270
Phone: (212) 269-0927
Contact: Luke Lynch Jr., Esq.

EPSTEIN BECKER & GREEN PC
250 Park Avenue
12th Floor
New York, NY 10019
Phone: (212) 351-4500
Contact: Howard Pianko, Esq.
*Class Action Approved*

GARBARINI & SCHER PC
1114 Avenue of the Americas
New York, NY 10036
Phone: (212) 764-4000
Contact: James Kachadoorian, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
101 Park Avenue
37th Floor
New York, NY 10178
Local: (212) 697-8200, (212) 545-4000
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved-All Locations*
1000 Woodbury Road
Suite 402
Woodbury, NY 11797
Local Phone: (516) 364-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.

One North Broadway
White Plains, NY 10601-2305
Contact: Steve Baderian, Esq.
Phone: (914) 328-0404

JONES HIRSCH CONNORS BULL
101 East 52nd Street
New York, NY 10022
Phone: (212) 507-1000
Contact: Richard Steer

KAUFMAN BORGEEST & RYAN
747 Third Avenue
New York, NY 10017
Phone: (212) 980-9600
Contact: Julianna Ryan

KRAMER LEVIN NAFTALIS & FRANKEL
919 Third Avenue
New York, NY 10022
Phone: (212) 715-9100
Contact: Kevin LeBlang, Esq.

LITTLER MENDELSON, PC
885 Third Avenue
New York, NY 10022
Phone: (212) 583-9600
Contact: Richard L. Hartz, Esq .
*Class Action Approved*

HODGSON, RUSS, ANDREWS, WOODS
& GOODYEAR, LLP
One M&T Plaza, Suite 2000
Buffalo, NY 14203-2391
Tel.: (716) 848-1496
Contact: Patrick J. Tomovic, Esq.

NIXON PEABODY LLP
990 Stewart Avenue
Garden City, NY 11530
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq.
*Class Action Approved-All Locations*
Omni Plaza
300 South Pearl St.
Albany NY 12207
Tel: (518) 427-2650
Contact: Joseph J. Ortego, Esq

Revised (5/01)   16

A430

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

437 Madison Avenue
New York NY 10022
Tel: (212) 940–3000
Contact: Joseph J. Ortego, Esq

Clinton Square, PO Box 31051
Rochester, NY 14603
Tel: (716) 263–1000
Contact: Joseph J. Ortego, Esq

### NORTH CAROLINA

COZEN & O'CONNOR
2100 One First Union Center
301 South College St. Suite 2100
Charlotte, NC 28202
Phone: (704) 376–3400
Contact: Jay Goldstein, Esq.

PARKER POE ADAMS & BERNSTEIN
401 S. Tyon Street, Suite 3000
Charlotte, NC 28202
Phone: (704) 372–9000
Contact: Jonathan M. Crotty

### OHIO

DINSMORE SHOAL
175 South 3rd Street
10th Floor
Columbus, OH 43215
Phone: (614) 628–6220

GALLAGHER SHARP FULTON &
NORMAN
Seventh Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
Phone: (216) 241–5310
Contact: Alton Stephens, Esq.
*Class Action Approved

JANIK & DORMAN
Building Two
8223 Brecksville Road
Cleveland, OH 44141
Phone: (440) 838–7600
Contact: Steven G. Janik, Esq.
*Class Action Approved

LITTLER MENDELSON, PC
Fifth Third Center
21 E. State Street
Suite 1600
Columbus, OH 43215
Phone: (614) 463–4201
Contact: James Ferber, Esq.
*Class Action Approved

### OKLAHOMA

RHODES HIERONYMUS JONES TUCKER &
GABLE PLLC
PO Box 21100
Tulsa, OK 74121–1100
Tel: (918) 582–1173
Contact: Chris L. Rhodes, Esq.

### OREGON

BULLIVANT HOUSER BAILEY
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204–2089
Phone: (503) 228–6351
Contact: Chrys A. Martin, Esq.

LANE POWELL SPEARS LUBERSKY LLP
601 SW Second Avenue
Suite 2100
Portland, OR 97204
Phone: (206) 223–7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved

LINDSAY HART NEIL & WEIGLER LLP
1300 West Fifth Avenue
Suite 3400
Portland, OR 97201–5696
Phone: (503) 226–7677
Contact: Lisa F. Rackner, Esq.
       Jerard S. Weigler, Esq.

A431

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### PENNSYLVANIA

COZEN AND O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Phone: (215) 665-2000
Contact: Jeffrey Pasek, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
One PPG Place
29th Floor
Pittsburgh, PA 15222-5414
Local Phone: 412-232-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LITTLER MENDELSON
Domain Tower
625 Liberty Avenue, Suite 2000
Office 2810
Pittsburgh, PA 15222
Tel: (412) 255-3730
Contact: John M. Cerilli, Esq.
*Class Action Approved*

MARSHALL DENNEHY
1845 Walnut Street
Philadelphia, PA 19103
Phone: (215) 573-2600
Contact: Phil Torin, Esq.
        Jay Rothman, Esq.

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP
The Curtis Center
Suite 1130 East
Philadelphia, PA 19106
Phone: (215) 627-6900
Contact: Lou Isaacsohn, Esq.
*Class Action Approved*

HAMBURG & GOLDEN
1601 Market Street, Suite 565
Philadelphia, PA 19103-1443
Phone: (215) 255-8590
Contact: Neil Hamburg, Esq.

### RHODE ISLAND

ROPES & GRAY
30 Kennedy Plaza
Providence, RI 02903-2328
Phone: (401) 455-4400
Contact: William S. Eggeling, Esq.
*Class Action Approved*

NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel: (516) 832-7564
Contact: Joseph J. Ortego, Esq
*Class Action Approved*

### SOUTH CAROLINA

JACKSON LEWIS SCHNITZLER &
KRUPMAN
2100 Daniel Building
301 S. Main Street
Greenville, SC 29601
Phone: (914) 328-0404
Contact: Steve Baderian, Esq.
Phone: (914) 328-0404
*Class Action Approved*

YOUNG CLEMENT RIVERS & TISDALE
LLP
P.O. Box 993
28 Boad Street
Charleston, SC 29402
Phone: (864) 557-4000
Contact: Shawn D. Wallace, Esq.

### SOUTH DAKOTA

COSTELLO PORTER HILL HEISTERKAMP
BUSHNELL & CARPENTER LLP 200
Security Building
P.O. Box 290
Rapid City, SD 57709
Phone: (605) 343-2410
Contact: Robert L. Lewis, Esq.

A432

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

DAVENPORT EVANS HURWITZ
& SMITH LLP
P.O. Box 1030
513 South Main Avenue
Sioux Falls, SD 57101–1030
Phone: (605) 336–2880
Contact: Susan Brunick Simons, Esq.
            Jean H. Bender, Esq.

### TENNESSEE

LEITNER WILLIAMS DOOLEY
& NAPOLITAN PLLC
Pioneer Building
3rd Floor
Chattanooga, TN 37402
Phone: (423) 265–0214
Contact: Paul R. Leitner, Esq.

WEINTRAUB, STOCK BENNETT
GRISHAM & UNDERWOOD
One Commerce Square
Suite 2560
Memphis, TN 38103
Phone: (901) 526–0431
Contact: James H. Stock, Esq.

### TEXAS

CLARK WEST KELLER BUTLER
& ELLIS LLP
4800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270–2146
Phone: (214) 741–1001
Contact: Mark Shank, Esq.

FULBRIGHT & JAWORSKI LLP
2200 Ross Avenue
Suite 2800
Dallas, TX 75201
Phone: (214) 855–8188
Contact: Bob Herrell, Esq.
            A.J. Harper, Esq.
*Class Action Approved-All Locations

1301 McKinney
Suite 5100
Houston, TX 77101–3095
Phone: (713) 651–5442
Contact: Frank Jones, Esq.

JACKSON LEWIS SCHNITZLER
& KRUPMAN
3811 Turtle Creek Boulevard
Suite 500
Dallas, TX 75219
Local Phone: 214–520–2400
Phone: (914) 328–0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved

LOCKE LIDDELL & SAPP LLP
2200 Ross Avenue
Suite 2200
Dallas, TX 75201–6776
Phone: (214) 740–8000
Contact: John McElhaney, Esq.

LITTLER MENDELSON
The Chevron Tower
1301 McKinney Street, Suite 3300
Houston, TX 77010–3031
Tel: (713) 951–9400
Fax: (713) 951–9212
Contact: Timothy McInturf
*Class Action Approved-All Locations

2001 Ross Avenue, Suite 2600 Lock Box
116
Dallas, TX 75201
Tel: (214) 880–8100
Fax: (214) 880–0181
Contact: Scott M. McDonald, Esq

MILLS SHIRLEY ECKEL & BASSETT, LLP
400 Washington Building
2228 Mechanic, P.O. Box 1943
Galveston, TX 77553
Phone: (409) 763–2341
Contact: Carla Cotropia, Esq.

A433

# APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

### UTAH

CHRISTENSON & JENSEN PC
50 South Main Street
Suite 1500
Salt Lake City, UT 84101
Phone: (801) 355-3431
Contact: Phillip S. Ferguson, Esq.

### VERMONT

CLEARY SHAHI ASSOCIATES
110 Merchants Row
P.O. Box 6740
Rutland, VT 05702
Phone: (802) 775-8800
Contact: David L. Cleary, Esq.

### VIRGINIA

GENTRY LOCKE RAKES & MOORE
P.O. Box 40013
Roanoke, VA 24022-0013
Phone: (540) 983-9300
Contact: W. David Paxton, Esq.

JORDAN COYNE & SAVITS, LLP
33 Wood Lane
Rockville, MD 20850
Phone: (301) 424-4161
Contact: Deborah Murrell Whelihan
*Class Action Approved-All Locations*

305 Harrison Street, SE
LeeBurg, VA 20175
Tel: (202) 496-2810
Debra M. Whelihan, Esq.

MCGUIRE WOODS BATTLE & BOOTHE
LLP
901 East Cary Street
Richmond, VA 23219
Phone: (804) 775-4378
Contact: Stephen D. Busch, Esq.

### WASHINGTON

COZEN AND O'CONNOR
1201 Third Avenue
Suite 5200
Seattle, WA 98101
Phone: (206) 340-1000
Contact: Thomas M. Jones, Esq.

JACKSON LEWIS SCHNITZLER &
KRUPMAN
1420 Fifth Avenue, Suite 2000
Seattle, WA 98101
Local Phone: 206-405-0404
Phone: (914) 328-0404
Contact: Steven D. Baderian, Esq.
*Class Action Approved*

LANE POWELL SPEARS LUBERSKY LLP
1420 Fifth Avenue
Suite 4100
Seattle, WA 98101-2338
Phone: (206) 223-7019
Contact: James B. Stoetzer, Esq.
*Class Action Approved*

LITTLER MENDELSON
First Interstate Center
999 3rd Avenue, Suite 3800
Seattle, WA 98104-4023
Tel: (206) 623-3300
Fax: (206) 447-6965
Contact: Daniel Thieme, Esq.
*Class Action Approved*

### WEST VIRGINIA

STEPTOE & JOHNSON LLP
Bank One Center
P.O. Box 2190
Clarksburg, WV 26302-2190
Phone: (304) 624-8000
Contact: C. David Morrison, Esq.
*Class Action Approved*

A434

## APPENDIX A
## NOT FOR PROFIT PANEL COUNSEL ADDENDUM

**WISCONSIN**

MELLI WALKER PEASE & RUHLY SC
19 Martin Luther King Blvd
Madison, WI 53701
Phone: (608) 257–4812
Contact: Jack D. Walker, Esq.

**WYOMING**

HIRST & APPLEGATE
1720 Carey Avenue
Suite 200
Cheyenne, WY 82001
Phone: (307) 632–0541
Contact: Thomas A. Nicholas, Esq.

A435

## ENDORSEMENT# 1

This endorsement, effective 12:01 a.m.    August 26, 2001    forms a part of
policy number    873-99-71
issued to AMERICAN LEGACY FOUNDATION

by    National Union Fire Insurance Company of Pittsburgh, Pa.

### OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium  charged, it is hereby understood and agreed that the
following entities shall be deemed an "Outside Entity" with respect to its corresponding
Continuity Date below:

OUTSIDE ENTITY                          CONTINUITY DATE

1)    any not-for-profit organization;      August 26, 1999

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**END 001**

QE0119                                    A436

## ENDORSEMENT# 2

This endorsement, effective *12:01 a.m.*   *August 26, 2001*   forms a part of
policy number   *873-99-71*
issued to *AMERICAN LEGACY FOUNDATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy; and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

### WASHINGTON, D.C.
### CANCELLATION/NONRENEWAL ENDORSEMENT

In consideration of the premium charged, it is understood and agreed that the cancellation/nonrenewal provisions of this policy are amended to read as follows:

A)   Cancellation

If this policy has been in effect for thirty (30) days or more, the Insurer may cancel this policy only if one or more of the following reasons apply:

1)   Insured has refused or failed to pay a premium due under the terms of the policy;

2)   Insured or Other Insured(s) have made a material and willful misstatement or omission of fact to the Insurer or its employees, agents or brokers in connection with any application to, or claim against the Insurer; or

3)   Property or other interest of the insured shall have been transferred to a person other than the Insured or beneficiary, unless the transfer is permissible under the terms of the policy, or unless the property, interest or use thereof shall have materially changed with respect to its insurability.

The Insurer will mail or deliver to the named Insured notice of cancellation at least thirty (30) days prior to the date of cancellation. For cancellation as described under 2) and 3) above, the Insurer will mail or deliver a copy of the notice to the Superintendent of Insurance at least thirty (30) days before the date of cancellation.

B)   Nonrenewal

If the Insurer decides not to renew this policy the Insurer will mail or deliver to the named Insured the Insurer's notice of nonrenewal at least thirty (30) days before the end of the policy period.

The Insurer will mail or deliver notice of cancellation or nonrenewal to the agent or broker at least five (5) days prior to the Insurer's mailing of notice to the named Insured.

*END 002*

52136 (8/95)                         — 1 —                              A437

ENDORSEMENT# *2*    (continued)

The Notice of cancellation or nonrenewal will be mailed or delivered to Insured's last known address and will include the reason(s) for cancellation or nonrenewal. The envelope containing the notice shall be labeled "Important Insurance Notice" in at least 18 point type or larger.

All other terms, conditions and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE

**END 002**                                                        A438

52 136 (8/95)                     - 2 -

## ENDORSEMENT# *3*

This endorsement, effective *12:01 a.m.*    *August 26, 2001*        forms a part of
policy number   *873-99-71*
issued to *AMERICAN LEGACY FOUNDATION*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (BROAD FORM)

In consideration of the premium charged, it is hereby understood and agreed that this policy does not apply to any Claim(s):

A.      alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly the hazardous properties of nuclear material, including but not limited to:

    (1)    nuclear material located at any nuclear facility owned by, or operated by or on behalf of, the Organization, or discharged or dispersed therefrom; or

    (2)    nuclear fuel contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the Organization; or

    (3)    the furnishing by an Insured or the Organization of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility; or

    (4)    claims for damages to the Organization or its members which alleges, arises from, is based upon, is attributed to or in any way involves, directly or indirectly, the hazardous properties of nuclear material.

B.    (1)    which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or,

    (2)    with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Organization or any insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in law amendatory thereof;

*END 003*

A439

ENDORSEMENT# *3*    (continued)

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means –

    (a)    any nuclear reactor,

    (b)    any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c)    any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d)    any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all-premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self- supporting chain reaction or to contain a critical mass of fissionable material.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

**END 003**

## ENDORSEMENT# 4

This endorsement, effective *12:01 a.m.*    *August 26, 2001*        forms a part of
policy number   *873-99-71*
issued to *AMERICAN LEGACY FOUNDATION*

. by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CAPTIVE INSURANCE COMPANY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payments for Loss in connection with any Claim(s)
made against any Insured alleging, arising out of, based upon, or attributable to the
ownership, management, maintenance and/or control by the Organization of any captive
insurance company or entity, including but not limited to any Claim(s) alleging the
insolvency or bankruptcy of the Organization as a result of such ownership, operation,
management and control.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

*END 004*                                                                A441

**ENDORSEMENT# 5**

This endorsement, effective *12:01 a.m.    August 26, 2001*        forms a part of
policy number    *873-99-71*
issued to *AMERICAN LEGACY FOUNDATION*

by        *National Union Fire Insurance Company of Pittsburgh, Pa.*

**COMMISSIONS EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the
Insurer shall not be liable to make any payment for Loss in connection with any Claim(s)
made against any Insured alleging, arising out of, based upon, or attributable to:

  (i)    payments, commissions, gratuities, benefits or any other favors to or for the
        benefit of any full or part-time domestic or foreign governmental or armed
        services officials, agents, representatives, employees or any members of their
        family or any entity with which they are affiliated; or

  (ii)   payments, commissions, gratuities, benefits or any other favors to or for the
        benefit of any full or part-time officials, directors, agents, partners, represent-
        atives, members, principal shareholders, owners or employees, or affiliates (as
        that term is defined in the Securities Exchange Act of 1934, including any of
        their officers, directors, agents, owners, partners, representatives, principal
        shareholders or employees) or any customers of the Organization or any
        members of their family or any entity with which they are affiliated; or

  (iii)  political contributions, whether domestic or foreign.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

**END 005**

A442

**ENDORSEMENT# 6**

This endorsement, effective *12:01 a.m.*     *August 26, 2001*          forms a part of
policy number     *873-99-71*
issued to *AMERICAN LEGACY FOUNDATION*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EXCESS BENEFIT PENALTY COVERAGE**

In consideration of the premium charged, Clause 2. Definition (k) Loss is amended to include any 10% "Excess Benefits" penalty assessed by the Internal Revenue Service against any Individual Insured(s) for management involvement in the award of an "Excess Benefit".

It is further understood and agreed that no coverage shall be provided by this policy or endorsement for any Individual Insured(s) subject to the 25% "Excess Benefit" penalty assessed by the Internal Revenue Service against any such Insured as a "disqualified person"; provided however, that Defense Cost coverage shall be provided to such Insured.

IT IS FURTHER UNDERSTOOD AND AGREED THAT UNDER NO CIRCUMSTANCES SHALL THE INSURER BE LIABLE FOR PAYMENT OF LOSS ATTRIBUTABLE TO ANY 200% PENALTY ASSESSED BY THE INTERNAL REVENUE SERVICE FOR FAILURE TO CORRECT THE AWARD OF AN EXCESS BENEFIT.

For purposes of this endorsement, the terms "Excess Benefits" and "disqualified person" shall be defined as those terms are defined in the "Taxpayer Bill of Rights 2", (H.R. 2337, P.L. 104-168), 26 USC 4958.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
**AUTHORIZED REPRESENTATIVE**

*END 006*

**ENDORSEMENT# 7**

This endorsement, effective   *12:01 a.m.*   *August 26, 2001*          forms a part of
policy number   *873-99-71*
issued to   *AMERICAN LEGACY FOUNDATION*


by     *National Union Fire Insurance Company of Pittsburgh, Pa.*


### RELIANCE ENDORSEMENT–NOT–FOR–PROFIT ORGANIZATIONS
### (STANDARD FORM)

In consideration of the premium charged, it is hereby understood and agreed that this policy is issued in reliance upon the accuracy of the statements made and materials furnished to the Insurer by the Named Organization in connection with all Not–For–Profit Organization and/or Directors and Officers and/or Trustees Insurance applications or requests furnished to the Insurer including all prior insurance applications or requests, and all statements made and materials incorporated in the following specific documents issued or filed by the Named Organization whether furnished directly to the Insurer or indirectly to the Insurer from public resources available to the Insurer at the time of such request(s):

1.  The Organization's audited annual report(s) or audited financial statements;

2.  The Organization's interim financial statements;

3.  The Organization's indemnification provisions (and contracts, if any).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

*END 007*

A444

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE AMERICAN LEGACY FOUNDATION | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO:  07-248 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY | ) | |
| OF PITTSBURGH, PENNSYLVANIA, et. al. | ) | |
| | ) | |
| Defendants | ) | |

## AFFIDAVIT OF SERVICE

Louise L. Tuschak, being duly sworn according to law, deposes and says that she

is employed by the law firm of Pachulski Stang Ziehl & Jones LLP, and that on the _12_ day of

March, 2008 she caused a copy of the following document to be served upon the attached service

list in the manner indicated:

**APPENDIX TO THE FOUNDATION'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT (VOLUME II OF III)**

_Louise L. Tuschak_
Louise L. Tuschak

Sworn to and subscribed before
me this _12_ day March, 2008

_Mary E. Corcoran_
Notary Public
My Commission Expires: _11/4/09_

**MARY E. CORCORAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 4, 2009**

American Legacy Foundation
Service List
Document No. 130442
02 – Hand Delivery
01 –First Class


**Hand Delivery**
Richards Layton & Finger, P.A.
John A. Parkins, Jr.
Chad M. Shandler
Todd A. Coomes
One Rodney Square, P.O. Box 551
Wilmington, DE  19899

**Hand Delivery**
Fox Rothschild, LLP
Neal J. Levitsky, Esquire
919 N. Market Street, Suite 1300
Wilmington, DE  198014

**First Class Mail**
Kramon & Graham, P.A.
Lee H. Ogburn, Esquire
One South Street, Suite 2600
Baltimore, MD  21202-3201

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE AMERICAN LEGACY FOUNDATION | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO:  07-248 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY | ) | |
| OF PITTSBURGH, PENNSYLVANIA, et. al. | ) | |
| | ) | |
| Defendants | ) | |

## AFFIDAVIT OF SERVICE

Louise L. Tuschak, being duly sworn according to law, deposes and says that she

is employed by the law firm of Pachulski Stang Ziehl & Jones LLP, and that on the _12_ day of

March, 2008 she caused a copy of the following document to be served upon the attached service

list in the manner indicated:

**APPENDIX TO THE FOUNDATION'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT (VOLUME II OF III)**

Louise L. Tuschak

Sworn to and subscribed before
me this _12_ day March, 2008

Notary Public
My Commission Expires: ___11/4/09___

MARY E. CORCORAN
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Nov. 4, 2009

03691-001\DOCS_DE:130511.10

American Legacy Foundation
Service List
Document No. 130442
02 – Hand Delivery
01 –First Class

**Hand Delivery**
Richards Layton & Finger, P.A.
John A. Parkins, Jr.
Chad M. Shandler
Todd A. Coomes
One Rodney Square, P.O. Box 551
Wilmington, DE  19899

**Hand Delivery**
Fox Rothschild, LLP
Neal J. Levitsky, Esquire
919 N. Market Street, Suite 1300
Wilmington, DE  198014

**First Class Mail**
Kramon & Graham, P.A.
Lee H. Ogburn, Esquire
One South Street, Suite 2600
Baltimore, MD  21202-3201