RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

CHAD M SHANDLER
DIRECTOR

DIRECT DIAL NUMBER
302-651-7836
SHANDLER@RLF COM

May 27, 2008

**VIA ELECTRONIC FILING**
The Honorable Sue L. Robinson
U.S. District Court for the District of Delaware
844 North King Street - Room 4209
Lock Box 18
Wilmington, DE 19801

Re:   **The American Legacy Foundation v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, Case No. 07-248-SLR**

Dear Judge Robinson:

    Per the Court's May 13, 2008 Order, we respectfully refer Your Honor to the Seventh Circuit Court of Appeals' decision in *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682 (7th Cir. 2005) (Ex. A hereto).

    In *Watts*, the court was presented with an insurer's action to compel arbitration of a dispute with an insured over the applicability of certain deductibles. Previously, the insured had filed against the insurer in California state court, alleging that the insurer had breached its duty to defend. In the course of that coverage action, the insured had sent a letter to the insurer, which primarily focused on the demand for defense, but also addressed issues relating to the applicability of the deductibles. Noting that courts have broad discretion to admit settlement evidence for purposes other than proving liability, the Seventh Circuit affirmed the district court's decision to admit the letter in the arbitration dispute. The court held that the policy behind FRE 408 was not thwarted by admission of the letter in the arbitration dispute, notwithstanding that the two disputes arose out of common facts. According to the court, the two disputes were "distinct" for purposes of FRE 408.

    Here, the Foundation's claims against National Union are certainly distinct from its claims against National Union. Indeed, the Foundation has alleged that coverage exists under the National Union policies but not the Travelers policies. Consistent with *Watts* and FRE 408, National Union is entitled to discovery of any statements that the Foundation may have made with respect to National Union in the course of communicating with Travelers.

RLF1-3286832-1

The Honorable Sue L. Robinson
May 27, 2008
Page 2

Respectfully submitted,

Chad M. Shandler (#3796)

CS:ps
cc:   Clerk of the Court (via e-file and hand delivery)
      John A. Parkins, Jr., Esq.
      Matthew Fink, Esq. (via e-mail)
      Richard Shore, Esq. (via e-mail)
      Laura Davis Jones, Esq. (via e-mail)

RLF1-3286832-1

# EXHIBIT A

Westlaw.

417 F.3d 682                                                                                                          Page 1
417 F.3d 682
(Cite as: 417 F.3d 682)

▷Zurich American Ins. Co. v. Watts Industries, Inc.
C.A.7 (Ill.),2005.

United States Court of Appeals,Seventh Circuit.
ZURICH AMERICAN INSURANCE COMPANY,
Petitioner-Appellee/Cross-Appellant,
v.
WATTS INDUSTRIES, INC., Respondent-
Appellant/Cross-Appellee,
andJames Jones Company, Respondent/Cross-
Appellee.
Nos. 03-3851, 03-3853.

Argued May 3, 2005.
Decided Aug. 2, 2005.

**Background:** Following determination in state court that liability insurer was required to defend two insureds in fraud lawsuits, the insurer brought action against the two insureds to compel arbitration with respect to deductible agreements. The United States District Court for the Northern District of Illinois, Elaine E. Bucklo, J., 2003 WL 22243887, granted motion with respect to one insured, but not with respect to the other. One insured and insurer appealed.

**Holdings:** The Court of Appeals, Kanne, Circuit Judge, held that:
(1) nonsignatory insured could not be compelled to arbitrate dispute with liability insurer under deductible agreement containing arbitration clause;
(2) admission of letter written by insured to insurer, in an effort to settle dispute as to whether liability policies provided coverage for state court fraud lawsuits against insured, was warranted;
(3) insured was compelled to arbitrate dispute with liability insurer; and
(4) remand to the district court was required to determine the scope of the compelled arbitration.

Affirmed in part, and remanded in part.

West Headnotes

[1] Alternative Dispute Resolution 25T ⚖=213(5)

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk204 Remedies and Proceedings for Enforcement in General
                25Tk213 Review
                    25Tk213(5) k. Scope and Standards of Review. Most Cited Cases
    (Formerly 33k23.25 Arbitration)
The Court of Appeals reviews de novo a district court's order compelling arbitration. 9 U.S.C.A. § 4.

[2] Alternative Dispute Resolution 25T ⚖=112

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(A) Nature and Form of Proceeding
            25Tk112 k. Contractual or Consensual Basis. Most Cited Cases
    (Formerly 33k1.1 Arbitration)
Arbitration is contractual by nature, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.

[3] Alternative Dispute Resolution 25T ⚖=141

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk141 k. Persons Affected or Bound. Most Cited Cases
    (Formerly 33k7.3 Arbitration)
There are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption, (2) agency, (3) estoppel, (4) veil piercing, and (5) incorporation by reference.

[4] Corporations 101 ⚖=418

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k418 k. Submission to Arbitration. Most Cited Cases

**Insurance 217 ⚖︎3273**

217 Insurance
    217XXVII Claims and Settlement Practices
        217XXVII(B) Claim Procedures
            217XXVII(B)7 Arbitration
                217k3271 Agreements to Arbitrate
                    217k3273 k. Requisites and Validity. Most Cited Cases
Insured corporation could not be compelled to arbitrate dispute with liability insurer under deductible agreement containing arbitration clause, which insured did not sign; although insured's parent corporation signed deductible agreement, and insured sought benefits of the liability insurance policies, the corporate relationship between the parent corporation and the insured was insufficient to bind insured, and insured did not seek any direct benefit under the deductible agreements, which were separate from the insurance policies.

**[5] Corporations 101 ⚖︎1.6(9)**

101 Corporations
    101I Incorporation and Organization
        101k1.6 Particular Occasions for Determining Corporate Entity
            101k1.6(9) k. Remedies and Procedure; Parties. Most Cited Cases

**Corporations 101 ⚖︎215**

101 Corporations
    101IX Members and Stockholders
        101IX(D) Liability for Corporate Debts and Acts
            101k215 k. Nature and Grounds in General. Most Cited Cases

**Corporations 101 ⚖︎418**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k418 k. Submission to Arbitration. Most Cited Cases
Under Illinois law, the mere parent-subsidiary relationship does not create the relation of principal and agent or alter ego between two corporations, for the purpose of binding a non-signatory corporation to an arbitration agreement.

**[6] Corporations 101 ⚖︎1.6(9)**

101 Corporations
    101I Incorporation and Organization
        101k1.6 Particular Occasions for Determining Corporate Entity
            101k1.6(9) k. Remedies and Procedure; Parties. Most Cited Cases

**Corporations 101 ⚖︎215**

101 Corporations
    101IX Members and Stockholders
        101IX(D) Liability for Corporate Debts and Acts
            101k215 k. Nature and Grounds in General. Most Cited Cases

**Corporations 101 ⚖︎418**

101 Corporations
    101XI Corporate Powers and Liabilities
        101XI(B) Representation of Corporation by Officers and Agents
            101k418 k. Submission to Arbitration. Most Cited Cases
A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement.

**[7] Alternative Dispute Resolution 25T ⚖︎182(1)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk177 Right to Enforcement and Defenses in General
                25Tk182 Waiver or Estoppel
                    25Tk182(1) k. In General. Most Cited Cases
    (Formerly 33k23.3(1) Arbitration)
A nonsignatory party to an arbitration agreement is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[8]** Evidence 157 ⚷213(1)

157 Evidence
    157VII Admissions
        157VII(A) Nature, Form, and Incidents in General
            157k212 Offers of Compromise or Settlement
                157k213 In General
                    157k213(1) k. In General. Most Cited Cases

**Federal Courts 170B ⚷823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of Evidence. Most Cited Cases
The district court has broad discretion to admit evidence of settlement negotiations for a purpose other than proving liability; the Court of Appeals reviews the district court's decision to do so for abuse of discretion and reverses only if there is manifest error. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**[9]** Evidence 157 ⚷213(1)

157 Evidence
    157VII Admissions
        157VII(A) Nature, Form, and Incidents in General
            157k212 Offers of Compromise or Settlement
                157k213 In General
                    157k213(1) k. In General. Most Cited Cases
In deciding whether federal rule of evidence excluding evidence of settlement offers to prove liability should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**[10]** Evidence 157 ⚷213(1)

157 Evidence
    157VII Admissions
        157VII(A) Nature, Form, and Incidents in General
            157k212 Offers of Compromise or Settlement
                157k213 In General
                    157k213(1) k. In General. Most Cited Cases
The balance is likely to tip in favor of admitting evidence of settlement negotiations when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**[11]** Evidence 157 ⚷213(1)

157 Evidence
    157VII Admissions
        157VII(A) Nature, Form, and Incidents in General
            157k212 Offers of Compromise or Settlement
                157k213 In General
                    157k213(1) k. In General. Most Cited Cases
Admission of letter written by insured to liability insurer, in an effort to settle dispute as to whether liability policies provided coverage for state court fraud lawsuits against insured, was warranted, in insurer's action to compel arbitration with respect to parties' separate deductible agreements; letter could have discussed settlement of state court action without mentioning the deductible agreements, and it was not offered to prove that insured was obligated to arbitrate under agreements. Fed.Rules Evid.Rule 408, 28 U.S.C.A.

**[12] Alternative Dispute Resolution 25T ⚷205**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk204 Remedies and Proceedings for Enforcement in General
                25Tk205 k. In General. Most Cited Cases
    (Formerly 33k23.7 Arbitration)
A party seeking to compel arbitration need only show a written agreement to arbitrate, a dispute within the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

scope of the agreement, and a refusal by the other party to arbitrate.

**[13] Insurance 217 €⇒3277**

217 Insurance  
 217XXVII Claims and Settlement Practices  
  217XXVII(B) Claim Procedures  
   217XXVII(B)7 Arbitration  
    217k3271 Agreements to Arbitrate  
     217k3277 k. Disputes and Matters Arbitrable. Most Cited Cases

Insured was compelled to arbitrate dispute with liability insurer under deductible agreement containing arbitration clause, where insured advised insurer that it did not intend to reimburse insurer for deductible amount, and agreement did not require actual breach as precondition for arbitration.

**[14] Insurance 217 €⇒3331(2)**

217 Insurance  
 217XXVII Claims and Settlement Practices  
  217XXVII(B) Claim Procedures  
   217XXVII(B)7 Arbitration  
    217k3326 Judicial Review  
     217k3331 Proceedings for Review  
      217k3331(2) k. Hearing and Determination in General. Most Cited Cases

Remand to the district court was required to determine the scope of the compelled arbitration, under deductible agreements between insured and liability insurer, where parties disagreed as to which deductible agreements applied, and district court, in ruling on insurer's motion to compel arbitration, failed to identify precisely under which agreements the parties' dispute arose.

**[15] Alternative Dispute Resolution 25T €⇒198**

25T Alternative Dispute Resolution  
 25TII Arbitration  
  25TII(D) Performance, Breach, Enforcement, and Contest  
   25Tk197 Matters to Be Determined by Court  
    25Tk198 k. In General. Most Cited Cases  
   (Formerly 33k23.13 Arbitration)

Whether or not a company is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties.

*684 Michael M. Marick, Meckler, Bulger & Tilson, Chicago, IL, Patrick A. Cathcart (argued), Cathcart Collins & Kneafsey, Los Angeles, CA, for Petitioner-Appellee/Cross-Appellant.

Richard A. Fiore, Freeborn & Peters, Chicago, IL, David S. MacCuish (argued), Weston, Benshoof, Rochefort, Rubalcava & MacCuish, Los Angeles, CA, for Respondent-Appellant/Cross-Appellee.

Richard A. Fiore, Freeborn & Peters, Chicago, IL, Faustin A. Pipal, Jr., Keating, Keating & Pipal, Chicago, IL, Jordan S. Stanzler, Ruben Castellon (argued) Stanzler, Funderburk & Castellon, San Francisco, CA, for Respondent/Cross-Appellee.

Before FLAUM, Chief Judge, and KANNE and SYKES, Circuit Judges.

KANNE, Circuit Judge.

Zurich American Insurance Company insured Watts Industries, Inc., and James Jones Company under a program consisting of both primary liability policies and deductible agreements. Only the deductible agreements contained arbitration clauses. Watts and Jones successfully sued Zurich in California state court for defense costs in two lawsuits filed against them by other parties. Thereafter, the parties contested application of the deductible agreements, and Zurich petitioned the district court to compel arbitration. The district court granted the petition with respect to Watts, and denied it with respect to Jones. Both Watts and Zurich appeal; for the reasons stated herein, we affirm the order compelling arbitration as to Watts and exempting Jones from arbitration. We remand to the district court for clarification of precisely which deductible agreements give rise to an arbitrable dispute.

### I. History

We begin with a brief introduction of the parties and a recap of the long and tortured history of this case. Zurich is an insurer incorporated under New York law, with its home office in New York City and its main administrative office in Schaumburg, Illinois. Watts is a manufacturer of valves and other waterworks parts that are used in municipal water systems. Watts is incorporated under Delaware law,

with its principal place of business in Massachusetts. Jones is another manufacturer of valves used in public water systems, with both its incorporation and principal place of business in California. Jones was a wholly owned subsidiary of Watts from 1987 until it was sold in September 1996.

Zurich issued six primary liability insurance policies to Watts, in effect for successive one-year periods between June 30, 1991, and June 30, 1997. The policies provided coverage for both Watts and its subsidiary, Jones. The insurance contracts do not contain arbitration clauses. Watts entered into separate deductible agreements with Zurich during these same six years.[FN1] Each deductible agreement contains a broad arbitration clause. For example, the 1991-92 agreement requires arbitration of "any dispute [that] arise[s] between the Company and the Insured with reference to the interpretation of [the] Agreement or their rights with respect to any transaction involved[.]" (Zurich's App. at 337.) Each agreement provides for arbitration in Schaumburg, Illinois. Jones did not sign any of the deductible agreements.

> FN1. Signed deductible agreements exist only for the 1991-92, 1992-93, and 1996-97 policy periods, but the parties agree that written deductible agreements were in effect for all six policy periods.

*685 Watts and Jones were sued for fraud by third parties in two cases in the California state courts in 1997 and 1998. The cases were titled *Los Angeles Department of Water and Power, et al. ex rel. Armenta v. James Jones Co., et al.*, Los Angeles County Superior Court, Case No. BC 173487 ("*Armenta*"), and *Rothschild v. James Jones Co.*, San Diego County Superior Court, Case No. 726930 ("*Rothschild*"). Both claims were tendered to Zurich, but Zurich denied its duty to defend and indemnify Watts and Jones.

In February 2001, Watts filed suit against Zurich in the Los Angeles Superior Court seeking defense and indemnity for the *Armenta* and *Rothschild* actions under the primary liability policies. Watts asserted claims for breach of contract and bad faith. Jones filed a similar coverage suit against Zurich in June 2001, and the two actions were consolidated. The California court conducted a mandatory settlement conference in August 2001. Zurich raised the deductible agreements as a defense to entering a settlement agreement during this conference, claiming that even if Zurich were liable under the policies, Watts would be responsible for fully reimbursing Zurich under the deductible agreements. In an order issued August 3, 2001, the court gave the parties 60 days to attempt to resolve the issues discussed during settlement.

In a letter to Watts dated August 31, 2001, Zurich indicated that it would address the applicability of the deductible agreements "in due course, as required." Watts responded with a letter on September 6, 2001, ("the September 6 letter") stating that there was "no need for any further delay" in resolving the issues of the deductibles and setting out four points regarding the application of the deductible agreements. First, Watts stated that the deductible agreements do not apply to Jones. Second, Watts claimed that "[b]ecause [Zurich] repudiated [the insurance] policies and agreements by wrongfully refusing to fund the defense of its insureds, Zurich [was] foreclosed from relying upon the deductible agreements." Third, Watts asserted that because Zurich failed to mention the deductible agreements until 3 1/2 years after Watts tendered the *Armenta* and *Rothschild* actions, it "waived any rights it may have had to seek to enforce those agreements." Finally, Watts claimed that even if the deductible agreements could be invoked, "Zurich would remain liable for providing Jones with a full defense in the underlying cases and would remain liable to fund Watts' defense once Watts satisfied the $500,000 deductible ... set forth in each deductible agreement[.]" Watts then proposed a resolution whereby Zurich would pay the full amount of defense costs for *Armenta* and *Rothschild*.

On September 21, 2001, Zurich responded to the September 6 letter with a demand for arbitration against both Watts and Jones, which Watts and Jones rejected. On October 4, 2001, Zurich filed a petition to compel arbitration in federal court in Illinois and asked the California superior court to stay the California coverage action. The superior court refused to do so, and on November 27, 2001, granted Watts's motion for summary judgment. Zurich was held to have a duty to defend the *Armenta* action and any arbitrable disputes under the deductible agreements were deemed severable from the claims

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

417 F.3d 682                                                              Page 6
417 F.3d 682
(Cite as: 417 F.3d 682)

and issues in the California coverage action.

Back to the Illinois proceedings. Zurich initially asked for arbitration of everything-the duty to defend both Watts and Jones and application of the deductible agreements with respect to both companies-in its October 2001 motion to compel *686 arbitration. On May 1, 2002, Zurich filed a motion for a temporary restraining order in the district court seeking to restrain the California court from enforcing its November 2001 duty to defend order, which the district court granted.[FN2] On September 9, 2002, the district court ruled on Zurich's petition to compel arbitration in the order that gives rise to this appeal. At that point, Zurich had made a partial payment to Watts and Jones (more than $4 million, according to Zurich's memorandum in support of its petition) for claimed defense costs. The district court's initial order stated that Jones was not subject to arbitration, that the duty to defend in the *Armenta* action was not arbitrable, and that Zurich had not waived its right to arbitrate under the deductible agreements. The district court granted the petition to compel arbitration as follows:

> FN2. The court actually denied the order with respect to *Armenta*, holding that it lacked jurisdiction over issues already decided by the California court under the *Rooker-Feldman* doctrine, and denied the order with respect to Jones. *Zurich Am. Ins. Co. v. Sup.Ct. for the State of Cal.*, 200 F.Supp.2d 929, 934 (N.D.Ill.2002). The temporary restraining order, therefore, enjoined only further California proceedings concerning Watts and Zurich except for those related to the duty to defend in *Armenta*. *Id.*

(1) as to *Armenta*, whether Zurich's breach of the duty to defend found by the California court constituted a repudiation by Zurich of the deductible agreement;

(2) as to *Rothschild*, whether the provision of the 1991-1992 deductible agreement stating that Zurich "assumes responsibility for the investigation, defense and settlement obligations under this Agreement as respects the policies ..." creates a duty to defend under the deductible agreement, and if so whether it was breached; and

(3) with respect to *Rothschild*, what the obligations of the parties are with respect to payment and reimbursement of defense costs above the $500,000 deductible.

Then, on September 30, 2002, this court reversed the injunction staying coverage litigation in the California courts. See *Zurich Am. Ins. Co. v. Sup.Ct. for the State of Cal.*, 326 F.3d 816, 827-28 (7th Cir.2002). The district court vacated its September 9, 2002, order pending the Seventh Circuit opinion concerning the injunction, which was issued on April 17, 2003. On September 25, 2003, the district court reinstated its September 9 order, "amended only to reflect the fact that the duty to defend in *Armenta* is arbitrable to the same extent [the court] previously found the duty to defend in *Rothschild* arbitrable under the deductible agreement."

The parties agree that the second issue slated for arbitration by the district court, concerning a duty to defend the *Rothschild* case arising out of the deductible agreement, was erroneously ordered by the district court. Neither Watts nor Zurich has ever contended that any deductible agreement imposed a duty to defend on Zurich. Also, because the California Court of Appeal affirmed the superior court's summary judgment order finding that Zurich was bound to pay for Watts's and Jones's defense, and the California Supreme Court declined to review that decision, the issue of whether Zurich has a duty to defend is moot. See *Watts Indus., Inc. v. Zurich Am. Ins. Co.*, 121 Cal.App.4th 1029, 1035, 18 Cal.Rptr.3d 61 (Cal.Ct.App.2004). We are left with an order exempting Jones from arbitration, and compelling arbitration of the following issues: (1) whether Zurich repudiated the deductible agreement by breaching the duty to defend *Armenta*, and (2) what obligations the parties*687 have with respect to the deductible agreements.[FN3]

> FN3. It appears that the district court erroneously ordered arbitration of the deductible agreement issue with respect to *Rothschild*. According to the briefs and the September 6 letter, the dispute is actually related to *Armenta*.

**II. Analysis**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Both Watts and Zurich appeal the revised order. Watts contends that there are no arbitrable disputes under the deductible agreements at all, claiming that there was (and is) no ripe dispute between the parties under the deductible agreements and that it did not anticipatorily repudiate the deductible agreements in the September 6 letter. Zurich, for its part, argues that Jones should be forced to arbitrate despite the fact that it was not a signatory to the deductible agreements.

[1] Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate. See 9 U.S.C. § 4; see also *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909-10 (7th Cir.1999). We review *de novo* a district court's order compelling arbitration. *Kiefer,* 174 F.3d at 909.

*A. Zurich's Appeal*

We address Zurich's appeal first, which deals with the relatively simple issue of whether Jones can be compelled to arbitrate under the deductible agreements. Jones did not sign the agreements containing arbitration clauses and states that it never agreed to arbitrate anything. Zurich argues that Jones is bound to arbitrate issues respecting the deductible agreements despite the fact that it did not sign them, asserting that (1) Watts, as Jones's parent company, bound Jones to the agreements, and (2) Jones has invoked the benefits of the insurance policies, and thus may not avoid the obligation of arbitration contained in the agreements associated with the insurance policies.

[2][3][4] The language of the 1994-95, 1995-96, and 1996-97 deductible agreements indicates that "[Watts] and each named insured stated in the Policy(ies) shall be jointly and severally responsible for the obligations under [the agreements]." (Watts's App. at 150, 176, 189.) Jones was, of course, a "named insured" in the primary liability policies. But "[a]rbitration is contractual by nature-'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). That said, there are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference. *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.,* 293 F.3d 1023, 1029 (7th Cir.2002); accord *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (2d Cir.1999).

[5][6] Zurich does not argue that Jones has shown an intent to assume obligations under the deductible agreements or that the agreements are incorporated by reference to the insurance policies. Rather than explicitly arguing that principles of agency or veil piercing are applicable, Zurich alludes vaguely to the fact that Jones was a wholly owned subsidiary of Watts, [FN4] *688 and thus should not be permitted to avoid arbitration. The district court correctly found that the relationship between Watts and Jones is insufficient for Jones to be bound by Watts's signature on any type of agency or alter ego theory. As the court's September 9, 2002, order noted, "a mere parent-subsidiary relationship 'does not create the relation of principal and agent or alter ego between the two.' " (Quoting *Caligiuri v. First Colony Life Ins. Co.,* 318 Ill.App.3d 793, 252 Ill.Dec. 212, 742 N.E.2d 750, 756 (Ill.App. 1 Dist.2000)). A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement. *Thomson-CSF,* 64 F.3d at 777.

> FN4. Again, Jones was sold in September 1996, so it was not a subsidiary of Watts for the entire time period relevant to this case.

[7] Zurich's remaining argument, that Jones "cannot take policy benefits without being bound ... to the associated deductible agreements and the duty to arbitrate issues respecting those agreements[,]" is based on an estoppel theory. A nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause. See *Thomson-CSF,* 64 F.3d at 778; see also *Indus. Elecs. Corp. of Wis. v. iPower Distribution Group,* 215 F.3d 677, 680 (7th Cir.2000) (stating in dicta that a third-party beneficiary of a contract would be bound by its arbitration provision).

But caselaw consistently requires a *direct* benefit under *the contract containing an arbitration clause*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

before a reluctant party can be forced into arbitration. *See Thomson-CSF,* 64 F.3d at 779 (holding that although the unwilling party received a benefit, the benefit did not derive directly from the agreement containing the arbitration clause and thus arbitration could not be compelled); *accord Am. Bureau of Shipping,* 170 F.3d at 353 (ordering arbitration because the nonsignatory received the direct benefits of a lower insurance rate and the ability to sail under the French flag as a result of an agreement containing an arbitration provision). Jones has not sought to enforce any rights it has under the deductible agreements, and in fact there would be no benefits to Jones under those agreements. Even assuming that Jones has benefitted from the deductible agreements by paying lower insurance premiums based on the deductibles, this benefit is too attenuated and indirect to force arbitration under an estoppel theory. We conclude that there are no grounds for compelling Jones to arbitrate, and we will affirm the district court's decision with respect to this issue.

*B. Watts's Appeal*

We now turn to Watts's appeal. The district court's decision compelling arbitration was based solely on the September 6 letter which, in the court's view, showed a dispute within the scope of the deductible agreements because Watts had "anticipatorily repudiated" the agreements. Watts contends that this letter was a settlement communication, and that the court's consideration of it to Watts's disadvantage was a violation of Federal Rule of Evidence 408. Watts also argues that there was not-and is not-a dispute ripe for arbitration under the deductible agreements.

The rules of evidence provide:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements *689 made in compromise negotiations is likewise not admissible.

Fed.R.Evid. 408. The primary policy reason for excluding settlement communications is that the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution. *See, e.g., Perzinski v. Chevron Chem. Co.,* 503 F.2d 654, 658 (7th Cir.1974).

[8] We assume for the purposes of this analysis that Watts's September 6 letter is in fact a settlement communication subject to Rule 408.[FN5] By its terms, the rule forbids admission of evidence only when it is offered to prove "liability for or invalidity of the claim or its amount." *See* Advisory Committee's Note, Fed.R.Evid. 408. The district court has broad discretion to admit evidence for a purpose other than proving liability; we review the district court's decision to do so for abuse of discretion and reverse only if there is manifest error. *See Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir.1984); *see also Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293 (2d Cir.1999).

> FN5. Zurich argues that because Watts demanded full payment for its defense in *Rothschild* and *Armenta* rather than proposing a "compromise," the September 6 letter is not a settlement communication subject to Rule 408.

[9][10] Evidence coming out of settlement negotiations is obviously admissible to show bias or prejudice of a witness. *See* Advisory Committee's Note, Fed.R.Evid. 408. It has also been admitted by courts for additional purposes other than establishing liability, including for purposes of rebuttal, for purposes of impeachment, to show knowledge and intent, to show a continuing course of reckless conduct, and to prove estoppel. *Bankcard Am., Inc. v. Universal Bancard Sys., Inc.,* 203 F.3d 477, 484 (7th Cir.2000) (collecting authority). In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations. *Id.; Starter,* 170 F.3d at 293. The balance is especially likely to tip in favor of admitting evidence when the settlement communications at issue arise out of a dispute distinct from the one for which the evidence is being offered. *See Towerridge, Inc. v. T.A.O., Inc.,* 111 F.3d 758, 770 (10th Cir.1997) ( "Rule 408 does not require the exclusion of evidence regarding the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408[.]") (citations omitted); *Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir.1992) ("Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial."); *Vulcan Hart Corp. v. NLRB*, 718 F.2d 269, 277 (8th Cir.1983) ("Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the claim under negotiation."); *cf. Starter*, 170 F.3d at 294 (holding that evidence of agreement to settle trademark case was properly admitted in subsequent dispute between parties in which one asserted a claim for estoppel).

[11] In this case, the September 6 letter was written, by Watts's own admission, in an effort to settle the California coverage action out of court. Of course the two actions are not totally unrelated. Zurich did, after all, raise the deductible agreements *690 as a defense to its duty to defend Watts in *Armenta* and *Rothschild*. Still, the California action-based on the primary liability insurance policies-is distinct from the Illinois petition to compel arbitration under the deductible agreements. Notwithstanding Watts's protestation that "[h]ad [it] known that settlement efforts would be used by the court as proof of the need for an arbitration, [it] would not have engaged in settlement efforts[,]" we do not believe that the policy behind Rule 408 is thwarted by admission of this evidence in the instant case. Watts could have negotiated settlement of the California coverage action without bringing the deductible agreements into the mix.[FN6] The district court did not abuse its discretion by admitting the September 6 letter, related to settlement of the action in California state court, for the purpose of determining whether there was an arbitrable dispute under the deductible agreements.

> FN6. Zurich's letter dated August 31, 2001, stated that Zurich would address the applicability of the deductible agreements "in due course, as required." Watts's response in its September 6 letter was that "the time to resolve [the deductible agreement] issues is now."

Having found that the September 6 letter was properly admitted in evidence, we return to a *de novo* analysis of whether arbitration was properly compelled. In the letter, Watts asserted its position that Zurich could not enforce the deductible agreements against Watts because Zurich had breached its duty to defend Watts under the primary liability policies. Watts also claimed that Zurich had waived its right to enforce the agreements. Finally, Watts wrote that even if the deductible agreements were applicable, Watts could be liable for no more than $500,000 for its own defense. Contrary to the district court's finding, Watts argues, this language did not constitute anticipatory repudiation, because Watts did not definitively state that unless its demand was met, it would not perform under the deductible agreement. *See* 9 Corbin on Contracts, Ch. 54, § 973 (2005).

[12][13] Watts could be right. But Zurich need not show that Watts anticipatorily repudiated the deductible agreements to compel arbitration; it need only show a written agreement to arbitrate, a dispute within the scope of the agreement, and a refusal by Watts to arbitrate. *See Kiefer*, 174 F.3d at 909. As the first and third elements are uncontested,[FN7] all that remains is for Zurich to prove "any dispute ... between [Zurich] and [Watts] with reference to the interpretation of [the] agreement[.]" (1991-92 Deductible Agreement, Zurich's App. at 337.) The district court correctly noted that to show a "dispute," Zurich "must show that [Watts] has acted, or has threatened to act, in a manner inconsistent with [Zurich's] interpretation of the contract." *Chi. Typographical Union No. 16 v. Chi. Sun-Times, Inc.*, 860 F.2d 1420, 1426 (7th Cir.1988). Watts's view of the deductible agreements and their applicability as set forth in its September 6 letter were inconsistent with Zurich's interpretation as set forth in its September 21, 2001, letter. (Watts's App. at 18-22 (stating that Zurich disagreed with each of Watts's four contentions with respect to the deductible agreements and demanding arbitration).) Watts's statements were a sufficient threat that it *691 would not perform its deductible obligations-sufficient to show a "dispute"-and, considering the broad scope of the arbitration clauses at issue, this dispute is clearly within the scope of the deductible agreements.

> FN7. Although Watts maintains in its brief that it "never refused to arbitrate a dispute

under the applicable Deductible Agreements[,]" Watts's conduct after Zurich's request for arbitration and position taken in these proceedings clearly manifest a refusal to arbitrate. On October 2, 2001, Watts sent a letter to the California court presiding over the coverage action denying its duty to arbitrate. (Watts's App. at 24.)

There is some discussion in the briefs about the amount of money Zurich had paid Watts at the time the petition for arbitration was filed (none) [FN8] and how this affects the ripeness of the petition. As Watts points out, it could hardly have been obligated to reimburse Zurich under the deductible agreement when it had not received the money for its defense in the underlying actions in the first place. But, because of the broad arbitration clause and the fact that the agreement does not require actual breach as a precondition for arbitration, the issue is irrelevant. Watts's threat of nonperformance under the deductible agreements in the September 6 letter made the dispute ripe. We will therefore affirm the district court's order to arbitrate.

> FN8. Zurich made a partial payment of $4 million immediately prior to the district court's ruling, almost one year after filing the petition to compel arbitration. At this point, Zurich has paid more than $23 million in defense costs.

[14] Not surprisingly, the parties also dispute the scope of the compelled arbitration. Watts says that, assuming any issues are arbitrable, that arbitration should be limited to (1) whether Zurich has repudiated the deductible agreements by failing to pay for Watts's defense under the 1994-95 and 1995-96 primary liability policies, and (2) the parties' respective rights and obligations under the deductible agreements from those two years-the only two corresponding to the policy periods under which payments have been made. The California court determined that defense costs were only payable under the policies covering 1994-1996, not under all six policies as Zurich desired. For its part, Zurich says that arbitration should occur under all six deductible agreements.

[15] "Whether or not [a] company [is] bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (internal quotation and citation omitted). We have already discussed the fact that Watts is bound to arbitrate any dispute that amounts to a differing interpretation than Zurich's of a given deductible agreement. The district court did not make a finding regarding which deductible agreements the parties dispute. Noting that the court is not to rule on the potential merits of the underlying claims, *see id.*, we will remand to the district court to identify precisely which agreements the parties' dispute arises under, and thus under which agreements their obligations and rights may be arbitrated.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's order compelling arbitration between Zurich and Watts and exempting Jones from arbitration. We REMAND for clarification as to which deductible agreements are subject to the arbitration between Zurich and Watts.

C.A.7 (Ill.),2005.
Zurich American Ins. Co. v. Watts Industries, Inc.
417 F.3d 682

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.