# GILBERT RANDOLPH
—— LLP ——

**Richard D. Shore**
Direct 202.772.2317
Direct Fax 202.772.2319
Email shorer@gilbertrandolph.com

May 27, 2008

**BY ELECTRONIC FILING**

The Honorable Sue L. Robinson
U.S. District Court for the District of Delaware
844 North King Street - Room 4209
Lock Box 18
Wilmington, DE  19801

Re:    **The American Legacy Foundation v. National Union Fire Insurance Co.,**
**Case No. 07-248-SLR**

Dear Judge Robinson:

At the discovery conference on May 12, 2008, the Court instructed each of the parties to provide its best case regarding whether settlement-related "correspondence [with Travelers] that might mention the claims against National Union" is admissible.  Hearing Transcript p.23 at lines 20-21 (D.I. 48, copy attached as Exhibit A); *see also* Order (May 13, 2008) (D.I. 47).  In that regard, we invite the Court's attention to *PharmaStem Therapeutics, Inc. v. Viacell Inc.*, a 2003 decision of the U.S. District Court for the District of Delaware.  In *PharmaStem*, the Court granted the plaintiff's motion *in limine* to exclude evidence of settlement negotiations with other defendants, stating flatly and without the type of carve-out National Union seeks here that "to the extent [plaintiff] requests the exclusion of settlement negotiations between itself and any of the defendants in this case, that evidence is plainly inadmissible under Rule 408."  *PharmaStem*, No. C.A. 02-148 GMS, 2003 WL 22387038, at *4 (D.Del. Oct. 7, 2003) (emphasis in original) (copy attached as Exhibit B).[1]

That being said, based on a preliminary review, while there appear to be a limited number of documents mentioning National Union in settlement-related correspondence between the Foundation and Travelers, none that we have identified so far discusses the validity or invalidity

---

[1] Although *PharmaStem* is not reported in F. Supp. 2d, National Union's counsel, Richards, Layton & Finger, is familiar with the case, having represented one or more of the defendants there.

The Honorable Sue L. Robinson
May 27, 2008
Page 2

of the Foundation's claims against National Union. The review is continuing, but in any event, based on the case cited above and for the reasons discussed at the discovery conference, the Foundation respectfully submits that all settlement communications with Travelers fall within the protections of Rule 408.

If the Court would like any further discussion of these matters, please let us know.

Respectfully submitted,

Richard Shore

cc:    Clerk of the Court (by e-file)
       Chad M. Shandler, Esq. (by email)
       Matthew J. Fink, Esq. (by email)
       Laura Davis Jones, Esq. (by email)

# EXHIBIT A

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

1

1                   IN THE UNITED STATES DISTRICT COURT

2                   IN AND FOR THE DISTRICT OF DELAWARE

3                           - - -

4
     THE AMERICAN LEGACY        :   CIVIL ACTION
5    FOUNDATION,                :
                                :
6                    Plaintiff, :
                                :
7         vs.                   :
                                :
8    NATIONAL UNION FIRE        :
     INSURANCE COMPANY OF       :
9    PITTSBURGH, PENNSYLVANIA,  :
                                :
10                   Defendant. :   NO. 07-248 (SLR)

11                           - - -

12                              Wilmington, Delaware
13                              Monday, May 12, 2008
                                1:10 o'clock, p.m.
14                           - - -

15
     BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.
16                           - - -

17
     APPEARANCES:
18
                     PACHULSKI STANG ZIEHL & JONES LLP
19                   BY:  LAURA DAVIS JONES, ESQ.

20
                         -and-
21

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25

2

1    APPEARANCES (Continued):

2

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

```
 3                GILBERT RANDOLPH LLP
                 BY:  RICHARD SHORE, ESQ. and
 4                     AUGUST J. MATTEIS, JR., ESQ.
                      (Washington, D.C.)
 5

 6                     Counsel for Plaintiff

 7


 8

 9                RICHARDS, LAYTON & FINGER
                 BY:  CHAD M. SANDLER, ESQ.
10

11                        -and-

12
                 BATES & CAREY LLP
13               BY:  MATTHEW J. FINK, ESQ.
                      (Chicago, Illinois)
14

15                     Counsel for Defendant

16

17                        - - -

18

19

20

21

22

23

24

25
```

⬜

                                                            3


```
 1                    P R O C E E D I N G S

 2

 3               (Proceedings commenced in the courtroom,

 4      beginning at 1:10 p.m.)

 5

 6               THE COURT:  Good afternoon.

 7               (Counsel respond, "Good afternoon, your Honor.)
                          Page 2
```

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

8              THE COURT:  Okay.  I take it there are some

9      issues since you are here, so let me hear what we need to

10     do.

11             MR. SHORE:  Your Honor, it's Richard Shore, for

12     the plaintiff, American Legacy Foundation, if I may.

13             THE COURT:  Yes.  We'll generally start -- well,

14     if anyone has introductions, we should get that out of the

15     way, then plaintiff can go forward first.

16             MR. SHANDLER:  Thank you, your Honor.  Chad

17     Shandler, from Richards Layton & Finger.  With me is Matt

18     Fink, from Bates & Carey, in Chicago.

19             THE COURT:  Thank you very much.  High.  How are

20     you?

21             Had lots of folks from Chicago in court today.

22             MR. FINK:  Good afternoon, your Honor.

23             MS. JONES:  Your Honor, Laura Davis Jones,

24     Pachulski, Stang, Ziehl & Jones.

25             Your Honor, I'd like to introduce to the Court

                                                        4


1      Richard Shore and August Matteis, both of whom, your Honor,

2      I have motions pro hac vice pending for those.  I think your

3      Honor may have signed them.

4              If I may introduce them?

5              THE COURT:  Yes.  Thank you very much.

6              MS. JONES:  Thank you.

7              THE COURT:  All right.

8              MR. SHORE:  Thank you, your Honor.

9              Richard Shore, for plaintiff, American Legacy

10     Foundation.

11             Your Honor, since the telephonic conference with

                          Page 3

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt
12    the Court in April, the parties have conferred in an effort

13    to resolve discovery and scheduling issues regarding the

14    coverage portion of this case, and I'd like to begin with

15    what the parties have agreed on.  There are a number of

16    points where we have not been able to reach agreement, of

17    which I'd also like to discuss.

18            First, your Honor, on the schedule of discovery,

19    the parties, I believe, have agreed that discovery should

20    run for 120 days from the date of this conference, which, by

21    my calculation, would be until September 8th, 2008, and have

22    also agreed that depositions should commence 90 days into

23    the 120-day period.

24            As I will discuss in a few moments, the

25    Foundation has agreed to most of the discovery sought by

                                                    5


1    National Union regarding the coverage portion of the case.

2    The exception to that is discovery that National Union has

3    sought regarding the settlement with Travelers, which

4    previously was also a defendant in this case.  They have

5    sought both the Travelers settlement agreement itself as

6    well as communications related to the settlement

7    negotiations.

8            And, your Honor, I was just informed before the

9    case was called that National Union has agreed to a limited

10    amount of discovery sought by the Foundation.  Specifically,

11    National Union has agreed to provide copies of policies and

12    has agreed to provide a copy of its claim file regarding

13    each of the coverages at issue.

14            Unfortunately, your Honor, we have not been able

15    to agree on a method for proceeding with the dispositive

16    motions.  The Court indicated during the telephonic

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

17    conference that each side may file one dispositive motion.

18    To date, just to briefly recap the history, because it's

19    relevant to how we proceed from here on in, National Union

20    has filed a motion for partial dismissal.  The Foundation

21    has filed a motion for summary judgment, dealing with both

22    coverage issues and touching on damages.

23         National Union has filed a motion to dismiss or

24    stay the Foundation's motion for summary judgment, and the

25    Foundation has filed a motion to continue argument on

6

1    National Union's motion for partial dismissal to combine it

2    with the Foundation's motion for summary judgment, which I

3    think, in effect, is what the Court has indicated is going

4    to happen here.

5         The Foundation thinks that it would make the

6    most sense, be the most orderly, for the parties to withdraw

7    all of the pending motions and for each party to file a new

8    dispositive motion on an agreed schedule and to do so

9    simultaneously.

10        I'm not sure I entirely understand National

11    Union's' position on this issue, but it is not -- it has not

12    agreed to ours.  It seems to be to treat at least the

13    Foundation's motion for summary judgment as the operative

14    dispositive motion, and then to perceive from there where

15    National Union might have an opportunity to file a new

16    motion.

17        We think that it makes the most sense for both

18    parties to file a single dispositive motion following the

19    conclusion of discovery and to withdraw the pending motions

20    for several reasons.

Page 5

5 12 08 American Legacy v National Union  CA No  07-248 (SLR).txt

21            Number one, your Honor, we think that it will

22    avoid confusion of the parties and the Court trying to

23    figure out how to combine the existing motions with newly

24    filed material, newly filed motions or briefs.

25            As a reminder, your Honor, the Foundation's

                                                              7


1    motion for summary judgment deals with coverage issues,

2    which is now what the Court has instructed us and directed

3    us to deal with in this phase, but it also touches on the

4    damages issue, which is now going to be dealt with in a

5    subsequent phase should that be appropriate after the

6    coverage phase of the case.

7            National Union's's motion for partial dismissal,

8    on the other hand, is quite narrow.  It deals with only one

9    of the two coverages at issue here, and, indeed, deals with

10    one exclusion under that coverage.  We assume that National

11    Union will file a dispositive motion that is far broader,

12    that deals more broadly with the DNO coverage, which they've

13    already addressed in their motion for partial dismissal, but

14    that also deals with the comprehensive general liability

15    umbrella policy that they issued.

16            So what we'll have, if we leave those motions

17    pending and file new material, new briefs following

18    discovery, is the Court and the parties trying to puzzle out

19    how to supplement and how to put together all of the

20    different briefs and all of the different arguments.

21            Treating the prior motions as withdrawn and

22    filing new motions also avoids having all of the pending

23    motions and briefs sitting out there undecided through

24    several months of discovery.

25            And, your Honor, National Union did ask in its
                             Page 6

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

8

1    motion to dismiss the Foundation's motion for summary

2    judgment, to have that motion dismissed or at least stayed

3    until after discovery took place.  We think this approach is

4    consistent with what National Union was originally asking

5    for.

6              Our proposal, your Honor, to National Union is

7    that each side file dispositive motions no later than

8    30 days after the close of discovery, responsive briefs

9    30 days after that, and replies 14 days after that.  Our

10   understanding of what National Union is looking for is not

11   entirely clear, but I believe that they -- that they are

12   only looking for a total of four briefs.  That is an opening

13   brief and a response with no reply.

14             We think that the reply, as frequently is the

15   case and traditionally the case, may crystallize the issues

16   and allow the parties to address issues that are raised in

17   the parties' responsive briefs and would be useful to the

18   Court and appropriate here.

19             As I've noted, your Honor, on the question of

20   the scope of discovery, the Foundation has agreed to most of

21   the discovery sought by National Union with the exception of

22   Travelers settlement-related discovery, including such

23   things as copies of the policies, underwriting and claim

24   files, both documents and deposition discovery.

25             The Foundation -- the Foundation's position

9

1    certainly has been and is that no discovery is necessary for

2    purposes of summary judgment here.  Nonetheless, we are

Page 7

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

3    going to proceed with 120, assuming the Court orders it,

4    with 120 days of discovery.

5              National Union has taken the position that

6    discovery is relevant and that they can use the fruits of

7    discovery in connection with their briefs.  The Court has

8    not ruled, and it is not ripe yet for the Court to rule on

9    the eight corners rule, that is the scope of any material

10   other than the complaint, underlying complaints and the

11   policies that may be relevant to the parties' summary

12   judgment motions.  The Court has not ruled on that yet.

13             And so for those reasons, we think it's

14   appropriate for both parties to be able to obtain

15   discovery.

16             And what we've asked for from National Union,

17   your Honor, is really the mirror image or the complement of

18   what they've asked for from us, nothing beyond that.  We've

19   simply asked for essentially the same thing that they are

20   asking for, but, of course, we have not asked for anything

21   regarding the Travelers settlement.

22             Your Honor, we'd also point out that because

23   this is discovery for purposes of the coverage portion of

24   this case, not necessarily only for summary judgment, in the

25   event that the Court does not grant summary judgment, that

10

1    there are issues that are still pending after this round of

2    dispositive motions, discovery may be relevant at that

3    stage, and although we although we continue to hold that

4    under the eight corners rule, none of that is relevant and

5    none of that would be admissible, again, the Court has not

6    ruled on the eight corners rule as of yet.

7              So we think it's most efficient to simply
                    Page 8

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

    8    proceed with all of that discovery now, file the summary

    9    judgment motions, and then, if -- we won't have any -- we

   10    won't have the situation that we have to come back to the

   11    Court and ask for additional rounds of discovery.

   12           Your Honor, the final point is that the

   13    Foundation does not agree that National Union is entitled to

   14    discovery regarding the Travelers settlement negotiations or

   15    the Travelers settlement agreement.  Those negotiations and

   16    the agreement are confidential by agreement of the parties

   17    as, in fact, settlement negotiations with National Union

   18    were at an earlier stage of this case.

   19           The Travelers settlement information is also

   20    inadmissible under Federal Rule of Evidence 408.  Indeed,

   21    that evidence and the confidentiality -- confidentiality of

   22    it really goes to the core of what Section 408 is about.

   23           Section 408 addresses the use of a settlement

   24    with one party in order to prove the validity or invalidity

   25    of the claim against that party or the other party in the

                                                11


    1    case, and it addresses the use of communications in the

    2    course of settlement discussions to establish the validity

    3    of a claim against one of the parties in the case or to be

    4    used for purposes of impeachment.

    5           The policy underlying Rule 408 is to foster

    6    settlement.  That is also a policy that is consistent with

    7    the public policy of Delaware and other states.

    8           So our view is that under Rule 408, under the

    9    agreement of the parties, anything regarding the Travelers

   10    settlement is confidential, is inadmissible, and, in

   11    addition, should not be discovered, because it will put the

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

12    party through an exercise of discovery which is not

13    reasonably calculated to lead to the discovery of admissible

14    evidence.

15            Thank you, your Honor.

16            THE COURT:  All right.  Thank you.

17            Starting off with the last point first, it is my

18    policy not to allow discovery as to settlement agreements,

19    so let's start off with that presumption, and Travelers

20    would be put to the burden of telling me why this case is

21    different from all others on my docket.

22            You may sit down.

23            MR. SHORE:  Thank you.

24            THE COURT:  This is a question for Travelers:

25    what compelling reason would there be for there to be need

                                                        12

1    for discovery of settlement agreements, which I can't

2    remember ever allowing in my 17 years on the bench?

3            MR. FINK:  Thank you, your Honor.  Matthew Fink,

4    for National Union.

5            Your Honor, not only the settlement agreement.

6    We're really looking for the correspondence leading up to

7    the settlement with Travelers.  This is -- we're dealing

8    with the settlement between Travelers and American Legacy.

9            In this case, American Legacy originally claimed

10    that those Travelers who, they allege in their complaint,

11    was Travelers had the duty to defend the claim.  National

12    Union has the umbrella policy above the Travelers policy.

13    And so it's very relevant as to what correspondence they

14    were having with Travelers as to the position that American

15    Legacy was taking, as to whether they had a duty to defend

16    and the positions that Travelers was taking.  And for them

                        Page 10

5 12 08 American Legacy v National Union  CA No  07-248 (SLR).txt

17    just to cloak everything into a settlement or to say,
18    initial position, we don't know what -- whether it is
19    actually a settlement document or whether it's just a demand
20    letter to Travelers, which would not even be protected, 408
21    has to do with admissibility of documents, not
22    discoverability of documents.
23              THE COURT:  But --
24              MR. FINK:  And we should be entitled to --
25              THE COURT:  But does it really matter?  If you

                                                          13

1    are asking me to decide whether there's a duty to defend
2    under the document, does it really matter what Travelers and
3    American Legacy said about it?  I mean, their
4    interpretation?  Anything about what they say, is it really
5    relevant at all?
6              MR. FINK:  I think it is relevant, your Honor,
7    as to what American Legacy is saying about the Travelers
8    policy and the breadth of the Travelers policy, and they're
9    now taking different positions in front of your Honor and
10   in briefs as to the scope of the Travelers policy and as
11   to the scope of the claims that were being made in
12   the underlying case were.  I think that's relevant for
13   your Honor to see the different positions that they were
14   taking.
15             THE COURT:  So basically you're asking for
16   something akin to admissions against interest?
17             MR. FINK:  Yes, your Honor.  It would be
18   admissions against interest.  And, again, I don't think
19   those should be able to be cloaked in any settlement
20   discussions, which may not even be settlement discussions.
                         Page 11

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

21    They could be demands for them to make payments under the

22    policy, which are not even settlement payments.  I think

23    we're at least entitled to look at the correspondence.

24           If it's an admission of admissibility, that

25    could be dealt with later, but for them to say they're not

14

1    going to produce anything, and they get to choose

2    essentially the scope of what they consider to be the

3    settlement negotiations, well too broad.

4           THE COURT:  Interesting point.

5           MR. FINK:  As well, your Honor, 408 only

6    protects any sort of negotiations between and any claims

7    being made between Travelers and American Legacy.  So,

8    again, if there any admissions about coverage of National

9    Union in any of that correspondence, that cannot be cloaked

10   by Rule 408.

11          All of these policies are very intertwined.  In

12   other words, if they are writing letters and having

13   conversations with Travelers and taking positions as to how

14   the National Union policy applies or does not apply and how

15   Travelers should be picking this all up and National Union

16   really doesn't provide coverage for this and it's really

17   Travelers that should be providing coverage for this, if

18   those are admissions that they're making, 408 does not

19   protect any statements they're making about National Union's

20   coverage.  It's only to protect the of any validity of any

21   sort of claims between Travelers and American Legacy, and

22   they can't cloak any admissions about our, National Union's

23   coverage, under 408.

24          Your Honor, we're not seeking at this point --

25   we'd like to see the settlement agreement, we think it's

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

15

1    relevant, but we're really looking for more the

2    correspondence dealing with the settlement.  Actually, the

3    settlement agreement itself is very relevant.  We'll get

4    to the damages issue and setoff, how much they paid, because

5    the National Union policy only accepts at certain levels, so

6    that -- but that becomes relevant, but I understand put the

7    damage issue aside at this point.

8            THE COURT:  All right.  I will look forward to

9    hearing a response to particularly the request for any

10   information contained in the correspondence and settlement

11   papers, however one defines that.  I don't know how you

12   defined your -- how you define the scope of your request,

13   that basically mention your client.

14           MR. FINK:  Your Honor, our request was provide

15   all correspondence between the parties, being National Union

16   and American Legacy and Travelers.  It's American Legacy

17   who's taking position that we'll produce all the

18   correspondence but anything related to settlement.  So they

19   are the ones sort of carving this area out, so we don't know

20   how broad they're carving it out, which is part of the

21   problem.

22           They shouldn't be arbiters to carve out how

23   broad they consider to be the settlement negotiations from

24   the first demand letter, which we would consider to be.  I

25   think they should have to -- again, this is discovery.  They

16

1    should have to produce it.  They can argue about it.

2            THE COURT:  Obviously, you have to draw a line

Page 13

5 12 08 American Legacy v National Union  CA No  07-248 (SLR).txt

3    before you have a judge address whether the line is drawn in

4    the appropriate fashion, so that's kind of a frivolous

5    argument.  But I will let that go.

6              Tell me about the schedule, because it's

7    certainly, with everything we have on our plate, I don't

8    need multiple motions hanging around for different periods

9    of time that have to be supplemented and addressed.  Again,

10   it makes absolute sense to me to start with a clean slate

11   and to have this discovery, however it's defined, and then

12   to have a round of summary judgment.

13             So --

14             MR. FINK:  I will just tell you our thought,

15   your Honor.  As you recall, this came up when American

16   Legacy filed their comprehensive motion for summary

17   judgment.  Their motion for summary judgment addresses both

18   the DNO policy and the umbrella policy.

19             We filed response to that along with the 56(f)

20   affidavit saying we needed limited discovery.  We had the

21   conference.  We've set out what the limited discovery we

22   need.  We were quite surprised that they said they needed

23   discovery then, because they had filed the summary judgment

24   saying there's no questions of fact.  Regardless of that, we

25   said, fine.  We'll produce our claims file.  That's what you

                                                        17


1    think you need.  We agreed to do that.

2              But I guess our thought, your Honor, our motion

3    to dismiss would be withdrawn, because we understand your

4    Honor does not want to rule on that.  But as far as their

5    motion for summary judgment, they filed it.  Our thought was

6    that we would be now doing discovery and we would be

7    responding to it.  We'd both have a motion for summary
                          Page 14

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

8      judgment on file.  They filed it, saying there are no

9      questions of fact.  I don't see what supplementation they

10     would need.  And then we believe that it should only be one

11     response brief, so we don't have six briefs.

12            THE COURT:  Undoubtedly, it will be a reportable

13     motion for me in September, because the schedule proposed

14     does not have you filing anything, and I'm not going to be

15     deciding these, one now and 13 months later.

16            So as a matter of administrative ease, I'm going

17     to ask that it be withdrawn, and that, certainly, they can

18     simply refile it, renew it, but I suspect that with the

19     benefit of discovery, they might want to add a few things.

20     But my job is to decide these issues on the best record you

21     can give me to make the best decision I can, so let's do it

22     that way.

23            Do you have any problem with the schedule that

24     they set out?  That is, the motion -- let me see.  Discovery

25     to be completed by September 8th.  Motions for summary

                                                        18


1      judgment filed on October 8th.  Answering briefs due on

2      November 8th and reply briefs due on November 24th.

3            MR. FINK:  Our only disagreement, your Honor, we

4      have no disagreement with the discovery or the opening brief

5      and the response brief.  We just don't believe it's

6      necessary to have a response brief when you both have

7      cross-motions for summary judgment and then simultaneously

8      filed and then both will file a response brief.  It's not

9      necessary to have a reply brief.  If you would like six

10     briefs rather than four, we're happy to do it.

11            THE COURT:  The only problem is half the time

                        Page 15

5 12 08 American Legacy v National Union CA No 07-248 (SLR).txt

12    you all are ships crossing in the night and sometimes the

13    only time frame that crystallizes is a reply.  I certainly

14    don't want any more papers than I can handle.  But, again,

15    most of these cases involve cross-motions, and I allow them,

16    so we'll follow my standard practice.

17              MR. FINK:  Okay.

18              THE COURT:  All right.  Now, let me just talk

19    about the settlement, the correspondence between the

20    parties, and American Legacy carved out of that anything

21    having to do with settlement.  And I guess what I want to

22    find out from counsel for American Legacy is what they mean

23    by that and we'll have a discussion.  It seems to me as

24    though there will be some discovery involved in that.  The

25    question is how much.  So let's go back to him and then I

                                                          19


1    will address you again.

2              MR. FINK:  Thank you, your Honor.

3              THE COURT:  Thank you, Mr. Fink.

4              MR. SHORE:  Your Honor, I guess one possible

5    place to draw the line on where settlement discussions began

6    would be with the filing of this case, since we're talking

7    about efforts to settle this dispute.

8              I will say that it is possible, and so what I

9    would say is, anything after a filing of this case

10   that does not deal with simple scheduling issues, but that

11   goes to --

12             THE COURT:  And how about if correspondence

13   between you and Travelers mention National Union?  Do you

14   think that is -- or, for some reason, anything that was said

15   somehow would commit you to a certain interpretation of

16   contract?  Do you think that's put out of the way by your

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

17    calling it a settlement discussion?

18            MR. SHORE:  I don't think it's put out of the

19    way by calling it a settlement discussion.  I think it's put

20    out of play by Rule 408.  I don't think that under Rule 408,

21    your Honor, it makes a difference whether the communication

22    that they seek to discover or to ultimately introduce as

23    evidence related to the Travelers policy or related to the

24    National Union policy.

25            The policy underlying 408 is to permit candid

                                                              20


1    discussions in the course of settlement negotiations in

2    order to foster settlement.  The plain language of Rule 408

3    I think applies to either communications regarding

4    Travelers' obligations or communications regarding National

5    Union's --

6            THE COURT:  I guess my concern is, though,

7    that you've drawn this line and maybe this is one of those

8    cases where I should have an in-camera inspection, because

9    I'm not confident that every piece of correspondence that

10    you send to another party that ultimately ends up settling

11    can be deemed protected under Rule 408.  And that just seems

12    broad.

13            Now, it might not be in your case.

14            MR. SHORE:  Right.

15            THE COURT:  All the correspondence might

16    actually, from start to finish, talk about efforts to

17    settle, but how do any of us know that except by your saying

18    I'm drawing this line and it might be artificial, but I'm

19    drawing it.  I mean, I'm not sure.

20            MR. SHORE:  I understand that issue, your

                              Page 17

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

21    Honor, and in saying that we could use the date of filing

22    of the case, that was simply in order for me to draw a

23    simple and clear line.  I think what is protected by 408

24    is any communication in the course of, in support of, in

25    connection with settlement negotiations.  So if we said

21

1    something about the Travelers policy or about the National

2    Union policy, about how they apply in connection with

3    efforts to settle with Travelers, or if Travelers said

4    something about the Travelers policies, the Travelers

5    coverage, the National Union coverage, in connection with

6    efforts to settle, that is the core of what Section 408 is

7    designed to protect.

8            THE COURT:  Right.  But there is lots of

9    correspondence that goes back and forth between the

10    parties.  The parties ultimately settle.  There's lots

11    of correspondence that can flow between the two parties

12    that don't necessarily have anything to do with settlement

13    per se.  I mean, you could be talking about how to narrow

14    the scope of discovery.  I mean, ultimately, it helps to

15    settle the case, but are you including that type of

16    correspondence?

17            MR. SHORE:  No, your Honor.  If what we were

18    talking about was narrowing the scope of discovery, or if

19    what we were talking about was an extension on the deadline

20    for Travelers to answer, I don't think -- I mean, you could

21    make an argument that those are settlement-related.  I don't

22    think that those are what we're talking about here.

23            What we are talking about here and what I

24    understand National Union to be looking for are

25    communications in the course of settlement discussions.  You

Page 18

5 12 08 American Legacy v National Union CA No 07-248 (SLR).txt

22

1    know, when I travel to New York --

2             THE COURT:  No.  The way I understood it was,

3    they wanted all correspondence.  You're the ones that said

4    we'll give you everything except that which relates to the

5    settlement.  You are the one that drew the line.

6             My question is:  How do I know, and how does

7    defendant's counsel know that this correspondence actually

8    does relate to settlement because, I mean, especially if you

9    say this is all correspondence from the date of the filing

10   of the complaint, which I think is the second thing you

11   said.

12            MR. SHORE:  That was just an effort to find

13   kind of a simple date and also knowing what has happened

14   here.  I mean, the discussions with Travelers since the

15   date of filing the case have dealt with extensions on their

16   deadline to answer, and we sat down with them several times

17   in an effort to settle this, where we were having

18   substantive discussions, and those are the discusses that we

19   understand National Union to be seeking.

20            And the reason, what National Union has

21   requested in the course of our conferring about the scope of

22   discovery, it was a specific request for a copy of the

23   Travelers settlement agreement, which I now understand that

24   they proceeded from, and communications in the course of, in

25   connection with settlement negotiations.

23

1             So they are really the ones who have raised

2    this, who have sought this, who have put it at issue.  What

Page 19

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

```
 3    we said is, it's what you ordinarily do when a party seeks

 4    discovery, is you make a judgment about what is responsive

 5    and what is not responsive, and we're talking about doing

 6    the same thing here.  They have asked for communications in

 7    connection with the Travelers settlement negotiations,

 8    including, for example, notes of telephone conversations in

 9    the course of those negotiations, and we would do the same

10    thing here we would do in response to any discovery request,

11    which is review all of the documents.

12            If there are documents that involve

13    correspondence or communication with Travelers that are not

14    related to settlement negotiations or the settlement

15    agreement, we would produce them, because they're

16    responsive.  If the Court agrees with us that Rule 408

17    precludes the admissibility and, indeed, indirectly

18    discovery of settlement-related communications, then we

19    would not produce those, just as we would not produce things

20    that are otherwise not within the scope of what National

21    Union is seeking.

22            It's always in the course of discovery a

23    judgment by the producing party what's within and what's not

24    within the scope.

25            THE COURT:  But at this point, I take it you

                                                    24


 1    have -- I mean, have you produced any correspondence at all

 2    or this is forward thinking?  You're saying that -- well, I

 3    don't know.

 4            MR. SHORE:  No, we have not gotten to the part

 5    on either side of actually producing anything.

 6            THE COURT:  All right.

 7            MR. SHORE:  I think what we are saying we would
```

5 12 08 American Legacy v National Union  CA No  07-248 (SLR).txt

8    do, your Honor, is we would take all of the requests that

9    National Union has made, and there are specific written

10   requests that they've given to us that we have agreed to,

11   and we will produce documents that are responsive to each of

12   those requests.

13        We're asking the Court to rule that they are not

14   entitled to discover, they are not entitled to discovery in

15   connection with their requests for settlement-related

16   communications and so we would not produce those, if the

17   Court so rules.

18        THE COURT:  All right.  Thank you very much.

19        MR. SHORE:  Thank you, your Honor.

20        MR. FINK:  I'd just like to address, your Honor,

21   sort of the scope of Rule 408.  I don't think counsel

22   necessarily addressed that head-on.

23        408 does not just protect blanketly settlement,

24   anything closed with a settlement.  I mean, it specifically

25   has prohibited use for evidence that is not admissible

                                                        25


1    when offered to prove the validity of the claim that's

2    at dispute, and then, in particular, it prohibits

3    conduct or statements made in negotiations regarding that

4    claim.

5        So, in other words, I mean, it could protect

6    these statements between Travelers and American Legacy

7    with respect to the validity of American Legacy's claim

8    against Travelers, but it can't cloak any statements

9    American Legacy would make about its claim against National

10   Union if it makes a statement about its claim against

11   National Union to Travelers.  Even if that's within

                      Page 21

5 12 08 American Legacy v National Union CA No 07-248 (SLR).txt
12    settlement discussions with Travelers, that doesn't get

13    protected under Rule 408.

14            Specifically, it only protects the validity of

15    the claim that's being made between those two parties.

16    Anything else is of permitted use under 408.

17            Again, so they're being the arbiter of drawing

18    this line, and I think they are drawing it at the time of

19    the complaint now, which, to me, seems very early.  Again,

20    that's sort of the difference between a demand and

21    settlement negotiations.  The complaint is a demand for them

22    to pay, not necessarily the beginning of actual settlement

23    negotiations.

24            So that gives me pause as well as to where they

25    are drawing the line here, because we would request, your

                                                        26


1    Honor, and I think Rule 408 has to deal with admissibility.

2    They should produce correspondence to us other than the

3    settlement agreement, and if there are issues as to the use

4    of the documents, then that could be addressed with the

5    Court at the time of the admissibility of the document, or

6    if your Honor wants to look at it in-camera, trying to save

7    your Honor time from doing that, I don't think that there's

8    probably a large universe of documents here, but I don't

9    think they should be sort of the arbiter of cloaking all

10   these documents in settlement.

11            Thank you.

12            THE COURT:  All right.  First of all, settlement

13   is an important part of the Court's continuing function, so

14   it is, I think, most all of our's interests in making sure

15   that people continue to want to settle because they believe

16   that their settlement discussions are confidential.

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

17    However, I'm not sure I've ever come across a request, as I

18    understand it, in its narrowest form.  I think you actually

19    want more than this, but in its narrowest form, National

20    Union is asking for that correspondence or that part of

21    correspondence that might mention the claims against

22    National Union at its narrowest.

23              And I guess with respect to that proposition, if

24    I understand it correctly, I will give you each a week or

25    two weeks, however long you want to take, to find me your

                                                            27

1    best case that supports your position that either that sort

2    of kind of admission against interest is admissible, even if

3    it's in -- it's kind of third-party information contained in

4    a settlement discussion, whether American Legacy should be

5    protected, or whether, in fact, the cloak of settlement

6    should not protect that kind of information.

7              So why don't we just say two weeks.  I just

8    want a case.  You don't even have to discuss it because I

9    can actually read, but just like a one-page letter case,

10    brief discussions, and in the meantime, I will craft and

11    issue a scheduling order consistent with our discussion

12    today.

13              Are there any other issues that we should

14    address?

15              MR. FINK:  Just one second.

16              (Pause.)

17              MR. FINK:  Your Honor, I guess there's one other

18    issue that has been raised, is the scope of discovery that

19    American Legacy is seeking from National Union.

20              We did agree to produce the claims file.

                            Page 23

5 12 08 American Legacy v  National Union  CA No  07-248 (SLR).txt

21    American Legacy also had requested that we produce the

22    underwriting file, which we don't see any relevance for.

23    They call it a mirror image, but it's not a mirror image of

24    what we're asking for.  I mean, what we're asking for is the

25    underwriting files for the Travelers policies, which has

28

 1    relevance to our claim, but we don't see the relevance of

 2    what possibly they could want the underwriting files of from

 3    our National Union policy.

 4           Again, they've filed a motion for summary

 5    judgment, saying the policies are unambiguous as a

 6    matter of law, you can interpret the policy, so we don't

 7    see what going to the underwriting files has any relevance

 8    for.

 9           THE COURT:  All right.  Let's hear about that.

10           MR. SHORE:  Your Honor, what we are looking for

11    is really precisely the mirror image or the complement that

12    they want, of what National Union wants.  That is, they

13    would like to look at the underwriting file and some other

14    things with respect to the Travelers policy in order, they

15    hope, to be able to make the arguments about what was

16    intended at the time the policy was issued, et cetera.  But

17    they do not want, it appears, the Court to have the same

18    information before it when it decides the summary judgment

19    motions about National Union's own policy.

20           And if they think what they are going to find in

21    the underwriting file is something that says, oh, yes, the

22    Travelers policies apply and the National Union policies

23    don't apply, which we don't have any reason to think would

24    be there, we ought to be able to test that by seeing

25    whether, in the National Union underwriting file, there is

Page 24

⬜

1    something that says that it's the National Union policies

2    that would apply in this sort of circumstance, or whether

3    there is other relevant information about the National Union

4    policies, which, after all, are the policies now at issue

5    that would allow us to counter arguments that they might

6    want to make based on the discovery they get with respect to

7    Travelers.

8            So it really is on multiple different points a

9    complement.  It's allowing us to be able to present, since

10    we don't know -- I mean, again, we would argue that none of

11    this is admissible, but we don't know yet what the Court is

12    going to decide on that issue.  It would allow us to test

13    any factual contentions that National Union might make on

14    the basis of whatever discovery they seek and not require us

15    to proceed without being able to present the full picture to

16    the Court.

17            THE COURT:  I agree.  It seems to me if

18    underwriting files are presented with one, they should be

19    reviewed.

20            So, all right.  Anything else?  Thank you for

21    your time, counsel.

22            MR. SHORE:  Thank you.

23            (Court recessed at 1:52 p.m.)

24                    -   -   -

25

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.))**

**H**

PharmaStem Therapeutics, Inc. v. Viacell Inc.
D.Del.,2003.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
PHARMASTEM THERAPEUTICS, INC.,
Plaintiff,
v.
VIACELL INC., Cryo-Cell International, Inc., Cor-
cell, Inc., Stemcyte, Inc., Cbr Systems, Inc. f/k/a
Cord Blood Registry, Inc., Birthcells Technology,
Inc., Nustem Technologies, Inc., and Bio-Cell, Inc.,
Defendants.
No. C.A. 02-148 GMS.

Oct. 7, 2003.

Philip A. Rovner, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Plaintiff.
Jeffrey L. Moyer, David Allan Felice, Richards,
Layton & Finger, Robert F. Stewart, Jr., Dilworth,
Paxson LLP, Richard D. Kirk, Morris, James,
Hitchens & Williams, Wilmington, DE, for Defend-
ants.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

**\*1** On August 5, 2003, PharmaStem Therapeutics,
Inc. ("PharmaStem") filed a motion *in limine* to ex-
clude from evidence all discovery relating to settle-
ment negotiations regarding patent licensing agree-
ments. On August 12, 2003, Viacell Inc., Cryo-Cell
International, Inc., Corcell, Inc., Stemcyte, Inc.,
CBR Systems, Inc. f/k/a Cord Blood Registry, Inc.,
Birthcells Technology, Inc., Nustem Technologies,
Inc., and Bio-Cell, Inc. (collectively "Viacell")
filed an answer requesting that PharmaStem's mo-
tion be denied. Alternatively, Viacell moved to ex-
clude from evidence the license agreements
between PharmaStem and third parties, Anthrogen-
esis Corporation ("Anthrogenesis") and Stembanc,

Inc. ("Stembanc"), and to preclude PharmaStem's
expert, Russell Parr, from relying on those licenses
as a factor in determining a reasonable royalty rate.
On August 15, 2003, PharmaStem filed a reply. The
court conducted a pretrial conference on September
8, 2003 in which it heard oral argument from the
parties on PharmaStem's motion. Upon considera-
tion of the arguments raised at the pretrial confer-
ence and in the parties' briefs, the court will grant
PharmaStem's motion *in limine* to exclude from
evidence all discovery relating to settlement negoti-
ations regarding the Anthrogenesis and Stembanc
licenses and with any of the defendants in this case.
The court will also grant Viacell's cross-motion *in
limine* to exclude from evidence the Anthrogenesis
and Stembanc license agreements themselves and to
preclude Mr. Parr from relying on those licenses as
a factor in determining a reasonable royalty rate.
The court bases its ruling on the following reasons.

II. DISCUSSION

After the commencement of the present litigation,
PharmaStem licensed the patents-in-suit to two,
non-defendant companies, Anthrogenesis and Stem-
banc. PharmaStem entered into licensing agree-
ments with Anthrogenesis and Stembanc in the con-
text of settling a claim of infringement against each
of those companies. PharmaStem also has held set-
tlement negotiations with several of the defendants.
In all instances, PharmaStem and the various
parties entered into a negotiation agreement con-
taining the following clause:

All offers, promises, conduct and statements,
whether oral or written made in the course of nego-
tiations relating to the Patents by either of the
parties, their attorneys, agents or representatives are
"Confidential Statements." Confidential Statements
may not be disclosed by the receiving party without
the consent of the disclosing party. Confidential
Statements are subject to Rule 408 of the Federal
Rules of Evidence may not be used by the receiving

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.))**

party in litigation for any purpose including, without limitation, impeachment. However, evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its presentation or use in connection with this Agreement.

PharmaStem claims that evidence related to the negotiations underlying the Anthrogenesis and Stembanc license agreements is inadmissible under Rule 408 of the Federal Rules of Evidence. PharmaStem maintains, however, that the Anthrogenesis and Stembanc license agreements themselves are admissible to establish the appropriate reasonable royalty calculation. Accordingly, PharmaStem's damages expert, Russell Parr, relied on the license agreements in reaching his opinion that PharmaStem is entitled to a high royalty rate for the patents-in-suit.

**\*2** Conversely, Viacell takes an "all-or-nothing" position, arguing that if the underlying negotiations are inadmissible because of Rule 408, then the license agreements themselves are also inadmissible for the same reason. If Mr. Parr is nonetheless permitted to rely on the Anthrogenesis and Stembanc licenses, Viacell argues that it then should be permitted to introduce the underlying negotiations to show that the final agreements were not the product of a freely negotiated, bargained-for exchange. Indeed, Viacell's damages expert, David E. Yurkerwich, relied on evidence of the underlying negotiations to reach his conclusion that the reasonable royalty rate should be much lower than the one Mr. Parr calculated. The court agrees that PharmaStem is not permitted to have it both ways.

"[T]he methodology for determining a 'reasonable royalty' is consigned to the district court's discretion and is reviewed only for abuse of that discretion."*Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.,* 898 F.Supp. 1334, 1336 (N.D.Iowa 1995) (citing *Wang Labs., Inc. v. Toshiba Corp.,* 993 F.2d 858, 869 (Fed.Cir.1993); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 926 F.2d 1161, 1164 (Fed.Cir.1991); *Fromson v. Western Litho Plate &*

*Supply Co.,* 853 F.2d 1568, 1576 (Fed.Cir.1988)). It is well established that a patent holder's license agreements with third parties are permissible considerations in a reasonable royalty calculation. *See, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). However, notwithstanding their relevance to a reasonable royalty calculation, the court may exclude license agreements between a patent holder and third parties under Rule 408 of the Federal Rules of Evidence.

Rule 408 states in pertinent part:

Evidence of (1) furnishing or offering or promising to furnish, (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromising negotiations is likewise not admissible.

Fed.R.Evid. 408. Specifically, a license agreement may be excluded from evidence under Rule 408 where it (1) was reached under a threat of litigation, (2) arose in a situation where litigation was threatened or probable, or (3) was negotiated against a backdrop of continuing litigation infringement. *See Century Wrecker,* 898 F.Supp. at 1340 (citing *Studiengesellschaft Kohle, M.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1572 (Fed.Cir.1988) (synthesizing the teachings of *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1164 n. 11 (6th Cir.1978), *Rude v. Westcott,* 130 U.S. 152, 164, 9 S.Ct. 463, 32 L.Ed. 888 (1889), *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078-79 (Fed.Cir.1983), and *Deere & Co. v. Int'l Harvester Co.,* 710 F.2d 1551, 1557 (Fed.Cir.1983), respectively)). The court must look carefully at the context in which the license agreement was reached to determine whether it meets any of these requirements. *See Dart Indus.,* 862 F.2d at 1572;*Century Wrecker,* 898 F.Supp. at 1340.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.))**

**\*3** The license agreements between PharmaStem and third parties Anthrogenesis and Stembanc arose in a context where litigation was threatened or at least probable. PharmaStem in fact states, "With respect to Anthrogenesis and Stembanc, discovery obtained unambiguously refers to the amounts contemplated to settle PharmaStem's claim of infringement against them."(PharmaStem Therapeutics, Inc's Motion *In Limine* to Exclude All Discovery Relating to Settlement Agreement Negotiations Regarding Patent License Agreements, at 3). Additionally, PharmaStem's negotiation agreements with Anthrogenesis and Stembanc specifically reference Rule 408, indicating that the parties involved must consider the licenses to have arisen out of settlement negotiations over the validity or amount of an infringement claim. A "dispute" under Rule 408 includes "both litigation and less formal states of a dispute."In view of the term's broad construction, it is clear that the Anthrogenesis and Stembanc license agreements arose from a dispute within the meaning of Rule 408.

Both PharmaStem and Viacell cite *Century Wrecker* in support of their respective positions. In *Century Wrecker,* the court admitted evidence of license agreements between the plaintiff and third parties, which arose out of the threat of litigation. Although the court noted that the agreements were inadmissible under Rule 408, it nonetheless allowed the defendants to introduce the agreements into evidence because the plaintiff's expert had relied on them in his reasonable royalty calculations. The court reasoned that the defendants were entitled to use the settlement agreements to challenge the basis of the plaintiff's expert's conclusions.

*Century Wrecker,* however, is not binding precedent on this court. Moreover, *Century Wrecker* held only that the actual settlement agreements were admissible to challenge the basis of the expert's opinion. The case, therefore, does not dictate Viacell's position that evidence of negotiations *underlying* the license agreements must be admitted to challenge Mr. Parr's report. Nor does *Century Wrecker*

mandate PharmaStem's conclusion that the Anthrogenesis and Stembanc licenses are automatically admissible because Mr. Parr used them to calculate a reasonable royalty.

The court is not required to allow otherwise inadmissible settlement agreements into evidence simply because one party's expert relies on them in reaching a reasonable royalty. This is particularly true where other options, such as excluding the licenses altogether, are available to the court. The purpose of Rule 408 is "to encourage full and frank disclosure between parties in order to promote settlements, rather than protracted litigation."*See*Fed.R.Evid. 408 (citing *Olin Corp. v. Ins. Co. of N. Am.,* 603 F.Supp. 445, 449 (S.D.N.Y.1985)). Given its discretion to determine the methodology for calculating a reasonable royalty, the court finds that it is the better practice to exclude the Anthrogenesis and Stembanc licenses in view of the policy considerations behind Rule 408. *See Bradbury v. Phillips Petroleum Co.,* 815 F.2d 1356, 1364 (10th Cir.1987) ("[W]hen the issue is doubtful, the better practice is to exclude evidence of compromises or compromise offers.").

**\*4** Finally, although Viacell does not appear to seek the introduction of such evidence, to the extent PharmaStem requests the exclusion of settlement negotiations between itself and any of the defendants in this case, that evidence is plainly inadmissible under Rule 408. *See*Fed.R.Evid. 408 ("Evidence of conduct or statements made in compromising negotiations is likewise not admissible.").

### III. CONCLUSION

Because the agreements arose in a context where litigation was threatened or at least probable, the court will exclude all evidence relating to negotiations of the Anthrogenesis and Stembanc licenses, including the license agreements themselves.

Therefore, IT IS HEREBY ORDERED that:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 4

Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.))**

1. PharmaStem Therapeutics, Inc.'s motion *in limine* to exclude from evidence all discovery relating to settlement negotiations regarding the Anthrogenesis and Stembanc licenses and with any of the defendants in this case is GRANTED.

2. Viacell's cross-motion *in limine* to exclude from evidence the Anthrogenesis and Stembanc license agreements and to preclude Russell Parr from relying on those licenses as a factor in determining a reasonable royalty rate is GRANTED.

3. The parties' experts may not rely on the Anthrogenesis and Stembanc licenses or any documents or other evidence pertaining to negotiations of the those licenses to calculate a reasonable royalty rate or to challenge the opposing party's calculation of a reasonable royalty rate.

D.Del.,2003.
PharmaStem Therapeutics, Inc. v. Viacell Inc.
Not Reported in F.Supp.2d, 2003 WL 22387038 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.